UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

        v.

MATTHEW BRENT GOETTSCHE,
[DEFENDANT TWO REDACTED],
JOBADIAH SINCLAIR WEEKS,
JOSEPH FRANK ABEL, and
SILVIU CATALIN BALACI

Hon. Claire C. Cecchi

CRIMINAL NO.:  19-cr-877-CCC

**Oral Argument Requested**

# DEFENDANT JOBADIAH SINCLAIR WEEKS' MOTION FOR REVOCATION OF PRETRIAL DETENTION ORDER AND INCORPORATED MEMORANDUM OF LAW

120739720.1

**TABLE OF CONTENTS**

I. BACKGROUND ............................................................................................................... 1

II. THIS COURT HAS JURISDICTION TO CONDUCT A *DE NOVO* REVIEW OF THE DETENTION ORDER ................................................................................................... 1

   A. Mr. Weeks Should Not Be Detained Because the Government Cannot Prove There are no Conditions to Assure Mr. Weeks Appears Before This Court. .................................................... 2

III. ARGUMENT .................................................................................................................... 3

   A. The *Presumption of Release* Applies to Mr. Weeks. ............................................................ 3

   B. The Nature and Circumstances of the Offenses Charged Do Not Justify Detention. .......... 3

   C. The Evidence Against Mr. Weeks is Lacking And Supports Pretrial Release. .................... 5

   D. Mr. Weeks' History and Characteristics Do Not Support Detention .................................. 6

      i. Mr. Weeks' Ties to the Community. ...................................................................... 6

      ii. Extensive travel is not a basis for detention. ...................................................... 7

      iii. The Release of Virgil Griffith on Conditions is Instructive. .............................. 9

      iv. Mr. Weeks Traveled Outside and Returned to the United States While He Knew the BitClub Network was under Investigation ........................................................ 10

      v. Mr. Weeks Does Not Associate with "Anarchists." ........................................... 11

      vi. Seeking Foreign Citizenship is Not Nefarious. ................................................. 11

      vii. Mr. Weeks Has Been Cooperative with Law Enforcement. ........................... 12

      viii. The Government's Representations of Mr. Weeks' Assets are Inflated. ........ 12

      ix. Minimal, Aged Criminal History is Not Grounds for Detention. .................... 13

IV. GPS MONITORING IS RELIABLE. ........................................................................... 13

V. PRETRIAL DETENTION IMPOSES A SUBSTANTIAL AND UNNECESSARY BURDEN TO PREPARE THIS CASE FOR TRIAL ........................................................... 14

VI. PROPOSED CONDITIONS OF RELEASE .................................................................. 14

VII. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Cirillo*,
   99-1514, 1999 WL 1456536 (3d Cir. July 13, 1999) (unpublished) ..........................................3

*United States v. Delker*,
   757 F.2d 1390 (3d Cir. 1985)...................................................................................................2

*United States v. Gatto*,
   750 F. Supp. 664 (D.N.J. 1990) ...............................................................................................2

*United States v. Giampa*,
   904 F. Supp 235 (D.N.J. 1995) ................................................................................................3

*United States v. Himler*,
   797 F.2d 156 (3d Cir. 1986)......................................................................................................2

*United States v. Karni*,
   298 F.Supp.2d 129 (D.D.C. 2004) ...........................................................................................8

*United States v. King*,
   Case No. 5:13-cr-63 (D. Okla. May 10, 2013) ........................................................................5

*United States v. Madoff*,
   586 F. Supp. 2d 240 (S.D.N.Y. 2009)......................................................................................5

*United States v. Motamedi*,
   767 F.2d 1403, 1408 (9th Cir. 1985) .......................................................................................4

*United States v. Orta*,
   760 F.2d 887 (8th Cir. 1985) ...................................................................................................2

*United States v. Paulino*,
   335 F.Supp.3d 600 (S.D.N.Y. 2018).......................................................................................13

*United States v. Perry*,
   788 F.2d 100 (3d Cir. 1986).....................................................................................................2

*United States v. Qi Hansen*,
   613 F.Supp.2d 85 (D.D.C. 2009) .............................................................................................8

