# EXHIBIT L

1987 WL 17562
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

UNITED STATES of America,
v.
John A. RENZULLI.

Cr. No. 87–258–7.
|
September 28, 1987.

**Attorneys and Law Firms**

Michael L. Levy, Strike Force, for U.S.

Nino Tinari, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

EDWIN E. NAYTHONS, United States Magistrate.

 **\*1** John A. Renzulli, defendant moves the Court to reconsider the Orders of United States Magistrate Richard A. Powers, III, United States District Court Judge Charles R. Weiner, and the Court of Appeals for the Third Circuit's summary affirmance detaining him without bail pending trial. These pretrial detention orders were made pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, et seq. See 18 U.S.C. 3142.

The defendant was originally indicted on June 17, 1987 and has been held in pretrial detention since his arrest on June 18, 1987. A superseding indictment was filed recently at the arraignment on September 10, 1987, and defendants' counsel took the position that because this was a superseding indictment, he was entitled to a new detention hearing. Because the arraignment involved in excess of 25 defendants in this case alone, Magistrate Powers properly determined that the time did not allow him to deal with this issue and continued the matter until September 15, before this United States Magistrate. When the initial detention hearing came before Judge Powers on June 29, 1987, defendant was charged with violation of the Controlled Substances law, and, after examination of the particular aspects of the indictment, and after hearing the testimony on the Government's motion to detain the defendant pending trial, the Court there found,

> '. . . There is a presumption that has arisen by reason of the fact that the defendant is charged under 21 U.S.C. §§ 841(a)(1), 846, 848 and 853, that the indictment charges in elaborate detail that the defendant is a management member of a narcotics organization, that he has been involved in large scale sales of P2P, used in manufacturing methamphetamine on a grand scale, and, I further find that the presumption has not been rebutted that there is clear and convincing evidence that the defendant poses a serious risk to the safety of this community in being free from further drug activity since defendant was on parole from a state sentence for drug activity, and that no condition or set of conditions would curtail his drug activity. [1],'

Case 2:19-cr-00877-CCC   Document 40-12   Filed 02/11/20   Page 3 of 7 PageID: 792

U.S. v. Renzulli, Not Reported in F.Supp. (1987)
1987 WL 17562

On August 25, 1987, a hearing was held before the Honorable Charles R. Weiner, United States District Court Judge. The defendant was not present at the time of this hearing, but nevertheless, there was no objection on the part of defense counsel. Judge Weiner summarized evidence before Magistrate Powers and stated as follows:

'At that hearing, the government presented evidence that in December 1983, defendant John A. Renzulli was arrested for possession of 5 1/2 pounds of methamphetamine; that he was convicted in September 1985 and sentenced to 11 1/2 to 23 months in prison under a work release program. The indictment in this case charged that during the period of time following his arrest, conviction and sentence, John A. Renzulli headed a major methamphetamine manufacturing ring. The government also presented evidence before Magistrate Powers that in December 1986, John A. Renzulli traveled to Acapulco, Mexico, under a false name. Renzulli claimed that he traveled under a false name because the airline tickets had been purchased under another person's name.

**\*2** At the hearing on July 10, 1987, before this Court, James Bordoni, parole officer for John A. Renzulli, testified that John A. Renzulli never obtained permission for his trip to Acapulco.

The government argues that Renzulli is a danger to the community as evidence [sic] by his heading of a large methamphetamine manufacturing organization while on parole for a drug violation. Further, that Renzulli's failure to comply with the written directives of his parole officer shows that there is no reasonable assurance he will appear for trial if permitted bail.

Renzulli denied that he headed a methamphetamine manufacturing organization. He suggests that he be released on bail under certain conditions to protect the safety of the community and assure his appearance at trial, namely, house arrest, daily telephone reporting to a pretrial services officer, surrender of all firearms, 24-hour monitoring of his house phones, wearing a beeper device, and surrender of his passport.

These conditions were presented to the magistrate, considered, and rejected by him at the pretrial detention hearing. We affirm the magistrate's decision. Renzulli's actions in violating his probation by going to Acapulco, without permission, under an assumed name demonstrates his disregard for obeying legal authority. Further, the fact that he is charged with heading a methamphetamine manufacturing organization while on parole for drug offenses demonstrates his danger to the community.

We, therefore, deny the defendant's motion for revocation and/or amendment of the magistrate's pretrial detention order.'

