

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, 7th floor*  973-645-2700
*Newark, New Jersey 07102*

March 4, 2020

**Filed Via ECF**
The Honorable Claire C. Cecchi
United States District Judge
Martin Luther King Jr. Federal Building and U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:   *United States v. Matthew Brent Goettsche, et al.*,
             Crim. No. 19-877

Your Honor:

      The United States of America, through the undersigned, respectfully submits this letter to: (1) provide the Court with a proposed protective order to facilitate discovery in this case; and (2) respond to certain points raised in the February 21, 2020 letter submitted by defendant Matthew Brent Goettsche (Dkt. #53) ("the Goettsche Letter"), in support of a competing scheduling order.

**The Joint Proposed Protective Order**

      The Government respectfully requests that the Court issue the proposed protective order included with this filing, which has been agreed to by defendants Goettsche, Weeks, and Abel.[1]  Under Federal Rule of Criminal Procedure 16(d)(1), this Court has authority to, "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

---

[1] Counsel for Abel has informed the undersigned that he consents to the entry of this protective order. Abel's counsel is currently in trial and, as a result, has not been able to provide an executed copy of the protective order as of the time of this filing.  The Government respectfully requests that the Court enter this proposed protective order, and the Government will make a supplemental filing upon receiving an executed signature page from Abel's counsel.

Here, the Government's discovery consists of hundreds of thousands of records and includes personally identifying information of victims of the fraud scheme and other individuals. Under the circumstances, the Government submits that there is good cause to enter the proposed protective order because it would be unduly burdensome—if not impossible—to appropriately protect what should be confidential information without a protective order in place.

Accordingly, the Government respectfully requests that the Court sign the requested protective order.

**Responses to the Goettsche Letter**

Before addressing the specific points raised in the Goettsche Letter, the Government respectfully refers the Court to Section III of the Government's February 21, 2020 letter (Dkt. #51) (the "February 21 Letter"), which explains why (1) the initial production of documents should be March 17, as opposed to March 6; and (2) the demand by Defendants Weeks and Goettsche—by which the Government would be required to return seized devices and turn over all non-privileged, covertly-seized records in the Government's initial production—is unworkable.

The Government now responds to: (1) Goettsche's request for a status conference with the Court in April 2020, as opposed to at the end of the Government's proposed discovery period; (2) the two objections outlined in the Goettsche Letter; and (3) Goettsche's arguments against this Court determining that this multi-defendant bitcoin case involving millions of records should be considered "complex" for purposes of the Speedy Trial Act.

### I. The Court Should Schedule a Status Conference in October to Preserve Resources and to Allow the Parties the Opportunity to Resolve Discovery Issues Without Involving the Court

Goettsche requests that this Court hold a status conference in early April to "advise the Court of any continued need for a Speedy Trial Act continuance and when the defense can be ready for trial." Goettsche Letter at 4. But Goettsche's request to involve the Court in April 2020 is premature and almost certainly will involve the Court in discovery matters that the parties likely will resolve without judicial intervention.

The Government is currently preparing a discovery production to each of the three arraigned defendants in this case, which will consist of at least 500,000 records the Government obtained while it was covert and, likely, substantially more. In preparation of this initial production for March 17, 2020, the Government has initiated steps for a second production to follow

thereafter. The defendants will not have had sufficient time by early April to meaningfully evaluate the initial production and raise—much less resolve—discovery issues with the Government. And, under either proposal, the parties will still be in the midst of the filter process in early April, which may require judicial intervention.

Despite the current impasse regarding scheduling, the parties have engaged in productive meet-and-confer discussions regarding discovery and other matters and have had open lines of communication. Rather than schedule a conference prematurely, the Government respectfully requests that the Court permit the parties sufficient time to produce the large volume of discovery in this case, address and hopefully resolve any discovery disputes, and then, if resolution cannot be resolved and the matter needs to be decided before October, file motions with the Court. Such a process will allow the parties time to focus on the case instead of preparing for a conference and will protect this Court's resources.

## II.    Goettsche's Objections to the Proposed Scheduling Order

Goettsche outlines two objections to the Government's proposed scheduling order: (1) there is no deadline for the Government to return evidence that was seized from Goettsche's residence on December 10, 2019; and (2) the rolling production of covertly obtained discovery, rather than immediate and comprehensive production.

