# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | . |
| | . |
| Plaintiff, | . |
| | . Case No. 19-cr-00877 |
| vs. | . |
| | . Newark, New Jersey |
| MATTHEW BRENT GOETTSCHE AND | . February 14, 2020 |
| JOBADIAH SINCLAIR WEEKS, et al., | . |
| | . |
| Defendants. | . |

```
                     TRANSCRIPT OF BAIL HEARING
                BEFORE THE HONORABLE MICHAEL A. HAMMER
                  UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the Government:   JAMIE LYNN HOXIE, ESQ.
                      U.S. Attorney's Office For the
                      District of NJ
                      970 Broad Street, Suite 700
                      Newark, NJ 07102
                      (972) 645-2791
                      jamie.hoxie@usdoj.gov

                      DAVID WILLIAM FEDER, ESQ.
                      Office of the U.S. Attorney
                      district of New Jersey
                      970 Broad Street, Room 700
                      Newark, NJ 07102
                      (973) 645-2700
                      david.feder@usdoj.gov

Audio Operator:

Transcription Service:   KING TRANSCRIPTION SERVICES
                         3 South Corporate Drive, Suite 203
                         Riverdale, NJ  07457
                         (973) 237-6080

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
 1  (APPEARANCES continued)

 2
    For the Defendant       ANDREW C. LOURIE, ESQ.
 3  Matthew Brent           201 South Biscayne Boulevard
    Goettsche:              Suite 1900
 4                          Miami, FL 33131
                            (305) 967-6100
 5                          andrew.lourie@kobrekim.com

 6                          AMANDA TUMINELLI, ESQ.
                            Kobre & Kim LLP
 7                          800 Third Avenue
                            New York, New York 10022
 8                          (212) 488-1284

 9                          RODNEY VILLAZOR, ESQ.
                            Smith Villazor LLP
10                          250 West 55th Street
                            30TH FLOOR
11                          New York, NY 10019
                            (212) 582-4400
12                          Rodney.villazor@smithvillazor.com

13

14  For the Defendant       ADAM P. SCHWARTZ, ESQ.
    Jobadiah Sinclair       Carlton Fields Jorden Burt PA
15  Weeks:                  4221 W. Boy Scout Boulevard
                            Suite 1000
16                          Tampa, FL 33607
                            (813) 229-4336
17                          aschwartz@carltonfields.com

18                          SIMON A GAUGUSH, ESQ.
                            Carlton Fields
19                          4221 W. Boy Scout Boulevard
                            Suite 1000
20                          Tampa, FL 33607
                            (813) 229.4227
21                          sgaugush@carltonfields.com

22

23

24

25
```

```
 1  the same may be said of any large-scale complex criminal
 2  case, white collar or otherwise, that involves substantial
 3  discovery.  It's apparent to this Court, knowing counsel, as
 4  I do, from their presentations as well, the briefing, and
 5  their reputations, Mr. Goettsche's represented by extremely
 6  sophisticated, capable criminal counsel who will be able to
 7  review the records and will have adequate time to meet with
 8  Mr. Goettsche in order to review that discovery and prepare
 9  for trial.
10            And I want to emphasize too, if at any point
11  counsel believes that their access to Mr. Goettsche is unduly
12  limited, they may raise that with either myself or, I
13  imagine, Judge Cecchi.
14            For the reasons, then, that I've articulated, I
15  respectfully disagree with defense counsel and Pretrial
16  Services' recommendation.  I'm going to order that
17  Mr. Goettsche be detained pending trial.
18            I turn now to Mr. Weeks.  And, of course, I have
19  considered as well the parties' extensive briefing as to
20  Mr. Weeks, the extensive bail package that has been proposed,
21  the Bail Reform Act, counsel's excellent arguments today, and
22  the nature of the allegations against Mr. Weeks.
23            For the reasons I'm -- will articulate, I
24  believe -- I conclude that the Government has established by
25  a preponderance of the evidence that no condition or
```

