# USA Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-mj-08526-WM

United States of America,

v.

Jobadiah Sinclair Weeks,

        Defendant.

_____/



FILED BY _____ D.C.

DEC 20 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## PRETRIAL DETENTION ORDER

Pursuant to 18 U.S.C. §§ 3142(b), (e), and (f), the Court hereby ORDERS Defendant Jobadiah Sinclair Weeks detained.

The Government urges the Court to order Defendant's pretrial detention because he is a substantial or serious risk of flight or nonappearance. After conducting a detention hearing in this case on December 17, 2019, the Court finds that no condition or combination of conditions will reasonably assure Defendant's appearance if he is released. Defendant must be detained as a serious risk of flight or nonappearance. The Court makes the following findings of fact with respect to this Order.

Factors:

**a) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.**

Defendant is charged by indictment with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy to offer and sell unregistered securities in violation of 18 U.S.C. § 371. If convicted of count one, he faces up to 20 years imprisonment.

If convicted of count two, he faces up to 5 years imprisonment.

Although the offenses Defendant is charged with are not crimes of violence and do not involve narcotics, the charges are very serious and involve an alleged large-scale $722 million-dollar lengthy fraud involving cryptocurrency.

**b) The weight of the evidence against Defendant.**

The grand jury has issued an indictment, thereby finding that probable cause supports both counts. The weight of the evidence against Defendant is substantial. The Court takes judicial notice of the information in the Indictment [DE 1] and the Pretrial Services Report. The following evidence was established by the Indictment, exhibits introduced at the detention hearing, the Pretrial Services Report, and the Government's proffer.

Defendant is alleged to have promoted BitClub Network ("BCN"), which the Government alleges "was a worldwide fraudulent scheme that solicited money from investors in exchange for shares of pooled investment in cryptocurrency mining and that rewarded existing investors for recruiting new investors." [DE 1, ¶ 1(a)]. Specifically, per the Indictment, Defendant promoted BCN to potential investors and advised BCN's owners and operators on how to solicit investments from "sophisticated investors." Defendants also allegedly conspired to sell unregistered securities. In or around December 2015, the Government alleges that Defendant messaged one of BCN's owners and advised that:

> We really should have [September] stats and [October] stats and [November] stats. The sophisticated investors with a lot of cash are hesitant with putting in big cash because they want to see the mining contract, the receipt or title to the mining equipments [sic], proof that they own something in return, how much the mine made and what the mine paid out to each share holder so they can calculate what a share is worth etc. Bitclub pool doesn't tell us how many share holders have etc. Its not transparent enough for the big big money guys.

2

*Id.* at ¶ 4(g)(xi). In or around June 2017, the Government alleges Defendant emailed one of his co-defendants, Matthew Brent Goettsche, observing that BCN "can't just 'sell' people mining hardware (shares) in Bitclub and then not use the money to buy equipment. Its not right. Bitclub makes 20% regardless of the price." *Id.* at ¶ 4(g)(xii). Further, the Government alleges that Defendant and his co-conspirators "encouraged U.S. investors to utilize a [Virtual Private Network] to obscure their true, U.S.-based [Internet Provider] addresses so that BCN and the Defendants could avoid detection and regulation by U.S. law enforcement." *Id.* at ¶ 5(g). The Government also alleges Defendant promoted BCN on the Internet, created promotional videos, and gave speeches and presentations to potential investors across the world.

**c) Defendant's history and characteristics.**

The Court takes judicial notice of the Indictment and the Pretrial Services Report. Defendant is a 38-year-old male who lives a largely nomadic international lifestyle. He is married with one 13-month-old child. He, his wife, and his child travel extensively throughout the world approximately ten months each year. For at least the past 20 years, Defendant has used his parents' address in Colorado, where he stays only sporadically, as his home address and does not have a permanent address of his own. Defendant travels frequently across the world to give speeches and lectures on cryptocurrency investing.

As part of his extensive travel, Defendant associates with numerous self-proclaimed "anarchists." He and other "anarchists" have discussed forming their own sovereign nation-state called "Libra Land." Investors in BCN were to receive automatic citizenship in Libra Land and the nation would trade primarily in Bitcoin. Further, Defendant has sought foreign citizenship in both St. Kitts, which has an extradition treaty with the United States, and Vanuatu, a small South

3

Pacific island nation that has no extradition treaty with the United States. When attempting to obtain a foreign passport, Defendant wrote that he did not want his U.S. passport anymore. He also tried to obtain foreign citizenship for his wife and child. He was unsuccessful in obtaining citizenship from either country. However, Defendant endeavored on more than one occasion to obtain foreign citizenship and relinquish his U.S. citizenship. He has expressed strong dissatisfaction with the United States and has not filed any U.S. tax returns for 2014 through 2017.

Defendant also has a "diplomatic passport" from an alleged charitable organization he is a part of called "Worldwide Sports Network" and, when arrested, had a Mexican voter identification card.

Defendant's ties to both the District of New Jersey, where the Indictment was filed, and the Southern District of Florida, where he was arrested, are nil. He appears to have some ties to Colorado, since his mother and father live there, however, as noted above, he does not maintain a permanent residence anywhere in the United States.

