UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------- X
                                                         :
UNITED STATES OF AMERICA,                                :          Hon. Michael A. Hammer
                                                         :
            -against-                                    :          Crim. No. 2:19-cr-877-CCC
                                                         :
MATTHEW BRENT GOETTSCHE,                                 :          Oral Argument Requested
RUSS MEDLIN,                                             :
JOBADIAH SINCLAIR WEEKS,                                 :          <u>FILED UNDER SEAL</u>
JOSEPH FRANK ABEL, and                                   :
SILVIU CATALIN BALACI                                    :
                                                         :
                        Defendants.                      :
-------------------------------------------------------- X

## DEFENDANT MATTHEW BRENT GOETTSCHE'S
## MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE

Rodney Villazor
Brian T. Burns
Sᴍɪᴛʜ Vɪʟʟᴀᴢᴏʀ LLP
250 West 55th Street, 30th Floor
New York, New York 10019
(212) 582-4400 (Telephone)
(347) 338-2532 (Facsimile)
rodney.villazor@smithvillazor.com
brian.burns@smithvillazor.com

Matthew I. Menchel
Amanda N. Tuminelli
Kᴏʙʀᴇ & Kɪᴍ LLP
(212) 488-1288
matthew.menchel@kobrekim.com
amanda.tuminelli@kobrekim.com

*Attorneys for Defendant*
*Matthew Brent Goettsche*

## TABLE OF CONTENTS

Introduction ........................................................................................................ 1

Background ........................................................................................................ 4

    I.     Indictment, Arrest, and Bail Proceedings ................................. 4

    II.    The Release Order ...................................................................... 4

    III.   Consent Modifications to the Release Order ............................. 5

    IV.   Full Compliance During Exigent Circumstances ..................... 6

    V.    The Post-Indictment Restraining Order ................................... 7

    VI.   Other Co-Defendants' Bail Conditions .................................... 8

        A. Defendant Joby Weeks on Curfew ..................................... 8

        B. Defendant Gordon Brad Beckstead on Unsecured Bond ........................................... 9

    VII.  The Government's Flight Risk Arguments Remain Unfounded .............................. 10

    VIII. The Proposed Modifications ..................................................... 12

Legal Standard .................................................................................................. 14

Argument .......................................................................................................... 16

    The Court should grant Mr. Goettsche's motion for four modifications to his existing bail conditions ......................................................... 16

        A. The Court should authorize "curfew." ................................ 17

        B. The Court should eliminate the requirement that Mr. Goettsche be in the presence of a third-party custodian at all times. .................................. 19

        C. The Court should permit Mr. Goettsche to have internet and computer access. ................................................ 19

        D. The Court should authorize the release of rent generated by two properties. ..................................................... 20

Conclusion ........................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*United States v. Day*,
   2017 WL 5457983 (D.N.J. Nov. 13, 2017) ............................................................. 14

*United States v. Himler*,
   797 F.2d 156 (3d Cir. 1986) ................................................................................... 13

*United States v. Hutchins*,
   298 F. Supp. 3d 1205 (E.D. Wis. 2017) ............................................................. 14, 15

*United States v. Malloy*,
   11 F. Supp. 2d 583 (D.N.J. 1998) ................................................................. 13, 14, 15, 16

*United States v. Nestor*,
   678 F. App'x 73 (3d Cir. 2017) ............................................................................... 14

*United States v. Portes*,
   786 F.2d 758 (7th Cir. 1985) ................................................................................. 14

**Statutes**

18 U.S.C. § 371 ............................................................................................................. 8

18 U.S.C. § 3142(c) ..................................................................................................... 13

18 U.S.C. § 3142(c)(1)(B) ....................................................................................... 13, 15

18 U.S.C. § 3142(c)(3) ................................................................................................. 14

18 U.S.C. § 3143(a) ....................................................................................................... 8

18 U.S.C. § 3142(f) ....................................................................................................... 14

18 U.S.C. § 3583 ......................................................................................................... 14

26 U.S.C. § 7201 ........................................................................................................... 8

## INTRODUCTION

Defendant Matthew Goettsche, by and through undersigned counsel, respectfully moves under seal for an Order of this Court modifying the conditions of his pretrial release, namely modifying home incarceration to curfew, eliminating the requirement that he be in the presence of a third-party custodian at all times, allowing him to use the internet and a computer at home to aid in the preparation of his defense without supervision of counsel, and releasing certain rental income from escrow. The current conditions have proven to be unnecessarily restrictive and/or unduly burdensome on Mr. Goettsche's ability to prepare his defense, on his third-party custodians, and his children. These modifications would not materially increase Mr. Goettsche's ability to flee (which he is not inclined to do, as proved time and again by his pristine record of compliance) and are consistent with the Bail Reform Act's requirement that the Court impose the least restrictive conditions that will reasonably assure Mr. Goettsche's appearance at trial.

