Docusign Envelope ID: FDED6AE5-FF39-46B8-AC67-5DD3DAFBD059

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

United States of America,
**v.**
**Jobadiah Weeks,**
**Defendant.**

**Case No. 19-cr-877-CCC**
**Hon. Claire C. Cecchi**

## DEFENDANT'S MOTION FOR DISCOVERY ON <u>SELECTIVE PROSECUTION</u>

**NOW COMES** Defendant, **Jobadiah Weeks**, **pro se**, and respectfully **moves this Court** for an order compelling the **United States Attorney's Office for the District of New Jersey** to produce **discovery materials** relevant to Defendant's **claim of selective prosecution**.

Defendant, respectfully moves this Court to compel the United States Attorney's Office for the District of New Jersey to produce discovery **material to his selective prosecution claim**. The government's continued failure to provide discovery violates its **constitutional obligations** under *Brady v. Maryland*, 373 U.S. 83 (1963), and raises **Equal Protection and Due Process concerns**.

Under *United States v. Armstrong*, 517 U.S. 456 (1996), a defendant seeking discovery on selective prosecution must show:

I. **Some evidence that others similarly situated were not prosecuted for the same or more serious conduct**; and
II. **That the prosecution was motivated by a discriminatory purpose.**

Here, Defendant **meets this standard** because:

- **Russ Medlin**, the primary leader of BCN, **was not indicted** at the same time, despite having a more **significant managerial role**.
- **Federico "Freddie" Hidalgo** and **Keith Anthony Fairclough Jr**., both actively engaged in member/customer recruitment, **were never charged.**
- Government **charging criteria remain undisclosed**, preventing transparency into why Defendant was treated more harshly.
- The timing and severity of Defendant's charges suggest a **pattern of selective enforcement** rather than neutral prosecutorial discretion.

Given this **prima facie evidence showing of selective prosecution**, Defendant **moves this Court to order discovery** into prosecutorial charging decisions and internal deliberations.

Accordingly, this Court should **compel discovery** to determine whether prosecutorial discretion was exercised in an **unlawful, arbitrary, or discriminatory manner**.

1

Given the **government's continued failure to respond,** Defendant now seeks judicial intervention **to enforce fundamental principles of fairness and transparency in prosecutorial decision-making** and ensure that prosecutorial discretion was not exercised in a discriminatory or arbitrary manner.

# I. INTRODUCTION

Defendant was charged in connection with the **BitClub Network (BCN) case.** This Motion to Compel seeks judicial review of disparities in prosecution that raise constitutional concerns under the Equal Protection Clause and *Brady v. Maryland*, 373 U.S. 83 (1963). The government has engaged in **unlawful tactics,** including **misrepresentations, concealment of exculpatory evidence, and improper prosecutorial discretion,** resulting in an unjustified and discriminatory prosecution.

Defendant's prosecution **deviates from standard DOJ practices** regarding individuals in similar positions within the BitClub Network (BCN). While other **BCN leaders and co-conspirators** were:

- **Not charged** at the same time as Defendant;
- **Offered plea agreements** with significantly **reduced penalties**; or
- **Permitted to avoid** pretrial detention and harsh bail restrictions.

Defendant was subjected to **disparate treatment** without a **rational basis**. This raises a **presumption of selective prosecution,** necessitating discovery. The evidence demonstrates that the prosecution was not only selective but also tainted by **intentional misstatements, procedural irregularities, and failures to disclose key material facts that could have altered the course of this case**.

The Government's failure to disclose key evidence constitutes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the prosecution to disclose evidence favorable to the defense.

Under *United States v. Bagley*, 473 U.S. 667 (1985), **Brady material is "material" if there is a reasonable probability that the outcome would have been different had the evidence been disclosed.**

Here, the withheld evidence includes:

- **DOJ internal charging memoranda** explaining why BCN leaders (Medlin, Abel, Balaci) received lesser charges while Defendant faced aggressive prosecution.
- **Grand jury transcripts that may contain misleading or selective evidence** presented against Defendant.
- **Facebook communications from 2017–2018 confirming that Hidalgo and Fairclough were actively engaged in member/customer recruitment.**
- **Government monitoring reports on social media interactions related to BCN leadership that may contain exculpatory evidence.**

These withheld materials are **material under Bagley** because they directly impact Defendant's **ability to challenge the prosecution's narrative and demonstrate disparate treatment.**

Under *United States v. Agurs*, 427 U.S. 97 (1976), **Brady evidence must be disclosed regardless of whether the defense makes a specific request if it is material to guilt, sentencing, or pretrial conditions**. The Government's continued failure to provide these records **prejudices Defendant's ability to prepare a fair defense** and necessitates court intervention.

The refusal to provide these materials is a **clear Brady violation** that **prejudices Defendant's ability to assert his constitutional rights**.

Specifically:

- **February 21, 2025 Letter to AUSA Anthony Torntore** (Exhibit A) requested records on **charging disparities among BCN figures, fraudulent misrepresentations in the prosecution, and selective enforcement**. The Government has refused to respond.
- **February 26, 2025 Letter re Seized Assets** (Exhibit B) formally demanded the return of unlawfully held assets, including **cryptocurrency, gold, silver, and cash**, which were never subject to forfeiture. Despite acknowledging intent to return the property, the Government has failed to act. The government has been holding the property for OVER 5 years and they STILL have not returned it!
- **February 27, 2025 Letter on Bail Conditions** (Exhibit C) questioned the **disparate pretrial restrictions imposed on Defendant in contrast to similarly situated defendants**, yet no response has been provided.
- **September 5, 2024 Letter from Attorney David Stone** (Exhibit D) requested critical IRS records and grand jury materials related to the **government's misrepresentations of financial records, tax loss calculations, and investigative misconduct**. The Government has not complied with this request.

The Government's persistent refusal to provide these records further supports the claim that Defendant was **selectively prosecuted through fraudulent, misleading, and unconstitutional means**. Defendant respectfully requests that this Court:

1. **Compel immediate disclosure** of all prosecutorial materials related to the selective prosecution claim.
2. **Order an evidentiary hearing** on prosecutorial misconduct, including Brady violations and grand jury material inconsistencies.
3. **Sanction the prosecution** for failure to comply with discovery obligations.
4. **Modify or terminate bail conditions**, considering the disparate pretrial treatment.
5. **Grant any other relief deemed just and proper**, including reconsideration of the indictment based on constitutional violations.

