

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Anthony Torntore*  *970 Broad Street, 7th floor*
*Assistant United States Attorney*  *Newark, New Jersey 07102*   Direct dial: (973) 645-2700

April 22, 2025

Honorable Claire C. Cecchi
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    <u>**United States v. Jobadiah Sinclair Weeks**</u>
              **Crim. No. 19-877 (CCC)**

Dear Judge Cecchi:

      The Government submits this letter brief in opposition and in response to the various motions and filings submitted by Defendant Jobadiah Sinclair Weeks (*see* Dkt. Nos. 396, 400, 401, 402, 403, 404, 406, and 407) in which Weeks seeks various relief, including: (1) "recission of autograph" on Weeks' plea agreement;[1] (2) dismissal of the charges contained in the Indictment and Information as they relate to Weeks; (3) production of certain discovery materials; and (4) modification of pretrial conditions. For the reasons set forth herein, Weeks' motions are without merit. Accordingly, the Government requests that the Court deny Weeks' motions and proceed to sentencing.

      **I.**    **Factual and Procedural Background**

      This case involves Weeks' participation in the BitClub Network ("BCN"), a worldwide fraud scheme predicated on cryptocurrency mining that took place between 2014 and 2019. BCN was co-created in 2014 by Matthew Goettsche ("Goettsche"), Russ Medlin ("Medlin"), and Silviu Catalin Balaci ("Balaci"). Medlin helped Goettsche create BCN's compensation plan for its recruiters and was also the

---

[1] For the purpose of this response, the Government is considering Weeks' motion for "recission of autograph" as a motion to withdraw his guilty plea.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 2

public face of BCN's sales pitches. Balaci, a computer programmer, worked at Goettsche's direction as the programmer for BCN's web platforms.

Weeks and another co-defendant, Joseph Abel ("Abel"), among others, promoted BCN to prospective investors around the world, both online and in person, and sold shares in BCN knowing that hopeful investors were purchasing those shares based on various misrepresentations. Through the efforts of the co-conspirators, including Weeks, BCN took in hundreds of millions of dollars from investors. Weeks' involvement in BCN also largely involved Weeks attempting to thwart U.S. regulation, tax liabilities, and detection, and encouraging others to do the same. Throughout the course of the conspiracy, Weeks encouraged potential U.S.-based investors to utilize virtual private networks ("VPNs") to access BCN's website to avoid detection by U.S. law enforcement and to promote the anonymity of the scheme.

Despite making millions of dollars through his promotion of BCN, Weeks (a U.S. citizen) did not report any of that income to the Internal Revenue Service, including: (a) commissions and mining payments awarded to Weeks' BCN account and withdrawn by him, and (b) commissions earned by Weeks through the brokerage of bitcoin mining contracts with third-parties on behalf of BCN, for tax years 2015 through, and including, 2018. This resulted in Weeks avoiding the payment of more than $7 million in taxes.

On December 5, 2019, a federal grand jury returned a two-count Indictment (the "Indictment") charging Weeks, Goettsche, Medlin, Abel, and Balaci with various crimes related to the BCN scheme. Count One of the Indictment charged Weeks with wire fraud conspiracy, in violation of 18 U.S.C. § 1349. Count Two of the Indictment charged Weeks with conspiring to offer or sell unregistered securities, namely, shares in BCN, contrary to 15 U.S.C. §§ 77e and 77x, in violation of 18 U.S.C. § 371.

On December 10, 2019, Weeks was arrested in Florida and detained following a bail hearing in the Southern District of Florida on December 17, 2019. Weeks' detention was continued following a bail hearing before United States Magistrate Judge Michael A. Hammer on February 13 and 14, 2020 (Dkt. 45 and 48) and was continued yet again after Weeks moved for release due to COVID-19 (Dkt. 68 and 79).

