**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

United States of America,
Plaintiff,

v.

Jobadiah Sinclair Weeks,
 Defendant.

**The Honorable Michael A. Hammer**
United States Magistrate Judge
Martin Luther King Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

**DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE AND FOR EXPEDITED CONSIDERATION**

**COMES NOW** the Petitioner, Jobadiah Sinclair Weeks, pro se, and respectfully moves this Honorable Court to modify the current conditions of release pursuant to 18 U.S.C. § 3145(a)(2) and § 3142(c), and further requests expedited consideration of this motion for the reasons set forth below:

# I. Grounds for Modification

1. On **May 20, 2025**, the Court held a hearing addressing **conditions of release** and entered an order the same day (**Dkt. 439**). While the Petitioner expressed appreciation for the Court's ruling at the time, the actual conditions of release have since **worsened**. Following the hearing, **Pretrial Services and/or the Government** imposed new restrictions—including **eliminating access to outdoor areas**, **adding an additional 8 drug tests a month**, and **denying necessary family/medical related permissions**—that were **not addressed by the Court's order** and **lacked any documented violation or changed risk**. These developments **increase the burden of supervision** and **warrant judicial review**.

2. Since that hearing, the Petitioner remains under highly restrictive conditions, including **GPS location monitoring** and a **third-party custodian**. Meanwhile, co-defendant **Matthew Goettsche**—the principal actor in the alleged conspiracy—has recently been granted materially improved bail conditions by this Court (**see Dkt. 456, Order dated June 27, 2025**), including: (1) **removal of GPS monitoring**, (2) **elimination of the third-party custodian requirement**, (3) authorization to travel throughout the contiguous United States with Pretrial approval, and (4) permission to use the internet via one monitored device. These modifications underscore the disparity in treatment and further support the need for a **proportional adjustment** in the Petitioner's conditions.

3. Petitioner held **no ownership or managerial control** over the **BitClub Network**, a fact **acknowledged in both the original indictment and subsequent court filings**. His role was **peripheral**, involving **promotional activities.**

4. **Equal protection** and **proportionality principles** weigh in favor of revisiting Petitioner' conditions of release. **The disparity** between his restrictions and those granted to Mr. Goettsche **lacks justification**.

5. The least restrictive means **test under 18 U.S.C. § 3142(b)-(c) further supports the Petitioner's request**. Less restrictive conditions have been found sufficient for a more centrally charged co-defendant.

6. In addition, the Petitioner has **complied fully with all bail conditions** and has **no history of flight or danger to the community**. Notably, following the **May 20, 2025 hearing**—despite the Court's **favorable ruling**—**new restrictions were imposed**, apparently by **Pretrial Services and/or at the Government's request**, that were **not addressed in the Court's order**. These included:
    a. **eliminating access to the outdoor facilities** in Petitioner's building
    b. **increasing drug testing** from once per month to eight times per month, and
    c. **Imposing stricter internal limitations without any documented violation or changed risk assessment,** (see **Exhibit: Letter to AUSAs Limbachia and Eicher, July 13, 2025**).

7. One such restriction came to light on **July 3, 2025**, when **Pretrial Services initially denied** the Petitioner permission to accompany his **newborn child and recovering wife** to a scheduled **pediatric appointment**. The Petitioner was informed by **Officer Francis** that such a medical visit was not considered a "**necessity**," and that **court approval would be required** (see **Exhibit B**). This denial was later **reversed** by Officer Hernandez but **only after the appointment had been missed**. Despite copying the AUSAs on the urgent request, **no Government response was received**. These developments were **not judicially ordered**, yet **significantly increased the burden of pretrial supervision** and **contributed to the disparity** between Petitioner's treatment and the more favorable conditions granted to co-defendant **Goettsche**.

.

8. These restrictions have had quiet but profound consequences. For several months, **a six-year-old girl named Liberty has lived without the presence of her father**—not because of any wrongdoing she understands, but due to conditions the Government has imposed without proof of danger, flight risk, or violation. At her age, absence is not processed through legal standards but through unanswered questions and the ache of disconnection. A justice system that respects perspective, inquiry, and honest accountability—as Mr. Limbachia has credited Rutgers for instilling—must consider not only rules but human outcomes. **No principle of fairness is served by needlessly severing a bond so vital and so blameless.**

## II. Notice of Delay and need for Expedited Consideration

9. Six weeks ago, on **June 4, 2025,** Petitioner filed a **motion to modify conditions of release** (**Dkt. 444**), which addressed **due process concerns**, **statutory maximums**, and **compliance history**. He also filed a **detailed reply** to the Government's opposition on **June 18, 2025** (**Dkt. 450**), **rebutting the prosecution's arguments**, emphasizing the **lack of verified victim loss**, and reiterating the **legal and factual basis** for terminating pretrial restrictions. That reply also highlighted **unequal treatment** in comparison to the Court's **recent bail modification** for co-defendant **Goettsche**.

10. Since the filing of **Dkt. 444**, no **ruling has been issued**. Notably, the Government has also failed to respond to **Dkt. 435 (May 16, 2025)**, despite **assurances made in open court** by **AUSA Trombly** that a response would be forthcoming.[1] That continued silence, despite the Government's own commitment, further highlights the **procedural imbalance** and **lack of urgency** shown in addressing Petitioner's requests for relief.

