**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 19-877 |
| v. | |
| JOBADIAH SINCLAIR WEEKS, | **OPINION & ORDER** |
| Defendant. | |

**CECCHI**, **District Judge.**

Before the Court are numerous motions filed by pro se defendant Jobadiah Sinclair Weeks ("Weeks" or "Defendant"), including: a motion to dismiss and an amended motion to dismiss (ECF Nos. 396, 400), a second motion to dismiss count one of the indictment (ECF No. 451), a second motion to dismiss count two of the indictment (ECF No. 453), a motion to withdraw his plea of guilty (ECF No. 401), motions to compel discovery (ECF Nos. 402, 403, 406, 477), a motion to expedite a ruling on a motion to compel discovery (ECF No. 404), a motion to stay (ECF No. 430), a motion to withdraw the motion at ECF No. 396 (ECF No. 442), a motion for return of seized assets (ECF No. 446), a motion for leave to file supplemental memorandum (ECF No. 452), a motion to seal (ECF No. 466), a motion to compel "prompt ruling on limited disclosure relief" as described in ECF No. 448 (ECF No. 467), a motion to compel a ruling on the motion at ECF No. 446 (ECF No. 469), a motion to declare a continuance order invalid (ECF No. 482), letter requests to unseal Defendant's prior sealed filings (ECF Nos. 484, 489), and a motion to compel accounting of seized assets (ECF No. 486). The Government filed a letter and a brief in opposition to eight of Defendant's motions at ECF Nos. 396, 400, 401, 402, 403, 404, 406, and 407. *See* ECF Nos. 399, 417. Defendant filed two replies (ECF Nos. 420, 421) and numerous supplemental

submissions (ECF No. 432, 441, 443, 471, 474, 475, 480, 481, 483, 485).   The Court has considered the parties' submissions, and for the reasons expressed below, Defendant's motions are denied.

## I.    BACKGROUND

On December 5, 2019, Defendant was charged in a two-count, multi-defendant Indictment with wire fraud conspiracy in violation of 18 U.S.C. § 1349 (Count One) and conspiracy to offer or sell unregistered securities in violation of 18 U.S.C. § 371 (Count Two).   ECF No. 1.   On November 5, 2020, Defendant was charged by Information with one count of tax evasion, in violation of 26 U.S.C. § 7201.   ECF No 145.

The Indictment alleges that from 2014 through 2019, Defendant was a promoter for the BitClub Network ("BCN"), a scheme in which investors bought shares in "mining pools" that funded BCN's Bitcoin mining operations.[1]   ECF No. 1 at 1–2, 12–13.   BCN represented that investors would receive returns based on each pool's mining success.   *Id.* at 13–14.   Despite selling shares to investors, BCN did not file a registration statement to register shares of BCN with the U.S. Securities and Exchange Commission ("SEC").   *Id.* at 15.   The Indictment further alleges that Defendant's role in the operation involved promoting the sale of BCN shares through materially false representations and promises, and conspiring to take money from investors in exchange for BCN membership and shares.   *Id.* at 4, 16–17, 19–23.   The Information asserts that Defendant earned approximately $18 million through his affiliation with BCN, but did not report those earnings on a U.S. Individual Income Tax Return, Form 1040 ("Form 1040") and took steps to avoid detection by U.S. law enforcement.   ECF No. 145 at 2.   Defendant ultimately failed to pay approximately $7 million in federal income taxes to the United States.   *Id.*

---

[1] "Mining" is the complex computer process by which new Bitcoin is produced.   ECF No. 1 at 2.

On December 10, 2019, Defendant was arrested in Florida and was detained following a bail hearing in the Southern District of Florida.  ECF No. 399 at 1.  On February 14, 2020, Magistrate Judge Michael A. Hammer denied Defendant bail, and on March 30, 2020, denied Defendant's motion for temporary release.  ECF Nos. 45, 48, 68, 79.

On November 5, 2020, Defendant waived his right to indictment on the tax evasion count (ECF No. 146) and entered a guilty plea to both Count Two of the Indictment and the one-count Information (ECF No. 149).  The Government agreed to move for dismissal of Count One of the Indictment at the time of sentencing if Defendant fully complied with the plea agreement.  ECF No. 417-1 at 11:1–4.  At the plea hearing, the Court asked Defendant, who was counseled by his prior attorney, whether he understood that any false statements he makes during the hearing may be used against him in a prosecution for perjury.  *Id.* at 13:1–4.  Defendant confirmed his understanding.  *Id.* at 13:5.  After a lengthy colloquy confirming Defendant's understanding of the Plea Agreement and his rights, Defendant entered a plea of guilty:

> THE COURT: Why did you decide to enter the plea of guilty, because you're, in fact, guilty or for some other reason?
>
> THE DEFENDANT: Because I'm guilty.
>
> THE COURT: How do you plead to the charge, sir, or the charges rather: Guilty or not guilty?
>
> THE DEFENDANT: Guilty.

*Id.* at 42:7–13.  Defendant further admitted, under oath, that he understood the essential elements of the crimes to which he pleaded guilty:  conspiring to offer or sell unregistered securities and tax evasion.  *Id*. at 22:12–24:12.