*United States v. Salerno*,
   481 U.S. 739 (1987)..................................................................................................................2

*United States v. Tlatenchi*,
   3:19-MJ-00051, 2019 WL 5294950 (M.D. Pa. Oct. 18, 2019) .................................................. 1

**Statutes**

18 U.S.C. § 371 .............................................................................................................................. 1

18 U.S.C. § 1349 ............................................................................................................................ 1

18 U.S.C. § 3142(c) ................................................................................................................ 13, 15

18 U.S.C. § 3142(e) ....................................................................................................................... 4

18 U.S.C. § 3142(e)(1) .................................................................................................................. 3

18 U.S.C. § 3142(f) ...................................................................................................................... 13

18 U.S.C. § 3142(g) ................................................................................................................... 3, 4

18 U.S.C. § 3145(b) ................................................................................................................... 1, 2

Bail Reform Act of 1984 .......................................................................................................... 2, 12

U.S.S.G. § 2B1.1, cmt. n.3(E)(i) and (3)(F)(iv) ............................................................................ 6

iii

Defendant Jobadiah Sinclair Weeks, pursuant to 18 U.S.C. § 3145(b), respectfully requests that this Court revoke the pretrial detention order issued by U.S. Magistrate Judge William Matthewman in the Southern District of Florida, and in support thereof, represents as follows:

## I. BACKGROUND

On December 5, 2019, a New Jersey federal grand jury returned an Indictment charging Mr. Weeks and four co-defendants with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of conspiracy to offer and sell unregistered securities, in violation of 18 U.S.C. § 371. (DNJ Doc. 9). On December 10, 2019, special agents with the Internal Revenue Service arrested Mr. Weeks in West Palm Beach, Florida during a follow-up interview. Mr. Weeks appeared before U.S. Magistrate Judge Matthewman in West Palm Beach, Florida for his initial appearance. (SDFL Doc. 2). A contested detention hearing was held on December 17, 2019. (SDFL Doc. 9). At the conclusion of that hearing, Judge Matthewman orally ordered Mr. Weeks to be detained pending trial. (*Id.*). Subsequently, on December 20, 2019, Judge Matthewman issued a Pretrial Detention Order explaining his reasons for ordering Mr. Weeks' pretrial detention. (SDFL Doc. 11). This order should be revoked, pursuant to 18 U.S.C. § 3145(b).

## II. THIS COURT HAS JURISDICTION TO CONDUCT A *DE NOVO* REVIEW OF THE DETENTION ORDER

If a person is ordered detained by a magistrate judge, or by a person *other than a judge of the court having original jurisdiction over the offense*, the person detained may file with the court having original jurisdiction over the offense a motion for revocation of the order. *See* 18 U.S.C. § 3145(b) (emphasis added). The Court with original jurisdiction of the matter must promptly determine the motion. *Id.* In the context of pretrial detention, the court with "original jurisdiction" refers to the court in the district in which the prosecution is pending. *United States v. Tlatenchi*, Case No. 3:19-MJ-00051, 2019 WL 5294950, at *1 (M.D. Pa. Oct. 18, 2019) (citing *United States*

1

*v. El Edwy*, 272 F.3d 149, 154 (2d Cir. 2001)).  Because Mr. Weeks' indictment is pending before this Court, it has "original jurisdiction over the offense" and may revoke the magistrate judge's pretrial detention order.

This Court's review of Mr. Weeks' pretrial detention order is *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  In reviewing a detention order, the Court must reach an "independent determination of [the defendant's] eligibility for release on bail." *Id.* at 1394–95.  The Court may also consider additional evidence as part of its review. *United States v. Oliver*, Case No. 16-40, 2016 WL 1746853, at *4 (W.D. Pa. May 3, 2016); *see, e.g.*, *United States v. Gatto*, 750 F. Supp. 664, 666 (D.N.J. 1990).  As always, the government bears the burden to justify pretrial detention. *United States v. Perry*, 788 F.2d 100, 114–15 (3d Cir. 1986).