On September 15, 1987, defendant requested [2] that I reconsider the orders of the United States Magistrate, the United States District Court Judge, and the Court of Appeals for the Third Circuit because defendant has demonstrated a change of circumstances with respect to the issue of whether defendant is a danger TO any person or to the community and is a risk of flight. The changed circumstances are alleged as follows:

'1. A superseding indictment containing new charges not contained in the original indictment;

2. continuous pretrial detention of petitioner now in excess of ninety (90) days, in violation of the Speedy Trial Act. 18 U.S.C. § 3151(c)(1), and 3164(a)(b)(c);

3. the fact of a continuing, prolonged pretrial incarceration, beyond the now existing 90 days which petitioner asserts would last, at a minimum, at least five additional months, before any trial date could be had and perhaps a month for trial. The Government has previously conceded that they could not bring the case to trial before Christmas, 1987, a date which is an unreality. In any event, no trial date has been set. This continuing prolonged incarceration beyond the ninety days violates, in addition to the Speedy Trial Amendment to the United States Constitution, and is constitutionally impermissible under the Bail Reform Act of 1984, 18 U.S.C. § 3141, et. seq. Because pretrial detention which becomes 'excessively prolonged, and therefore punitive is impermissible.''

Case 2:19-cr-00877-CCC   Document 40-12   Filed 02/11/20   Page 4 of 7 PageID: 793

**U.S. v. Renzulli, Not Reported in F.Supp. (1987)**
1987 WL 17562

## DISCUSSION

**\*3** I am well aware that where significantly changed circumstances raises a new issue of law, and additional evidence is proffered, a judicial officer has inherent power to reconsider his or her own order. See Federal Rule of Civil Procedure 60(b), which applies by analogy to Federal Criminal proceedings. United States v. Gallo, 653 F.Supp. 320, 327 (E.D.N.Y. 1986); United States v. Colombo, 616 F.Supp. 780, 783 (E.D.N.Y. 1985), reversed on other grounds, 777 F.2d 96 (2d Cir. 1985). Additionally, the Bail Reform Act of 1984 provides that '[t]he judicial officer may at any time amend his order to impose additional or different conditions of release.' 18 U.S.C. § 3142(c). This section remains unchanged from the corresponding section of the 1966 Act. See 18 U.S.C. § 3146(e) (1982) amended by 18 U.S.C. § 3142(c) (Supp. IV, 1985).

The Court, finds however, that the above described change of circumstances are not in any way related to the issue of whether or not this defendant is a danger to the safety of any person or to the community or whether or not defendant would flee. The Court will not reconsider the June 29, 1987 order of Magistrate Powers or the August 25, 1987 Order of Judge Weiner as well as the summary affirmance order of the Court of Appeals for the Third Circuit issued by Judge Sloviter on September 3, 1987.

My own review of the record before both Magistrate Powers and Judge Weiner, convinces me that defendant is a member of an ongoing, violent criminal organization involved in the manufacture and distribution of methamphetamine and has failed to overcome the presumption raised by the lengthy indictment and the government's evidence that the defendant was a management member of the narcotics organization constitutes a danger to the community.

Although this Court is determining that defendant's motion for reconsideration is without merit with respect to overcoming the presumption of dangerousness, defendant does now raise significant constitutional considerations by reason of the yet undetermined trial date, continuous incarceration, and lengthy trial projection of at least one month's duration. For these reasons, on September 21, 1987, I announced that I would reconsider sua sponte the Bail Reform Act determinations on defendant in light of the enlargement of time. At the hearing conducted on September 23, 1987, the United States Attorney agreed that the case is deemed to be 'a complex case' pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii). Upon consideration of the complexity of the case and the burden on defense counsel to review all potentially relevant evidence, the trial judge, has not as yet set a trial date, but it is agreed that the case will not be reached for trial prior to December 31, 1987. The Court also notes that both counsel for defense and the government have estimated that the trial would at least be two weeks and possibly four weeks. Barring any further delay, the defendant could be detained for nine months before a determination of his innocence or guilt is made.

**\*4** Upon consideration of the reasons for delay, the available conditions for release to protect the safety of the community, and most importantly, the heightened infringement of defendant's liberty interests resulting from the enlargement of time, this Court finds that the defendant is to be released on bail pursuant to compliance conditions established under § 3142(c).

The Third Circuit has recognized 'that at some point due process may require a release from pretrial detention. . . .' United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986); See also, United States v. Claudio, 806 F.2d 334 (2d Cir. 1986). The factors to be considered in finding that such a release is required include among others: 'length of detention that has, in fact, occured; the complexity of the case, and whether the strategy of one side or the other has needlessly added to the complexity.' Accetturo, 783 F.2d at 388. The length of detention is critical due to the 'crucial liberty interest at stake.' United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986) (citation omitted); See also United States v. Perry, 788 F.2d 100, 114 (3d Cir. 1986) cert. denied 107 S.Ct. 218, 93 L.Ed. 2d 146 (1986) ('the grave invasion of the most fundamental of all personal liberties that occurs when preventive detention is ordered')

The defendant has already been detained for more than three months. The trial, which defense counsel and the United States Attorney estimate may last one month is not even set to begin on January 1, 1988. The reasons for the delay in trial stem from another companion case involving other defendants which is scheduled to start on November 30, 1987. The instant case concerns approximately 25 defendants indicated on 56 counts under several statutes. It is clear that the lawyers will require an unusual amount of time for preparation.