First, the Government has processed Goettsche's devices and the devices remain in evidence, which is authorized by the warrants the Government obtained in connection with this case. In excess of its discovery obligations, the Government has taken several steps to provide Goettsche with information regarding these seized materials. For example:

- On January 22, 2020, the Government provided Goettsche with an inventory of materials that were seized from his house.

- On February 8, 2020, the Government informed Goettsche that providing his passwords for certain locked devices would expedite the production of that data. Goettsche has not provided that information.

- Most recently, the Government has worked with Goettsche to facilitate the voluntary production of certain physical devices seized from Goettsche's residence and to provide a copy of the BitClub server referenced in Goettsche's letter.

In other words, the Government has taken several good faith steps to exceed its Rule 16 obligations regarding seized devices. Returning them—particularly in

the expedited manner requested by Defendants Goettsche and Weeks—is beyond the Government's obligations under Rule 16 and should not be included in a scheduling order in this case. In addition, the production of the responsive contents of the devices seized from Goettsche's residence necessitates a filter procedure that the parties have discussed but have not finalized and then time to conduct the filter and responsiveness reviews. Accordingly, the immediate production of physical devices is untenable.

Second, processing and producing the substantial volume of electronic discovery in this multi-defendant matter requires significant resources. The Government anticipates production of at least 500,000 records that came from the covert portion of this investigation, including the "critical email and chats referred to in the indictment" referenced by the Goettsche Letter. The Government continues to process the approximately 1.8 million records it obtained during the covert portion of the investigation, along with the copies of the BitClub server it obtained *after* the December 10, 2019 takedown and the 88 electronic devices seized on the day of the takedown. The Government is taking steps to prepare subsequent rolling productions to Defendants. In other words, Goettsche's concern that the Government will use its "unchecked power" to wait and produce the most meaningful discovery until August 2020 is unfounded. And, again, the filter process that the Government is undertaking to reasonably protect from disclosure of attorney-client material also necessitates time for defense counsel to provide the Government with proposed search terms and for the filter AUSA to work with defense counsel through that process.

Moreover, the Government has taken steps to ensure the integrity of its own computer infrastructure and the data it produces to Defendants. Thus, Goettsche's assertions that the Government's standard eDiscovery methods are are "unnecessary" or "wasteful" are misplaced.

Accordingly, the Government respectfully requests that the Court adopt the Government's proposal for rolling discovery in this case.

### III. Goettsche's Arguments Against Finding This Case Complex

Goettsche makes three arguments in opposition to the Government's request that this case be declared complex for purposes of the Speedy Trial Act. First, Goettsche argues that whatever complexity exists is by virtue of the Government's tactical decision to indict and arrest the defendants rather than approaching them without charges. But Goettsche is hardly well-positioned to second guess the Government's tactics in challenging the complex case designation. Nor are the Government's investigative choices relevant to the practical consideration of whether the case is complex. In any event, this case involves a high-dollar, global scheme, several defendants with international

connections, and millions of dollars of resources, which negated the possibility of a covert investigative approach prior to arrests. Indeed, federal magistrates have now twice ordered Defendants Goettsche and Weeks detained as flight risks for similar reasons. The Court should not dismiss the size and array of evidence collected on the day of and subsequent to the arrests in assessing complexity merely because the Government opted against giving Defendants an opportunity to flee or destroy evidence.

Second, Goettsche insists that the Government's position on whether this case should be deemed complex for purposes of the Speedy Trial Act has "flip-flopped dramatically" because, in response to Goettsche's argument that he should be released because this case was too complicated, the Government pointed out that "the methods by which Goettsche accomplished his criminal endeavors *were sophisticated and intentionally complicated*" but that the core concepts that Goettsche "and others discussed lying to investors and promoted the scheme without registering it with the SEC" were not so complicated that the four capable partners at major law firms lacked the resources or know-how to prepare for trial in his absence. *See* Goettsche Letter at 3-4. This is not a flip flop. The complexity assessment under the Speedy Trial Act is plainly met here given the challenges posed by discovery and the array of factual issues posed by Defendants' years-long, multi-national fraud.

Third, Goettsche argues that the Government's discovery and seizure of the BitClub Network servers—which comprise a tremendous amount of data that must be reconstituted to be meaningfully reviewed—does not warrant a complex case designation. The Government's request for the complex case designation does not rest solely on the size of the server, but instead on the volume of discovery involved in its entirety, the fact that there are multiple defendants, one of whom is currently overseas, and the factual underpinnings of this case.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney

*/s/ Jamie L. Hoxie*

By:  Jamie L. Hoxie
Assistant U.S. Attorney