1  combination of conditions will reasonably assure Mr. Weeks'
2  appearance at trial and will order that he be detained.
3           In terms of the nature of the circumstances --
4  nature and circumstances of the offense charged, in what the
5  conjunction with weight of the Government's evidence,
6  Mr. Weeks is charged in Count 1 because the Government
7  alleges that he promoted BitClub Network to investors around
8  the world, both online and in person.  The defendant
9  analogizes himself to many other investors -- or -- sorry --
10 many other individuals who promoted the BitClub Network.  And
11 I understand that that very well may be part of the
12 defendant's presentation at trial.  And I recognize that
13 Mr. Weeks is innocent -- presumed innocent until proven
14 guilty.
15          But the Government has put forth or proffered
16 evidence to believe that his position may have been swat
17 unique.  And this is relevant to the risk of flight analysis
18 for reasons that I believe will become clear in a moment.
19 The Government alleges that he had communications and access
20 to the co-conspirators that other promoters simply did not.
21 So, for example, there are 2017 messages with
22 co-conspirator -- co-conspirators where Mr. Weeks -- and we
23 talked about this extensively when the Government provide- --
24 I'm sorry -- the defense provided the full email, where
25 Mr. Weeks says, they can't just sell their shares in the

1  mining hardware and not use the money to buy equipment, that
2  either way, BitClub Network makes 20 percent regardless of
3  price.
4              Whatever one actually infers from that statement in
5  the email -- and I think the Government -- the defense has at
6  least effectively provided the larger context, it's clear
7  that goes well beyond promotion in terms of soliciting
8  investments, but goes to the core of the operations of the
9  BitClub Network.
10             Moreover, even as Mr. Weeks had protested it's not
11 right, he continued to work with the co-conspirators and
12 persuade others to invest.  So, for example, in 2017, there's
13 an email exchange with an investor who apparently was trying
14 to pull the investment.  The investor appears dissatisfied
15 with the returns and got no response to the redemption
16 requests.  So he sought out Mr. Weeks to see if Mr. Weeks
17 could help him procure a refund.
18             But Mr. Weeks responds, "Bro, what are you
19 retarded?  Bitcoin is up 971 percent this year.  You want a
20 refund.  That's the stupidest thing I've heard all year.
21 BitClub plus golden egg.  BitClub equals goose," thereby
22 continuing to promote BitClub and scorning the investor for
23 wants to pull their investment.
24             Later that day, Mr. Weeks says to the investor,
25 "You don't have better places to put your money.  You have

1 other places to put your money (where you will make a hell of
2 a lot less, bro).  I highly doubt you're making 1,000 percent
3 a year in returns."
4            In a 2018 Facebook group chat with BitClub Network
5 investors, two members voiced concern that BitClub Network
6 had not for couple of days made mining payments.  Mr. Weeks
7 responded, quote, "Is not seeing your $2 a day coming in
8 really scaring you guys so much?  LOL.  Your mining earnings
9 being delayed a couple of days is going to break your bank?"
10           He also told that group that essentially leaders
11 don't ware about such things, quote, "because these things
12 always get fixed."  End quote.
13           Moreover, in recruiting new members -- now, at
14 least -- one thing I should address.  The defense argues that
15 because there was mining when Mr. Weeks joined BitClub
16 Network, that I think the suggestion is he did not know that
17 there was any fraudulent activity.  And I understand that
18 that will be something that will be heavily contested at
19 trial.  But I must give at least some reasonable deference to
20 the fact that the grand jury has found by probable cause
21 enough to include Mr. Weeks in as a defendant in the fraud
22 count.  And that does not even include his inclusion in
23 Count 2, the conspiracy to sell and offer unregistered
24 securities.
25           Also, Mr. Weeks in recruiting new members did, in