Finally, Defendant's assets are not fully known and are somewhat surreptitious. Defendant has significant monetary holdings in cryptocurrency. He advised Pretrial Services that he owns a ranch with a fair market value of $2 million dollars, and approximately $250,000 in bitcoin. He did not advise Pretrial Services of his Mexican estate or the timeshare he allegedly owns. And, according to the Government, he has extensive assets in cryptocurrency totaling millions of dollars which are unaccounted for and which could support him if he chose to flee with his wife and child to a foreign jurisdiction. Records indicate he has a pending federal tax liability and failed to file federal tax returns for at least four years from 2014 through 2017.

4

### d) Defendant's criminal history.

Defendant's criminal history is limited but does show some history of substance abuse. In August 1999, Defendant was charged with resisting arrest, obstructing police, and assault battery. He was found guilty of the latter two offenses and sentenced to six months' probation. In May 2004, Defendant was charged with two counts of driving under the influence. However, the disposition of those charges is unknown. And finally, in March 2014 Defendant was again charged with driving under the influence. However, the charge was reduced to reckless driving and Defendant pleaded guilty.

### e) The likelihood of Defendant's appearance in court if released.

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on his or her status as a flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure his or her presence at trial. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985); *see also United States v. Turner*, No. 19-8173-DLB, 2019 WL 1893109, at *2 (S.D. Fla. Apr. 29, 2019); *United States v. Zhang*, No. 19-cr-80056-Altman/Brannon, 2019 WL 1747197, at *3 (S.D. Fla. Apr. 15, 2019); *United States v. Chatman*, No, 16-8462-WM, 2016 WL 8258897, at *3 (S.D. Fla. Dec. 27, 2016); *United States v. Capolongo*, No. 16-8284-CR-Hurley/Hopkins, 2016 WL 4272371, at *4 (S.D. Fla. Aug. 10, 2016); *United States v. Ceballo*, No. 12-80211-CR-Hurley/Hopkins, 2012 WL 7050591, at *5 (S.D. Fla. Dec. 14, 2012).

The Court has carefully considered whether there is any condition or combination of

5

conditions that would reasonably assure Defendant's appearance if he is released, including electronic and GPS monitoring. However, "[t]he GPS system, while technologically sophisticated, is ultimately just another form of electronic surveillance, and 'monitoring equipment is easily rendered inoperative or become so by mechanical failure.'" *United States v. Benatar*, No. 02-CR-99, 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002) (quoting *United States v. Gotti*, 776 F.Supp. 666, 673 (E.D.N.Y. 1991)). "The GPS system of surveillance is imperfect, and even attentive monitoring leaves the possibility of several hours' delay between a defendant's departure and the beginning of an effective search." *United States v. Khanu*, 675 F.Supp.2d 69, 75 (D.D.C. 2009). "Neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee." *United States v. Megahed*, 519 F.Supp.2d 1236, 1244 (M.D. Fla. 2007).

Defendant appears to be an individual with no allegiance to the United States and who has endeavored to obtain citizenship in a foreign country where he can avoid taxes and other societal restrictions. He has travelled throughout the world, visiting more than 100 countries, and is alleged to have perpetrated the alleged fraud while travelling. According to the Government, Defendant has access to private jets and, when he attempted to purchase a property in St. Kitts, he stated that $560 million dollars had travelled through his account. He associates with "anarchists" who could assist him if he decided to flee the United States. He also owns an estate in Mexico where he could flee to if so inclined.

In sum, Mr. Weeks is a defendant with insufficient ties to the United States who has expressed his desire to relinquish his U.S. passport and move overseas and who, according to the Government, has access to extensive assets which would allow him to flee and hide. Although

6

Defendant's father stated he and his wife (Defendant's mother) would co-sign Defendant's bond and post their Colorado property as collateral, this gives the Court little comfort. If, as the Government alleges, Defendant has access to millions of dollars in cryptocurrency and other extensive assets, he could easily reimburse his parents for any financial loss they would suffer if he fled the United States.

Thus, the Court finds that there is a serious risk that Defendant will flee or fail to appear in court, if released. In light of the nature of the charged offenses; the substantial weight of the evidence against Defendant; the substantial prison term Defendant faces if convicted; Defendant's substance abuse history; his extensive foreign travel; his considerable financial resources; his association with self-proclaimed "anarchists;" his numerous attempts to gain foreign citizenship; his transient and nomadic lifestyle; his lack of any community ties to either the District of New Jersey or the Southern District of Florida; and the inadequacies of electronic monitoring, the Court finds that the Government has shown by a preponderance of the evidence that Defendant is a serious risk of flight or nonappearance and that there exist no conditions or combination of conditions which would reasonably assure Defendant's appearance in Court. Simply stated, the Court does not believe that Defendant would comply with any conditions of release set by the Court.

Accordingly, it is hereby **ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the

Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE and ORDERED** in chambers at West Palm Beach, Palm, Beach County, in the Southern District of Florida, this 20th day of December, 2019.

                                                         WILLIAM MATTHEWMAN
                                                        UNITED STATES MAGISTRATE JUDGE