Mr. Goettsche has been out on pretrial release without incident for over twenty months under significant and highly restrictive conditions based on the Government's concerns of risk of flight that have been proven to be unfounded. Mr. Goettsche's compliance with his bail conditions has been exemplary and without incident, even during the Boulder, Colorado's wildfires ███

███████████████████████████████████████████████

███████████████████████ .

Mr. Goettsche's impeccable track record, taken with other developments of this case over the past months, prove that circumstances have changed such that the present bail conditions are no longer the least restrictive means necessary to ensure Mr. Goettsche's appearance at Court, as required. First, in July 2021, U.S. District Judge Cecchi issued a post-indictment restraining order (the "PIRO") that encumbers a substantial portion of Mr. Goettsche's assets, restricting access to

the funds and further negating any alleged risk of flight.  Second, various modifications proposed by consent and approved by the Court have been met with full compliance, further demonstrating that additional modifications are reasonable.  Third, practicality and fairness support the modification of Mr. Goettsche's release conditions.  His trial has already been delayed for years because of the COVID-19 global pandemic and, at present, no trial date has been set.

Absent the proposed modifications, Mr. Goettsche will continue to be under extremely strict conditions for a lengthy period.  His immediate family members, *i.e.,* his third-party custodians, will also be tethered to him for the duration, which is immensely burdensome on them. He will also continue to be denied the opportunity to meaningfully participate in his children's activities outside of the residence, such as serving as a volunteer sports coach or driving his children to playdates.  Moreover, it means that, without the ability to use the internet or computers at his residence without attorney supervision, Mr. Goettsche's ability to assist in his own defense would remain significantly constrained.  The current conditions require him to travel 25 miles daily to his local counsel's office in Denver at the pre-approved time periods to use a computer under the supervision of counsel to review discovery.  This means he can neither access pretrial discovery currently loaded to a review platform nor review attorney work product or communicate over email with defense counsel from home.  Mr. Goettsche respectfully submits that the present conditions are no longer the least restrictive necessary to ensure his appearance at trial.

Accordingly, Mr. Goettsche respectfully requests four reasonable and narrowly tailored modifications to the conditions of his pretrial release, with the other conditions remaining intact.

*First*, Mr. Goettsche seeks to change his home incarceration to a curfew between 6:00 p.m. to 8:00 a.m. with the added condition that he must be accompanied by a third-party custodian if he leaves the residence between 8:00 a.m. and 6:00 p.m. for events within the state of Colorado and pre-approved by Pretrial Services.

2

*Second*, he asks that the requirement that he be in the presence of a third-party custodian (*i.e.*, his wife, mother, or mother-in-law) at all times be eliminated, except when Mr. Goettsche leaves his residence between 8:00 a.m. and 6:00 p.m. as approved by Pretrial Services. The responsibilities of each of the third-party custodians to the Court would otherwise remain unchanged.

*Third*, Mr. Goettsche seeks permission to use the internet and a computer at home without supervision of counsel. Any computer at home will be subject to Pretrial Services inspection at any time. He would also be expressly prohibited from accessing or moving any form of cryptocurrency.

*Fourth,* he seeks to release from escrow all rental income from two properties subject to the bond but not the PIRO, both for income that is currently held in escrow and for future rental payments.

As explained further below, these modifications are tailored to the following specific purposes: (i) to augment Mr. Goettsche's ability to prepare his defense at trial by enabling him easier access to discovery related to his case; (ii) to ease the extreme burden placed on Mr. Goettsche's third-party custodians, who are required to be in his presence at all times, despite his electronic monitoring bracelet; (iii) to afford a reasonable degree of normalcy for his children; and (iv) to provide Mr. Goettsche with available cash and assets to pay for his family's day-to-day living expenses and attorney's fees and expenses.

Both Pretrial Services, through Officer David Hernandez, and the government, through Assistant U.S. Attorney Jamie Hoxie, object to these proposed modifications.