Accordingly, Defendant requests that the Court **compel full disclosure of all prosecutorial records relevant to these allegations** and grant appropriate relief, including **dismissal of the indictment, sanctions for prosecutorial misconduct, or any other remedy the Court deems just and proper**.

# II. RELEVANT BACKGROUND

Given the government's **failure to respond** to prior **discovery requests**, Defendant now seeks an order compelling the **production of materials** that are critical to his **selective prosecution claim**.

On **February 21, 2025**, Defendant submitted a **formal request to AUSA Anthony Torntore** (Exhibit E), detailing concerns regarding **disparate prosecutorial treatment** in the **BitClub Network (BCN) case**. Despite that the Defendant was NOT an owner, was NOT a founder and had **zero managerial role. Defendant was a member of BCN and a vendor of computer equipment that Defendant sold to BCN**, yet Defendant was **charged and detained**, while individuals with **greater control over BCN** either **faced lesser charges, received favorable plea agreements, or avoided prosecution entirely**.

## Evidence Supporting Defendant's Selective Prosecution Claim

### (1) Pre-Sentencing Report (PSR) (Docket Entry 384, Jan. 7, 2025) (Exhibit F)

- ○ Confirms that Defendant's role in BCN **diminished after 2018**, while others **maintained significant control**.

### (2) Treasury Proffer Memoranda (Aug. 17 & 25, 2020) (Exhibit G)

- ○ Indicate that **Russ Medlin and Matthew Goettsche** exercised **primary managerial control** over BCN.
- ○ Despite this, **Medlin was not indicted at the same time as Defendant**, raising concerns over **disparate charging decisions**.

### Comparative Charging and Plea Disparities in the BCN Case

- **Joseph Abel (Dkt. 124)**: Abel, one of the founding members, despite a **greater tax liability**, received a **reduced plea agreement** allowing him to plead guilty to a **lesser charge**.
- **Silviu Catalin Balaci (Dkt. 112)**: The **key technical person who ran the BCN website and founder** of BCN was **permitted to plead guilty to a single conspiracy count** (*18 U.S.C. § 371*), and multiple charges were **dismissed** as part of his deal.
- **Russ Medlin**: The **primary leader/founder of BCN** was **not charged at the same time** as Defendant, **allowing him to evade prosecution** while others were indicted. Russ Medlin has still has NOT been arrested.
- **Federico "Freddie" Hidalgo**: **BCN recruiter & financial strategist** who was actively involved in onboarding members but **was never charged**.
- **Keith Anthony Fairclough Jr.**: Recruited members, engaged in BCN **promotions**, yet **was never indicted**.

- **Defendant (Dkt. 148 Plea Agreement)**: Defendant **was ultimately and illegally forced into a plea agreement**, yet the **terms of his plea and sentencing exposure remain harsher** than similarly situated co-defendants.

**Table: Comparative Charging & Plea Disparities in the BCN Case**

| Name | BCN Role | Charges Filed | Plea Agreement | Sentence | Pretrial Detention Status |
|------|----------|---------------|----------------|----------|---------------------------|
| **Jobadiah Weeks (Defendant)** | Not founder, vendor of mining machines and member of BCN | Multiple felony counts (Dkt. 148) | Yes, but harsher terms | Pending | 5+ years in detention |
| **Joseph Abel** | Founder, high-level promoter | Lesser tax charges (Dkt. 124) | Favorable plea | Reduced | Released pretrial |
| **Silviu Catalin Balaci** | Founder & Core technical BCN | Single conspiracy count (18 U.S.C. § 371) | Plea agreement with multiple charges dismissed (Dkt. 112) | Reduced | Allowed to reside in Germany |
| **Russ Medlin** | Founder & primary leader of BCN | Initially not charged at the same time | No plea required | No charges at the time | Not detained |

| Federico "Freddie" Hidalgo | BCN member/customer recruiter & financial strategist | No charges filed | No plea deal required | No charges | Never detained |
| --- | --- | --- | --- | --- | --- |
| Keith Anthony Fairclough Jr. | Recruited members/customers, involved in BCN promotions | No charges filed | No plea deal required | No charges | Never detained |
| Richard J. Oh | Managing investments, operations, and promoting BCN | Not Prosecuted | N/A | N/A | N/A |
| Jason Vausē | Managing investments, operations, and promoting BCN | Not Prosecuted | N/A | N/A | N/A |
| Francisco Rojo | Managing investments, operations, and promoting BCN | Not Prosecuted | N/A | N/A | N/A |
| Ayodele Onesimus | Managing investments, operations, and promoting BCN | Not Prosecuted | N/A | N/A | N/A |

**Issues with Selective Prosecution & Plea Agreements**

- The **timing and severity** of Defendant's prosecution suggest **targeted legal pressure** rather than an **equal application of justice**.
- Unlike founding members Abel and Balaci, Defendant **faced longer pretrial detention** and **did not receive comparable sentencing leniency** despite his **less significant role in BCN**. Defendant joined BCN as a member 16 months after it started. Defendant sold BCN computer equipment to mine Bitcoin.
- The **Government's internal charging criteria** and **plea bargaining strategies** remain undisclosed, preventing any transparency regarding Defendant harsher treatment.

Despite these **documented disparities**, the government has **refused to provide** internal **charging memoranda, prosecution strategy documents, and decision-making records**, necessitating this motion. The requested discovery is **material to establish whether Defendant was unfairly singled out for prosecution** in violation of **his constitutional rights to due process and equal protection**.


# III. LEGAL BASIS FOR DISCOVERY

Defendant seeks discovery on **selective prosecution, prosecutorial misconduct, due process violations, and ineffective assistance of counsel**, as the **government's charging decisions, evidentiary practices, and procedural delays** raise **constitutional concerns**. The requested materials are necessary to determine whether Defendant was **unfairly singled out for prosecution** in violation of the **Equal Protection Clause, Due Process Clause, and Brady obligations**.