On November 5, 2020, Weeks entered a guilty plea to (a) Count Two of the Indictment (conspiracy to offer or sell unregistered securities); and (b) an Information charging him with one count of tax evasion, in violation of Title 26, United States Code, Section 7201. Dkt. 149.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 3

On November 6, 2020, Weeks was released on a $2 million bond secured by various property. Dkt. 153. In addition to the secured bond, Weeks was subjected to home incarceration with electronic monitoring, among other conditions. *Id.* During the November 6 hearing, the Government consented to Weeks' release, citing a diminished flight risk resulting from Weeks' guilty plea and the dismissal of Count One of the Indictment, which carried a 20-year maximum sentence.

On August 6, 2021, the Government moved to revoke Weeks' bail based on Weeks' promotion of investment in a cryptocurrency smart contract. In lieu of a revocation proceeding, the parties agreed to modified bail conditions, which included: (1) Weeks shall not possess a smart phone; (2) Weeks shall not use the internet to communicate with others except through certain email addresses approved by Pre-Trial Services ("PTS"); (3) Weeks shall not directly or indirectly promote or otherwise encourage others to invest in any cryptocurrency or other investment vehicle; and (4) Weeks shall not direct any other person to engage in any restricted activity.

On February 22, 2024, PTS petitioned for a violation of Weeks' pre-trial conditions based on the following: (1) Weeks' attendance, without the knowledge of PTS, at an event in Florida titled 'The Past, Present, and Future of Cryptocurrency'; (2) Weeks' use of electronic devices, including his use of the encrypted messaging application Signal; and (3) Weeks engaging in certain financial transactions, including cryptocurrency liquidation, without PTS' knowledge or consent. Dkt. 320. The Government joined in PTS' application.

On March 21, 2024, Judge Hammer held a bail revocation hearing and, following argument, denied PTS' and the Government's request for revocation. Dkt. 329. In denying the application, the Court continued Weeks' conditions and specifically admonished Weeks regarding his use of the internet and smart devices.

On November 14, 2024, the Government again moved to revoke Weeks' bail based, in part, on Weeks' continued use of a smart phone (including the Signal application) without the knowledge of PTS and in direct contravention of the Court's March 21, 2024 Order.

On February 5, 2025, Judge Hammer held a hearing at which Weeks moved to proceed *pro se*. Following a *Faretta* colloquy, the Court granted Weeks' motion and continued the hearing regarding the Government's motion to revoke, which remains pending as of the date of this letter.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 4

Between February 11, 2025 and March 7, 2025, Weeks filed several motions seeking the relief set forth above.

## II. Legal Argument

### a. Weeks' Motion to Withdraw

Before a court accepts a guilty plea, a defendant may withdraw it "for any reason or no reason." *See* Fed. R. Crim. P. 11(d)(1). But "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). The "withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice," *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985), and "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty," *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011) (quoting *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)).

Instead, Federal Rule of Criminal Procedure 11(d)(2)(B) allows Weeks to withdraw his guilty plea only if he can articulate a "fair and just reason" for doing so. Fed. R. Cim. P. 11(d)(2)(B). "The burden of demonstrating a fair and just reason falls on the defendant and is substantial." *Jones*, 336 F.3d at 252.

Specifically, the Third Circuit has prescribed a three-factor analysis governing a district court's review of motions to withdraw a guilty plea under Rule 11(d)(2)(B). As the Third Circuit explained in *Jones*, these three factors are: (1) "whether the defendant asserts his innocence"; (2) "the strength of the defendant's reasons for withdrawing the plea"; and (3) "whether the government would be prejudiced by the withdrawal." *Id*.

Because each of these three factors weigh decisively in the Government's favor, this Court should deny the motion.