11. Under **standard pretrial procedures**, particularly when liberty interests are implicated, courts are expected to issue rulings on bail matters within a **reasonable timeframe**.

12. Given the disparity in treatment between co-defendants and the passage of time, the Petitioner respectfully requests **expedited consideration** of this Motion pursuant to

---

[1] The principle that justice must be both timely and impartial traces back to the **Magna Carta (1215)**, issued by **King John of England**, which declared: *"To no one will we sell, to no one deny or delay, right or justice."* This foundational doctrine shaped Anglo-American legal tradition and directly influenced the **U.S. Constitution's due process protections**, including the right to a speedy trial. The sentiment was later distilled by **William E. Gladstone**, 19th-century British Prime Minister, into the widely cited maxim: *"Justice delayed is justice denied."*

*(See also* **Strunk v. United States**, 412 U.S. 434, 439 (1973) *("[T]he right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment.").).*

3

the Court's inherent authority to manage its docket and protect the due process rights of the accused.

13. A supporting letter reflecting the **Petitioner's spiritual and moral concerns** regarding this continued restriction was emailed to the AUSAs on **July 13, 2025**, and is included here as **Exhibit A**. The letter emphasizes **the human and negative health cost of ongoing ankle monitoring and custodial constraints**, especially given Petitioner's **peripheral role, recent fatherhood**, and full compliance record. It also raises the broader principle that justice must reflect not only the law, but fairness in its application.

## III. Petition for Relief

**WHEREFORE**, for the foregoing reasons, the Petitioner respectfully requests that this Honorable Court:

1. **Expedite review and disposition** of this motion in light of the prolonged delay, inconsistent treatment, and significant constitutional interests at stake;

2. **Enforce the Court's May 20, 2025 Order** by removing non-judicial restrictions imposed afterward—specifically:

   - The **denial of access to outdoor facilities**;
   - The **increase in drug testing frequency** from once per month to eight times per month;
   - Other internal restrictions that were **neither authorized by the Court nor based on any violation or updated risk assessment**.

   These restrictions conflict with the Court's intent and ruling on May 20, and impose unnecessary burdens without judicial basis.

3. **Modify the Petitioner's remaining conditions of release** to, at a minimum, match those recently granted to co-defendant Goettsche, including:

   - Conversion of curfew monitoring to **standalone electronic monitoring**;
   - **Elimination of the third-party custodian requirement**;
   - **Expansion of travel authorization** to the contiguous United States with Pretrial approval upon submission of a detailed itinerary; and
   - **Permission to use one internet-enabled device** with access monitored and pre-approved by Pretrial Services.

4. **Remove the ankle bracelet (location monitoring) entirely**, as it is no longer justified based on Petitioner's background, role in the case, and full compliance. Unlike co-defendant Goettsche—identified as a founding member of BitClub Network—**Petitioner held no ownership or managerial authority** and functioned solely as a **peripheral promoter**, a distinction acknowledged in the indictment and court filings. He has demonstrated **consistent compliance**, poses **no flight risk**, and is a **present and engaged father** to a newborn and a six-year-old child.

   **A medical attestation dated July 8, 2025 (see Exhibit C) confirms that continued use of the ankle bracelet is harmful to Petitioner's health and well-being.** In light of this, and under the principles of proportionality, due process, and the Bail Reform Act, Petitioner respectfully submits that this extreme restriction is unwarranted and should be lifted.

## IV. Statement of Intent and Respect

On **July 13, 2025**, Petitioner sent a letter (**attached as Exhibit A**) to AUSA Vinay Limbachia and AUSA Ingrid Eicher. That letter did not present legal demands; it invited **moral reflection** on the continued disparity in bail conditions between myself and Mr. Goettsche.

In writing it, **Petitioner was mindful of Mr. Limbachia's own words**, published by Rutgers University[2]:

> *"The biggest gift Rutgers gave me is a mindset that values perspective, respect, and honest debate. Philosophy taught me to ask the right questions. Law taught me how to find the answers."*

**This motion is submitted in that same spirit.** Petitioner is asking the Court to apply equal treatment under the Bail Reform Act, principles of proportionality, and the precedent already set in this case. Petitioner raises these questions in pursuit of fairness—and in the belief that answers, when given, still matter. Petitioner remains fully compliant and available to discuss or clarify any aspect of this motion at the Court's convenience.

---

[2] https://sas.rutgers.edu/about/news/alumni/alumni-news-detail/vinay-limbachia

/s/ Jobadiah Sinclair Weeks
**Jobadiah Sinclair Weeks**
Pro Se Defendant
*Signed by DocuSign*
Dated: July 15, 2025
2301 Collins Avenue
Miami Beach, FL 33139
silenceweeks1@gmail.com



**Exhibits Attached:**

- **Exhibit A** – Letter to AUSAs Limbachia and Eicher (July 13, 2025)
- **Exhibit B** – July 3, 2025 email regarding denied pediatric appointment access
- **Exhibit C** - July 8th, 2025 Doctors prescription.

6

# Exhibit A

Letter to AUSAs Limbachia and Eicher (July 13, 2025)

# Exhibit B

July 3, 2025 email regarding denied pediatric appointment access

# Exhibit C

July 8th, 2025 Doctors prescription