On November 6, 2020, Defendant was released on a $2 million bond secured by various property.  ECF No. 153.  Defendant was subjected to home incarceration with electronic monitoring, restricted travel, and was directed to provide a full accounting of all financial holdings,

including domestic and foreign bank accounts, and any and all cryptocurrency holdings. ECF No. 399 at 2. The Government consented to Defendant's release. *Id.* On March 19, 2021, the conditions of Defendant's release were modified from home incarceration to home detention to allow Defendant to seek employment. ECF No. 189. However, on August 6, 2021, the Government moved to revoke Defendant's bail based on Weeks' promotion of certain unregistered securities. ECF No. 399 at 2. In lieu of revocation, the parties agreed to modified bail conditions, which included several restrictions such as revoking Defendant's possession of a smart phone and limiting Defendant's internet communications. *Id.*; ECF No. 220.

On February 22, 2024, Pre-Trial Services petitioned for a violation of Defendant's supervised release based on unauthorized travel, use of electronic devices, and unauthorized financial transactions. ECF No. 320. Defendant also moved to relax the conditions of his release. ECF No. 317. Judge Hammer denied the request for revocation and Defendant's motion to relax the conditions, and imposed more restrictive modifications to the conditions of release based on his conclusion that Defendant violated the prior conditions. ECF No. 331; ECF No. 370 at 14:11–21:17.

On February 5, 2025, Judge Hammer held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), at which Defendant moved to proceed pro se. ECF No. 393. Judge Hammer granted Defendant's motion, and Defendant's counsel were terminated from the case. ECF Nos. 393, 394. On February 10, 2025, the Court appointed stand-by counsel to assist Defendant. ECF No. 395.

On May 20, 2025, Judge Hammer held another bail violation hearing in response to the Government's motion to revoke bail and numerous submissions by Defendant seeking to relax the conditions of his release. ECF No. 447 at 5:2–10. Judge Hammer found that Defendant violated

the conditions by using an internet-connected device to solicit investments in an investment fund through the Signal app under an alias. *Id.* at 35:11–44:1. Accordingly, Judge Hammer denied Defendant's requests and reinforced his release conditions. *Id.* at 48:15–49:12.

Since the hearing on February 5, 2025, Defendant has submitted twenty-one motions before this Court, in addition to several motions to modify the conditions of his release. Defendant has also filed over a dozen letters and supplemental submissions. The Court notes that several of Defendant's motions are repetitive and/or seek to amend or supplement prior submissions. Nonetheless, the Court has reviewed all of Defendant's submissions.

## II.    DISCUSSION

The Court turns first to Defendant's motion to withdraw his guilty plea. As discussed in detail below, Defendant's motion to withdraw his guilty plea is denied, which consequently renders most of his other motions moot.

### A.    Motion to Withdraw Guilty Plea

A defendant may withdraw his guilty plea after the Court has accepted his plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R Crim. P. 11(d)(2)(B). There is no absolute right to withdraw a guilty plea, *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001), and the defendant bears a "substantial burden" of showing a fair and just reason for withdrawing a plea, *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010). To determine whether a defendant has made this showing, the Court considers whether: "(1) the defendant asserts his innocence; (2) the defendant proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal." *United States v. Napper*, 767 F. App'x 271, 273 (3d Cir. 2019) (quoting *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011)).

### 1. Innocence

To satisfy the first factor, Defendant must make a credible showing of innocence supported by a factual record. *U.S. v. Ho-Man Lee*, 664 F. App'x 126, 128 (3d Cir. 2016). In his motion to withdraw his guilty plea, and in his supplemental submissions in support of his motion, Defendant appears to make five arguments in support of his innocence: (1) he is not guilty of trading unregistered securities because Bitcoin and Bitcoin mining equipment are not securities, and shares purchased with Bitcoin are not securities; (2) Defendant did not have notice that the charged activities were securities transactions; (3) Defendant is not aware of any victims of his conduct; (4) BCN is a private membership association, not a company, and so the Government has no authority over it; and (5) Defendant was living abroad at the time of alleged tax evasion, and so he was not required to pay taxes.

First, Defendant argues that he is not guilty of conspiring to trade unregistered securities because "computer equipment" and "Bitcoin" are not securities. ECF No. 401 at 42–47. However, Defendant is not charged with conspiring to trade computer equipment or Bitcoin; he is charged with, and pleaded guilty to, conspiring to promote and sell shares in BCN mining pools. ECF No. 1 at 12, 18–20 (Weeks explaining in promotion video that "whatever the mine finds each day is evenly disbursed in a daily dividend to our shareholders"); ECF No. 417-1 at 36:17–19 (THE GOVERNMENT: "Do you agree that these [BCN] shares were, in fact, securities?" THE DEFENDANT: "Yes."); ECF No. 417-1 at 36:24–37:2 (THE GOVERNMENT: "Did you also take money from investors as an investment for shares of mining pools that [BCN] purported to own and operate?" THE DEFENDANT: "Yes.").