A. **Mr. Weeks Should Not Be Detained Because the Government Cannot Prove There are no Conditions to Assure Mr. Weeks Appears Before This Court.**

In the pretrial context, "[l]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act of 1984 authorizes pretrial detention if the government proves by a preponderance of the evidence that the defendant poses a serious risk of flight if released pending trial, *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986), and there is "*no condition or combination of conditions* [that] will *reasonably assure* the appearance of the person as required . . . ." *See* 18 U.S.C. § 3142(e)(1) (emphasis added).  Conditions of release do not need to guarantee a defendant's appearance, only give the Court reasonable assurances he will appear. *See United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985) ("The structure of the statute mandates **every form** of release be considered before detention may be imposed.  That structure cannot be altered by building a 'guarantee' requirement atop the legal criterion erected to evaluate release conditions in individual cases.") (emphasis added).  And the government must show there are no conditions

2

of release, that is, there is *nothing* that can be said, done, or imposed by the Court to reasonably assure the defendant's appearance at trial, other than locking him up in a detention facility. *United States v. Cirillo*, Case No. 99-1514, 1999 WL 1456536, at *1 (3d Cir. July 13, 1999) (quoting 18 U.S.C. § 3142(e)(1)).

The government's task is not insubstantial at this stage. The government cannot prove there is *nothing* that will reasonably assure Mr. Weeks' presence at trial.

### III. ARGUMENT

#### A. The *Presumption of Release* Applies to Mr. Weeks.

Unless a defendant has been charged with crimes that carry a rebuttable presumption of detention, *see* 18 U.S.C. § 3142(e), the law presumes that all defendants will be granted conditions of release. *Cirillo*, 1999 WL 1456536, at *1; *see also United States v. Giampa*, 904 F. Supp 235, 357 (D.N.J. 1995). That, at least, is the starting point for defendants like Mr. Weeks.

The parties agree that Mr. Weeks is not a danger to the community. Rather, the government's detention argument is based solely on its risk of flight concerns. Because Mr. Weeks does not pose a serious risk of flight, the presumption of release holds firm.

#### B. The Nature and Circumstances of the Offenses Charged Do Not Justify Detention.

This case involves two charges—wire fraud conspiracy and conspiracy to offer or sell unregistered securities. Notwithstanding attention-grabbing allegations of a $772 million Ponzi scheme involving largely misunderstood mining of bitcoin,[1] the nature of the offenses charged do

---

[1] Cryptocurrency assets like bitcoin are legal and legitimate to own and use. There is nothing improper, insidious, or illegal about owning or using cryptocurrencies. Significant businesses, like AT&T and Microsoft, among others, accept bitcoin and other cryptocurrencies for goods and services. State governments have likewise rushed to pass new laws facilitating transactions in cryptocurrencies. For example, the state of Ohio and municipality of Orange County, Florida have allowed businesses to pay taxes using bitcoin.

3

not justify detention. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (noting that the nature and circumstances of the charges and the weight of the evidence are not the most important of the various factors).

In a typical Ponzi scheme, investors are told they will make an outrageous, and usually unrealistic, profit from their investment. In truth, however, the business operating the Ponzi scheme is a fiction; instead, the company provides false information to investors while using new money invested to pay earlier investors. Here, the BitClub Network ("BitClub") was not an empty shell. It purchased mining equipment and operated a facility where it deployed that equipment to mine bitcoin. Mr. Weeks visited the facility and confirmed it was operational. Mr. Weeks also brokered the sale of tens of millions of dollars of mining equipment to BitClub, giving him the understanding that the company was actually mining bitcoin.

Another hallmark of Ponzi schemes is concealment of the payment structure. That is not the case here. When most people invest in a Ponzi scheme, they typically do not suspect that the money they are "earning" is paid using someone else's investment. In the government's motion to detain co-defendant Matthew Goettsche, Case No. 1:19-mj-277-NYW (District of Colorado) (Doc. 6, at 12), it represented that on the BitClub website the "compensation structure" reflected the "pyramid scheme portion of BCN investor compensation." The BitClub website discloses the existence of a multi-level marketing business where returns will be derived from the investments of others. Given this disclosure, the government will be challenged to show a misrepresentation sufficient to support a Ponzi scheme.