Case 2:19-cr-00877-CCC   Document 40-12   Filed 02/11/20   Page 5 of 7 PageID: 794

U.S. v. Renzulli, Not Reported in F.Supp. (1987)
1987 WL 17562

Defendant is being detained under 18 U.S.C. § 3142(e) which states that:

> 'It shall be presumed that no condition or combination of conditions will reasonably assure . . . the safety of the community for individuals indicted under specified statutes.'

The indictment of defendant under the Controlled Substances Act for crimes allowing a maximum sentence of ten years or more gives rise to the statutory presumption. A related subsection of the Bail Reform Act allows for pretrial detention without bail if a judicial officer determines that bail conditions cannot protect community safety from a defendant indicted for a crime of violence. Section 3142(e)(1). Under the authority of § 3142(c)(2)(D), the Third Circuit has allowed for the release of a defendant indicted on charges of violent crime under 'house arrest' conditions. United States v. Traitz, 807 F.2d 322, 325–26 (3d Cir. 1986). (amended opinion). The Traitz court emphasized that
'The focus of the Bail Reform Act is on whether conditions or combination of conditions will reasonably assure the safety of the community.' Id. at 326.

Although the release of this defendant cannot be executed free of all risk that he will not attempt to deal illegal drugs and narcotics, the Court finds that the defendant can no longer be detained within constitutional limits. See United States v. Claudio, supra. The factors of the prospect of continued detention up to nine months outweight the risk of safety to the community and the risk of flight that is present here, and the burden on the government in minimizing that risk under conditions of release. The Court now turns its attention to determining conditions that will most fully protect the safety of the community.

**\*5** Section 3142(c)(2)(a–n) lists a series of conditions that may be imposed to assure the safety of the community. In light of the fact that this defendant has been detained under the statutory proscription pertaining to the Controlled Substances Act, the release conditions will be designed to assure that defendant has no opportunity to deal in illegal drugs and narcotics. This Court notes that defense counsel has represented at oral argument that this defendant will comply with any set of release conditions determined by the Court. Many of the conditions set forth were discussed in open court.

Congress already contemplated some extension of the ninety-day limit on incarceration before trial when it incorporated the § 3161(h) exclusions into § 3164. No doubt some extension is constitutionally permissible. Delays, for example, that the defendant caused would not raise any problems, Congress provided no guidelines for a maximum time except the statutory admonition that the period be 'reasonable,' our knowledge of constitutional due process limits, and the informed writings of our Court of Appeals for the Third Circuit.

Renzulli has been incarcerated without bail for more than three months. He in no way took steps to delay trial; he has sought and still seeks immediate trial and his counsel announced he was ready to defend. The Government asserted it was ready to prosecute. In such circumstances four to six months additional incarceration before trial is too long a period. Defendant should thus be released on bond with stringent restrictions or tried within the next twenty (20) days.

In fashioning an order for conditions of defendant's release from custody, the Court is guided by the precedent of United States of America v. Stephen Traitz, Jr., Cr. No. 86–00451–01 (D.C.E.D.Pa., Nov. 4, 1986), and more on point, United States v. Vastola [3], 652 F.Supp. 1446, 1449–50, an opinion and order by the distinguished Judge Brotman of the District of New Jersey.

The general conditions of release are as described in the following Order.

ORDER

Case 2:19-cr-00877-CCC   Document 40-12   Filed 02/11/20   Page 6 of 7 PageID: 795

U.S. v. Renzulli, Not Reported in F.Supp. (1987)
1987 WL 17562

NOW, this 25th day of SEPT, 1987, pursuant 18 U.S.C. § 3142, defendant, John A. Renzulli, is to be released pursuant to compliance with the following conditions.

1. Defendant shall be confined to his residence 1701 Porter Street, Philadelphia, Pa., at all times.

2. Defendant may only leave his home to consult with his attorneys in this case; to visit a medical doctor; all transportation to and from a visit to counsel or a medical doctor will be approved in advance by the Pretrial Services Officer; in the event that defendant is unable to contact the Pretrial Services Officer during a medical emergency, the defendant may be transported during a medical emergency to a hospital without prior approval, but notice to the Pretrial Services Officer must be made as soon as possible; all transportation will be direct from the home to the destination; in the case of a visit to local counsel or a local doctor, defendant will not stop or take any detour from a direct route; defendant's custodian, Mrs. Renzulli, or some other person approved by the Court will personally accompany and supervise the defendant in all his travel.