1  fact, tell some of them to disguise the purpose of the
2  investment money, such as to wire investments to an account
3  for, quote," Manham Ministries," end quote, a company that
4  Mr. Weeks controlled, to deem the money a donation and make
5  no mention of Bitcoin, or to say in another instance that it
6  was for a, quote, "Antarctica trip."
7         The defense argues that was essentially so the
8  banks would not provide as much scrutiny or pushback in
9  processing the transactions to do that.  That may be one
10 interpretation.  But that is something that may be
11 interpret -- interpreted otherwise as well.
12        Moreover, I would hardly call them disguising the
13 source or purpose of a payment trans -- or from the bank
14 transparent.  In 2017, Mr. Weeks -- well, I'll move on.
15        The Government also points out or proffers that
16 Mr. Weeks tried to thwart U.S. regulations, tax liabilities
17 and detection and, in fact, encouraged others to do so as
18 well.  I don't think there's any dispute at this point that
19 Mr. Weeks did not pay federal income taxes.
20        Moreover, he publicly emphasized schemes to --
21 setting up schemes to avoid IRS detection.  So, for example,
22 there's a September 2018 Facebook message with a potential
23 investor where the investor noted that BitClub Network was
24 blocking people in the U.S. to avoid dealing with the U.S.
25 government.  But Mr. Weeks assured the investor, quote, "No,

1  you're good.  When I see you, I'll show you how it all works.
2  We just change our IP addresses to ones outside the U.S.
3  Hey, all the money you make is not reported to the tax man.
4  It's like having an offshore account growing for you
5  tax-free."  End quote.
6           Now, the defense argues that it would be unfair to,
7  in considering this risk of flight, to put any weight on the
8  $722 million loss amount estimated by the Government, which
9  is a fair argument given Mr. Weeks -- I am not saying I
10 necessarily -- that will play out at trial, and if necessary,
11 when party have to calculate loss amount, which would only
12 come, obviously, if it were to be established by beyond a
13 reasonable doubt.
14          But I can understand the argument, because if, as
15 the defense argues, Mr. Weeks joined the -- allegedly joined
16 the conspiracy after the conspiracy had begun and by which
17 time BitClub Network was actually engaging in mining and
18 providing returns based on that mining, it very well may be
19 the case that that amount would be less.
20          But it's important to put this loss amount in
21 perspective.  Even if the loss amount were substantially less
22 than $722 million, even if the loss amount were one-tenth of
23 722 million, it would still result in a very substantial
24 guidelines exposure on Count 1.
25          I've addressed as well -- so I've addressed some of

1  the nature of the offense conduct prong.
2          In terms of the weight of the evidence against
3  Mr. Weeks, again, as the above discussion makes clear that
4  consists of documentary evidence such as emails and Facebook
5  messages that include a number of statements directly by
6  Mr. Weeks that could be interpreted as inculpatory.  In terms
7  of the history and characteristics of Mr. Weeks, I certainly
8  understand that he is married and has a young child and has
9  family here.  That is always a significant consideration, as
10 I noted in conjunction with Mr. Goettsche.
11         But it is also the case that Mr. Weeks's work with
12 the BitClub Network allowed him to form relationships with
13 people around the world.  In fact, Defendant 2, as we noted,
14 is a fugitive and the Government believes is outside the
15 country -- or in a country with no extradition treaty with
16 the U.S.
17         We addressed the $560 million issue.  But I would
18 also note, as we said, in a mid-2017 email exchange,
19 Mr. Weeks himself said that $62 million has passed through
20 one of the bit -- his Bitcoin wallets in the last year.  I
21 certainly allow for the prospect that Mr. Weeks was using
22 some part of that money to pay for expenses, notwithstanding
23 that Mr. Goettsche argues that he was using a significant
24 part of, for example, the $200 million in the cold storage
25 wallet to pay for the expenses.  But there are some very