## BACKGROUND

### I.      Indictment, Arrest, and Bail Proceedings

Mr. Goettsche was indicted on December 5, 2019, along with four other individuals, for conspiracy to commit wire fraud and conspiracy to offer and sell unregistered securities.  He was arrested in the District of Colorado, where he has been a lifelong resident, on December 10, 2019. A Magistrate Judge in the District of Colorado denied Mr. Goettsche bail following a detention hearing on December 13, 2019.  This Court then held a detention hearing on February 13 and 14, 2020, and ordered Mr. Goettsche's detention based on risk of flight.  (*See* Order of Detention Pending Trial, dated Feb. 14, 2020 (ECF No. 49) (the "Detention Order"); Feb. 14, 2020 Bail Hr'g Tr. at 161:10-14 (ECF No. 57)).

Mr. Goettsche appealed the Detention Order to the District Court.  After the government produced voluminous discovery and the parties submitted (under seal) extensive briefing on the issues, the District Court referred the matter back to this Court.  (*See* Order of Referral, dated Dec. 8, 2020 (ECF No. 164)); *see generally* Government's Opposition to Defendant Goettsche's Detention Appeal dated Nov. 13, 2020 (filed under seal) (hereinafter "Gov't Bail Opp'n")*.* Thereafter, on December 11, 2020, the Court held a further hearing and granted Mr. Goettsche's request for bail.  (*See* Order Setting Conditions of Release, dated Dec. 11, 2020 (ECF No. 171) (the "Release Order").)

### II.      The Release Order

The Release Order set bail at $20 million and required Mr. Goettsche to execute a secured appearance bond.  (*Id.* at 1.)  Under the appearance bond, if Mr. Goettsche fails to appear as

required, he agrees to forfeit the equity in nine real properties,[1] totaling approximately $8.6 million.  (*See* Appearance Bond ¶ 3(b) (ECF No. 181)).

In addition to the secured bond, the Release Order includes numerous stringent conditions, including but not limited to:

- Reporting to Pretrial Services;

- Release into third party custody, with whom he must be in the presence of at all times unless pre-approved;

- Surrender all of Mr. Goettsche's, his wife's, and his three minor children's passports and travel documents;

- Prohibition of contact with co-defendants unless in the presence of counsel;

- 24/7 home incarceration with electronic monitoring;

- All funds from rental properties must be placed in an escrow account;

- Prohibition on the use of the internet and on the possession and/or use of computers or electronic devices unless in the presence of counsel;

- Prohibition on the possession of a cell phone without prior approval; and

- Report to Pretrial Services all transactions over $5,000.

(*See* Release Order at 1-2).  Mr. Goettsche's record of full compliance with each of these conditions remains unblemished.

### III.    Consent Modifications to the Release Order

Mr. Goettsche's record of compliance with subsequent consent modifications is likewise exemplary.  For example, in March 2021, the Court granted Mr. Goettsche's request—with the government's consent—to modify his bail conditions to allow Mr. Goettsche to go to the Denver office of his lawyers at Ridley, McGreevy & Winocur, P.C. (the "Denver Office") at time periods

---

[1] This includes the three respective homes of Mr. Goettsche with his wife and three children, his mother and his mother-in-law.

preapproved by Pretrial Services to review discovery and work product and conduct video conferences with his defense counsel. (*See* Memo Endorsed Letter from R. Villazor, endorsed on Mar. 11, 2021 (the "March 2021 Modifications") (ECF No. 187)).   In September 2021, Your Honor granted Mr. Goettsche's request that he be permitted to accompany his wife (one of his third-party custodians) to bring their children directly to school on weekday mornings, in coordination with Pretrial Services. (ECF No. 223). In late 2021, the Court also allowed Mr. Goettsche to travel to the Southern District of New York on two occasions to meet with defense counsel. (ECF Nos. 225, 229). In July 2022, the Court permitted Mr. Goettsche to attend his children's sports games on weekends only, attend church services, and accompany a third-party custodian to pick up his children from school. (ECF No. 251). Those conditions were further modified to include attendance of sports games on weekdays. (ECF No. 252). Recently, on August 29, 2022, Mr. Goettsche was permitted to attend the wake, funeral, and repast of a family relative in the Lakewood, Colorado area. (ECF No. 258).   None of these modifications by consent have resulted in any reprimand or warning, let alone any bail violation.

## IV.   Full Compliance During Exigent Circumstances

Mr. Goettsche's conduct during three emergencies also bear the Court's consideration.

██████████████████████████████████████████████  Mr. Goettsche nevertheless remained conscientious of his obligations under the bail conditions. None resulted in a reprimand, a warning or a bail violation.