## 1. Selective Prosecution & Charging Disparities

The government's **targeted prosecution of Defendant**, while similarly or more culpable individuals received **leniency**, establishes a **prima facie case of selective prosecution** under *United States v. Armstrong*, 517 U.S. 456 (1996) **and *Oyler v. Boles*, 368 U.S. 448 (1962)**.

*Armstrong* requires discovery when a defendant shows **some evidence of discriminatory intent or selective enforcement**, while *Oyler* establishes that the **Equal Protection Clause prohibits selective prosecution when individuals engaged in similar conduct are treated differently without a rational basis**. Defendant has satisfied this standard because:

- **Russ Medlin**, The creator and primary managerial figure in BitClub Network (BCN), was **not indicted at the same time** as Defendant.
- **Joseph Abel**, Founding member, despite a **greater tax liability**, was granted a **favorable plea deal** and faced **fewer charges**.

- **Silviu Catalin Balaci**, a **founder of BCN**, was permitted to **plead guilty to a single conspiracy count** (18 U.S.C. § 371), while multiple charges against him were dismissed.
- **Balaci was granted pretrial release and allowed to reside in Germany**, whereas Defendant was subjected to **excessive pretrial detention and <u>severe</u> bail conditions**.

The **Government has failed to provide internal criteria** justifying these **charging disparities**, warranting discovery.

Defendant was **charged and detained** while others with **greater managerial control** over BCN—**including Russ Medlin, Joseph Abel, and Silviu Catalin Balaci—faced lesser consequences, received favorable plea agreements, or had their prosecutions delayed**.

- The **Government has failed to provide a rational explanation** for why **Russ Medlin**, despite being a **primary leader of BCN**, was **not indicted at the same time as Defendant**, allowing him to evade prosecution for an extended period.
- **Joseph Abel**, despite having a **significantly higher tax liability than the supposed liability of the Defendant**, was granted a **disproportionately lenient plea deal**, demonstrating **arbitrary and selective enforcement**.
- **Silviu Catalin Balaci**, a **key architect of BCN**, was **permitted to plead guilty to a single conspiracy charge**, with multiple charges **dismissed**, and was **granted pretrial release in Germany**, while Defendant was subjected to **strict pretrial detention and denied similar consideration**.
- The **charging disparities and selective treatment** in this case **raise serious due process concerns**, warranting discovery into the Government's **internal prosecutorial criteria, decision-making process, and charging justifications**.

Thus, **discovery is warranted** into the **government's charging criteria, internal deliberations, and prosecution strategies**.

## 2. Government Misconduct & Prosecutorial Fraud

The government's **failure to disclose exculpatory materials** violates *Brady v. Maryland*, 373 U.S. 83 (1963), which **mandates full disclosure** of evidence favorable to the defense. Additionally, under *Napue v. Illinois*, 360 U.S. 264 (1959), **knowingly presenting false or misleading testimony** constitutes prosecutorial misconduct. Further, in *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993), the **misrepresentation and omission of exculpatory evidence** was deemed <u>sufficient grounds for case dismissal.</u>

The prosecution's failure to disclose critical materials warrants immediate discovery into:

- **Internal DOJ memorandum discussing charging disparities**, which may reveal selective enforcement motives (*Brady* obligation).
- **Grand jury materials explaining why tax charges were selectively applied**, particularly to Defendant, while similarly situated individuals faced only civil penalties.

- **Key exculpatory evidence regarding BCN's leadership structure and financial decisions**, which **was withheld or misrepresented**.
- **The Special Agent's Report (SAR), supposed tax loss calculations, and witness statements**, which were **selectively altered to support the prosecution's theory**.

**Application to This Case:**

- **The Special Agent's Report (SAR), witness statements, and supposed tax loss calculations may have been altered or selectively used** to support charges.
- **Key exculpatory materials regarding BCN's leadership structure and financial decisions were not disclosed**, violating **Brady obligations**.
- **The timing of supposed tax charges suggests they were improperly used to pressure Defendant into a plea**, raising **serious prosecutorial misconduct concerns**.

Given the **risk of fabricated or suppressed evidence**, Defendant seeks **full disclosure of investigative reports, witness statements, and internal government correspondence** regarding charging decisions. Defendant has not presented one victim (accuser) and the government could not find one victim.

## 3. Due Process Violations & Pretrial Detention Issues

The **government imposed disproportionately harsh pretrial detention conditions** on Defendant compared to **other BCN defendants**, violating **due process rights** under the **Fifth Amendment**.

- **Betterman v. Montana, 578 U.S. 437 (2016)** – **Prolonged sentencing delays** may violate **due process** if used for **strategic advantage** rather than legitimate judicial purposes.
- **United States v. Salerno, 481 U.S. 739 (1987)** – **Pretrial detention must be justified by individualized risk assessments**, and <u>not used as a tool for coercion.</u>

**Application to This Case:**

Under *United States v. Salerno*, 481 U.S. 739 (1987), **pretrial detention must be based on individualized risk assessments and <u>cannot be used as a coercive tool.</u>**

The Government has **failed to justify why Defendant remains detained while similarly situated individuals have been released**:

- **Russ Medlin (founder & primary leader): Not charged at the same time, allowing him to evade prosecution. Still has not been arrested.**
- **Silviu Catalin Balaci (core member)**: Allowed to reside in Germany pretrial, despite deeper involvement from the beginning.
- **Joseph Abel (high-level promoter)**: Released pretrial despite higher financial liability.
- **Federico "Freddie" Hidalgo & Keith Fairclough Jr.**: Never indicted despite active member/customer recruitment.

- **Richard J. Oh, Jason Vausē, Francisco Rojo, Ayodele Onesimus Adeoye:** All play significant roles in managing customers and operations or promoting BCN, but **were not prosecuted.**

The Government has not provided any evidence or witnesses that Defendant is **a flight risk or danger to the community**, as required under *Salerno*. Further:

- Defendant has never missed a hearing and never tried to flee.
- Defendant has **family and community ties**, demonstrating that Defendant is not a flight risk.
- The **length of pretrial detention exceeds that of similarly situated co-defendants**, proving that the unlawful **detention was used to coerce a guilty plea.**

**Legal Standard & Argument:**

- *United States v. Salerno* (1987): **Pretrial detention must be necessary to prevent flight or danger—not to pressure a guilty plea.**
- *Betterman v. Montana*, 578 U.S. 437 (2016): **Excessive pretrial delays violate due process when used for leverage.**
- *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990): **Bail conditions must be reassessed when prolonged detention becomes punitive.**

Defendant respectfully requests **immediate reconsideration of bail conditions** or **full release on personal recognizance**.