> i. *Weeks Has Proffered No Sufficient Assertion of Innocence, Much Less a Credible One.*

The first factor, "whether the defendant asserts his innocence," *Jones*, 336 F.3d at 252, weighs decisively in the Government's favor. Weeks' filings fail to make any legitimate profession of innocence. Rather, Weeks' arguments, which are far from original, are replete with legal-sounding but meaningless verbiage commonly used by

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 5

adherents to the so-called "sovereign citizen" movement, which Courts throughout the country have consistently rejected. *See, e.g.*, *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241 (D.N.J. 2011) (declaring that similar sovereign citizen arguments are legally frivolous); *accord United States v. Gerads*, 999 F.2d 1255, 1257 (8th Cir. 1993) (rejecting appellants' contention that they are not citizens of the United States and thus not subject to taxation); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (describing taxpayer's assertion that he is a citizen of the "Indiana State Republic" and not a citizen of the United States as "incorrect" and a "shop worn argument of the tax protester movement"); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (characterizing a taxpayer's claim he is not subject to federal tax laws as citizen of "Republic of Idaho" as "patently frivolous" and rejecting the contention "without expending anymore of this Court's resources" on the discussion); *see also United States v. Wankel,* 475 F. App'x 273 (10th Cir. 2012) (dismissing a taxpayer's assertion that he possessed immunity from taxation because he was a "living man" and separate from the entity to whom summons had been issued); *Bendeck v. U.S. Bank Nat'l Ass'n*, No. 17-00180, 2017 WL 2726692, at *6 (D. Haw. June 23, 2017) (noting that courts have roundly dismissed the argument that a name rendered in all caps refers to a legal entity separate from the individual designated).

As the Third Circuit has further explained, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252. Instead, "assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (internal citation omitted). And beyond buttressing a claim of innocence, a movant must also "give sufficient reasons why contradictory positions were taken before the district court" at the plea hearing. *Jones*, 336 F.3d at 253 (internal quotation omitted). Weeks has failed to do so here.

Weeks states, "I am innocent of the charges" (Weeks Brief dated 2/2/25, at 15) but fails to point to a single fact or sworn statement in support of a claimed defense. This bald assertion of innocence, which is tangled up with Weeks' sovereign citizen-type arguments, is nothing more than that—a bald assertion. The only potential argument raised by Weeks amidst pages of biblical verses and unintelligible arguments regarding standing is that Weeks could not have offered unregistered securities because bitcoin is not a security. But this assertion, of course, is beside the point because Weeks is not charged with promoting bitcoin. He is charged with

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 6

promoting and offering shares in BCN, which *are* securities, a fact that Weeks admitted to during his plea colloquy while under oath and penalty of perjury:

| The Government | Defendant | Plea Tr.[2] |
|---|---|---|
| Mr. Weeks, do you agree that at various points from the time period that includes April 2014 through December 2019, you agreed with Matthew Brent Goettsche, Russ Albert Medlin, Joseph Frank Abel, and others to devise a scheme to offer and sell securities without filing a registration statement with the U.S. Securities and Exchange Commission? | "Yes." | 36:6-12 |
| Did you understand that the securities to be shares of Bitcoin mining pools purportedly owned by an entity called the BitClub Network? | "Yes." | 36:13-16 |
| Do you agree that these BitClub Network shares were, in fact, securities? | "Yes." | 36:17-19 |
| As part of the promotion of the BitClub Network, did you and others take money from investors in exchange for membership in the BitClub Network? | "Yes." | 36:20-23 |
| Did you also take money from investors as an investment for shares of mining pools that the BitClub Network purported to own and operate? | "Yes." | 36:24-25; 37:1-2 |
| And during the course of the conspiracy, do you agree that you and others promoted the sale of shares in the BitClub Network through discussions with potential investors via the internet? | "Yes." | 37:3-7 |
| And did this include creating and posting videos on the internet? | "It does." | 37:8-10 |
| Do you agree that you promoted the sale of the BitClub Network shares by giving speeches and making presentations in the United States? | "I did." | 37:11-14 |

---

[2] Weeks Plea Transcript, November 5, 2020, Attached as Exhibit A.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 7

| The Government | Defendant | Plea Tr. |
|---|---|---|
| And did you and others also promote the sale of the BitClub Network shares by giving speeches and making presentations at numerous countries overseas? | "Yes." | 37:15-18 |
| As part of the conspiracy and the promotion of the BitClub Network shares, did you and others encourage U.S. investors to utilize a virtual private network, or "VPN," to obscure their true US-based IP addresses? | "Yes." | 37:19-23 |
| Did you do this so that you, as well as your co-conspirators and the BitClub Network, could avoid detection and regulation by U.S. law enforcement? | "Yes." | 37:24-25; 38:1-2 |
| And to your knowledge, did the BitClub Network file a registration statement with the U.S. Securities and Exchange Commission? | "They did not." | 38:3-6 |
| Do you also agree that you knew at the time you and others were selling these shares that the sale of those shares was wrongful? | "Yes." | 38:7-10 |