BCN shares are securities as defined by 15 U.S.C. § 77b(a)(1) and *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946) (the "*Howey* test"). *See* ECF No. 1 at 15 ("Shares in BCN were

6

'securities' as that term is defined by Title 15, United States Code, Section 11b(a)(1)"); *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946) (holding that an investment contract qualifies as a security if it meets four requirements: (i) an investment of money; (ii) in a common enterprise; and (iii) an expectation of profits; (iv) to be derived solely from the efforts of individuals other than the investor). Courts have found that investments in Bitcoin-mining programs are securities under the *Howey* test. *See SEC v. Teshuater, LLC*, No. 20-01187, 2024 WL 1348432, at *4–5 (S.D. Tex. Mar. 29, 2024) (holding that investments in a Bitcoin-mining program are securities); *SEC v. Shavers*, No. 13-416, 2014 WL 12622292, at *7 (E.D. Tex. Aug. 26, 2014) (same). This Court agrees. BCN shareholders (i) invested money; (ii) in a common enterprise (BCN) in which BCN funded its mining operations with shareholders' investments; (iii) shareholders had a reasonable expectation of profits based on the representations of BCN; (iv) to be derived solely from the efforts of the BCN mining program. *See Howey*, 328 U.S. at 301; *Teshuater*, 2024 WL 1348432, at *4; ECF No. 1 at 12–14.

Defendant also appears to argue that BCN shares are not securities because investors bought shares in exchange for Bitcoin, not money, and so there was no "investment of money," as the *Howey* test requires. ECF No. 401 at 37 ("[BCN] didn't use money."); *Howey*, 328 U.S. at 301 ("The test is whether the scheme involves an *investment of money* in a common enterprise with profits to come solely from the efforts of others.") (emphasis added). However, "it is well established that cash is not the only form of contribution or investment that will create an investment contract." *See Uselton v. Com. Lovelace Motor Freight, Inc.*, 940 F.2d 564, 574 (10th Cir. 1991); *see also Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 559 (1979) (holding that the investment of money prong is satisfied when an investor "[chooses] to give up a specific consideration in return for a separable financial interest with the characteristics of a security").

Courts have found that an investment of Bitcoin, rather than money, satisfies the "investment of money" prong of the *Howey* test. *See Shavers*, 2014 WL 12622292, at *6 (finding that an investment of Bitcoin constitutes an "investment of money" under *Howey*); *In re BitConnect Sec. Litig.*, No. 18-80086, 2019 WL 9104318, at *7 (S.D. Fla. Aug. 23, 2019) (same). This Court agrees, and finds that shares of BCN are securities even if investors purchased them with Bitcoin.

Second, Defendant contends that he had no "clear advance notice" that his conduct was illegal, because Count Two of the Indictment was "based on interpretations of federal securities law that did not exist at the time of the alleged conduct." ECF No. 471 at 1. Defendant argues that "[n]o federal agency had issued formal rules, notices, or policy statements applying securities registration requirements to cooperative mining pools." ECF No. 452 at 3. This position fails for two reasons. First, as discussed in detail above, Defendant was not indicted based on a novel theory of securities law; he was charged with conspiring to offer and sell unregistered shares of BCN, which are securities as defined by the *Howey* test, established in 1946. *See Howey*, 328 U.S. at 301; *Teshuater*, 2024 WL 1348432, at *4; *Shavers*, 2014 WL 12622292, at *7. Second, Section 5 of the Securities Act of 1933—the statute underlying Count Two that prohibits the offering or sale of unregistered securities—"imposes strict liability." *S.E.C. v. Current Fin. Servs., Inc.*, 100 F. Supp. 2d 1, 6 (D.D.C. 2000); *see also* ECF No. 1 at 15. "Scienter is not required under Section 5 of the Securities Act," and so "[i]t therefore is irrelevant whether [Defendant] knew what he was selling was a security." *Id.*; *S.E.C. v. U.S. Funding Corp.*, No. 02-2089, 2006 WL 995499, at *5 (D.N.J. Apr. 11, 2006) ("A showing of scienter is not required under Section 5."). Therefore, Defendant's argument that he had no notice of the illegality of his conduct is unavailing.

Third, Defendant contends that he is innocent of Count Two because he is "not aware of anyone [he has] ever harmed in the context of [BCN]." ECF No. 401 at 24; *see also* ECF No. 421

at 23–25.  However, Section 5 liability does not hinge on proof of harm, loss, or victimization—the mere offer or sale of unregistered securities is sufficient.  *See* 15 U.S.C. § 77e.  The elements of the underlying offense are "(1) no registration statement was in effect as to a security; (2) the defendant offered to sell or sold the security; and (3) the defendant used interstate commerce in connection with the offer or sale."  *U.S. Sec. & Exch. Comm'n v. Vuuzle Media Corp.*, No. 21-1226, 2023 WL 4118438, at *6 (D.N.J. June 22, 2023).  Accordingly, whether Defendant's conduct caused harm to any victims is irrelevant to his innocence.

Fourth, Defendant argues that BCN "was a Private Membership Association (PMA) that handles its own legal affairs and doesn't burden this court," and that the "SEC/Government has no right to dictate what private membership organizations do with private men and women."  ECF No. 401 at 42.  Defendant cites no legal authority that supports this assertion.  Indeed, "it is immaterial whether a person consents to federal law; the laws of the United States apply to all persons within its border."  *United States v. Reilly*, No. 15-196, 2016 WL 7335680, at *1 (W.D. Pa. Dec. 16, 2016) (quoting *United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003)) (internal quotation marks omitted).