At Mr. Weeks' detention hearing, the government emphasized, consistent with the Department's press release, that this case involved a $772 million loss. But when pressed by Judge Matthewman, "Does the Government have a good faith estimate of the amount of money, the

amount of loss at this point?", the government responded, "*No*, but I am told that it could go up from 772[.]" (SDFL Doc. 14, at 50:15-19.)  But it's not going to be $772 million for any of the defendants, much less Mr. Weeks, given that the guidelines provide, with limits, for a reduction in "loss" based on funds paid out to investors. *See* U.S.S.G. § 2B1.1, cmt. n.3(E)(i) and (3)(F)(iv). In Mr. Weeks' case, he joined BitClub 16 months *after* it was created, which would further reduce any potential loss amount for him.  And that presumes a crime occurred, which one did not.

Unless the crimes charged give rise to presumptions, which the charges here do not, the alleged size or nature of the offense and potential sentence do not control pretrial detention determinations—nor should they when someone has been accused of a crime based on a probable cause standard.  Many cases involving massive fraud schemes did not justify pretrial detention. *See, e.g., United States v. Madoff*, 586 F. Supp. 2d 240, 246 (S.D.N.Y. 2009) (denying motion to detain defendant who was "charged in perhaps the largest Ponzi scheme ever"); *United States v. King*, Case No. 5:13-cr-63 (D. Okla. May 10, 2013) (involving a conspiracy to operate an illegal sports gambling/bookmaking business that solicited more than $1 billion in illegal bets; the court released defendant King subject to a $2,500,000 appearance bond and other conditions).

Even in these high-loss cases, the courts were able to construct conditions of release that assured the offenders appeared. Here, any loss attributed to Mr. Weeks will be significantly less than the alleged loss and the Court can fashion appropriate conditions of release.

**C.** **The Evidence Against Mr. Weeks is Lacking And Supports Pretrial Release.**

BitClub started in April 2014.  Mr. Weeks had no involvement in creating or operating the network.  Mr. Weeks did not create or maintain its website.  In fact, Mr. Weeks joined BitClub 16 months *after* its foundation was laid.  For several years, Mr. Weeks served as a promoter of the network—along with more than 100 other people—and he brokered the sale of mining equipment

to BitClub. Mr. Weeks did not serve as an officer of BitClub and he did not control the company's financial affairs. He had no access to its bitcoin wallets. Consequently, from a knowledge standpoint, Mr. Weeks is in a far different position than his co-defendants.

The indictment reinforces Mr. Weeks' limited role in BitClub. The 26-page indictment offers minimal allegations against him, concentrating its allegations on other defendants. In fact, the weight of the evidence against Mr. Weeks in the indictment consists of two paragraphs. Paragraph 4(g)(xi) of Count One alleges that Mr. Weeks advised a co-defendant (redacted) in December 2015, about keeping separate statistics per month and providing more information and transparency to attract sophisticated investors. Mr. Weeks' push for transparency hardly seems like an inculpatory remark. At best, this evidence is exculpatory—at worst, innocuous.

Paragraph 4(g)(xii) of Count One consists of a June 2017, email from Mr. Weeks to co-defendant Goettsche in which Mr. Weeks advises that it's not right for BitClub to sell investors shares in BitClub, but not use the money to purchase equipment as BitClub was obligated to do. Telling someone to do the right thing—that is, to comply with representations made—reflects integrity, not an intent to defraud. These two paragraphs, however, are the sum total of the individual allegations against Mr. Weeks for the wire fraud conspiracy charged in Count One of the indictment. Allegations earlier in the indictment, regarding communications between co-defendants during the formation of BitClub all occurred *before* Mr. Weeks joined in August 2015. The paucity of evidence presented against Mr. Weeks favors his release.

### D. Mr. Weeks' History and Characteristics Do Not Support Detention.

#### i. Mr. Weeks' Ties to the Community.

Mr. Weeks is a United States citizen who grew up in Colorado. He is a 38-year-old husband and father. He married Stephanie Weeks 10 years ago. In 2018, they welcomed the birth

6

of their daughter, Liberty. The Weeks family calls Colorado home. Mr. Weeks spends two to three months in Colorado each year. Mr. Weeks' parents live in Arvada, Colorado, where they have lived for decades. Nat Weeks worked as a teacher while his mother, Silence Weeks, worked as a math educator, tutor, and respiratory therapist. They own a house in Arvada—the family home—and a log cabin in Buena Vista. Mr. Weeks has a brother in Nashville, Tennessee, and in-laws who live in Iowa.