 *6  3. Defendant and his family must consent to a search of his home at 1701 Porter Street, Philadelphia, Pa., for contraband and weapons before he is released.

4. Defendant agrees to 24 hour telephone monitoring of his house, phones, and to wear a beeper device to disclose his whereabouts, if requested by the government. He further agrees to make no telephone calls to anyone outside his immediate family, attorneys, and friends having no relation to the allegations of the captioned indictment. Defendant agrees to remain at his residence subject to house arrest and report by telephone daily to the Pretrial Services Officer.

5. Defendant agrees to cease all personal contact with all but family members, attorneys and friends having no relation to the allegations in this case.

6. Defendant shall surrender all firearms, his passport, voter registration card and birth certificate pending conclusion of this action.

7. Defendant will comply with any other condition that this Court deems necessary in the future to continue his release.

8. Defendant and his family must consent to random inspection of his residence at 1701 Porter Street, Philadelphia, Pa., by a Pretrial Services Officer to assure compliance with these conditions; defendant and his family must consent to the use of a pen register to be installed in the home at the government's discretion.

9. Defendant shall not commit a federal, state or local crime during the period of release.

10. Defendant will avoid all contact with any alleged participant or victim of any crime alleged in the superseding indictment and with a potential witness who may testify concerning the offense, unless defendant's own counsel is physically present and while on preparation of the defense of the case.

11. Defendant along with his wife and all owners of record shall execute a bail bond in the amount of $250,000 secured by his residence and any other real estate to assure defendant's appearance as required. In addition, defendant will post 10% of $150,000 bail of his appearance to be used to satisfy the remainder of said bail in the event that the defendant breaches any conditions set by the Court. The liens and security interest shall be recorded under supervision of the United States Attorney. Defendant is further advised as follows:

a. The penalties for violating a condition of release shall include revocation of this Order and bail, punishment for contempt of court and the mandatory penalties of imprisonment for committing an offense while on pretrial release;

b. The consequences of violating a condition of release include the immediate issuance of an arrest warrant;

c. Federal law provides severe penalties in 18 U.S.C. § 1503 for intimidation of witnesses, jurors and officers of the court; in 18 U.S.C. § 1510 for obstruction of criminal investigations; in 18 U.S.C. § 1512 for tampering with a witness, victim or informant; and in 18 U.S.C. § 1513 for retaliating against a witness, victim or an informant.

**\*7** This Order is stayed for 24 hours after its receipt by the government attorney, and if the government appeals, pending determination of that appeal by the United States District Court for the Eastern District of Pennsylvania.

However, the following conditions are not stayed:

Defendant shall file with the Clerk forthwith an affidavit certifying that he has read a copy of this Order, agrees to be bound by the stated conditions of release and that he understands the three paragraphs above in which he is advised that the penalties and consequences of violating this Order.

[1] At the hearing before Magistrate Powers, Special Agent Gerald Loke testified for the Government as well as Edward Stendel, also an agent for the Internal Revenue Service. Defendant also called a witness, Robert Hoffa, Esquire, who testified he knew Mr. Renzulli for four years, that he appeared with Mr. Renzulli at the IRS Agency's offices in Philadelphia on many occasions and gave an explanation with respect to defendant's admission that he utilized one Joe Liberio's signature because a ticket to Acapulco, Mexico was purchased under the name Joe Liberio and that counsel was not aware of any restrictions on Mr. Renzulli's travel as a result of his state court conviction. He further testified that when he took Mr. Renzulli to see Mr. Loke, he had the impression that there was a tax investigation undertaken, that there was a potential drug investigation on his client.

[2] No formal motion was filed at this hearing nor was any testimony taken. Counsel for defendant argued for the opportunity to present testimony of persons in the Community who were familiar with defendant's character, family, roots, employments, etc.

[3] In the Vastola case, the defendants who were indicted under several provisions of the Controlled Substances Act, 21 U.S.C. § 801, et seq were detained without bail pending trial at their initial appearances. Detention hearings were conducted and the United States Magistrate denied bail in each case. Each defendant then sought review of the detention order before the District Court, and in each case, the District Court denied the defendant's motion to be released on bail. At an arraignment hearing, the United States Attorney and defense counsel made application to the Court that the case be deemed a 'complex case' and the defendant requested an enlargement of time in order to properly prepare for pretrial motions. After noting the complex pretrial work that had to be completed, the Court noted that defense counsel had estimated the trial would last six months. Barring any further delay, the defendants could be detained for one-and-one half years before a determination of their innocence or guildt could be made.
On January 9, 1987, the Court announced that it would reconsider sua sponte the Bail Reform Act determinations on the defendants in light of the enlargement of time; and the court then released the defendants on conditions that this Court will adopt as well as those set out in United States v. Traitz, supra.

**All Citations**

Not Reported in F.Supp., 1987 WL 17562

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.