1  significant concerns that lead me to conclude that the
2  Government's established by a preponderance of the evidence
3  that Mr. Weeks has access to both money, both digitally and
4  fiat currency that could well fund a risk of flight.  For
5  example, in terms of fiat currency in foreign countries.
6  Mr. Weeks has an account at Emirates NBD Bank that involves
7  transfers into that account for hundreds of thousands of
8  dollars, some of which correspond to other cryptocurrency
9  accounts, such as Octagon.  Mr. Weeks maintains a debit card
10 and online banking access.
11         There's an April 30th, 2018, transfer from Octagon
12 holding funds at Silvergate Bank in California to Bank of
13 Georgia and for which Mr. Weeks got confirmation of that
14 transaction from an individual using a third-party's business
15 email account whom Mr. Weeks knew because Mr. Weeks had
16 negotiated on behalf of BitClub Network with that third-party
17 business.
18         I also understand and accept that while it is
19 certainly seems to be the case that cryptocurrency has become
20 more transparent over time, it is also still the case that
21 cryptocurrency exchanges and auctions have significantly
22 expanded so that there are more cryptocurrency offerings now.
23 Also cryptocurrency remains still difficult to track.  The
24 Bitcoin protocol's anonymous, and it makes it difficult to
25 associate a particular person with the randomly created

1   alpha-numeric wallet address, even if a particular account is
2   associated with a person by their actual name, certainly as
3   the record here strongly suggests, that that would not
4   preclude other Bitcoin wallets or cryptocurrency wallets from
5   nonetheless being anonymous.
6          Moreover, Bitcoin is accessible -- or
7   cryptocurrency's accessible from anywhere in the world.
8   Mr. Weeks has used Bitcoin exchanges in different countries.
9   And this Court has significant concerns that his financial
10  holdings are scattered around the world, which significantly
11  limits U.S. law enforcement's ability to see account activity
12  or seize.  For example, May 2017, Mr. Weeks told someone via
13  private message that he used "Ledger and Trezor for hardware
14  wallets."
15         In July 2018, he sent a Facebook message to another
16  saying that he kept ledger -- sorry -- Trezor and Ledger
17  Coins offline.  It is difficult to tell exactly how much
18  cryptocurrency Mr. Weeks holds.  He has declined to allow law
19  enforcement to access those holdings.  He acknowledged --
20  actually, I don't need to get into the tube issue, because we
21  established during oral argument that is inconclusive.
22         There's an April 2017 email where Mr. Weeks says he
23  neither trust -- he trusts neither banks nor is a fan of fiat
24  currency and says he keeps his money in Bitcoin.
25         The Government has proffered that at the time of

1 his arrest, he was wearing a belt that carried thousands of
2 dollars in cash in concealed fashion.
3       I want to make clear with regard to the whole
4 anarchy argument, a person's political views, be they --
5 Mr. Weeks's, be it anarchist, or as the defense suggests,
6 Libertarian or rooted in radical capitalism, are not the
7 issue here. But I do note that Mr. Weeks has maintained a $4
8 million mansion in Mexico. He has discussed establishing a
9 sovereign territory that he calls Atlantis near Madera that
10 included buying an island, declaring sovereignty, et cetera.
11 Again, the political views or say wouldn't it be great to
12 establish such a sovereign, that's not the issue, and it
13 certainly doesn't factor against Mr. Weeks.
14       What does cause the Court concern is twofold. One,
15 I believe the Government's established probable cause that
16 Mr. Weeks -- that that is indicative that Mr. Weeks has, when
17 supported by the other evidence of record, very significant
18 assets. Second, if, as the Government alleges, the Mexico
19 mansion was a sanctuary of sorts for like-minded people, it
20 causes the Court concern whether those are individuals who
21 might aid Mr. Weeks.
22       In terms of Mr. Weeks's ties to Colorado, I do note
23 that when law enforcement went to Mr. Weeks's home in
24 Colorado, the Weeks family did not meet the law enforcement.
25 Instead, the agents apparently were met by others living in