First, on December 31, 2021, Mr. Goettsche and his family hurriedly fled their Lafayette, Colorado home because the Boulder wildfires came dangerously close to their property. *Even before* he evacuated his family and during the actual evacuation, Mr. Goettsche remained in continuous contact with Pretrial Services. When he relocated his family to his property in Dillon, Colorado (a property subject to the bond), Mr. Goettsche promptly conducted a video

inspection with Pretrial Services.  Officer Hernandez later instructed the undersigned counsel to report the details to the Court.  (ECF No. 233).

Second, ███████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████  During these events, Mr. Goettsche provided advance notice and kept in contact with Pretrial Services as the day progressed.

Third, ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

██████  Mr. Goettsche kept in continuous contact with Pretrial Services and even provided photographic proof of the emergency ████████████████████████████████ ████████████████████████████.

## V.    The Post-Indictment Restraining Order

On July 20, 2021, the government obtained an *ex parte* post-indictment restraining order (PIRO) significantly encumbering a substantial portion of Mr. Goettsche's assets.  The PIRO restrained Mr. Goettsche's interests in a wide variety of domestic and international real properties, corporate entities, business ventures, at least one bank account, and other assets.  Among other things, the PIRO has had two practical effects.  First, it has substantially curtailed Mr. Goettsche's financial assets for his and his family's monthly expenses and his attorney's fees.  Second, it has undermined the government's argument that he has access to tremendous wealth rendering him a

serious flight risk.  Shortly thereafter, the government filed a Third Bill of Particulars clarifying the forfeiture allegations of the Indictment to include, among other things, property in Belize and Costa Rica and cryptocurrency held in Blockchain.com digital wallets.  (ECF No. 198) (the "Third Bill of Particulars").

## VI.    Other Co-Defendants' Bail Conditions

### A.  Defendant Joby Weeks on Curfew

████████████████████████████████████, Co-Defendant Joby Weeks is currently on curfew with the consent of Pretrial Services and no objection from the government. He is permitted to go to family events, family gatherings, religious services, and family residences within Colorado, provided he is accompanied by a third-party custodian and provides advance notice to Pretrial Services.  (ECF No. 255).  On November 5, 2020, Weeks pleaded guilty to felony offenses, namely conspiracy to sell unregistered securities in violation of 18 U.S.C. § 371 and tax evasion in violation of 26 U.S.C. § 7201.  (ECF Nos. 147-148).  After Weeks pleaded guilty,[2] he was released on bond with the express condition that he "shall provide a full accounting of all financial holdings including domestic and foreign bank accounts, as well as Krypto [sic] currency holdings to Pretrial Services and the Government."  (ECF No. 153 at 2).

On August 6, 2021, the government filed a motion under seal to revoke Weeks' bail. (ECF No. 202).  While the contents of the revocation motion remain unknown, ██████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

---

[2] As the Court is aware, under 18 U.S.C. § 3143(a), a defendant found guilty of an offense shall be detained absent clear and convincing evidence that the defendant is not a flight risk.



Weeks' bail revocation did not move forward, and he changed counsel.  (ECF No. 202).
On August 23, 2021, approximately three weeks after the government moved for bail revocation,
Weeks's bail conditions were instead modified by consent to *permit* him access to computers
with internet access and to impose, for a second time, the condition that he "must disclose any
and all cryptocurrency holdings acquired or held" was imposed.  (ECF No. 206 at 2).  He was
also permitted to possess a cell phone with no internet capabilities and conduct cryptocurrency
transactions with notice to Pretrial Services.  (ECF No. 220).  These modifications were based, in
part, "upon subsequent agreement by the parties."  *Id.*

### B.  Defendant Gordon Brad Beckstead on Unsecured Bond

On March 24, 2022, Defendant Gordon Brad ███████████████████████
███████████████████████████ pleaded guilty to conspiracy to commit money
laundering and filing a false tax return.  (*United States v. Beckstead*, 22-cr-00204 (CCC) (D.N.J.)
(ECF Nos. 1, 8).)  He is on pretrial release with a $100,000 unsecured bond.  (ECF No. 6).██
███████████████████████████

---

[3] Prior to his guilty plea, the government opposed Defendant Weeks' bail application and noted
that "U.S. law enforcement lacks visibility into [Weeks' financial holdings scattered around the
world] … it is unclear how much cryptocurrency Weeks maintains."  (ECF 24 at 16-19.)  The
government also claimed that "Weeks has a demonstrated history of refusing to follow rules that
do not suit his needs and has a demonstrated streak of anti-government rhetoric."  *Id.* at 20
(describing examples of Weeks's "anarchist views" and "anti-government rhetoric").
[4] *See* Gov't Bail Opp'n at 9.