Defendant seeks **discovery into DOJ, BOP, and SEC records discussing pretrial detention policies and sentencing delays**, as well as **any prosecutorial memoranda evaluating whether these delays were used to pressure cooperation or a plea agreement**.

## 4. Ineffective Assistance of Counsel & Coerced Plea

Defendant's prior counsel—**Michael Yaeger and Simon Gaugush (Carlton Fields), David Stone and Robert Magnanini (Stone Magnanini), and David Boies and Alexander Boies (Boies Schiller Flexner LLP)—failed to challenge selective prosecution and coercive plea tactics**, which **prejudiced Defendant's ability to present a full defense**.

Under **Strickland v. Washington, 466 U.S. 668 (1984)**, **ineffective assistance of counsel** violates the **Sixth Amendment** if **errors materially affect the outcome of the case**. **Discovery is necessary** to assess whether **counsel's omissions—whether due to negligence, conflict of interest, or other improper motivations—contributed to Defendant's disparate treatment** and wrongful prosecution.

- **Strickland v. Washington, 466 U.S. 668 (1984)** – A defendant is entitled to relief if **counsel's errors prejudiced the case**, including **failure to challenge selective prosecution or undue plea pressure**.

- **Bordenkircher v. Hayes, 434 U.S. 357 (1978)** – Prosecutors **cannot threaten increased charges to force a guilty plea**, and such coercion **violates due process**.

**Application to This Case:**

- **Counsel failed to seek dismissal of improperly added supposed tax charges, despite clear evidence that the government used them as leverage for a plea.**
- **Counsel failed to investigate why Abel received a reduced plea deal despite greater supposed tax liability, leaving selective prosecution claims unchallenged.**
- Counsel **failed to demand exculpatory evidence relating to BCN's leadership structure, charging inconsistencies, and prosecutorial motives.**
- **Counsel also failed to request the Streamlined SAR when negotiating the Plea Agreement, even though the Grand Jury report referred to it. When the Streamlined SAR was eventually provided in 2024 without a date, it was evident that it had been created retroactively—after the plea agreement. Despite this, counsel did not press the prosecution for an explanation regarding the document's origins or its implications.**
- Counsel failed to ask **why Richard J. Oh, Jason Vausē, Francisco Rojo, and Ayodele Onesimus Adeoye—all of whom played significant roles in managing customers, operations, or promoting BCN—were not prosecuted, despite their deeper involvement.**

Defendant seeks **all DOJ, IRS, and SEC internal deliberations regarding plea negotiations and sentencing agreements**, particularly any **communications involving prior defense counsel and the prosecution regarding coercive plea tactics**.


## 5. Requests for Government Records & Charging Criteria

To determine whether Defendant was **unfairly targeted**, Defendant requests **internal DOJ, IRS, and SEC records regarding charging decisions, plea agreements, and grand jury materials**.

- **United States v. R. Enterprises, Inc., 498 U.S. 292 (1991)** – A **defendant may obtain grand jury records** when there is a **particularized need to investigate prosecutorial misconduct**.
- **Brady v. Maryland, 373 U.S. 83 (1963)** – The **government must disclose all evidence that could be favorable to the defense**, including charging discrepancies among co-defendants.

**Application to This Case:**

- **The Prosecution Memorandum (PMA) should outline how charging decisions were made** in the BCN case.

- **Grand jury transcripts, exhibits, and charging documents** should clarify **why supposed tax charges were selectively applied**.
- **Internal DOJ, IRS, and SEC records regarding BCN plea negotiations and sentencing recommendations** must be disclosed to **evaluate disparities in prosecutorial decisions**.

Defendant seeks **full production of these materials** to ensure that **charging decisions were made fairly and without discriminatory intent**.

**Conclusion:** The government's refusal to provide discovery materials regarding its prosecutorial decisions raises **serious constitutional concerns** under the **Equal Protection and Due Process Clauses**. Defendant has provided **sufficient evidence** to warrant further inquiry into whether the government **selectively and unlawfully prosecuted** him.

# IV. RELIEF REQUESTED

Defendant respectfully requests that this Court **compel the government** to produce the following discovery materials, which are essential to determining whether **selective prosecution, prosecutorial misconduct, and due process violations** occurred in this case. The requested materials are **narrowly tailored** to assess whether the **government improperly singled out Defendant while affording leniency to similarly situated individuals**, in violation of the **Equal Protection Clause and due process rights**.

The **requested discovery falls within the scope** of **United States v. Armstrong, 517 U.S. 456 (1996)**, which permits disclosure of prosecutorial records when a defendant presents **evidence of selective enforcement**. Given the **government's failure to provide a reasonable justification for these disparities**, Defendant seeks a court order compelling **immediate production** of the following:

## 1. Selective Prosecution & Charging Disparities

**Key Argument:**

The **disparate prosecution of Defendants**—despite similarly or more culpable individuals receiving **leniency**—raises a **prima facie case of selective prosecution** under *United States v. Armstrong, 517 U.S. 456 (1996)*. Armstrong establishes that a defendant is entitled to discovery where there is *"some evidence"* of discriminatory intent or selective enforcement. **Defendants meets this threshold** because:

- **Russ Medlin**, who exercised primary managerial control over BitClub Network (BCN), was **not indicted at the same time as Defendant.**

- **Richard J. Oh, Jason Vausē, Francisco Rojo, Ayodele Onesimus Adeoye:** All play significant roles in managing customers and operations or promoting BCN were not indicted at all.
- **Joseph Abel**, despite **greater supposed tax liability**, received a **favorable plea deal** and reduced charges.
- The government **has not disclosed internal criteria** for these charging discrepancies, warranting discovery.
- The **charging decisions, bail conditions, and sentencing delays** indicate **a constitutional violation** under **Oyler v. Boles, 368 U.S. 448 (1962)** and **United States v. Armstrong, 517 U.S. 456 (1996)**.