Weeks similarly acknowledged his tax evasion conduct as charged in the Information:

| The Government | Defendant | Plea Tr. |
|---|---|---|
| With respect to the Information count. From in or about January 2015 through in or about April of 2019, did you willfully attempt to evade and defeat income taxes due and owing by you to the United States of America for the calendar years 2015, 2016, 2017, and 2018? | "Yes." | 39:7-12 |
| And during that time period, did you fail to file tax returns with the Internal Revenue Service? | "Yes." | 39:13-15 |

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 8

| | | |
|---|---|---|
| Do you agree that during that time period you earned in excess of $10 million in income, including millions of dollars in cryptocurrency? | "Yes." | 39:16-19 |
| Do you agree that you did not report any of that income to the Internal Revenue Service? | "Yes." | 39:20-22 |
| Did you commit several affirmative acts in order to evade or defeat the income taxes due by you? | "Yes." | 40:1-3 |
| Specifically, did you use a virtual private network, or "VPN," to obscure your true US-based IP addresses? | "Yes." | 40:4-7 |
| And did you do this so you could avoid detection and regulation by law enforcement? | "Yes." | 40:8-10 |
| Did you also apply for citizenship in the Federation of Saint Christopher and Nevis, also known as Saint Kitts and Nevis, in an effort to evade tax reporting requirements? | "Yes." | 40:11-15 |
| Do you agree that you also concealed income and other assets through the use of private cryptocurrency wallets? | "Yes." | 40:16-19 |

And beyond Defendant's allocutions, he signed, under penalty of perjury, an Application for Permission to Enter Plea of Guilty at the time he entered his guilty plea. Dkt. 147. In that Application, Weeks made multiple representations further acknowledging his guilt. For example, Weeks acknowledged that by pleading guilty, he would waive his right against self-incrimination, that "the judge will ask me what I did and I will have to acknowledge my guilt as charged by setting forth my actions so that the judge is satisfied that I am, indeed, guilty," and that "any statements I make at the time I plead GUILTY, if untrue and made under oath, can be the basis of a perjury prosecution against me." *Id*. at Page 3, Paragraph 22. Weeks also acknowledged that "the judge will not permit anyone to plead GUILTY who claims to be innocent, and with that in mind and because I am GUILTY, I respectfully request that the Court accept my plea of GUILTY." *Id*. at Page 6, Paragraph 43.

The factual record overwhelmingly establishes Weeks' guilt, and Weeks has not even attempted to contest anything in this record. He has furnished no

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 9

supplemental factual record establishing a "credible profession of actual innocence," *Sgarlat*, 705 F. Supp. 2d at 355, nor even requested leave to do so. Weeks' profession of innocence is not merely deficient—it is entirely nonexistent. The first *Jones* factor, therefore, weighs decisively in the Government's favor.

ii. *None of Defendant's Proffered Reasons Justify Withdrawal.*

The second Jones factor, "the strength of the defendant's reasons for withdrawing the plea," *Jones*, 336 F.3d at 252, also weighs decisively in the Government's favor. Weeks submits that his plea of guilty was not made knowingly, intelligently, and voluntarily because it was submitted "under duress so that I could get bail (which was denied to me several times), have the cruel and unusual punishment end, be reunited with my family, and not die of Covid!" Weeks Brief dated 2/21/25 at 16. According to Weeks, this duress caused him to lie to this Court while under oath during his plea hearing and "falsely admit[] that 2+2=5." *Id.* at 17.