Fifth, Defendant argues that he is not guilty of tax evasion because he "was living abroad at the time of the alleged offense and situated as a nonresident alien and NOT a civil statutory citizen."  ECF No 401 at 19, 30.  He also asserts that it is "against the constitution to force Americans to file" taxes.  *Id.* at 34.  But Defendant stated in his plea colloquy that he is a U.S. citizen and the Information states that Defendant was a resident of Colorado at the time of the charged conduct, and Defendant provides the Court with no evidence to presume otherwise.  *See* ECF No. 417-1 at 32:17–19; ECF No 145 at 1.  Additionally, at the plea colloquy, Defendant agreed that he "willfully attempt[ed] to evade and defeat income taxes due and owing by you to

the United States of America for the calendar years 2015, 2016, 2017, and 2018." ECF No. 417-1 at 39:7–12. Furthermore, "[t]he collection of income tax has long been deemed constitutional and arguments to the contrary will not succeed." *Johnson v. N.J., Div. of Motor Vehicles*, 134 F. App'x 507, 509 (3d Cir. 2005) (citing U.S. Const. art. I, § 8; U.S. Const. amend XVI). For these reasons, Defendant fails to make a credible showing of innocence supported by a factual record.

### 2. Justification for Withdrawal

To satisfy the second factor, Defendant must provide "strong reasons" to justify a withdrawal of a "solemn admission" of guilt. *King*, 604 F.3d at 139; *Ho-Man-Lee*, 664 F App'x at 128. "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown*, 250 F.3d at 815. Defendant makes numerous arguments in support of his plea withdrawal: (1) the Court does not have jurisdiction over Defendant; (2) Defendant's plea was compelled under duress; (3) Defendant's counsel "defrauded" him and denied him meaningful access to discovery; (4) there is insufficient evidence to prove Defendant's guilt; (5) the Government and the court system are corrupt; (6) Defendant pleaded guilty under the assumption that his seized assets would be preserved, but they were not; (7) Defendant was selectively prosecuted, as other BCN members who were allegedly equally culpable were not prosecuted; (8) the Government allegedly violated *Brady* and *Giglio*; and (9) the Government violated policies promulgated by the Department of Justice ("DOJ").

First, Defendant repeatedly contends that the Court does not have jurisdiction over him because he is a "living man" named "Jobadiah-Sinclair of the family Weeks," and is not the Defendant, who is purportedly a "commercial vessel" called "JOBADIAH SINCLAIR WEEKS." ECF No. 401 at 60–61. Defendant stated he "made a mistake by autographing 'Jobadiah Weeks'

in the stead of a person listed on the document by the name of JOBADIAH SINCLAIR WEEKS who he was/is not." *Id.* at 15, 25, 34–35, 51–52, 60–61. Defendant has not articulated any basis for this contention under the United States Constitution, any federal statute, case law, the Federal Rules of Criminal Procedure, or any other binding legal authority. Courts are familiar with arguments that the court lacks jurisdiction over an individual because he is not the defendant, but is instead the "living man," and routinely find them to be meritless and "patently frivolous." *United States v. Burris*, 231 F. App'x 281, 282 (4th Cir. 2007); *see also United States v. Wiggins*, No. 21-630, 2023 WL 8876074, at *5 (D.N.J. Dec. 22, 2023); *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 245 (D.N.J. 2011) (rejecting arguments that "live persons . . . hold 'estates' in the form of actual physical bodies"). Therefore, to the extent Defendant's submissions are understood as a challenge to this Court's jurisdiction over him, they are rejected.

Second, Defendant states that his "plea statement was compelled under illegal threat, duress, and coercion through kidnapping [and] false allegations of securities violations," and that he pleaded guilty "so that [he] could get bail." ECF No. 401 at 15–16. For these reasons, Defendant contends that his plea was "a deliberate lie under illegal duress." *Id.* at 16. However, Defendant does not point to a single instance of intimidation, threat, duress, or coercion. Instead, Defendant appears to argue that he pleaded guilty only so that he would be released from federal confinement, which he characterized as "torture." *See id.* at 17, 20, 22–23. Courts recognize that "[w]hile time in a prison is certainly not pleasant, it does not provide defendant a credible basis to withdraw a guilty plea." *United States v. Levin*, No. 19-728, 2022 WL 17811394, at *3 (E.D. Pa. Dec. 19, 2022). To the extent Defendant argues that his plea was coerced by fear of further punishment, "[i]t is well-settled that a guilty plea is not coerced when a defendant is motivated by avoiding the possibility that he will be convicted at trial and face a higher authorized penalty."