Mr. Weeks grew up in Colorado where he attended Faith Christian Academy and Pamona High School, and worked in Colorado for years, including managing a ski slope in Breckenridge from 2011-13. Mr. Weeks has been active in Colorado politics, having been a Colorado County delegate to the Republican Party in 2012. He spends about 90 days a year snowboarding in Colorado. His closest friends live in Colorado. Colorado is Mr. Weeks' home.

Mr. Weeks has limited, but notable ties to the District of New Jersey. Peter Gallic, a close friend of Mr. Weeks, a lifelong resident of New Jersey, and a respected businessman in the community, has agreed to serve as a third-party custodian and make his house available for Mr. Weeks' home confinement. Peter Gallic lives with his family in Far Hills, New Jersey, which is 34 miles from the U.S. Courthouse in Newark. The defense proposes Mr. Weeks' release to the custody of Peter Gallic in New Jersey, or alternatively to his father, Nat Weeks, in Colorado.

### ii.     Extensive travel is not a basis for detention.

Mr. Weeks has visited over 141 countries on seven continents. (SDFL Doc. 10, Def. Ex. 5). Mr. Weeks and his family frequently travel abroad to gain exposure to other cultures and broaden their global perspective. But their trips are not just for fun. While traveling, Mr. Weeks regularly engages in philanthropic endeavors. The photographs included as part of the defense's presentation at the detention hearing, (*Id.* at Def. Exs. 6 – 10), reflect various charitable efforts Mr.

7

Weeks has engaged in during the last several years, including hurricane relief efforts in Haiti and support for a school in Cambodia, (SDFL Doc. 14, at 53:15-54:24).

The government mistakenly concluded that extensive travel translates into a risk of flight. Plainly, there is a difference between travelling to explore different countries and diverse people, and evading justice. One is progressive; the other is nefarious. The government conflates the two.

Foreign citizens arrested in the United States are not automatically subject to pretrial detention, so neither should United States citizens who travel to foreign countries. In fact, courts have granted bail in cases where defendants engaged in extensive foreign travel or lacked strong ties to communities in the United States. *See, e.g., United States v. Karni*, 298 F.Supp.2d 129 (D.D.C. 2004) (granting pretrial release for an Israeli citizen residing in South Africa who had no ties to the United States, owned no property here, and was arrested in the States while visiting for vacation); *United States v. Qi Hansen*, 613 F.Supp.2d 85 (D.D.C. 2009) (granting pretrial release to a naturalized U.S. citizen with significant ties to China who had spent much of her life living abroad and had the financial means to flee). Mr. Weeks is a United States citizen who enjoys travel. If a foreign citizen is eligible for release on conditions, a United States citizen, like Mr. Weeks who has visited foreign countries, should likewise not be presumed a flight risk.

During Mr. Week's detention hearing, the government introduced an exhibit documenting Mr. Weeks' departures from and arrivals to the United States since November 2016. (SDFL Doc. 10, Gov. Ex. 2). The most notable part of this exhibit, however, is that all of Mr. Weeks' foreign travel reflects his *return* to the United States. The government is only able to produce this exhibit because U.S. Customs and Border Protection recorded Mr. Weeks' entries into the United States. Mr. Weeks may frequently travel to different countries around the world, but he always comes back to his home—the United States.

8

The government is also mistakenly fixated on the fact that out of more than 141 countries Mr. Weeks has visited around the globe, some of these countries do not have extradition with the United States. But that conclusion registers a false positive. It is impossible to travel to more than 141 countries and not visit one or more without an extradition treaty with the United States. There is no evidence that Mr. Weeks has focused his travels on countries that do not extradite to the United States.