1  the house who said they rarely see Mr. Weeks at that
2  residence, that Mr. Weeks has not lived there, and that he
3  visited only a few times a year.
4           Also those same individuals living at the Colorado
5  house said Mr. Weeks lived all over the world and did not
6  have a primary residence, and it had been that way for
7  approximately the past two years.  We talked during oral
8  argument about the website that Mr. Weeks and his wife
9  maintain.  And I'll be clear also, there is certainly nothing
10 that's inherently wrong with travel, but travel nonetheless
11 is a fair consideration when analyzing risk of flight as part
12 of the overall multi-factor analysis.
13          On that website, it makes several important things
14 clear.  One, Mr. Weeks claimed to have visited all seven
15 continents and 141 countries.  A map on the website, which is
16 included at Government's brief, page 26, of that travel makes
17 clear that that travel is extremely extensive.  The
18 Government's analysis of Mr. Weeks's travel records for
19 November 2016 through November 2019 indicates very, very
20 extensive travel all over the world.
21          I understand that Mr. Weeks has obviously a wife --
22 in addition to his other family, a wife and a daughter.  But
23 I have to also recognize that by the website's own accounting
24 and the this -- I think this is the San Francisco Gazette or
25 the Gazette newspaper article, Mr. Weeks's wife and daughter

1  are, while she's young, are certainly no strangers to
2  traveling.  Mr. Weeks's wife as accompanied him, I believe
3  all over the world, based on what's been represented to me in
4  the website, and according to the Gazette article, it
5  reported that Mr. Weeks's child has visited all 50 states,
6  and a newspaper article reported she was the youngest person
7  ever to do so.
8           Again, there's nothing inherently wrong about
9  travel.  But in this context, it is a significant factor in
10 the Court's analysis, and it shows the Court, one, that
11 Mr. Weeks is -- has affiliations all over the world; two,
12 that Mr. Weeks would not -- I'm not satisfied that Mr. Weeks
13 would be deterred from fleeing because of his wife and child
14 given their own extensive travel.
15          And I'm cognizant of the fact that Mr. Weeks
16 himself had signed affidavits agreeing to waive extradition
17 from Mexico and St. Kitts --
18          Mr. Weeks had a Mexican voter card and two
19 passports, one American, the other for World Sports Alliance
20 when he was arrested.  It is true, as the defense argues that
21 they were in his name, not someone else's name, but that
22 misses the point.  It's for the proof that Mr. Weeks has had
23 extensive appearance and comfort with extended travel abroad
24 in addition to extensive financial resources to support it.
25          I also am aware that Mr. Weeks himself represented

1  to someone in 2019 that we could procure a Mexican passport.
2  I am certainly aware that the bail packages
3  would -- would call for an ankle monitor. And an ankle
4  monitor or GPS monitoring in and of itself, particularly with
5  the -- I think the defense had referred to the multi-factor
6  or three-factor authentication or safeguarding as to
7  Mr. Weeks are impediments, but they are hardly fool-proof
8  impediments for a defendant with significant motivation to
9  flee, resources to do so, and contacts that may be able to
10 facility it. Judge Arleo noted as such in U.S. v. Bergman,
11 2019 WL 1560039 at page 10 (D.N.J. May 29, 2009). And I am
12 not assuaged here that the package including -- proposed
13 including the ankle -- the monitoring would reasonably assure
14 that Mr. Weeks does not flee.
15 I am also aware, as defense counsel very eloquently
16 articulated again, that this is a complicated case and that
17 detention of Mr. Weeks may impair the defense's ability to
18 meet with him. Again, I do not regard that as a valid basis
19 to order Mr. Weeks's release when I've established -- or
20 found that the Government's established by clear and
21 convincing evidence that he is a risk of flight. It's
22 apparent, again, that just as with Mr. Goettsche, Mr. Weeks
23 is very well represented by sophisticated, experienced
24 criminal counsel. If there is any issue with regard to
25 counsel's access to Mr. Weeks to prepare for trial, that

1 matter may be brought to my attention or Judge Cecchi's.

2         But for those reasons I'm going to order that

3 Mr. Goettsche and Mr. Weeks be detained pending trial.

4         Is there anything else for the Government today?

5         MS. HOXIE:  No, Your Honor.

6         THE COURT:  Anything else for the defense?

7         MR. VILLAZOR:  No, Your Honor.

8         MR. GAUGUSH:  No, Your Honor.

9         THE COURT:  All right.  Thank you very much,

10 Counsel.  We're adjourned.

11         THE COURT OFFICER:  All rise.

12         (Conclusion of proceedings at 2:39 P.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25