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████. His September 2022 sentencing

also appears postponed indefinitely.[5]

### VII.      The Government's Flight Risk Arguments Remain Unfounded

The government remains opposed to the proposed modifications.  However, time has

proven that the government was flatly wrong that no bail conditions would reasonably ensure Mr.

Goettsche's appearance.  Mr. Goettsche has neither fled nor violated a single bail condition or

modification.  Indeed, over these twenty months on release, the concerns the government

articulated throughout the detention, bail, and appeal process have proven to be without merit.  As

such, the perceived need for extreme bail conditions, namely house incarceration, the 24/7 third-

party custodian requirement, computer and internet restrictions, and rental income in escrow, has

dissipated. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

      ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[5] In addition, the sentencing hearings of Defendants Weeks, Catalin Balaci and Joseph Abel have been rescheduled multiple times and are presently set for March 2023.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████   Yet at the December 2020 bail

hearing, this Court noted that it "heard nothing" providing any "significant indication" of such

unaccounted-for wealth, and the Court "t[ook] to heart" the fact that, when the defense discovered

about $8 million of cryptocurrency on cold storage wallets that the government itself had produced

in discovery but overlooked, the defense disclosed this fact to the government.  (12/11/20 Tr. at

63-64.)

Since Mr. Goettsche's release, there has been no evidence whatsoever that Mr. Goettsche

has accessed or moved any of the so-called "unaccounted for" cryptocurrency.  To the contrary,

the past twenty months belie the government's concerns and undermine any reasonable argument

that the current bail conditions are the only reason Mr. Goettsche has not done so.  ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████  ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[6] The BCN main mining wallet address is 155fzsEBHy9Ri2bMQ8uuuR3tv1YzcDywd4 and was publicly identified by BCN to its customers to allow customers to review the receipt of BTC mining rewards and transactions.  This wallet address remains publicly available for review at https://www.blockchain.com/btc/address/155fzsEBHy9Ri2bMQ8uuuR3tv1YzcDywd4.



The Third Bill of Particulars references "digital currency transferred from nine digital wallets originally held at Blockchain.com, specifically, 53.4 bitcoins and 9389.36 ether." (ECF No. 198 at 8).

## VIII.   The Proposed Modifications

Based on the foregoing and in order to obtain the least restrictive means to ensure his appearance at court proceedings as required under the Bail Reform Act, Mr. Goettsche proposes the following four modifications to his current bail conditions:

1.   *That Mr. Goettsche be placed on curfew between 6:00pm MT to 8:00am MT.*  If he were to leave the residence between 8:00 a.m. MT and 6:00 p.m. MT, he could only do so within the state of Colorado, with advance notice to Pretrial Services and accompanied by a third-party

---

[7] According to CoinDesk, the price of BTC ranged between $57,000 to $58,000. *See generally* https://www.coindesk.com/price/bitcoin/.

[8]

custodian at all times.  His present bail conditions as modified are, as a practical matter, de facto home detention.  This modification to curfew would allow Mr. Goettsche to spend more time at the Denver Office to review discovery (absent a modification of the computer restriction condition) and to help run daily errands, such as going to the hardware store or animal feed store, currently forced exclusively upon his wife.  More importantly, it would allow Mr. Goettsche the equitable chance to parent his children on playdates, sports practices, and other school activities.  As measures of security, the continuous presence of a third-party custodian with Mr. Goettsche while outside of the residence, the ankle bracelet monitoring, and the advance notice to Pretrial Services mitigate any perceived risk of flight, similar to the conditions afforded Weeks.

2.  *That the 24/7 third-party custodian presence requirement at home be eliminated.* Modification of this condition is intended to alleviate the weight on Mr. Goettsche's wife, mother, and mother-in-law to have daily coordination of schedules to be home with Mr. Goettsche, particularly now that it has become clear any trial date may not take place for an extended period of time.  The ankle bracelet, the requirement of advance notice of travel to Pretrial, and the required land line for Pretrial Services phone call checks collectively address risk of flight.