**Requested Discovery:**

1. **Internal DOJ/SEC/IRS/FBI communications** regarding Defendants **level of involvement compared to Balaci, Medlin, Abel.**
2. **Internal DOJ/SEC/IRS/FBI communications why Hidalgo, J. Oh, Vausē, Rojo, Ayodele Onesimus Adeoye were not prosecuted.**
3. **Any records confirming whether Medlin was offered a plea deal, a non-prosecution agreement, or was otherwise treated differently** from other BCN members. He still hasn't been arrested.
4. **Government correspondence evaluating Medlin's role in BCN in comparison to Defendants and other co-defendants**.
5. **Internal communications regarding the government's decision to prosecute Defendants while delaying or dismissing charges for others**.
6. **All IRS, DOJ, and SEC discussions regarding civil vs. criminal enforcement strategies applied to BCN members**, including why Defendant was subjected to criminal prosecution while others were not. This highlights disparate prosecutorial decisions.
7. What prosecutorial criteria determined the timing of Defendants indictment in comparison to Russ Medlin, Goettsche, and Abel, despite their managerial roles in BCN?
8. **Why were Richard J. Oh, Jason Vausē, Francisco Rojo, Ayodele Onesimus Adeoye**, all that played significant roles in managing customers and operations or promoting BCN were not prosecuted?
9. Did the government enter into **non-prosecution or deferred prosecution agreements** with Medlin or other BCN members? If so, **what justifications exist, and why was Defendant denied similar treatment?**
10. Has the DOJ, SEC, or IRS **deliberated internally about shielding Medlin from prosecution? If so, what justifications exist?**
11. Will the government disclose **grand jury transcripts** clarifying why **certain BCN members were charged later or not at all?**

## 2. Evidence of Prosecutorial Misconduct

**Key Argument:**

- Defendant asserts that the government **misrepresented evidence, withheld exculpatory materials, and selectively used investigative reports** to justify prosecution. Under **Brady v. Maryland, 373 U.S. 83 (1963),** the government is obligated to disclose exculpatory evidence. Failure to do so raises **serious due process concerns** warranting full discovery.
- **Misrepresented evidence, selectively withheld exculpatory material, and falsely altered reports** to strengthen their case.

  Requested Discovery:

12. **Any DOJ or SEC communications** discussing the credibility of evidence against Defendants, particularly if any records were altered post-indictment.
13. Any **correspondence between Defendants prior defense counsel and the prosecution regarding plea negotiations,** particularly any failure to challenge selective prosecution or improperly added charges.
14. **Any DOJ or IRS internal communications** discussing why tax charges were selectively applied to me after the fraud indictment, while others with similar tax liabilities were only subjected to civil enforcement?
15. Do internal DOJ records **acknowledge evidentiary weaknesses** in Defendant's case while still **aggressively pursuing an indictment?**
16. Were there internal discussions within DOJ or other agencies about **using this case as a "test case" for cryptocurrency prosecutions?**

## 3. Due Process Violations & Pretrial Detention Issues

**Key Argument:**

- Defendants faced **harsher pretrial detention and bail conditions** than similarly situated co-defendants.
- **Delays in sentencing were strategically used** to pressure Defendants into compliance.

**Requested Discovery:**

17. Any government records explaining why **Russ Medlin remained sealed until June 2020, and why Silviu Catalin Balaci was granted international travel, while Defendant was held in custody.**
18. All DOJ, SEC, and IRS internal communications discussing **the delay in Defendants' sentencing.**
19. Any prosecutorial memoranda evaluating whether delaying Defendants' sentencing was a **tactic to pressure further cooperation or plea concessions.**

20. Any DOJ or BOP records explaining **why Defendant has been detained for over five years** without sentencing.
21. What records exist detailing the government's **rationale for imposing heightened bail restrictions** compared to other BCN defendants?
22. Any **DOJ or Pretrial Services communications** discussing why Defendant remained in custody while similarly situated defendants received pretrial release, including Medlin and Balaci.
23. What **legal and factual basis** justifies the **repeated delays** in Defendant's case, particularly when **similarly situated BCN defendants** have resolved their cases more **expediently?**
24. Has the DOJ conducted **internal reviews** regarding **potential Speedy Trial Act violations** or **constitutional concerns** arising from excessive pretrial detention?
25. Did Defendant's prolonged pretrial detention **serve a strategic purpose** for the government **in extracting cooperation or securing a guilty plea?**

# 4. Ineffective Assistance of Counsel & Coerced Plea

**Key Argument:**

- As mentioned in the plea rescission notice, Defendants' **plea was coerced**.
- His **defense attorneys failed to challenge selective prosecution, plea pressure, and procedural defects**.

**Requested Discovery:**

26. DOJ, IRS, and SEC records regarding the **decision to introduce supposed tax charges** against Defendant after his fraud indictment, including discussions on whether the supposed tax charges were added to pressure a plea.
27. Any internal government discussions evaluating why supposed tax-related charges were used only against Defendant **while others with known tax liabilities faced only civil penalties.**
28. Any DOJ and SEC i**nternal deliberations regarding plea agreements, including whether Defendant was pressured into a harsher deal than other co-defendants.**
29. Any internal DOJ or defense communications discussing **whether plea agreements were conditioned on Defendants cooperation against other BCN members.**
30. Any records discussing the **justification for treating Defendants bail differently than similarly situated individuals,** including why Medlin was not publicly revealed until June 2020 despite his greater managerial role.
31. Did **former defense attorneys (Carlton Fields, Stone Magnanini, Boies Schiller Flexner LLP)** communicate with the prosecution **regarding coercive plea negotiations, and were they aware of any undue pressure applied to secure a plea?**
32. Did the government initially consider **bringing tax-related charges against other BCN members and later decide against it? If so, what justifications were provided?**

33. Did Defendant's former attorneys **fail to investigate or challenge selective prosecution, procedural defects, or undue pressure in plea negotiations?**

## 5. Requests for Government Records & Charging Criteria

**Key Argument:**

- The **government must disclose charging criteria, grand jury records, and internal deliberations** to establish whether Defendant was **unfairly targeted**.