But Weeks' contention that he was forced under duress to enter a guilty plea is belied by the record. Indeed, Weeks stated the opposite under oath during his plea hearing:

| The Court | Defendant | Plea Tr. |
|---|---|---|
| Did anyone physically threaten you, verbally threaten you or threaten you in any way in order to have you sign the Plea Agreement and enter a plea of guilty? | "No." | 18:1-4 |
| Did you sign the document voluntarily? | "I did." | 18:5-6 |

At the conclusion of the hearing, the Court again asked Weeks why he was pleading guilty:

| The Court | Defendant | Plea Tr. |
|---|---|---|
| Why did you decide to enter the plea of guilty, because you're, in fact, guilty or for some other reason? | "Because I'm guilty." | 42:7-10 |

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 10

The Court made the same inquiry of Weeks' counsel who was perhaps best positioned to know whether Weeks was entering his plea under duress:

| **The Court** | **Counsel** | **Plea Tr.** |
|---|---|---|
| Let me turn to Defense Counsel.  Are you satisfied that the plea is entered entirely voluntarily, is entered by the Defendant with full knowledge of his rights and his responsibilities? | "Yes, your honor." | 42:15-18 |

Additionally, Weeks declared in his Application for Permission to Enter Plea of Guilty that he was not "forced coerced or threatened in any manner by any person to plead GUILTY to these charge(s)," Dkt. 147 at Page 5, Paragraph 36, and that he "freely and voluntarily" offered his plea of guilty, *Id.* at Page 6, Paragraph 44.

Perhaps most enlightening, Weeks engaged in a proffer session[3] with the Government on August 12, 2020, more than a month before signing a plea agreement and nearly three months prior to entering his guilty plea before this Court.  *See* Exhibit D to Weeks Brief dated 2/21/25. During that proffer session, Weeks acknowledged—again—having promoted and offered shares in BCN to investors in the United States.  *Id.*  Weeks further acknowledged knowing that BCN was not registered with the SEC at the time he promoted investment in BCN.  Weeks recalled a dinner where he introduced Goettsche and Medlin to an individual named Brock Pierce, who was at the time a member of the board of directors of the Bitcoin Foundation, a non-profit organization founded in 2012 to boost the reputation of cryptocurrency.  *Id.*  According to Weeks, Pierce advised Goettsche and Medlin that he (Pierce) believed that "the SEC would see BCN as selling securities" based on recent litigation regarding a similar cryptocurrency mining pool.  *Id.*  Weeks further stated that following this conversation, BCN began to block U.S.-based IP addresses from accessing BCN's website.  *Id.*  Weeks nevertheless encouraged investors to use a VPN to avoid this restriction and continued to promote BCN even after learning that it would likely be considered a security by the SEC under the *Howey* test.  *Id.*

---

[3] Weeks attached a report of the August 12, 2020 proffer to his brief dated February 21, 2025.  Nevertheless, per the parties' proffer agreement, the Government is permitted to use Weeks' proffer statements to rebut any arguments made by him, including, as here, that his plea colloquy was given under duress.

Weeks' admissions during his proffer in August 2020 are consistent with the admissions he made under oath in November 2020. Weeks' claims of duress and actual innocence are therefore severely undercut by the timing and nature of his proffer.

As this Court is aware, Weeks has also moved for a dismissal of the charges against him. However, because Weeks has pled guilty and been convicted on those charges, this Court can not address Weeks' motion to dismiss unless it were to allow Weeks to withdraw his plea. However, this Court can and should consider Weeks' motion to dismiss in the context of the second *Jones* factor. Specifically, this Court should consider whether Weeks' motion to dismiss would potentially have any merit so as to serve as a reason to allow Weeks to withdraw his guilty plea. But it does not. Much like his motion to withdraw, Weeks' motion to dismiss is riddled with unintelligible and frivolous sovereign citizen-style rhetoric. Accordingly, nothing in Weeks' filings could be viewed as a legitimate basis for dismissal (e.g., an authentic argument regarding the constitutionality of the statutes under which Weeks has been charged. *See Class v. United States*, 538 U.S. ___ (2018)).