11

*United States v. Valerio*, 541 F. App'x 174, 177 (3d Cir. 2013) (citing *Brady v. United States*, 397 U.S. 742, 750–51 (1970). Furthermore, Defendant testified under oath that he signed the Plea Agreement free of inducement or duress, and has made no argument to convince the Court otherwise:

> THE COURT: Other than the representations which may be set forth in the Plea Agreement and in court today, did anyone offer you any inducement or make any promise to you in order to get you to sign the document?
>
> THE DEFENDANT: No.
>
> . . .
>
> THE COURT: Did anyone physically threaten you, verbally threaten you or threaten you in any way in order to have you sign the Plea Agreement and enter a plea of guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Did you sign the document voluntarily?
>
> THE DEFENDANT: I did.

ECF No. 417-1 at 17:10–14; 18:1–6. The Court finds that Defendant testified truthfully at his guilty plea hearing, that no one threatened him or induced him to plead guilty, and that his guilty plea was made of his own free will.

Third, Defendant asserts that his lawyers "defrauded" him, because they acted as "'plea bargaining specialists' to avoid the REAL work of a trial." ECF No. 401 at 18. However, Defendant does not explain how his lawyers "defrauded" him, and "a lawyer's recommendation that his client accept a guilty plea is not, on its own, improper compulsion." *Brooking v. McGinley*, No. 21-2239, 2024 WL 3237152, at *3 (E.D. Pa. June 28, 2024). Defendant also contends that counsel never granted him meaningful access to discovery before entering his plea, and so his plea was not informed. *See* ECF No. 488. But Defendant "has not shown that his argument . . . —that he wasn't timely given access to discovery by counsel which would have changed his plea decision—amounts to anything more than a 'shift in defense tactics' or 'a change of mind,' which

we have held 'are not adequate' to support a motion to withdraw a guilty plea." *United States v. Hill-Johnson*, 806 F. App'x 114, 118 (3d Cir. 2020). "Moreover, even if [Defendant] was not personally provided with discovery, he is not entitled to withdraw his guilty plea on this basis." *United States v. Parsons*, No. 13-0104, 2015 WL 857313, at *15 (E.D. Pa. Feb. 27, 2015). Furthermore, at his plea hearing, Defendant testified:

> THE COURT: Do you have any questions or concerns which you feel your attorney has not satisfactorily answered?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you satisfied with your attorney's representation?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is the decision to enter a plea of guilty your decision or is it your attorney's decision?
>
> THE DEFENDANT: It's my decision.

ECF No. 417-1 at 19:25–20:4. Accordingly, the record does not demonstrate that Defendant's lawyers "defrauded" Defendant, compelled Defendant's guilty plea, or failed to meaningfully review and provide Defendant with discovery such that withdrawal is warranted.

Fourth, Defendant argues that "[n]o evidence has been presented that demonstrates causal connection between any act or omission of the [Defendant] that directly caused any of the alleged damages to the [BCN] members." ECF No 401 at 13, 29. This argument is an impermissible basis for withdrawing a guilty plea because it appears to be a "shift in defense tactics" or "a change of mind." *Brown*, 250 F.3d at 815. Defendant had the right to go to trial if he believed the Government had "no evidence" of his guilt, but he waived that right under oath:

> THE COURT: Do you understand that you have the right to a trial by a jury, or by a court without a jury, and you would be presumed innocent until proven guilty beyond a reasonable doubt, and by entering this plea of guilty you are giving up that right?
>
> THE DEFENDANT: Yes.

> THE COURT: Do you understand that at trial the Government is required to prove each and every element of the crimes charged beyond a reasonable doubt, and that by entering this plea of guilty you are giving up that right?
>
> THE DEFENDANT: Yes.

ECF No. 417-1 at 33:19–34:3. Defendant further states, in one of his reply briefs, that "new evidence undermines the plea's factual basis." ECF No. 421 at 9. However, Defendant does not cite to or detail any "new evidence" uncovered after his plea hearing. Therefore, the Court cannot permit Defendant to withdraw his guilty plea based on a conclusory assertion that there is new evidence. *See, e.g.*, *United States v. Kwasnik*, 55 F.4th 212, 217 (3d Cir. 2022) (affirming district court's denial of motion to withdraw guilty plea because, *inter alia*, defendant failed to demonstrate that new evidence rebutted facts to which defendant testified at plea hearing).

Fifth, Defendant makes a number of unsubstantiated claims that the prosecutors, judges, and other government officials involved in his case have engaged in "massive corruption" and are "the actual criminals." *See* ECF No. 401 at 23–24, 30–31, 37–39, 41, 45–46, 49–51, 59, 67–68, 75–76. Defendant provides no evidence or credible argument to support these contentions, and "generalized, unsupported allegations about corruption of the legal profession or the courts will not do." *Courboin v. Scott*, No. 15-2639, 2016 WL 852782, at *6 (D.N.J. Mar. 3, 2016). Defendant mentions one instance of what he describes as "malicious intent," in which the Government returned Defendant's passport to him after he was released on bail after entering his guilty plea, which he implies was an attempt to "entice" him to violate bail and flee with the passport. ECF No. 401 at 23. Similarly, Defendant points to the Government's attempts to revoke his bail as evidence of contempt for him. *Id.* Even if the Court accepted these allegations as evidence of "contempt" against Defendant, Defendant does not demonstrate why the Government's described conduct warrants a withdrawal of his guilty plea.