### iii. The Release of Virgil Griffith on Conditions is Instructive.

Yesterday, Virgil Griffith, a United States citizen accused of violating the International Emergency Economic Powers Act ("IEEPA") by traveling to the Democratic People's Republic of Korea ("DPRK" or "North Korea") to deliver a presentation and technical advice on using cryptocurrency and blockchain technology to evade sanctions was granted release from pretrial detention. *See United States v. Griffith*, Case No. 1:19-mj-10987-UA (S.D.N.Y. Jan. 2, 2020) (Doc. 8). There are considerable parallels between Mr. Griffith and Mr. Weeks.

Although Mr. Griffith is a US Citizen, he resides in Singapore. Mr. Weeks is a US Citizen and has maintained an address in Colorado as his primary residence while traveling. Like Mr. Weeks, Mr. Griffith also maintained a residence abroad.

**Allegations of Wrongdoing**: Mr. Griffiths is charged with aiding an enemy of the United States and using VPNs to access dark web resources, making him a flight risk. The government argued that Mr. Griffiths "considered renouncing his citizenship" but did not do so. The government argued that Mr. Griffiths had undisclosed funds that he could access if he fled. Mr. Weeks, however, is charged based upon scant factual allegations with two crimes, none of which imperiled national security or involved giving material aid to a hostile foreign power. Mr. Weeks is also accused of using VPNs to access resources. It was also alleged that Mr. Weeks made comments about disclaiming his citizenship, but in fact has not renounced his citizenship. The

9

government likewise has made similar allegations that Mr. Weeks could travel abroad to property he owns and could access secreted funds. Like Griffith, this is not grounds for detention.

**Circumstances of arrest:** Mr. Griffiths voluntarily turned himself in. Likewise, Mr. Weeks intentionally returned to the United States to voluntarily meet with federal agents when he was arrested.

**Terms of Release:** Mr. Griffiths was initially held in detention, but on appeal, he was released on a $1 million bond, secured by the homes of his father and sister, and remanded to the custody of his parents in Alabama, despite the action having been brought in the Southern District of New York. The court overruled the government's arguments that conditions of release to include GPS monitoring were insufficient because GPS monitoring is fallible. The court also rejected arguments that Mr. Griffiths would receive aid to flee the jurisdiction from his contacts in the cryptocurrency world and from the dark web, a similar argument featured by the government in Mr. Weeks' case.

      **iv.**    **Mr. Weeks Traveled Outside and Returned to the United States While He Knew the BitClub Network was under Investigation.**

In April 2019, Mr. Weeks approached the IRS and met with two IRS agents in Washington, D.C.[2] During that meeting, the IRS agents questioned Mr. Weeks about BitClub and various people involved in the network. Based on these questions, it was clear to Mr. Weeks that the IRS was investigating BitClub, even though the IRS did not openly admit it had an ongoing investigation into the network. Sometime after this meeting, the IRS interviewed one or more

---

[2] In its Pretrial Detention Order, Judge Matthewman pointed out that Mr. Weeks had not filed tax returns for tax years 2014–2017. (SDFL Doc. 11, at 4). But the government proffered at the detention hearing that Mr. Weeks approached the IRS in April 2019 and admitted to having a significant tax liability. (SDFL Doc. 14, at 64). Although the Court expressed concern about the failure to file, Mr. Weeks' effort to approach the IRS to address his tax liability reflects the actions of a person trying to make things right, not flee.

10

officers of Bitfury, a company that manufactures and sells bitcoin mining equipment. Mr. Weeks brokered the sale of bitcoin mining equipment between Bitfury and other parties, including BitClub. These subsequent law enforcement contacts with Bitfury confirmed for Mr. Weeks that the IRS had an investigation against BitClub. Notwithstanding this knowledge, between April 2019 and the date of his arrest, Mr. Weeks traveled to and from the United States at least 10 times. (SDFL Doc. 10, Gov. Ex. 2). In fact, the IRS arrested Mr. Weeks at a follow-up meeting they arranged in West Palm Beach, Florida. If Mr. Weeks had any intention of evading law enforcement, he would have left the United States in April 2019, after he became aware of the IRS's investigation, and never returned.