3.  *That Mr. Goettsche be permitted to have internet and computer access at home without supervision with the added condition that Mr. Goettsche is prohibited from accessing, moving, or utilizing any cryptocurrency.*  This would be a modification to his current condition (limited internet access for document review from a designated computer at the Denver Office) to afford him the opportunity to review discovery from home, outside the confines of the designated business hours of the Denver Office, the commute to Denver and the attendant costs.  Pretrial Services' ability to inspect any computer at home with the condition that there be no attorney-client privilege waiver, the government's demonstrated capabilities to identify, monitor and even

13

seize "unaccounted for cryptocurrency," and Mr. Goettsche's lack of access to any private keys or cold storage wallets collectively eliminate the risk that Mr. Goettsche would access or move cryptocurrency.

    4.   *That past and future rent from the following two properties be released from the escrow obligation*:

| Address | Owner | Monthly Rent |
|---|---|---|
| ██████████ Boulder, CO  80303 | Matthew Goettsche | ████ |
| ██████████ Erie, CO  80516 | Getch Inc. | ████ |

Neither property is subject to the PIRO.  This modification is proposed in recognition of the PIRO's powerful restraint on Mr. Goettsche's finances ██████████████████████ ████████████████████████████████████████████ ██████, and his inability to meaningfully be employed.  Approximately ██████ in paid rent has been held in escrow to date.

## LEGAL STANDARD

"Courts must endeavor to impose the least restrictive bail conditions that will assure both the defendant's appearance at trials as well as the public's safety." *United States v. Malloy*, 11 F. Supp. 2d 583, 584 (D.N.J. 1998) (citing 18 U.S.C. § 3142(c); *United States v. Himler*, 797 F.2d 156, 159 (3d Cir. 1986)); *see* 18 U.S.C. § 3142(c)(1)(B) (requiring the "least restrictive" conditions that the court "determines will reasonably assure the appearance of the person as required").  Under the Bail Reform Act, however, such "[c]onditions need not guarantee appearance but they must reasonably assure appearance." *United States v. Portes*, 786 F.2d 758, 764 n.7 (7th Cir. 1985).

Under 18 U.S.C. § 3142(c)(3), the "judicial officer may at any time amend the order to impose additional or different conditions of release." [9] 18 U.S.C. § 3142(c)(3); *see Malloy*, 11 F. Supp. 2d at 585 (granting motion to modify bail conditions with less-restrictive conditions). When considering modifications, courts have found that compliance with current bail conditions indicates the appropriateness of reducing those conditions. *See United States v. Hutchins*, 298 F. Supp. 3d 1205, 1208 (E.D. Wis. 2017) ("[I]f the Bail Reform Act requires no more than the least restrictive conditions needed to reasonably assure the defendant's appearance, then consistent compliance with existing conditions counsels in favor of reducing their severity on the theory that lesser conditions will suffice."); *Malloy*, 11 F. Supp. 2d at 585.

---

[9] Mr. Goettsche respectfully submits that the Bail Reform Act does not require a showing of changed circumstances before the Court can modify conditions of release under § 3142(c)(3). However, some courts in this district have found that reading § 3142(c)(3)'s authorization for the court to impose additional or different conditions of release be "read in conjunction with" the standard for reopening a bail hearing under § 3142(f), which means that parties may only move "if circumstances have changed." *See, e.g., United States v. Day*, 2017 WL 5457983, at *6 (D.N.J. Nov. 13, 2017). Mr. Goettsche submits that § 3142(f)'s changed-circumstances standard to reopen a bail hearing applies only when the issue is "*whether* there are conditions of release…," 18 U.S.C. § 3142(f), not when the issue is *what* the *least restrictive* conditions are. *See Day*, 2017 WL 5457983, at *6; 18 U.S.C. § 3142(f). As there can be no dispute from the government that there are appropriate conditions of release (only a dispute about what those conditions are), § 3142(f)'s standard should not limit the Court's ability to order different conditions of release under § 3142(c)(3). *Cf. United States v. Hutchins*, 298 F. Supp. 3d 1205, 1207-08 (E.D. Wis. 2017) ("Once one concedes, as the government has here, that pretrial detention is not necessary, the operative inquiry becomes what are the *least restrictive* conditions that will *reasonably assure* the defendant's appearance."). In the context of the supervised-release statute (18 U.S.C. § 3583), the Third Circuit expressed "doubt" that it contained any change-of-circumstances requirement for modifying conditions of supervised release. *United States v. Nestor*, 678 F. App'x 73, 75 (3d Cir. 2017). And in all events, even if a changed-circumstances requirement applied, it is met here—given, for example, the PIRO, ███████ Mr. Goettsche's faithful compliance █████████ and the bail conditions afforded to other defendants.