**Requested Discovery:**

34. **The full Prosecution Memorandum (PMA) related to the BCN case**, detailing how the prosecution determined **who to charge and who to exclude**.
35. **All DOJ, IRS, and SEC internal records regarding plea negotiations, charging decisions, and sentencing recommendations for BCN co-defendants**.
36. **Any DOJ, IRS, or SEC records regarding why Joseph Abel was permitted to plead guilty to lesser offenses**, despite having a **higher supposed tax liability**.
37. **Any DOJ, SEC, IRS, or FBI internal emails discussing the prosecution strategy in BCN and why certain figures were excluded from indictment**.
38. Any records showing whether supposed tax-related charges were discussed as part of plea negotiations, including whether they were used to increase pressure for a guilty plea.
39. Any **grand jury transcripts, internal memoranda, or emails** discussing the **timing of tax charges introduced against Defendant** after the fraud indictment.
40. DOJ, IRS, and SEC **internal communications** regarding **why supposed tax charges were not brought earlier** against Defendant.

# V. CONCLUSION & REQUEST FOR RESPONSE

Given the **overwhelming evidence of fraud, perjury, and prosecutorial misconduct**, Defendant respectfully requests that this Court:

## 1. Immediate Production of Outstanding Discovery

The Government's **continued refusal** to respond to multiple formal requests for discovery (Exhibits A–J) constitutes **a blatant violation of due process and prosecutorial obligations**. The **deliberate withholding of critical evidence** that could establish selective prosecution and government misconduct has **severely prejudiced the Defendant's ability to assert his constitutional rights**. The Court should **compel the immediate production** of all outstanding discovery materials.

Order full discovery of all withheld exculpatory evidence including, but not limited to:

- DOJ, IRS, SEC, and FBI records discussing evidentiary concerns, alterations to the SAR, and selective charging decisions.

- Internal deliberations regarding the **decision to bring supposed tax charges against Defendant.**
- Grand jury transcripts, prosecution memoranda, and plea negotiation records.
- All records related to the **government's mishandling of seized assets** and discrepancies in financial reporting.

**Deadline:** Full production must be **completed within five (5) business days** of the Court's order.

## 2. Order Discovery Regarding Ineffective Assistance of Counsel

Defendant's prior counsel—**Michael Yaeger and Simon Gaugush (Carlton Fields), David Stone and Robert Magnanini (Stone Magnanini), and David Boies and Alexander Boies (Boies Schiller Flexner LLP)—failed to challenge selective prosecution and coercive plea tactics, which prejudiced Defendant's ability to present a full defense**.

- The Court shall **order discovery into communications between these attorneys and the prosecution**, including:
  - Any **negotiations, agreements, or strategic decisions** that contributed to Defendant's disparate treatment.
  - Any **conflicts of interest** that may have prevented counsel from properly advocating for Defendant's rights.
  - Records and correspondence regarding **plea negotiations and any failure to challenge fraudulent government filings**.

**Deadline:** The Court shall **order discovery within five (5) business days** of granting this motion, with compliance required **within ten (10) business days**.

## 3. Immediate Evidentiary Hearing to Determine Government Misconduct and Fraud

Given the **pattern of concealment, misrepresentations, and selective prosecution**, Defendant requests the Court to **subpoena the following witnesses** for an evidentiary hearing:

- **AUSA Anthony Torntore**: To testify on reasons for disparate charging decisions.
- **FBI/IRS Agents**: To clarify whether the tax charges were selectively applied.
- **Defense Counsel (Carlton Fields, Stone Magnanini, Boies Schiller Flexner LLP)**: To determine ineffective assistance of counsel claims.
- **DOJ Internal Review Witnesses**: To determine whether selective prosecution concerns were internally reviewed.

Defendant requests that this Court **schedule an evidentiary hearing** to determine the extent of:

- Why similarly situated individuals (Medlin, Hidalgo, Fairclough) were not charged.
- The Government's **failure to disclose critical records** related to charging decisions.

- **The concealment of exculpatory evidence**, including investigative reports and plea deal inconsistencies.
- **The addition of supposed tax charges** as a coercive tool to extract a plea.
- **Fraud and fraud on the court**, including false representations regarding Defendant's prosecution and pretrial conditions.
- Prosecutorial misconduct, fraud, and perjury in government filings.
- Selective prosecution and whether Defendant was **intentionally chosen as a test case or showcase prosecution.**
- Whether the decision to prosecute Defendant before others was **motivated by personal/political biases, emotions, or external pressures.**
- Any improper influence, including **jealousy, career motivations, or retaliation, that played a role in Defendant's selective prosecution.**

An evidentiary hearing is **essential to determine the full extent of prosecutorial misconduct and fraud** in this case.

**Deadline:** The Court shall **set a hearing date within ten (10) days** of granting this motion.


## 4. Hold a Show Cause Hearing for AUSA Anthony Torntore

This hearing shall be scheduled **after the conclusion of the evidentiary hearing** to ensure that all relevant findings are established before requiring AUSA Torntore's response.

Defendant requests a **preliminary inquiry** into whether:

- AUSA Torntore's decisions warrant a **formal prosecutorial misconduct review** under *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993).
- **Explain why exculpatory evidence was withheld**, why **fraudulent records were allowed to stand unchallenged**, and whether this constitutes **prosecutorial misconduct**.
- **Clarify whether his actions were driven by personal/political biases, emotions, or external pressures, rather than objective legal reasoning.** If so, what were these influences, and how did they impact his prosecutorial decisions?
- **Explain why improper influences—including jealousy, career motivations, or retaliation—factored into Defendant's selective prosecution.** Were these considerations explicitly discussed within the prosecution team?
- **Justify whether prosecutorial discretion in this case was exercised fairly and lawfully, or whether external or personal factors led to the disparate treatment of Defendant.** If selective enforcement occurred, what was the basis for targeting Defendant over similarly situated individuals?