Based on the foregoing, none of the proffered reasons put forth by Weeks justify allowing a withdrawal of his guilty plea. Accordingly, the second *Jones* factor weighs in favor of denying Weeks' motion.

### iii. *The Government Would Suffer Prejudice.*

Because Defendant is "unable to support claims of actual innocence or present adequate reasons for withdrawal of [his] guilty plea[], the government is not required to show prejudice." *United States v. Schwartz*, 403 F. App'x 781, 786 (3d Cir. 2010) (citing *United States v. Wilson*, 429 F.3d 455, 460 n.5 (3d Cir. 2005)); *Jones*, 335 F.3d at 255. But because the Government would be prejudiced by the withdrawal of Defendant's guilty plea, this factor also supports denial of Weeks' motion.

The offense conduct in this case happened between six and ten years ago. Witnesses' memories have certainly faded and certain witnesses are no longer available. While preparation for every trial requires a significant amount of time and resources, preparing for a trial in this matter—which involved thousands of victims located around the world, among other complexities—would be particularly arduous. The passage of time therefore impairs the Government's ability to try this case and would cause undue cost and inconvenience to the Government. *See United States v. Tulu,* 535 F. Supp. 2d 492, 505 (D.N.J. 2008) (likelihood of fading memory of Government witnesses works a prejudice on the Government); *see also Feliz*, 2019 WL 6496932, at *24 ("One form of prejudice is, of course, the simple passage of time.");

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 12

*United States v. Cox*, No. 11-99 (JLL), 2012 WL 3079177, at *9 (D.N.J. July 30, 2012), *aff'd,* 553 F. App'x 123 (3d Cir. 2014) ("Increased cost and inconvenience to the government are grounds for finding prejudice, as are the diminished memory and incentive to cooperate of Government witnesses.") (citation omitted).

Because Weeks has failed to support any claims of innocence and has not provided a fair and just reason to withdraw his guilty plea, prejudice to the Government is not a determinative factor. If the Court considers it at all, it is one more reason to deny the motion.

      b. <u>Weeks' Motions to Compel Discovery</u>

Weeks has additionally moved to compel the Government to provide certain discovery to which he is not entitled under the Rules of Criminal Procedure. Specifically, Weeks has made requests for such records as "DOJ communications about plea negotiations, charging decisions, and witness interactions" as well as "DOJ and FBI internal records evaluating the government's charging rationale; [and] all documents discussing the placement of [Weeks] near key witnesses." Such materials are specifically excepted under Rule 16(a)(2). *See United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 1485, 134 L.Ed.2d 687 (1996) ("under Rule 16(a)(2), [a criminal defendant] may not examine Government work product in connection with his case."); *see also* *221 *Gov't of Virgin Islands v. Fahie,* 419 F.3d 249, 257 (3d Cir.2005) ("The exception in Rule 16(a)(2) applies to work product.").

The Court should therefore deny Weeks' motion to compel discovery as it relates to Government work product to which Weeks is not.

      c. <u>Weeks' Motion for Modification of Pretrial Conditions</u>

Weeks has further requested that this Court eliminate the current conditions of Weeks' pretrial release. The Court should deny Weeks' motion. On November 14, 2024, the Government moved to revoke Weeks' bail based on his continued violation of pretrial conditions, namely his use of smart phones and the internet and his promotion of investments, all in contravention of Judge Hammer's previous Orders. While the Government's motion remains pending, the Government maintains that Weeks' bail should be revoked—his continued flouting of the Court's Orders and deception towards Pre-Trial Services shows that Weeks has no intention of abiding by any conditions of release and will continue to violation whatever conditions are put in place. At a minimum, Weeks' conditions should be continued and his motion to eliminate all conditions of release should be denied pending sentencing.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 13

### III.    Conclusion

For the foregoing reasons, the Court should deny each of Weeks' pending motions and schedule this matter for sentencing.

          Respectfully submitted,

          ALINA HABBA
          United States Attorney

By: _____
     ANTHONY TORNTORE
     Assistant United States Attorney

cc:   Jobadiah Sinclair Weeks, *pro se*
       Ernesto Cerimele, Esq., standby counsel