14

Sixth, Defendant argues that he pleaded guilty under the assumption that his seized assets would be preserved, but they allegedly were not. However, Defendant identifies no provision in the Plea Agreement or statement in the plea colloquy that guarantees the return of his seized assets as part of his guilty plea. And when asked whether "anyone offer[ed] [him] any inducement or [made] any promise to [him] in order to get [him] to sign the document," other than "the representations which may be set forth in the Plea Agreement and in court today," Defendant answered, "no." ECF No. 417-1 at 17:10–14. Defendant affirmed under oath that he was not relying on any representations beyond those contained in the plea agreement or made in court at the plea hearing, and he offers no basis to suggest that this statement was the product of coercion. Additionally, Defendant attested that he was pleading guilty because he is guilty, not because his assets would be returned to him:

> MR. TORNTORE: Are you pleading guilty to Count 2 of the Indictment because you are, in fact, guilty of the charged offense?
>
> THE DEFENDANT: Yes.
>
> …
>
> MR. TORNTORE: And are you pleading guilty to Count 1 of the Information because you are, in fact, guilty of tax evasion?
>
> THE DEFENDANT: Yes.

*Id.* at 39:3–6; 40:20–23.

Seventh, Defendant argues that the Government "left over a million [BCN] members, like me, out of the prosecution's conspiracy theory" and that those "members were doing exactly what I was doing at the time of the . . . indictment." ECF No. 401 at 22. "The Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). However, selectivity in the enforcement of criminal laws is impermissible when based upon an "unjustifiable standard, such as race, religion, or some other arbitrary factor." *United States v.*

*Taylor*, 686 F.3d 182, 197 (3d Cir. 2012).  Here, Defendant does not identify any unjustifiable standard on which the Government based his prosecution.  He merely states that millions of other BCN members were engaged in the same conduct as him, but does not allege that the Government singled him out for any arbitrary reason.  ECF No. 401 at 22.  "The mere fact that one person is prosecuted for a crime while another is not does not support a claim of selective prosecution." *Noel Pane v. Town of Greenburgh*, No. 07-3216, 2012 WL 12887036, at *18 (S.D.N.Y. Jan. 10, 2012), *aff'd sub nom. Pane v. Gramaglia*, 509 F. App'x 101 (2d Cir. 2013); *accord United States v. Johnson*, 94 F. App'x 964, 966 (3d Cir. 2004).

Moreover, even if Defendant had offered evidence of selective prosecution on unjustifiable grounds—which he has not—he has failed to show that this information was unavailable to him prior to the entry of his plea.  Accordingly, even assuming selective prosecution occurred, Defendant has not demonstrated that awareness of it would have altered his decision to plead guilty.  *See Mathis v. United States*, No. 20-8951, 2021 WL 1783285, at *4 (D.N.J. May 5, 2021) (finding that Defendant did not establish how the factors presented would have altered his decision to plead guilty).

Eighth, Defendant raises, for the first time in his reply brief, that the government withheld material exculpatory evidence in violation of *Brady* and *Giglio*.  ECF No. 421 at 4.  One "withheld" item Defendant refers to is "the October 8, 2020 Grand Jury Evaluation Memorandum," which allegedly "contains key factual assessments and characterizations relevant to discovery, plea considerations, and prosecutorial framing, was not available to the defense at the time of plea signing."  *Id.* at 6.  Defendant contends that "[i]ts creation after the agreement but before the formal plea hearing suggests a strategic delay in material production [and] deprived Defendant of material evidence necessary to assess the merits and fairness of the plea."  *Id.*  Defendant also points to

16

"Suspicious Activity Reports (SARs), Memoranda of Interview (MOIs) from April and December 2019, [and] the December 2019 Crypto Seizure Memo," which were allegedly not disclosed until years after the plea agreement was signed. *Id.* at 8. Lastly, Defendant states that he was never provided documentation of an August 12, 2020 proffer session, during which the Government claims Defendant admitted his knowledge of BCN's fraudulent activities. *Id.* at 11.

As an initial matter, to the extent Defendant argues that he was entitled to government work product—for example, "plea considerations and prosecutorial framing"—a criminal defendant "may not examine Government work product in connection with his case." *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 257 (3d Cir. 2005) (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). But in any event, Defendant provides no elaboration as to what each of the purported documents contain, how they are material to his guilt and favorable to his defense, why he did not have access to the information contained in the documents prior to his plea, or how the documents would have altered his plea entry. Instead, Defendant provides vague descriptions of the importance of the documents, such as describing documents as "central to discovery and plea evaluation," "significan[t]," "critical," and "indispensable." *Id.* at 10, 14–15. And even if Defendant did not receive these materials before entering his guilty plea, his submissions provide no indication that they constitute *Brady* or *Giglio* material. Without more, the Court cannot determine that Defendant's lack of access to these documents before signing his plea agreement is a "strong reason[]" to justify a withdrawal of a "solemn admission" of guilt. *King*, 604 F.3d at 139; *Ho-Man-Lee*, 664 F. App'x at 128.