### v.     Mr. Weeks Does Not Associate with "Anarchists."

In ordering detention, Judge Matthewman expressed concern that Mr. Weeks associates with "anarchists" who could assist him should he try to flee the country. (SDFL Doc. 11, at 3 and 6). The use of the term "anarchists" conjures images of protestors in black throwing tear gas canisters at a World Trade Organization conference. That is not who Mr. Weeks associates with. Rather, he associates with these self-proclaimed anarchists who are devout capitalists who believe in free markets, free expression, and the non-aggression principle. The idea that these so-called anarchists might support Mr. Weeks' escape from justice, and trade places with him, is unfounded.

### vi.    Seeking Foreign Citizenship is Not Nefarious.

In the past, Mr. Weeks has attempted, without success, to obtain citizenship in St. Kitts and Vanuatu. His reasons for doing so have nothing to do with BitClub, or the charges against him. Mr. Weeks applied for St. Kitts citizenship in 2017, more than two years before his arrest in this case and prior to becoming aware of the government's investigation. When that endeavor failed, Mr. Weeks tried to obtain citizenship in Vanuatu. His effort there failed as well. At the detention

hearing, the government argued that Mr. Weeks tried to obtain citizenship in these countries because they do not have extradition with the United States. The government is mistaken. The United States has an extradition treaty with St. Kitts, but it does not have such a treaty with Vanuatu. The mere fact, however, that Mr. Weeks tried to obtain citizenship in St. Kitts first, where the United States does have an extradition treaty, demonstrates that his reasons for seeking citizenship in Vanuatu were totally unrelated to the extradition issue. Ultimately, Mr. Weeks did not obtain citizenship in either country.

### vii. Mr. Weeks Has Been Cooperative with Law Enforcement.

Mr. Weeks was cooperative with law enforcement at the time of his arrest. Upon arrest, the IRS seized Mr. Weeks' laptop and cell phone. Mr. Weeks freely gave his passwords even though he had a Fifth Amendment privilege that would have precluded the agents from compelling the password from him. This is not a man who intends to hide from law enforcement and evade prosecution.

### viii. The Government's Representations of Mr. Weeks' Assets are Inflated.

The government has alleged that one of Mr. Weeks' crypto wallets "had received more than $560 Million … over the course of its existence," (SDFL Doc. 14, at 19), in an attempt to suggest that Mr. Weeks has stashed away untold fortunes. The government's proffer, however, is incorrect. First, the amount of cryptocurrency value that has flowed through a wallet neither indicates the amount of value available to Mr. Weeks at present, nor accounts for why any value was sent or received through that wallet. Second, in arriving at its estimate, the government double counted monies entering and exiting Mr. Weeks' wallet.

There is no allegation that Mr. Weeks has taken that amount of value from BitClub or any BitClub member, or that any of the funds received in that wallet are the result of any allegedly

12

illegal conduct. Further, given that Mr. Weeks' primary source of income comes from his work as a broker of cryptocurrency mining equipment transactions, it is natural that large amounts of money flow from purchasers to sellers through his accounts. In total, 66,656 bitcoin have passed through the account at issue. Moreover, bitcoin transactions are easily viewable and increasingly hard to hide.

### ix. Minimal, Aged Criminal History is Not Grounds for Detention.

Mr. Weeks' criminal history is minimal. As reflected in the Pretrial Services Report, Mr. Weeks was arrested over 20 years ago for obstructing the police and assault and battery. The court sentenced him to six months' probation, which reflects the its view of the seriousness of the incident. Mr. Weeks was arrested for two DUI offenses 15 years ago and 5 years ago, respectively.[3] During each of these cases, Mr. Weeks never failed to appear at any hearings and he successfully completed probation. This shows that Mr. Weeks will do as this Court instructs.

## IV. GPS MONITORING IS RELIABLE.

At the hearing, the government cited cases that called into question the reliability of GPS monitoring. (SDFL Doc. 14, at 26:9–27:2). GPS monitoring is much more reliable than represented in cases from 15 years ago. *See e.g.*, *United States v. Paulino*, 335 F.Supp.3d 600 (S.D.N.Y. 2018) (acknowledging the degree to which electronic monitoring technology has progressed). GPS monitoring is not a new, cutting-edge technology; it has been around for years. Federal prosecutors—including those in this district—and magistrate judges throughout the United States, advocate for or impose GPS monitoring in conditions of release. Moreover, PreTrial Services frequently recommends the use of GPS monitoring. GPS monitoring is not

---

[3] Insofar as the Court believes Mr. Weeks has an alcohol abuse problem, he would agree to substance abuse counseling as authorized by 18 U.S.C. § 3142(c)(1)(B)(x).

required to be foolproof, it just has to be reliable, which it is. *See* 18 U.S.C. § 3142(f) (requiring release conditions that "reasonably assure" appearance).