## ARGUMENT

### The Court should grant Mr. Goettsche's motion for four modifications to his existing bail conditions.

Each of the four modifications Mr. Goettsche seeks is consistent with the requirement that the Court impose the "least restrictive" conditions that will "reasonably assure" Mr. Goettsche's appearance at trial. 18 U.S.C. § 3142(c)(1)(B).[10]  Mr. Goettsche's full compliance with all bail conditions and prior modifications to date, particularly during even dire personal circumstances, reinforces the appropriateness of the requested modifications. *See e.g.*, *Malloy*, 11 F. Supp. 2d at 585 (modifying bail conditions in part due to defendant's "faithful compliance" with the original restrictions); *Hutchins*, 298 F. Supp. 3d at 1209 (granting modification of the conditions of pretrial release for defendant that removed his curfew and GPS monitoring, finding that defendant "has demonstrated time and again his willingness to comply with his obligations to appear in this Court as required.").   Additionally, as detailed above, time has shown the Government's flight risk arguments, ███████████████████████████████████████████████████████

███████████████████████████████  to be without foundation.

Relatedly, the PIRO — a new and significant development since Mr. Goettsche's last bail hearing — has rendered a significant portion of Mr. Goettsche's assets encumbered, and multiple third parties have been notified of the restraint,[11] further mitigating any risk of flight.   The

---

[10] As Mr. Goettsche is *not* a danger to the public, that aspect of the bail analysis is inapplicable. *See* 12/11/20 Tr. at 75 (this Court noting that the danger-to-the-public analysis "simply does not apply here").

[11] ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

government also has significant insight into Mr. Goettsche's finances ████████████ ████████ ████████████████████████████████████████ The requested modifications are narrowly tailored to improve Mr. Goettsche's ability to assist in and prepare his defense, ease the enormous burden on his third-party custodians, avoid unfairly depriving him of parenting his children, and facilitate the payment of necessary living expenses and attorney's fees.

### A. The Court should authorize "curfew."

Mr. Goettsche's unblemished compliance with bond conditions standing alone weighs strongly in favor of curfew.[12] *See Malloy*, 11 F. Supp. 2d at 583-85 (lifting 24-hour house arrest condition in favor of GPS monitoring in part given the defendant's "faithful compliance" with the prior bail restrictions). For example, his proven compliance with commuting to and from the Denver Office, traveling to New York for meetings with counsel, and dutifully handling the harrowing wildfire evacuation ████████████████████, all while keeping in constant communication with Pretrial Services, serves as ample evidence that curfew is a modest and justified modification.

Since Mr. Goettsche's release, the government has also gained significant advantages mitigating the risk of flight as described above. The effect of the PIRO on Mr. Goettsche's assets ██████████████████████████████████████████████ has substantially reduced any perceived risk. ████████████████████



[12] Although the Court may consider home detention as an alternative, Mr. Goettsche respectfully submits that he has almost been under de facto home detention with the prior approved modifications by consent. For example, the Court allows him to attend church services, drop off and pick up his children at school, and attend their sports games.



Meanwhile, the adjustment by consent of Weeks to curfew serves as a useful guidepost. The opposition of Pretrial Services and the government to the instant proposals remains baffling in light of the collective acceptance of Weeks's curfew ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ Nevertheless, it appears that Defendant Weeks' curfew conditions, particularly the ankle bracelet and third-party presence while out of the residence, have proven to be effective.  Mr. Goettsche's proposed curfew conditions, mirroring Weeks' curfew, should more than reasonably assure the Court that the risk of flight is nil.

Continued bond conditions on curfew should also provide ample safeguards.  The GPS ankle bracelet has proven to be both accurate and reliable.  The $5,000 transaction notice affords Pretrial Services the ability to identify any significant expenditures.  Mr. Goettsche's proposed advance notice of travel to Pretrial Services for any departure from the residence between

authorized hours affords Pretrial Services the power to identify any deviations.  The added condition that a third-party custodian accompany him when he leaves the residence enhances these safeguards even further.  Under these added conditions, neither the government nor Pretrial Services can reasonably claim that they will not know exactly where Mr. Goettsche is, when he leaves, where he is going, and when he returns.