This hearing is critical to ensuring **accountability and transparency** in the prosecution's decision-making and determining whether AUSA Torntore's conduct violated **due process, ethical obligations, and the integrity of judicial proceedings.**

**Deadline:** The Court shall **schedule this hearing within ten (10) days** following the evidentiary hearing.

## 5. Impose Sanctions & Refer DOJ Officials for Criminal Investigation

The Government's **egregious misconduct and repeated discovery violations** warrant sanctions. Defendant respectfully requests that this Court:

- **Impose sanctions against the prosecution** for failure to comply with discovery obligations.
- **Issue an adverse inference ruling**, recognizing that the Government's failure to disclose materials suggests that the withheld evidence is favorable to Defendant.
- **Refer DOJ officials for investigation** into potential obstruction of justice, Brady violations, and other prosecutorial misconduct.

If the Court finds discovery violations, Defendant requests **one or more of the following sanctions**:

- **An adverse inference instruction** that missing evidence would have been favorable to the defense (*United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008)).
- **Monetary sanctions** against the Government for noncompliance.
- **Judicial censure** of prosecutorial actions.

**Deadline:** The Court shall **issue a ruling on sanctions within fourteen (14) days** of the evidentiary hearing.

## 6. Additional Judicial Actions

To uphold the integrity of the judicial process and hold government officials accountable for their **fraudulent conduct and obstruction of justice**, the Court shall:

1. **Refer all responsible DOJ officials for criminal investigation** under:
   - **18 U.S.C. § 1001** (False Statements) for knowingly making false representations to the Court.
   - **18 U.S.C. § 1519** (Obstruction of Justice) for suppressing exculpatory evidence, falsifying investigative records, and misleading judicial proceedings.
2. **Issue sanctions and initiate contempt proceedings** against DOJ officials who knowingly engaged in:
   - The **suppression of exculpatory evidence**, violating Brady v. Maryland, 373 U.S. 83 (1963).
   - The **falsification of records**, constituting fraud on the court.
   - The **obstruction of judicial proceedings** through deliberate misrepresentation and misconduct.
3. **Determine whether DOJ officials may be subject to civil liability** under **Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)** for **violating Defendant's constitutional rights** through:
   - **Selective prosecution and retaliatory legal actions.**

- ○ **Deprivation of due process through fraudulent concealment of evidence.**
- ○ **Knowingly imposing harsher legal consequences on Defendant than similarly situated individuals.**

This Court has the authority and obligation to ensure that prosecutorial misconduct, **fraud on the court, and obstruction of justice are not tolerated**. The requested judicial actions will **serve as a necessary deterrent against further abuses of power by the DOJ** and uphold Defendant's constitutional rights.

## 7. Request for Court-Ordered Corrective Public Statement

Defendant has suffered **irreparable reputational damage** due to the **fraud, perjury, and false statements made by the prosecution**, which were **widely reported in the media**. These knowingly **misleading narratives created public bias** and have caused severe **personal, professional, and financial harm** to Defendant.

If the **Show Cause Hearing for AUSA Anthony Torntore** and the **Evidentiary Hearing on Prosecutorial Misconduct** confirm that the **Government engaged in fraud, perjury, and suppression of exculpatory evidence**, then the Court shall order the prosecution to:

1. **Issue a Corrective Public Statement**
   - ○ The **Government shall publish a court-approved statement** in at least **three (3) major newspapers** acknowledging that:
     - ■ **Significant prosecutorial misconduct occurred.**
     - ■ **Exculpatory evidence was withheld.**
     - ■ **The Government misrepresented material facts** about Defendant's role in the case.
   - ○ The content of this statement **must be reviewed and agreed upon by Defendant** before publication.
   - ○ **Deadline:** The Government shall publish the statement **within ten (10) business days** of the Court's determination of misconduct.
2. **Provide a Formal Court Record of the Government's Wrongdoing**
   - ○ The **Court shall issue a written judicial opinion** recognizing that **false and misleading information** was used against Defendant and that these errors must be publicly acknowledged.
   - ○ **Deadline:** The Court shall issue this finding **within fourteen (14) days** of concluding the Show Cause and Evidentiary Hearings.
3. **Prohibit the DOJ from Further Defamatory Public Statements**
   - ○ The **DOJ shall be barred from making further misleading public claims** regarding Defendant's role in the case.
   - ○ Any **future DOJ press releases regarding Defendant must be reviewed by the Court** to prevent additional reputational harm.
   - ○ **Deadline:** The Court shall impose this restriction **immediately upon confirming prosecutorial misconduct** and enforce it **for a period of no less than five (5) years**.

## 8. Immediate Termination of Bail Conditions Due to Government Misconduct

Defendant respectfully **renews his request** for the **immediate termination** of all pretrial bail conditions due to **prosecutorial misconduct, fraud on the court, and perjury**. The **Government's misconduct has irreparably tainted the pretrial process**, making any further restrictions on Defendant's liberty legally unjustifiable.

For over **five (5) years**, Defendant has remained under **severe and excessive pretrial restrictions**, despite the following:

- **The Government's suppression of exculpatory evidence**, which would have directly impacted pretrial release determinations.
- **Fraudulent representations to the Court regarding risk assessments**, misleading the Court into imposing harsher bail conditions than warranted.
- **Perjured statements by the prosecution** falsely claiming Defendant posed a **flight risk and danger to the community**, while similarly situated co-defendants were granted pretrial release under significantly **less restrictive conditions**.
- **Selective enforcement of bail conditions**, subjecting Defendant to harsher restrictions than **Russ Medlin, Joseph Abel, or other BCN defendants**, despite their more prominent managerial roles in the alleged offenses.
- **J. Oh, Vausē, Rojo, Ayodele Onesimus Adeoye** despite their significant roles in managing customers and operations or promoting BCN were not prosecuted.

**Given the severity of the misconduct and the constitutional violations surrounding Defendant's pretrial detention, Defendant respectfully requests that the Court Immediately Terminate All Bail Conditions.**

**Deadline for Ruling:** Given the **extensive evidence of prosecutorial misconduct**, Defendant **requests that the Court rule on this request within seven (7) days** of granting this motion. Any further delay **continues to violate Defendant's constitutional rights** and exacerbates the harm caused by the Government's misconduct.

**Legal Basis for Bail Termination Request**

- **Fraud on the Court & Perjury**: The Government has knowingly made false representations regarding Defendant's bail conditions, violating *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (*fraud on the court*).
- **Brady Violations & Prosecutorial Misconduct**: The failure to disclose exculpatory evidence justifies reconsideration of bail restrictions under *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008).
- **Excessive & Unjustified Bail Conditions**: Prolonged pretrial restrictions violate *United States v. Salerno*, 481 U.S. 739 (1987), which requires bail conditions to be narrowly tailored and not excessive.