Ninth, and lastly, Defendant argues that his prosecution violates an April 7, 2025 enforcement memorandum issued by the DOJ, which he believes "makes clear that digital asset cases should be pursued only when involving identifiable harm or criminal misuse." ECF No. 421

17

at 17, 28–29.  The memorandum to which Defendant refers is an intra-office memorandum addressed to all DOJ employees from the Deputy Attorney General that outlines enforcement priorities.  *See* ECF No. 421 at Ex. C.  Setting aside that this memorandum was issued years after Defendant's guilty plea, intra-office memorandums of this kind "are not binding authority."  *Ralda v. Att'y Gen. of U.S.*, 441 F. App'x 101, 104 n.4 (3d Cir. 2011) (holding that internal documents like a U.S. Citizenship and Immigration Services memorandum directed to asylum officers are not binding authority); *Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004) ("Agency statements contained in opinion letters, policy statements, agency manuals, and enforcement guidelines lack the force of law.").  Therefore, the cited DOJ memorandum does not justify a withdrawal of Defendant's guilty plea.

For these reasons, Defendant has not shown "strong reasons" to justify a withdrawal of a "solemn admission" of guilt.  *King*, 604 F.3d at 139; *Ho-Man-Lee*, 664 F App'x at 128.

### 3.  Government Prejudice

The third prong involves whether the plea withdrawal would prejudice the Government.  "[I]f the defendant fails the first two prongs of the test for withdrawal of a guilty plea, there is no need to consider the third, prejudice to the Government."  *United States v. Carroll*, 179 F. App'x 128, 132 (3d Cir. 2006).  Defendant has not met his burden on the first two prongs of the three-pronged test to determine if there is a fair and just reason for withdrawing his guilty plea.  Therefore, the Court need not consider the third prong.  Nonetheless, withdrawal of a plea "almost invariably prejudices the government to some extent and wastes judicial resources."  *United States v. Hough*, No. 02-649, 2010 WL 5250996, at *3 (D.N.J. Dec. 17, 2010).  And here, prejudice would be particularly extreme, given that the Government would be required to mount a criminal trial nearly six years after the Indictment was lodged, and nearly five years after Defendant's guilty

plea was entered.  *See* ECF Nos. 1, 149; *see also Doe v. United States*, 112 F. Supp. 2d 398, 407 (D.N.J. 2000) (holding that "that the government would probably suffer prejudice by having to try petitioner over four years after he was indicted").  Accordingly, the Court finds that a plea withdrawal would prejudice the Government.

Given that the balance on each prong weighs decisively against Defendant, and the Court has found his arguments unpersuasive, Defendant's motion to withdraw his guilty plea is denied.

### B.  The Forfeiture Motions

Defendant has filed several motions seeking the return and accounting of his seized assets, including cryptocurrency, cash, and other physical personal property.  *See* ECF Nos. 446, 448,[2] 486.  Defendant brings these motions under Rule 41(g) of the Federal Rules of Criminal Procedure. *See id.*  Rule 41(g) provides that a motion to return property "must be filed in the district where the property was seized."  Fed. R. Crim. P. 41(g).  As discussed below, Defendant's representations demonstrate that the property at issue was not seized in the District of New Jersey, and so his motion to return property seized outside of this district is denied.

Defendant states that on December 10, 2019, federal agents executed a search warrant at two locations—West Palm Beach, Florida, and Arvada, Colorado—and seized cryptocurrency held in wallets and hardware devices, precious metals, cash, stock certificates, business records, computers, phones, and digital storage devices.  ECF No. 446 at 1; ECF No. 448 at 2.  Defendant also notes that cash was seized directly from his person during his arrest at the Palm Beach County Jail in Florida.  *Id.*  Defendant does not assert than any of his property was seized within the District of New Jersey, and in fact, his motions indicate that the forfeitures occurred in Colorado and

---

[2] ECF No. 448 is not a pending motion.  Rather, it was filed as a "supplemental notice of post-filing discrepancies and request for judicial relief."  ECF No. 448.  The Court incorporates its content and requests for relief in ECF Nos. 446 and 486.

Florida. Therefore, Defendant's motions (ECF Nos. 446, 486) are denied.  *See United States v. Payne*, No. 04-299-08, 2010 WL 11652392, at *2 (W.D. Pa. May 3, 2010) (denying motion to return property filed in Western District of Pennsylvania because property at issue was not seized in that district); *United States v. Thomas*, No. 06-299, 2015 WL 13448019, at *2 (W.D. Pa. Sept. 8, 2015) (denying motion to return property filed in Western District of Pennsylvania because property was seized in the Northern District of Georgia).  Additionally, Defendant's motions to compel a ruling on the motion to return property at ECF No. 446 (ECF Nos. 467, 469) are denied as moot, given the Court's instant decision denying the motion at ECF No. 446.

### C.  The Continuance Motion

Defendant filed a motion "to declare continuance order (DKT. 478) invalid as applied to Defendant Weeks."  ECF No. 482.  The Order for Continuance at ECF No. 478 was issued in response to a joint application of the United States and Defendant's co-defendant Matthew Brent Goettsche for an order granting a continuance of proceedings.  *See* ECF No. 478.  "[T]he [speedy trial] guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges."  *Syed v. United States*, No. 15-5687, 2018 WL 3492151, at *5 (D.N.J. July 19, 2018) (quoting *Betterman v. Montana*, 578 U.S. 437, 439 (2016)).  Here, Defendant has pleaded guilty to criminal charges, and for the reasons discussed above, the Court has denied his motion to withdraw his guilty plea.  Accordingly, continuance orders, which exclude time from the speedy trial clock calculation, do not affect Defendant's case.  Therefore, Defendant's motion to declare the continuance order invalid as to him is denied.