## V. PRETRIAL DETENTION IMPOSES A SUBSTANTIAL AND UNNECESSARY BURDEN TO PREPARE THIS CASE FOR TRIAL

The government's claim that this case involves serious crimes and a potentially lengthy sentence underscores why Mr. Weeks needs to be on conditions of release preparing for trial. Continued detention carries an additional risk of compromising the defense of this case. *See Barker v. Wingo*, 407 U.S. 514, 533 (1972) (noting that detention hinders a defendant's "ability to gather evidence, contact witnesses, or otherwise prepare his defense"). Here, defense counsel anticipates substantial discovery that will be document intensive. To effectively prepare this case for trial, defense counsel needs ready access to Mr. Weeks to review and interpret records, develop strategy, and devise legal arguments. Detention unnecessarily hinders the ability to defend Mr. Weeks.

## VI. PROPOSED CONDITIONS OF RELEASE

In addition to the standard conditions of bail and any conditions deemed necessary by the Court and PreTrial Services, Mr. Weeks proposes the following additional conditions:

A. Jobadiah Weeks and his family members will post a $5 million dollar bond signed by Jobadiah Weeks, Stephanie Weeks, Nat Weeks, and Silence Weeks that is collateralized by:
   a. Arvada, Colorado house (Nat and Silence Weeks) ($730,000)
   b. Buena Vista, Colorado log cabin (Nat and Silence Weeks) ($325,000)
   c. Hemp Farm, Colorado (Jobadiah Weeks) ($2 million)
   d. Acapulco, Mexico house (Jobadiah Weeks) ($2 - 4 million)
   e. St. Kitts property interest (Stephanie Weeks)

B. Mr. Weeks will be released into the custody of Peter Gallic, who will serve as a third-party custodian

C. Mr. Weeks will be subject to home detention at Peter Gallic's house in Far Hills, New Jersey (34 miles from the U.S. Courthouse in Newark)[4]

---

[4] Alternatively, Mr. Weeks would propose that he be placed in the custody of his father, Nat Weeks, and be subject to home detention in his father's house in Arvada, Colorado.

14

D.  Mr. Weeks will wear an electronic monitoring device, and will follow electronic monitoring procedures specified by PreTrial Services

E.  Mr. Weeks' travel will be restricted to the District of New Jersey

F.  Any other reasonable conditions, such as:
    a.  Maintain employment unrelated to BitClub or cryptocurrency
    b.  Extradition waiver for Mexico
    c.  Alcohol abuse counseling

These conditions will "reasonably assure" that Mr. Weeks appears for all hearings and trial.

*See* 18 U.S.C. § 3142(c).

## VII. CONCLUSION

We respectfully request that this Court revoke the pretrial detention order and release Mr. Weeks based on the above conditions.

| | |
|---|---|
| DATED:  January 3, 2020 | CARLTON FIELDS |
| | By:   *s/ Adam P. Schwartz*<br>Attorney ID No. 018351995<br>CARLTON FIELDS<br>4221 W. Boy Scout Blvd., Ste. 1000<br>Tampa, FL  33607<br>Telephone: 813.223.7000 (Fla)<br>Facsimile:  813.229.4133 (Fla.) |
| | and |
| | 180 Park Avenue, Ste. 106<br>Florham Park, NJ  07932-1054<br>Telephone: 973.828.2600<br>Facsimile:  973.828.2601 |
| | *Counsel for Jobadiah Sinclair Weeks* |

---

He consents to be escorted by law enforcement to and from any airports for travel between Colorado and New Jersey.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2020, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will serve an electronic copy to all counsel of record.

*/s/ Adam P. Schwartz*