**B.  The Court should eliminate the requirement that Mr. Goettsche be in the presence of a third-party custodian at all times.**

The past twenty months have likewise proven that the third-party custodian presence condition is both unnecessary and severely burdensome on Mr. Goettsche's family members and will continue to be, likely for a lengthy period.  Accordingly, Mr. Goettsche seeks to eliminate this modification to reduce those burdens, like the constant coordination between the third parties' schedules between school, sports, personal travel and work, on Mr. Goettsche's wife, mother, or mother-in-law.  The practical effect here would be that Mr. Goettsche could remain at home while his wife can handle her parenting responsibilities and run routine errands without having to call another third-party custodian over to the house.  At all times, Mr. Goettsche's physical location would still be known to Pretrial with the GPS ankle monitoring.

**C.  The Court should permit Mr. Goettsche to have internet and computer access.**

Under the March 2021 Modifications, Mr. Goettsche can use a computer only to review discovery at the Denver Office after commuting an hour back and forth during designated times and under the supervision of counsel.  The volume of discovery is tremendous, and it is believed that a substantial volume of supplemental discovery is forthcoming.  The proposed modification would enable him to review discovery unencumbered, conduct internet-based research, communicate with the legal team by e-mail, create and review attorney work product, and more generally to prepare his defense in this case.

19

Research of transactions on the public blockchain on the internet, in particular, is a critical aspect for preparing the defense to this case.  For example, this public blockchain, available at https://www.blockchain.com/explorer, identifies the wallet addresses of the participants in any given transaction.  Mr. Goettsche can assist in his own defense by identifying and analyzing those relevant cryptocurrency transactions and wallet addresses on the public blockchain with wallet addresses that are associated with specific parties, witnesses, and even BitClub customers identifiable in discovery.  To be clear, by reviewing such publicly available transaction data or identifying wallet addresses of individuals, Mr. Goettsche could in no way access and/or engage in cryptocurrency transactions of any kind.  Modifying Mr. Goettsche's bail to permit him to use the internet at home, particularly searching the public blockchain, will be a cost-effective measure and afford him this critical access that he has not had since his arrest in December 2019.[13]

Thus far, Mr. Goettsche's proven track record of compliance with bail conditions when he reviews discovery at the Denver Office should give the Court assurance that his utilization of the internet from a PC at home will be without issue.  There has been no evidence whatsoever that he has attempted to use any computer at the Denver Office to contact any supposed international co-conspirators (or anyone else) or to access or otherwise engage with any hidden cryptocurrency.  And under the proposed modification, Mr. Goettsche would be prohibited from accessing any theoretical hidden cryptocurrency.

### D.  The Court should authorize the release of rent generated by two properties.

For similar reasons, Mr. Goettsche requests that the Court release rental income from two properties identified above (█████████████. Boulder, CO 80303; and ██████████

---

[13] Mr. Goettsche's internet restrictions relatedly also deprive him of the most routine parenting responsibilities.  He is unable to assist his children with internet-based research for school projects.  Mr. Goettsche is also unable to participate in Zoom parent-teacher conferences.

███████████, Erie, CO 80516) currently held in escrow.  The requested modification would include approximately $███ in past rental income currently held in escrow.

Since his release, Mr. Goettsche's cash flow has been extremely limited, especially given the impact of the PIRO on his ability to liquidate and/or collect income on a substantial number of assets to provide cash for his and his family's living expenses and on the restriction on his ability to have employment under his bail conditions.  These are changed circumstances warranting the requested modification.  And there is no basis to infer that releasing the rental income from these properties, which are not subject to the PIRO—totaling about ████████████████—will somehow encourage Mr. Goettsche to flee.  It will not.  The $5,000 transaction notification requirement will continue to serve as an additional safeguard.

## CONCLUSION

For the foregoing reasons, Mr. Goettsche respectfully requests that the Court permit the four requested modifications to Mr. Goettsche's bail conditions.

Dated:  September 20, 2022

*  s/ Rodney Villazor*
SMITH VILLAZOR LLP
Rodney Villazor
Brian T. Burns
250 West 55th Street, 30th Floor
New York, New York 10019
TEL: (212) 582-4400
FAX: (347) 338-2532
rodney.villazor@smithvillazor.com
brian.burns@smithvillazor.com

*   /s/*
Matthew I. Menchel
Amanda N. Tuminelli
KOBRE & KIM LLP
(212) 488-1288
matthew.menchel@kobrekim.com
amanda.tuminelli@kobrekim.com

*Attorneys for Defendant*
*Matthew Brent Goettsche*