- **Selective Enforcement of Bail Restrictions**: The DOJ has imposed disproportionately severe conditions on Defendant compared to other BCN defendants, violating *United States v. Armstrong*, 517 U.S. 456 (1996), and *United States v. Bass*, 536 U.S. 862 (2002).

Defendant's continued pretrial restrictions are no longer legally justified due to:

- The prosecution's **fraud on the court and Brady violations**, which undermine all prior representations regarding bail risk.
- The **disparate treatment** of Defendant compared to co-defendants, many of whom were granted more favorable pretrial conditions despite greater managerial roles in BCN.
- The **constant changes of the sentencing date**, resulting in a **de facto pretrial punishment** rather than actual supervision.

# VI. LEGAL BASIS

**Selective Prosecution & Equal Protection Violations**

- **United States v. Armstrong, 517 U.S. 456 (1996)** – Standard for obtaining discovery in selective prosecution claims.
- **Oyler v. Boles, 368 U.S. 448 (1962)** – Selective prosecution violates equal protection when individuals engaged in similar conduct are treated differently without a rational basis.
- **United States v. Bass, 536 U.S. 862 (2002)** – Selective enforcement of laws may violate equal protection if there is evidence of racial or arbitrary discrimination.

**Due Process & Prosecutorial Misconduct**

- **Brady v. Maryland, 373 U.S. 83 (1963)** – The government must disclose all evidence favorable to the defendant.
- **Napue v. Illinois, 360 U.S. 264 (1959)** – Knowingly using false testimony violates due process.
- **United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)** – The misrepresentation and omission of exculpatory evidence by the prosecution can warrant case dismissal.
- **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** – Fraud on the court occurs when the government engages in deliberate deception to improperly influence judicial proceedings.
- **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)** – Brady violations justify reconsideration of bail restrictions and may require case dismissal.
- **United States v. Marion, 404 U.S. 307 (1971)** – Unreasonable prosecutorial delays that prejudice the defense violate due process.

Docusign Envelope ID: EDED8AE5-5F29-4688-AC67-5DD3DAEBD059

**Pretrial Detention & Bail Violations**

- **United States v. Salerno, 481 U.S. 739 (1987)** – Pretrial detention must be justified by individualized risk assessments and cannot be used as a coercive tool.
- **United States v. Montalvo-Murillo, 495 U.S. 711 (1990)** – Bail conditions must be reassessed if pretrial detention becomes punitive.
- **Zedner v. United States, 547 U.S. 489 (2006)** – The Speedy Trial Act protects defendants from prolonged pretrial detention without trial.
- **United States v. Marion, 404 U.S. 307 (1971)** – Unreasonable prosecutorial delays that prejudice the defense violate due process.
- **Betterman v. Montana, 578 U.S. 437 (2016)** – Prolonged sentencing delays may violate due process if used to gain strategic advantage rather than serving judicial purposes.
- **Zedner v. United States, 547 U.S. 489 (2006)** – The Speedy Trial Act protects defendants from prolonged pretrial detention without trial.

**Grand Jury Disclosure & Charging Disparities**

- **United States v. Williams, 504 U.S. 36 (1992)** – The government may not mislead the grand jury or selectively present evidence.
- **United States v. R. Enterprises, Inc., 498 U.S. 292 (1991)** – A defendant may obtain grand jury records when there is a particularized need to investigate prosecutorial misconduct.
- **Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 (1979)** – Grand jury materials may be disclosed when there is a compelling need, such as uncovering prosecutorial misconduct.
- **United States v. Lovasco, 431 U.S. 783 (1977)** – Prosecutorial delays must be reasonable and not used for strategic advantage.
- **Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 (1979)** – Grand jury materials may be disclosed when there is a compelling need, such as uncovering prosecutorial misconduct.

**Coercive Plea Negotiations & Ineffective Assistance of Counsel**

- **Bordenkircher v. Hayes, 434 U.S. 357 (1978)** – Prosecutors cannot threaten increased charges to force a guilty plea.
- **Strickland v. Washington, 466 U.S. 668 (1984)** – A defendant is entitled to relief if counsel's errors prejudiced the case, including failure to challenge selective prosecution or undue plea pressure.
- **Weatherford v. Bursey, 429 U.S. 545 (1977)** – The government may not manipulate detention conditions to obstruct a defendant's legal rights.
- **United States v. Henry, 447 U.S. 264 (1980)** – Government interference with a defendant's right to a fair trial violates due process.

Docusign Envelope ID: EDED6AE5-5F39-4688-AC67-5DD3DAEBD059

**Respectfully submitted,**

**Jobadiah Weeks, Pro Se**

Electronically Signed via DocuSign

Date: March 2, 2025



**Address:**

11627 West 74th Way

Arcada, Colorado 80005

**E-mail:** silenceweeks1@gmail.com

Exhibits Attached:

- **Exhibit A:** Letter to AUSA Anthony Torntore, dated February 21, 2025 (Selective Prosecution & Fraudulent Misconduct Request)
- **Exhibit B:** Letter to AUSA Anthony Torntore, dated February 26, 2025 (Seized Assets Demand)
- **Exhibit C:** Letter to AUSA Anthony Torntore, dated February 27, 2025 (Bail Conditions & Selective Pretrial Detention)
- **Exhibit D:** Letter from Attorney David Stone, dated September 5, 2024 (IRS & Grand Jury Materials Request)
- **Exhibit E:** Plea Agreement Jobadiah Weeks, dated September 21, 2020 (Docket Entry 148)
- **Exhibit F:** Plea Agreement Joseph Frank Abel, dated August 5, 2020
- **Exhibit G:** Pre-Sentencing Report (PSR) (Docket Entry 384, Jan. 7, 2025)
- **Exhibit H:** Treasury Proffer Memoranda (Aug. 17 & 25, 2020)
- **Exhibit I:** Plea Agreement Silviu Catalin Balaci dated (Docket Entry 112, April 28, 2020)
- **Exhibit J:** Certificate of Service