### D. Remaining Motions

Defendant submitted several additional motions, including four motions to dismiss (ECF Nos. 396, 400, 451, 453), four motions to compel discovery (ECF Nos. 402, 403, 406, 477), a motion to expedite a decision on ECF No. 403 (ECF No. 404), a motion to stay the case (ECF No. 430), a motion to withdraw the motion at ECF No. 396 (ECF No. 442), a motion for leave to file supplemental memorandum on count two (ECF No. 452), a motion to seal (ECF No. 466), a motion to compel "prompt ruling on limited disclosure relief" (ECF No. 467), and a motion to compel a ruling on ECF No. 446 (ECF No. 469).

"[A] motion to dismiss an indictment cannot be lodged after the defendant has pled guilty." *United States v. Miller*, 197 F.3d 644, 647 (3d Cir. 1999); *United States v. Hoffman*, No. 17-80, 2025 WL 2581936, at *2 (D.N.J. Sept. 5, 2025) ("Since Defendant moved to dismiss the Indictment post-guilty plea, Defendant's Motion to Dismiss is untimely."). As discussed above, the Court has denied Defendant's motion to withdraw his guilty plea and has found that Defendant's testimony at his plea hearing was truthful. Furthermore, the Government has agreed to dismiss Count One of the Indictment at Defendant's sentencing. ECF No. 417-1 at 11:1–4. Accordingly, Defendant's motions to dismiss (ECF Nos. 396, 400, 451, 453) and motion for leave to file a supplemental memorandum for Defendant's motion to dismiss Count Two (ECF No. 452) are denied as moot. *See United States v. Tucker*, 511 F. App'x 166, 169 (3d Cir. 2013) (affirming district court's holding that motions to dismiss are moot after a guilty plea is entered). Defendant's motion to withdraw his motion to dismiss at ECF No. 396 (ECF No. 442) is also denied as moot because, as discussed, the Court has denied all of Defendant's motions to dismiss.

Likewise, Defendant's motions to compel discovery (ECF Nos. 402, 403, 406, 477) must also be denied as moot, because Defendant has pleaded guilty to the charges for which he seeks

discovery.  *See United States v. Harvey*, No. 12-113, 2014 WL 657595, at *1 n.1 (W.D. Pa. Feb. 20, 2014) (denying various pretrial motions as moot because defendant had pleaded guilty); *United States v. Robinson*, No. 05-443, 2007 WL 790013, at *12 (M.D. Pa. Mar. 14, 2007) (same).  Given that Defendant's motion to compel discovery at ECF No. 403 is denied, the motion to expedite a decision on ECF No. 403 (ECF No. 404) is likewise denied as moot.

Defendant's motion to stay or delay ruling on pending motions (ECF No. 430) is also denied as moot.  Defendant requested that the Court defer its ruling on his pending motions until May 27, 2025, pending potential discussions with the Government.  ECF No. 430 at 1.  That date has passed, and Defendant informed the Court that the Government did not respond to his efforts to engage in discussions.  *See* ECF No. 432, 445.  Therefore, Defendant's motion at ECF No. 430 is denied as moot.

Lastly, Defendant has filed a motion to seal his filing at ECF No. 448.  ECF No. 466.  This motion appears to be superseded by Defendant's requests to unseal documents.  *See* ECF Nos. 484, 489.  Given the volume of submissions regarding sealing by Defendant, *see, e.g.*, ECF Nos. 448, 451, 452, 466, 467, 468, 484, 489, Defendant's position as to which documents should remain sealed is unclear to the Court.  Accordingly, Defendant and the Government are directed to meet and confer and submit a joint letter stipulating which documents should be sealed or unsealed, or setting forth their respective positions on the issue.  Defendant's motion to seal is administratively terminated pending receipt of the joint letter.

III.  **CONCLUSION**

For the aforementioned reasons, the Court hereby denies Defendant's pending motions.

Accordingly, IT IS on this 8th day of October, 2025:

**ORDERED** that Defendant's motions (ECF Nos. 396, 400, 401, 402, 403, 404, 406, 430, 442, 446, 451, 452, 453, 467, 469, 477, 482, 486) are **DENIED**; and it is further

**ORDERED** that the Government and Defendant shall submit a joint letter of no more than eight (8) pages, single-spaced, outlining any outstanding issues before the Court and/or among the parties that must be resolved before sentencing.  The joint letter shall also stipulate which documents should be sealed or unsealed, or set forth the parties' respective positions on the issue. The joint letter shall be submitted on or before October 31, 2025; and it is further

**ORDERED** that Defendant's motion to seal (ECF No. 466) is **ADMINISTRATIVELY TERMINATED** pending receipt of the parties' joint letter.

**SO ORDERED.**

_____
**CLAIRE C. CECCHI, U.S.D.J.**