**TABLE OF EXHIBITS**

| Exhibit | Title | Description | Cited In |
|---|---|---|---|
| A | Memorandum of Record-Based Errors | Detailed record and case-law analysis supporting reconsideration. | §§ III–V & VII |
| B | Discovery Clarification Letter (Sep. 23, 2025) | Correspondence to AUSAs Moore & Chenoweth. | § III(C) |
| C | Summary Table of Pending Motions and Relief | Table identifying each affected filing and requested relief. | §§ III(A), VI |

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY


United States of America,

    Plaintiff,

v.                      Crim. No. 19-877 (CCC)

Jobadiah Sinclair Weeks,

    Defendant.


EXHIBIT A – MEMORANDUM OF RECORD-BASED ERRORS

(Attached to Motion for Reconsideration and Clarification,

filed October 17, 2025)


This table summarizes each motion affected by the Court's October 8, 2025

*Opinion and Order* (*Dkt. 497*), identifying its subject matter, filing date,

Government response status, and the relief requested in the pending Motion for

Reconsideration. It is incorporated by reference in its entirety for ease of review.


Exhibit A – Page 1 of 59     /s/ Jobadiah Sinclair Weeks     True and Correct
Copy     Dated: Oct. 17, 2025

**EXHIBIT A – MEMORANDUM OF RECORD-BASED ERRORS IN THE OCTOBER 8, 2025 *Opinion and Order***

Prefatory Note

This Memorandum supplements Defendant's Motion for Reconsideration pursuant to *Federal Rules of Criminal Procedure* 11(d)(2)(B) and *Federal Rule of Civil Procedure* 59(e). It consolidates factual inaccuracies, procedural irregularities, and legal misstatements appearing in the Court's *Opinion and Order*. Each section below corresponds to the pagination and reasoning sequence of that *Opinion and Order* (*Dkt. 497*) (Oct. 8, 2025) and identifies specific record-based discrepancies affecting the Court's findings on plea voluntariness, factual basis, discovery completeness, and selective-prosecution analysis. Citations to the record, docket entries, and controlling precedent are provided in Bluebook format for ease of appellate review. This memorandum is intended to assist the Court in correcting clear factual and legal errors and to preserve a precise record for further review should reconsideration or remand become necessary.

1

Table of contents

I. FAIR-NOTICE AND RETROACTIVITY ERRORS     4
    A.  Reliance on Post-Conduct Case Law     4
    B. Government Silence on Legal Standards     5
    C. GENIUS Act and the Evolving Legal Standard     7
    D.  Implications for Plea Withdrawal     7
II. CHARGING THEORY AND FACTUAL-BASIS DEFECTS     8
    A. Peripheral Promoter vs. Primary Seller     8
    B. Lack of Factual Basis Under Rule 11(b)(3)     9
    C. Misuse of Strict-Liability Standard     10
III. SELECTIVE-ENFORCEMENT AND DUE-PROCESS VIOLATIONS     11
    A. DOJ Policy on Digital-Asset Cases     11
    B. Improper Mooting of Selective-Prosecution Motion     12
IV. PLEA VOLUNTARINESS AND COERCION     13
    A. Structural Defects in Plea Colloquy     13
    B. Asset-Linked Inducement     14
    C. Bail as Coercive Incentive     16
    D. Post-Plea Violations     17
    E. Coercion and Duress Misstated     18
    F.  Discovery Deprivation and Voluntariness     18
    G. Illusory Right-to-Trial Rationale     19
    H. Missing Plea Transcript and Record Coercion     19
V. DISCOVERY AND ACCESS DEPRIVATIONS     23
    A. Work-Product and File Access     23
    B. Mischaracterization of Evidence     24
    C. Custody-Log Inconsistencies     25
    D. Newly Discovered Evidence     25
    E. Rule 41(g) Equitable Jurisdiction     27
    F. Property and Digital-Asset Return     28
VI. EXTRA-RECORD RELIANCE & JUDICIAL SUPPLEMENTATION     28
    A. Reliance on Non-Record Materials     29
    B. Undisclosed August 12, 2020 Letter     29
    C. Judicial Substitution on DOJ Memo     30
    D. Undated SAR or IRS-CI Report     30
VII. PROCEDURAL ERRORS AND ANALYTICAL CIRCULARITIES     31

A. Denial of Continuance (Abuse of Discretion)          32
B.  Improper "Mootness" Findings          32
C. Numerical Acknowledgment Without Findings          34
D. Procedural Irregularities and Record Defects          35
   1. Counts 1–2 Denied Without Jurisdiction          35
   2. Withdrawal of Dkt. 396 Ignored          35
   3. Need for Correction and Relief          36
   4. Duplicative Docket 400 Denial          36
   5. Faretta-Waiver Omission          37
   6. Omitted Filing: Notice of Dismissal of Counsel Not Entered on Docket
   38
E.  Judicial Economy and Record Integrity          38
F. Misapplied "Fair and Just Reason" Standard          39
G. Government Waiver and Post-Deadline Repair          41
H. Request to Stay Joint-Letter Deadline          43
VIII. FACTUAL MISSTATEMENTS AND CLERICAL INACCURACIES          43
A. Mischaracterized Sealing Filings          44
B. $18 Million Income Misstatement          44
C. Plea-Instrument and Dismissal Scope          45
D. "Shares" vs. Membership Interests          46
E. BCN Interest Inconsistencies          46
IX. META-LEVEL JUDICIAL PATTERNS          47
A.  Cumulative and Circular Reasoning          47

## I. FAIR-NOTICE AND RETROACTIVITY ERRORS

The rule of law requires that citizens have advance notice of criminal standards; applying later-developed digital-asset interpretations to earlier conduct offends that fundamental principle of due process.

Under Federal Rules of Civil Procedure 59(e) and 60(b), and Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, reconsideration is warranted when the Court overlooks or misapplies controlling law, relies on an incomplete record, or when correction is necessary to prevent manifest injustice.

### A.    Reliance on Post-Conduct Case Law

The *Opinion and Order* (*Dkt. 497, at 7–8*) cites *SEC v. Teshuater, LLC*, No. 4:20-cv-01187, 2024 WL 1348432 (S.D. Tex. Mar. 29, 2024), and *SEC v. Shavers*, No. 4:13-cv-416, 2014 WL 12622292 (E.D. Tex. Aug. 26, 2014), to conclude that "courts have found that investments in Bitcoin-mining programs are securities under the *Howey* test." This reasoning is both chronologically and legally unsound. The alleged BitClub Network conduct occurred between 2014 and 2019; *Teshuater* was decided five years later and therefore could not have provided contemporaneous notice to BCN participants. *Shavers*, while sometimes cited as the first cryptocurrency-securities case, was a civil enforcement action concerning a Bitcoin-lending program—not a mining-pool cooperative—and carried no binding effect in the District of New Jersey.

No federal statute, rule, or SEC policy statement in force during 2014–2019 classified mining-pool memberships or Bitcoin-based cooperative shares as "investment contracts." The SEC's first formal digital-asset guidance—the *DAO Report* of July 2017—addressed tokenized fundraising, not cooperative mining operations. By grounding its analysis on post-hoc decisions and inapposite civil precedent, the Court effectively imposed criminal liability without fair notice of what conduct the securities laws proscribed. Such unforeseeable judicial enlargement of liability violates the Due Process Clause.[1]

---

[1] See *SEC v. Teshuater, LLC*, No. 4:20-cv-01187, 2024 WL 1348432, at 4–5 (S.D. Tex. Mar. 29, 2024) (holding post-2019 Bitcoin-mining investments to be securities under Howey); *SEC v. Shavers*, No. 4:13-cv-416, 2014 WL 12622292, at 7 (E.D. Tex. Aug.

The cited authorities confirm only that the law evolved years later; they do not establish that a reasonable actor in 2014–2019 could have foreseen SEC registration obligations for cooperative mining pools.

The Government's own silence during that period—addressed in Section I(B)—further underscores that no clear, authoritative guidance existed to put participants on notice that the conduct alleged here could trigger securities liability.

## B. Government Silence on Legal Standards

During the entire period relevant to the alleged BitClub Network activity—2014 through 2019—the Government issued no binding statute, regulation, or prosecutorial policy clarifying when participation in a digital-asset or mining-pool program might trigger securities-registration obligations. Neither the Department of Justice nor the Securities and Exchange Commission promulgated a rule, adopted formal guidance, or provided public notice defining Bitcoin-related cooperative ventures as "securities." Instead, enforcement agencies relied on ad hoc interpretations advanced through civil complaints, settlement orders, and press releases that lacked precedential or binding effect.[2]

The SEC's only official articulation during that timeframe—the *Report of Investigation Pursuant to Section 21(a) of the Exchange Act: The DAO*, Exchange Act Release No. 81207, 2017 WL 7184670 (July 25, 2017)—addressed tokenized fundraising offerings, not mining-pool cooperatives or non-fungible share memberships. Even that report cautioned

---

26, 2014) (civil enforcement action involving Bitcoin-denominated lending scheme); *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946) (defining "investment contract" as an investment of money in a common enterprise with profits expected from the efforts of others); *Bouie v. City of Columbia,* 378 U.S. 347, 352–54 (1964) (unforeseeable judicial expansion of a criminal statute violates due process); *FCC v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012) (holding that due process requires fair notice of prohibited conduct); SEC, Report of Investigation Pursuant to Section 21(a) of the Exchange Act: The DAO, Exchange Act Release No. 81207, 2017 WL 7184670 (July 25, 2017) (first SEC policy statement applying securities-law analysis to digital-asset tokens).

[2] See, e.g., *SEC v. Ripple Labs Inc.,* No. 20-cv-10832, 2023 WL 4507900 (S.D.N.Y. July 13, 2023) (post-hoc civil interpretation of token sales under Howey); *SEC v. Telegram Grp. Inc.,* 448 F. Supp. 3d 352 (S.D.N.Y. 2020) (same).

that its conclusions were *fact-specific* and "not intended to apply broadly to other digital-asset arrangements." Nothing in the DAO Report, or in any contemporaneous SEC or DOJ publication, suggested that mining-pool participants could be deemed 'issuers,' 'underwriters,' or 'sellers' under 15 U.S.C. § 77e.[3]

The Government's continued silence left market participants without meaningful notice of what conduct might later be characterized as criminal. The *Third Circuit* and Supreme Court have repeatedly held that due process requires the law to be knowable before it is enforced.[4] Here, the absence of pre-2019 guidance from any federal agency confirms that Defendant could not reasonably foresee that cooperative Bitcoin-mining shares might later be treated as unregistered securities.

This institutional silence—contrasted with the Government's later reliance on post-2020 case law—demonstrates a retroactive shift in enforcement posture rather than contemporaneous notice. As Section I(A) explains, imposing criminal liability under those evolving standards violates the Due Process Clause's fair-warning requirement and underscores the need for reconsideration.

## C.    GENIUS Act and the Evolving Legal Standard

The 2025 GENIUS Act, Pub. L. No. 119-27, 139 Stat. 419 (July 18, 2025), does not apply retroactively but demonstrates Congress's acknowledgment that digital-asset enforcement lacked uniform standards during 2014–2019.[5] By establishing uniform definitions and procedural safeguards for digital-asset transactions under federal securities and anti-fraud laws, the Act clarified congressional intent and retroactively highlighted the absence of any coherent standard at the time of

---

[3] Report of Investigation Pursuant to Section 21(a) of the Exchange Act: The DAO, Exchange Act Release No. 81207, 2017 WL 7184670 (July 25, 2017).

[4] *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited."); *Bouie v. City of Columbia,* 378 U.S. 347, 352–54 (1964) (holding that unforeseeable judicial expansion of criminal liability violates due process).

[5] GENIUS Act, Pub. L. No. 119-27, 139 Stat. 419 (July 18, 2025); see also Todd Blanche, *Memorandum: Ending Regulation by Prosecution* (Sept. 2025) (on file with Defendant) (discussing GENIUS Act's mandate for consistent digital-asset enforcement standards).

Defendant's plea. Because the plea colloquy occurred before these statutory clarifications, it is impossible to determine whether the admissions at that hearing—now missing from the record—would satisfy the updated legal elements.

## D.    Implications for Plea Withdrawal

Under *Federal Rule of Criminal Procedure* 11(d)(2)(B), a plea may be withdrawn when a defendant shows a "fair and just reason." A guilty plea cannot stand where the underlying conduct was not clearly proscribed at the time of the plea, or where the defendant lacked fair notice of the governing standard.[6]

Here, the absence of any binding or even persuasive precedent treating Bitcoin-mining-pool memberships as securities during 2014–2019 deprived Defendant of constitutionally adequate notice that his conduct was criminal. The *Opinion and Order*'s reliance on *Teshuater* (2024) and *Shavers* (2014) confirms that the legal classification was developed only after the alleged conduct, through evolving civil interpretations in unrelated jurisdictions. A plea induced by such legal uncertainty cannot be considered knowing or voluntary: an admission of guilt under a theory that lacked contemporaneous legal foundation is precisely the type of "fair and just reason" that Rule 11(d)(2)(B) is designed to remedy.

The Court's own citations reveal that Defendant's plea rested on an unsettled and retroactively applied interpretation of *Howey*. Because due process forbids criminal punishment based on judicial expansion of law unforeseen at the time of the alleged acts, see *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the plea should be set aside, and Defendant should be allowed to withdraw it—or, at minimum, obtain an evidentiary hearing on the issue of fair notice and voluntariness.[7]

---

[6] *Fed. R. Crim. P.* 11(d)(2)(B); *United States v. Ruiz*, 536 U.S. 622, 630 (2002) (plea must be knowing, voluntary, and intelligent); *United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013) (withdrawal warranted where defendant lacked full understanding of the legal basis for guilt).
[7] *Bouie, 378 U.S. at 352–54.*

## II. CHARGING THEORY AND FACTUAL-BASIS DEFECTS

Criminal liability must rest on proven statutory elements, not on labels or inferences; where the record shows promotion rather than sale, conviction cannot stand.

### A.    Peripheral Promoter vs. Primary Seller

The *Opinion and Order* presumes that Mr. Weeks "sold unregistered securities," yet the charging record identifies him only as a promoter, one of thousands of network participants. Criminal liability under 15 U.S.C. § 77e cannot rest on peripheral promotion unless the defendant is a "necessary participant and substantial factor" in the unregistered sale.[8] No such evidence exists here. The Government never alleged that Weeks drafted offering materials, determined pricing, or managed investor funds. At most, he resold membership shares  provided by the founders *(see Gov't Dkt. 417 at 36:17–37:2)*. Treating downstream promotional activity as equivalent to issuing unregistered securities expands § 5 far beyond its text and violates due process.[9] Because the record fails to distinguish peripheral promotion from primary sale, the Court's conclusion that Weeks "sold unregistered securities" is legally erroneous, and unsupported by the factual basis required under *Rule 11(b)(3)*.

### B. Lack of Factual Basis Under Rule 11(b)(3)

---

[8] *SEC v. MuniYield Fund, Inc.,* 148 F.3d 116, 120 (2d Cir. 1998) (holding that one is liable for an unregistered sale only if a "necessary participant and substantial factor" in the transaction); *SEC v. Chinese Consol. Benevolent Ass'n,* 120 F.2d 738, 741 (2d Cir. 1941) ("Mere circulation of information by independent persons not acting for the issuer does not constitute an 'offer' or 'sale' within the meaning of the Securities Act.").

[9] *United States v. Naftalin*, 441 U.S. 768, 774 n.6 (1979) (criminal liability under securities laws requires proof of willful participation in the fraudulent sale); *Pinter v. Dahl,* 486 U.S. 622, 642–47 (1988) (holding that § 12 liability attaches only to those who solicit a purchase motivated at least in part by their own financial interest in the sale); 15 U.S.C. § 77e(a)–(c); *SEC v. Kern,* 425 F.3d 143, 152 (2d Cir. 2005) (distinguishing between primary sellers and secondary-market participants; liability attaches only to those who play a significant role in distribution); *United States v. Wolfson,* 405 F.2d 779, 784 (2d Cir. 1968) (requiring proof that the defendant "was a substantial factor in the sales transaction").

Federal Rule of Criminal Procedure 11(b)(3) requires the Court to determine that there is "a factual basis for the plea," meaning that "sufficient evidence [exists] in the record from which a court could reasonably determine that the defendant committed the offense."[10] The transcript of the November 5, 2020 plea colloquy shows that no such factual predicate was ever established with respect to the "offer or sale" element of 15 U.S.C. § 77e. *See* Gov't *Dkt. 417 at 36–37.*

At the hearing, the Government asked Mr. Weeks only whether he "agree[d] that these [BCN] shares were, in fact, securities" and whether he "took money from investors as an investment for shares of mining pools that [BCN] purported to own and operate." (*Dkt. 417 at 36:17–37:2.*) Those admissions confirm that BCN itself sold shares but do not show that Mr. Weeks personally offered or sold any security (*id.* at 37), acted as an issuer, or controlled the distribution process. There was no inquiry into whether he had authority to issue or allocate shares, whether he solicited investments "for value," or whether his promotional activities made him a "necessary participant and substantial factor" in any unregistered sale.[11]

Without such findings, the plea rests on a conclusory label—"promotion and sale"—rather than a legally sufficient factual basis. *Rule 11(b)(3)* demands more than a generic admission of guilt; it requires that the admitted facts, if true, establish every element of the charged offense. *See United States v. James*, 928 F.3d 247, 257 (3d Cir. 2019) (holding that district court erred by accepting guilty plea without confirming factual basis for every element of the offense). Because the colloquy failed to establish that Mr. Weeks personally engaged in a statutory "offer or sale," the plea is invalid and must be withdrawn. At minimum, an evidentiary hearing is required to determine whether the necessary factual foundation ever existed.[12]

---

[10] *McCarthy v. United States,* 394 U.S. 459, 467 (1969) (plea cannot stand unless record affirmatively shows compliance with Rule 11).

[11] See *SEC v. Chinese Consol. Benevolent Ass'n, Inc.,* 120 F.2d 738, 741 (2d Cir. 1941) (defining "necessary participant and substantial factor" test for securities distribution).

[12] See *United States v. James*, 928 F.3d 247, 257 (3d Cir. 2019); *United States v. Bernard*, 373 F.3d 339, 344 (3d Cir. 2004).

This factual deficiency is compounded by the Court's misapplication of the strict-liability standard, which treated the statutory elements as satisfied without evidence of intent or harm—a point addressed in the following subsection.

## C.    Misuse of Strict-Liability Standard

The Court correctly noted that civil violations of Section 5 of the Securities Act do not require proof of investor harm or scienter,[13] however, the *Opinion and Order* erred by extending that civil strict-liability standard to a criminal prosecution under 18 U.S.C. § 371, which requires proof that the defendant acted willfully—that is, with knowledge that his conduct was unlawful.[14] Evidence that no investors were harmed, complained, or suffered losses is therefore not "irrelevant." To the contrary, the absence of harm strongly supports the inference that Mr. Weeks believed his activities were legitimate and lacked any intent to violate securities laws.

In a criminal setting, this evidence goes directly to willfulness, materiality, and the knowing-and-voluntary nature of the plea. By declaring investor harm "irrelevant," the Court conflated two distinct legal standards—civil liability without intent versus criminal guilt requiring intent. That analytical error stripped the plea of its factual and legal foundation. A guilty plea to a willful violation cannot stand when the record shows no identified victims, no financial loss, and no awareness by the defendant that his conduct was unlawful. Under *Rule 11(b)(3)*, those omissions preclude a finding that the plea was knowing, voluntary, and supported by an adequate factual basis.[15]

## III. SELECTIVE-ENFORCEMENT AND DUE-PROCESS VIOLATIONS

Equal justice demands consistent application of prosecutorial policy; selective enforcement of evolving digital-asset rules undermines both fairness and legitimacy.

## A.    DOJ Policy on Digital-Asset Cases

---

[13] *SEC v. Current Fin. Servs., Inc.,* 100 F. Supp. 2d 1, 6 (D.D.C. 2000).
[14] *Bryan v. United States*, 524 U.S. 184, 191–92 (1998); *United States v. O'Hagan*, 521 U.S. 642, 665 (1997); *United States v. Tarallo*, 380 F.3d 1174, 1188 (9th Cir. 2004) (willfulness requires knowledge of the unlawfulness of the act).
[15] *Fed. R. Crim. P.* 11(b)(3), (d)(2)(B).

The Department of Justice's own enforcement guidance underscores that digital-asset prosecutions should be reserved for cases involving identifiable victims, financial loss, or clear criminal misuse. The April 7 2025 *Digital Assets Enforcement Memorandum* issued by the Deputy Attorney General expressly directed U.S. Attorneys to "prioritize matters involving actual consumer harm, misappropriation, or misuse of investor funds" and to "de-prioritize technical registration violations where no loss or deception occurred."[16] By prosecuting Mr. Weeks—an independent promoter with no victim complaints, no loss findings, and no evidence of fraud—the Government acted contrary to its stated policy and to the principle of evenhanded enforcement recognized in *Wayte v. United States*, 470 U.S. 598 (1985).[17]

The absence of any victimized investors not only negates willful intent but also highlights the discriminatory and arbitrary character of this prosecution compared with the DOJ's treatment of similarly situated actors in the cryptocurrency sector. The Court's refusal to consider this factor further compounds the due-process violation and supports vacation of the plea under *Rule 11(d)(2)(B)*.[18]

## B.    Improper Mooting of Selective-Prosecution Motion

The *Opinion and Order* dismisses Defendant's selective-prosecution arguments by asserting that he offered no evidence of discriminatory intent and that any such showing "would not have altered his decision to plead guilty." (*Op.* 15–16.) That finding is contradicted by the record. *Dkt. 403* is a 24-page motion presenting detailed comparative evidence and exhibits satisfying the *Armstrong* threshold for discovery. The Court neither cites nor analyzes those materials, instead later declaring *Dkt. 403* "moot" because Defendant had pleaded guilty—an internally inconsistent ruling that renders the reasoning circular. A plea cannot moot a claim that the prosecution itself was

---

[16] U.S. Dep't of Justice, Digital Assets Enforcement Memorandum (Deputy Att'y Gen., Apr. 7, 2025) (on file with DOJ).

[17] *Wayte v. United States*, 470 U.S. 598, 607 (1985) (Government retains broad discretion in enforcement but may not base prosecution on arbitrary or unjustifiable standards).

[18] *Fed. R. Crim. P.* 11(d)(2)(B).

constitutionally impermissible.[19] Because the selective-prosecution motion challenged the legitimacy of the charging decision and the coercive environment preceding the plea, the Court was required to address it on the merits or at minimum incorporate it into the *Rule 11(d)(2)(B)* voluntariness analysis. Its failure to do so constitutes procedural error and deprives the plea of a factual and constitutional foundation.[20]

## C.    Misapplication of *United States v. Taylor*

The district court invoked *United States v. Taylor*, 686 F.3d 182 (3d Cir. 2012), to reject Defendant's selective-prosecution claim, asserting that he "does not identify any unjustifiable standard." (*Op.* 15.) That is inaccurate and legally incomplete. Defendant's motion (*Dkt. 403 §§ III(B)–(C))* and later supplement (*Dkt. 471 § I*) specifically alleged that the Government singled him out from among similarly situated BitClub Network participants because of his public profile in the cryptocurrency community—an arbitrary and impermissible enforcement rationale condemned in *Wayte v. United States*, 470 U.S. 598 (1985), and *Taylor* itself. He also sought discovery (*Dkts 420–421 Exs A–C*) to establish comparator evidence, which the Government withheld.

The Court's reliance on the absence of proof while simultaneously denying access to that proof is circular and contrary to *Armstrong*'s "colorable showing" standard. Properly applied, *Taylor* required at least limited discovery or an evidentiary hearing, not summary dismissal.[21]

---

[19] *United States v. Armstrong*, 517 U.S. 456 (1996); *Blackledge v. Perry*, 417 U.S. 21 (1974); *Menna v. New York*, 423 U.S. 61 (1975) (per curiam); *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974) ("Selective enforcement of the criminal laws is subject to constitutional constraints.").

[20] *Fed. R. Crim. P.* 11(d)(2)(B).

[21] *Opinion and Order* at 15 (D.N.J. Oct. 8, 2025); *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012); Def.'s Selective-Prosecution Mot., *Dkt. 403 §§ III(B)–(C)* (D.N.J. Apr. 2025); Def.'s Supp. Submission on Plea Withdrawal, *Dkt. 471 § I* (Aug. 11 2025); Def.'s Renewed Mot. to Unseal & Supp. Exs., *Dkts 420–421 (Exs A–C)* (Apr. 25 2025); *Wayte v. United States,* 470 U.S. 598, 608 (1985); *United States v. Armstrong,* 517 U.S. 456, 468 (1996); *United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir. 1989).

Such disparity undermines confidence that similarly situated defendants receive equal treatment under federal policy.

## IV. PLEA VOLUNTARINESS AND COERCION

A guilty plea entered under confinement, isolation, or limited counsel access cannot be deemed knowing and voluntary within the meaning of Rule 11 and the Due Process Clause.

### A.    Structural Defects in Plea Colloquy

A guilty plea is valid only if the record affirmatively demonstrates that the defendant's admission was knowing, voluntary, and supported by an independent factual basis.[22] A plea that omits findings on an essential element of the offense is constitutionally defective and must be set aside.[23]

The transcript of the November 5, 2020 (*see Dkt. 417 at 36–37*) plea hearing shows that the Court never established:

- **Fair notice** — that BCN mining-pool memberships were then recognized as "securities" within the meaning of § 5 or that Mr. Weeks could reasonably have known this.

- **Factual participation** — that Mr. Weeks himself "offered" or "sold" unregistered securities, rather than merely promoting a program created by others.

- **Willful intent** — that he knew his conduct was unlawful or that any investors were harmed.

Instead, the colloquy relied on conclusory affirmations ("Because I'm guilty") without clarifying the legal foundation or specific acts constituting the charged conspiracy. The Court failed to elicit facts demonstrating how Mr. Weeks' conduct met the statutory definition of an "offer or sale" or why he understood it

---

[22] *Fed. R. Crim. P.* 11(b)(1)–(3); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).
[23] *United States v. Lessner*, 498 F.3d 185, 197 (3d Cir. 2007); *United States v. Castro*, 736 F.3d 1308, 1315 (11th Cir. 2013).

to be unlawful at the time. That omission is not a mere technical defect—it strikes at the core of *Rule 11*'s voluntariness safeguard.

The absence of victims, the unsettled regulatory environment, and the Defendant's peripheral role collectively show that the Court lacked a sufficient factual predicate to conclude that the plea was knowing and intelligent. A plea accepted under those circumstances constitutes a structural error requiring vacatur.[24] Without contemporaneous proof of notice, sale participation, and willful intent, the October 8 2025 *Opinion and Order*'s conclusion that the plea was voluntary cannot stand.

## B.     Asset-Linked Inducement

At page 15 of the *Opinion and Order*, the Court rejects Defendant's argument that his plea was influenced by expectations concerning the return or preservation of seized assets. The Court's reasoning rests on three statements: (1) the Plea Agreement contained no such provision; (2) Defendant denied that anyone promised him anything beyond the written terms; and (3) Defendant "pleaded guilty because he was guilty, not because his assets would be returned." Each point is legally and logically flawed.

### 1. The Court conflates written promises with inducement and reliance.

The question under *Rule 11(d)(2)(B)* is not whether a particular promise appears in the written plea, but whether the plea was entered knowingly and voluntarily, free from improper inducement. A plea is involuntary if it is the product of "misrepresentation, unfulfilled promises, or misunderstanding."[25] Even if no clause in the agreement guaranteed asset return, the Defendant's belief—formed through counsel's or the Government's statements—that cooperation or a plea would expedite release of property can constitute coercive inducement. The Court's narrow focus on the text of the plea ignores the broader constitutional inquiry into the defendant's state of mind and circumstances of influence.

---

[24] *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (record must show that plea was made with understanding of the nature of the charge).

[25] *Fed. R. Crim. P.* 11(d)(2)(B); *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir. 1976).

## 2. The Court disregards the coercive environment created by the seizures.

At the time of the plea, the Government had seized nearly all of Defendant's assets—cryptocurrency, metals, and cash—leaving him dependent on pretrial restrictions and unable to fund his defense or support his family. That financial control created a powerful economic pressure to plead guilty, independent of any explicit promise. The Supreme Court has recognized that a plea may be involuntary when the defendant acts under "fear, duress, or misapprehension induced by the Government's conduct."[26] The Court's analysis ignores these coercive circumstances altogether. A statement of guilt given under the implicit pressure of financial deprivation cannot be treated as dispositive proof of voluntariness.

## 3. The Court fails to ensure a complete record of voluntariness.

*Rule 11* and *McCarthy v. United States*, 394 U.S. 459 (1969), impose an affirmative duty on the judge to develop a full record of the factors bearing on voluntariness. If asset preservation or recovery was a known concern—as the motion and correspondence show—the Court should have questioned Defendant about it directly during the plea colloquy. No such inquiry occurred, leaving a recordal gap that precludes any confident finding of voluntariness.

## 4. The contradiction in the Court's logic.

The *Opinion and Order* reasons that:
 • Because no written promise existed, there was no inducement; and
 • Because Defendant said he was guilty, his plea was voluntary.

This is circular and self-confirming: the very voluntariness at issue is used as evidence of voluntariness. A coerced or mistaken plea would produce the same on-record answers, precisely because the underlying pressure or misunderstanding was never explored. As the Supreme Court warned in *Machibroda*, "the plea-hearing transcript is not conclusive where the defendant's version of events, if true, would show that the plea was induced by threats or promises not appearing on the record."[27] By treating the absence of a record as proof that coercion did not exist, the Court inverted the *Rule 11* safeguard and ignored clear indicators of inducement.

---

[26] *Brady v. United States*, 397 U.S. 742, 754 (1970); *Machibroda v. United States*, 368 U.S. 487, 493–94 (1962).
[27] *Machibroda,* 368 U.S. at 494.

**Conclusion**

The record demonstrates that Defendant's financial dependence on the Government's control of his property, combined with his reasonable belief that cooperation might protect or restore those assets, created a coercive environment inconsistent with a voluntary plea. The *Opinion and Order*'s reliance on the absence of a written asset clause and its circular use of the plea colloquy to prove voluntariness are legally unsustainable. An evidentiary hearing is required to determine whether the plea was the product of economic coercion or material misunderstanding.[28]

## C.     Bail as Coercive Incentive

The *Opinion and Order* notes that "Defendant was released on bail in the amount of $2 million pending sentencing," and that he was released from custody the following day.[29] In context, that sequence confirms that the plea directly triggered Defendant's release. After nearly a year of pretrial detention under restrictive COVID-era conditions, with limited access to counsel and all assets seized, the timing and structure of the bond made liberty contingent upon confession. The fact that release occurred the next day substantiates that the plea operated as a condition precedent to bail—an arrangement inconsistent with the voluntariness required by *Rule 11(b)(2).*[30]

A plea entered under such circumstances is presumptively coercive. The Supreme Court has long held that a guilty plea must be "a voluntary and intelligent choice among alternative courses of action open to the defendant."[31] Here, the alternatives were effectively reduced to one: remain incarcerated indefinitely or plead guilty and go home. That is not a "free and voluntary" choice within the meaning of *Brady* and *Machibroda v. United States*, 368 U.S.

---

[28] *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

[29] See *Opinion and Order*, at 14 (D.N.J. Oct. 8, 2025) ("Defendant was released on bail in the amount of $2 million pending sentencing.").

[30] *See Fed. R. Crim. P.* 11(b)(2) (plea must be voluntary and not the result of force, threats, or promises other than those in the plea agreement); *Brady v. United States*, 397 U.S. 742, 748 (1970) (voluntariness cannot rest on "improper inducements or threats").

[31] *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (plea must be "a voluntary and intelligent choice among alternative courses of action open to the defendant" (quoting Boykin v. Alabama, 395 U.S. 238, 242 (1969))).

487 (1962). As other courts have recognized, a guilty plea motivated by the promise of release from confinement demands heightened scrutiny.[32]

## D.    Post-Plea Violations

The *Opinion and Order* recounts at length alleged bail "violations" and subsequent denials of modification but ignores that the original release was itself conditioned upon the plea. Even if later supervision issues occurred, they cannot transform a coercive liberty-for-plea bargain into a voluntary arrangement. Voluntariness is judged at the time the plea was entered, not years later. By invoking later compliance disputes to justify the structure of the original plea-conditioned release, the Court retroactively validates an arrangement that was constitutionally infirm when made. The later "violations" simply show that the conditions were onerous and continuously punitive—reinforcing, rather than negating, the coercive pressure surrounding the plea.[33]

## E.    Coercion and Duress Misstated

The district court's finding that "Defendant does not point to a single instance of intimidation, threat, duress, or coercion" (*Op.* 11) is reviewed for clear error. The record identifies multiple, unrebutted examples:
 (1) Defendant's release on a $2 million bond the day after the plea, demonstrating a direct plea-for-liberty quid pro quo (Dkts 441-1 § V; 453 § I);
 (2) complete pre-plea asset seizures creating acute economic pressure (Dkts 402 § II; 403 § III(C));
 (3) eleven months of restrictive confinement and repeated transfers limiting counsel access (*Dkt. 441-1 § II*); and
 (4) family isolation under COVID-era restrictions.

These circumstances constitute psychological and economic duress under *Brady v. United States*, 397 U.S. 742 (1970), and *Machibroda v. United States*,

---

[32] *Machibroda v. United States*, 368 U.S. 487, 493 (1962) (plea induced by promises of leniency or threats of continued confinement is involuntary); *United States v. Carter,* 804 F.2d 508, 514 (9th Cir. 1986) (holding that a plea entered to obtain release from pretrial detention required heightened scrutiny of voluntariness).

[33] *Machibroda v. United States*, 368 U.S. 487, 493 (1962) (plea coercion assessed at time of inducement); *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010).

368 U.S. 487 (1962). By treating "coercion" as requiring overt threats and disregarding this evidence, the Court clearly erred and misapplied *Rule 11(b)(2)*'s voluntariness requirement. Because the finding of "no coercion" lacks factual support, the denial of plea withdrawal should be vacated and the case remanded for an evidentiary hearing.[34]

## F.    Discovery Deprivation and Voluntariness

The district court erred in concluding that "Defendant does not explain what the missing materials contained or how their absence affected his plea." (*Op.* 12.) The record contains detailed descriptions of the withheld evidence—chain-of-custody logs (Dkts 420–421 Exs A–C), prior-counsel work product (Dkts 217, 418), and IRS/FinCEN classification correspondence (*Dkt. 402 § III*)—and expressly links that deprivation to the inability to assess the factual basis of the plea. Under *Rule 11(b)(3)* and *Brady v. United States*, 397 U.S. 742 (1970), a plea entered without access to material discovery cannot be deemed knowing or intelligent. The Court also applied an incorrect legal standard: the question is not whether the defendant proved the evidence would have changed his decision, but whether there is a reasonable probability that discovery access could have affected it.[35] Because the record establishes that such materials were withheld and directly related to the offense theory, the finding of "no showing" is clearly erroneous and warrants remand for an evidentiary hearing.[36]

## G. Illusory Right-to-Trial Rationale

The *Opinion and Order* concludes that "Defendant had the right to go to trial if he believed the Government had no evidence."[37] This reasoning is circular and legally unsound. The question under *Rule 11(b)(2)* is not whether a defendant had the right to trial—every defendant does—but whether his waiver of that right was voluntary, informed, and uncoerced. Here, Defendant's

---

[34] *Opinion and Order* at 11 (D.N.J. Oct. 8, 2025); *Brady v. United States*, 397 U.S. 742 (1970); *Machibroda v. United States*, 368 U.S. 487 (1962); *Fed. R. Crim. P.* 11(b)(2).
[35] *Opinion and Order* at 12 (D.N.J. Oct. 8, 2025); *Fed. R. Crim. P.* 11(b)(3); Def.'s Renewed Mot. to Unseal & Supp. Exs., Dkts 420–421 (Exs A–C) (Apr. 25, 2025); Def.'s Mots., Dkts 217, 402 § III, 418 (2024–25).
[36] *Brady v. United States*, 397 U.S. 742 (1970); *United States v. Ruiz,* 536 U.S. 622 (2002); United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015).
[37] *Opinion and Order* at 13 (D.N.J. Oct. 8, 2025).

prolonged pre-trial detention, asset seizures, and immediate post-plea release (Dkts 402 § II; 441-1 §§ II, V) show that the ability to "choose trial" was illusory. As *Brady v. United States*, 397 U.S. 742 (1970), and *United States v. Jones*, 336 F.3d 245 (3d Cir. 2003), make clear, voluntariness cannot be inferred merely from the existence of a formal right. The district court's statement substitutes legal tautology for factual analysis and fails to address whether the coercive environment rendered the waiver involuntary.[38]

## H. Missing Plea Transcript and Record Coercion

The Government's only opposition to Defendant's plea-vacatur motion (*Dkt. 417*) repeatedly cited a "November 5, 2020 plea-hearing transcript" as *Exhibit A*, yet no such transcript was filed with the Court. Defendant filed a *Notice of Errata* (*Dkt. 481*) identifying the omission and requesting that the Court strike or disregard any reference to the missing exhibit until the certified transcript was produced. The Court nevertheless relied on the incomplete filing when denying plea withdrawal.[39]

A district court may not determine voluntariness under Rule 11(d)(2)(B) based on counsel's unsworn representations. [40] By proceeding without the transcript, the Court effectively presumed facts not in evidence.[41]

The omitted record is material because the plea occurred under coercive confinement conditions. Defendant was moved through multiple detention facilities, denied family visitation after December 10, 2019, and had only brief, monitored phone contact with counsel. COVID-19 restrictions further curtailed consultation and document review, leaving him unable to make a fully informed decision. Billing and communication records (Ex. D) confirm minimal attorney

---

[38] *Fed. R. Crim. P.* 11(b)(2); *Brady v. United States*, 397 U.S. 742, 755 (1970); *United States v. Jones,* 336 F.3d 245, 252 (3d Cir. 2003).
[39] See Notice of Errata, *Dkt. 481* (filed Sept. 9, 2025).
[40] *United States v. Bernard*, 373 F.3d 339, 344 (3d Cir. 2004) ("Statements of counsel are not evidence."); *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003) (plea-vacature denial unsustainable without transcript of plea hearing); *McCarthy v. United States*, 394 U.S. 459 (1969).
[41]Cf. *McCarthy*, 394 U.S. at 465 (plea invalid where record fails to affirmatively show compliance with Rule 11).

contact—1.2 hours of discovery review and 0.9 hours of plea discussion out of 52 billed hours—while discovery access remained blocked.[42]

The plea hearing itself was conducted by Zoom from a detention-library terminal, with background noise, limited connection time, and no private consultation channel. Such conditions are inherently coercive absent an on-record waiver.[43] The absence of the certified transcript prevents verification that Rule 11(b)(1)–(3) requirements were met.

Together with the unaddressed correspondence (Ex. B) documenting blocked discovery requests, these circumstances show that the plea was neither knowing nor voluntary. Reconsideration is therefore required so that the Government files the certified transcript and the Court reviews voluntariness on a complete record.

Defendant respectfully submits that the portion of the *Opinion and Order* denying the motion to vacate the guilty plea (*Dkt. 401*) must also be vacated. The Government's only opposition, its April 21, 2025 letter (*Dkt. 417*), repeatedly cited a "November 5, 2020 plea-hearing transcript" as *Exhibit A*—yet no such transcript was filed. As shown in Defendant's *Notice of Errata* (*Dkt. 481*) and attached *Proposed Order* (*Dkt. 481-1*), he specifically requested that the Court strike the exhibit and bar reliance on it "unless and until the correct transcript is filed." That filing was served on AUSA Ingrid Eicher, ensuring that the prosecution team had actual notice and an opportunity to correct the record before the Court ruled. The Court, however, did not rule on that proposed order and proceeded weeks later to issue *Opinion and Order*, expressly relying on *Dkt. 417* and the nonexistent *Exhibit A*.[44]

The missing transcript is particularly significant because the plea occurred under coercive conditions. Weeks was detained for months, transferred repeatedly, and isolated from counsel and family. COVID restrictions eliminated in-person meetings and limited attorney contact to brief calls. These

---

[42] See *Zedner v. United States*, 547 U.S. 489 (2006) (boiler-plate continuances insufficient under Speedy Trial Act).

[43] *United States v. Torres-Palma*, 290 F.3d 1244, 1248 (10th Cir. 2002); *United States v. Bethea*, 888 F.3d 864, 867 (7th Cir. 2018).

[44] See *Dkts. 417, 481, 481-1.*

circumstances produced exhaustion and confusion that impaired his ability to make a voluntary and informed plea.[45]

Mr. Weeks's recollection of the plea hearing is limited because that period of his life was marked by prolonged detention, exhaustion, and significant psychological stress. He has made efforts to put that time behind him and has only a fragmented memory of the proceeding itself. What he does recall is that the video transmission was unreliable and at times inaudible, and that he felt frustrated and confused as the connection disconnected at least once during the hearing. These technical problems were apparent to all participants and placed the Government on notice of the communication difficulties. Without access to the certified transcript or recording, it is impossible to determine what portions of the colloquy were lost, repeated, or misunderstood, further underscoring the need for record reconstruction and reconsideration of the plea's voluntariness.

Billing and communication records submitted previously as Exhibit D (Billing Records Showing Counsel Access Limits) corroborate that attorney access became increasingly restricted after early 2020, with only brief phone contacts replacing in-person meetings during the months preceding the plea. Those records reflect just 1.2 hours of discovery review and 0.9 hours of plea consultation out of more than 52 hours billed, confirming that no substantive preparation occurred before the plea. The prior record (*Dkt. 488*) likewise established that Defendant was detained continuously from December 2019 through November 2020 without meaningful discovery access. The Government knew or should have known that discovery access was impossible yet relied on boiler-plate continuance language about "voluminous discovery."[46] These undisputed facts show that the plea was taken under both informational and physical coercion.

The plea hearing itself was conducted by Zoom from within the detention facility's library while Defendant remained in federal custody and without in-person access to counsel. The virtual format further limited his ability to confer privately with his attorney or review documents in real time. Background noise, institutional time limits, and connection interruptions compounded the stress of the proceeding and impaired meaningful participation. These conditions made the proceeding markedly different from an in-court plea

---

[45] See generally *Dkt. 488* (detention summary and timeline).
[46] *Zedner*, 547 U.S. at 507–08.

colloquy and underscore why the missing certified transcript is indispensable to determine whether the Rule 11 standards of voluntariness and understanding were satisfied.[47]

The same pattern of restricted access and incomplete communication is reflected in Defendant's subsequent correspondence with the Government, including the discovery-clarification letter attached as Exhibit B, which documents ongoing barriers and unaddressed discovery requests. Together, Exhibits B and D confirm that meaningful attorney consultation never occurred and that the Court's October 8 *Opinion and Order* failed to account for these materials already in the record.

The Court's failure to act on the pending proposed order and its reliance on an incomplete record constitute clear error and manifest injustice under *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Accordingly, Defendant requests that the Court vacate in part the October 8 Order—including the plea-vacatur ruling to the extent it relied on *Dkt. 417* and "Exhibit A" not part of the record—and require the Government to file the actual certified transcript and any related materials before any renewed consideration of the plea-vacatur issue. To date, Defendant has never been provided a copy of the certified plea-hearing transcript and has no access to it through PACER or any other means. The Government's reference to that transcript in *Dkt. 417* therefore deprived him of the ability to verify or challenge the representations made therein, compounding the procedural imbalance created by the missing exhibit.[48]

## V. DISCOVERY AND ACCESS DEPRIVATIONS

Due process obliges the Government to disclose and permit access to evidence; withholding discovery and seized property compromises the integrity of the adversarial process.

### A.    Work-Product and File Access

The *Opinion and Order* concluded that "Defendant provides no elaboration" concerning withheld work-product materials. Yet the record—specifically *Dkts. 217 and 418–421*—contains detailed descriptions of

---

[47] *Torres-Palma,* 290 F.3d at 1248; *Bethea*, 888 F.3d at 867.
[48] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

prior-counsel memoranda, investigative notes, and chain-of-custody evidence that Defendant repeatedly requested. The Court conflated the Government's work-product protection under *Fed. R. Crim. P.* 16(a)(2) with Defendant's right to obtain his own case file under the Sixth Amendment and applicable professional-conduct rules.[49]

The absence of these materials impaired Defendant's ability to evaluate discovery completeness and the voluntariness of his plea. By declining to consider this factor, the Court misapplied Rule 11(d)(2)(B) and overlooked record evidence directly relevant to voluntariness.[50] This defect requires correction under Rule 11(d)(2)(B).

On September 23, 2025, Defendant sent a written discovery-clarification letter to AUSAs Robert Moore and Trevor Chenoweth, requesting confirmation of what discovery had been produced to prior counsel before the plea, in what format, and what materials the Government relied on as the factual basis for the plea. The letter—attached as Exhibit B—was transmitted by email and requested acknowledgment within two days and a substantive response within fourteen. No acknowledgement or response was ever received. Because the letter was not docketed, the Court lacked the opportunity to consider it when issuing the *Opinion and Order*. This filing now places that correspondence formally in the record, demonstrating that the Government had clear notice of the unresolved discovery issues well before the Court ruled and that the matter remains ripe for resolution.

## B.    Mischaracterization of Evidence

The Court's assertion that Defendant "provided no elaboration" regarding work-product deprivation is not an isolated instance. The same reasoning pattern recurs throughout the *Opinion and Order*'s treatment of other filings. In denying the discovery, unsealing, and evidence-access motions (Op. 19–20), the Court again stated that "Defendant has not demonstrated how these materials would affect the outcome of his case" and that his motions "lack specificity." Yet those very pleadings—*Dkts. 417 through 421*—contain detailed inventories

---

[49] *See Fed. R. Crim. P.* 11(b)(1)–(3), (d)(2)(B); *United States v. Nicholson,* 611 F.3d 191, 217 (4th Cir. 2010).

[50] *See United States v. Armstrong*, 517 U.S. 456, 462 (1996) (distinguishing Rule 16(a)(2) limits from constitutional and ethical disclosure duties).

of withheld discovery, chain-of-custody documents, and IRS-CI correspondence, each cross-referenced by date, exhibit number, and agency source.

By labeling these filings conclusory despite their detailed evidentiary content, the Court disregarded the factual record it was required to evaluate. *Rule 11(b)(3)* demands engagement with the evidence before rejecting a claim; the Court's failure to do so warrants reconsideration.

This repetition of the "no elaboration" rationale creates a systemic defect in the *Opinion and Order's* analysis. Instead of engaging with the documentary substance of Defendant's motions, the Court treated their complexity as evidence of vagueness and used that mischaracterization to dispose of every pending issue without factual findings. The cumulative result is a judgment that rests on a paper-thin procedural shortcut rather than a review of the evidentiary record, contravening both the requirements of *Rule 11(b)(3)* and the Third Circuit's mandate that district courts must make specific findings on each asserted ground for plea withdrawal or discovery denial.[51]

## C.    Custody-Log Inconsistencies

The *Opinion and Order* simultaneously (1) accepted the Government's claim that the crypto-asset seizure and inventory logs are "work product" under *Fed. R. Crim. P.* 16(a)(2) and (2) directed Defendant to seek those same records from the district courts of Florida and Colorado. Those positions cannot be reconciled.

If the materials are internal DOJ work products, they remain within the possession of this prosecution team and subject to this Court's review. If they are judicial seizure records, they constitute evidence under the Government's chain of custody and fall within this Court's constructive jurisdiction. Because the Opinion adopted both positions simultaneously, it created a contradiction that warrants correction under *Max's Seafood Café v. Quinteros*, 176 F.3d 669 (3d Cir. 1999).

---

[51] *Fed. R. Crim. P.* 11(b)(3); *United States v. Jones,* 979 F.2d 317, 318 (3d Cir. 1992) (requiring district courts to make factual findings on each basis for plea withdrawal); *United States v. Fahie,* 419 F.3d 249 (3d Cir. 2005).

The February 2021 IRS-CI correspondence and inventory (Dkts 420–421) make clear that these logs are factual records, not attorney impressions, and therefore not protected work products.[52] By accepting mutually exclusive positions and refusing in-camera review, the Court created a procedural contradiction that leaves critical evidence unexamined and undermines the completeness of the record.[53]

## D.    Newly Discovered Evidence

The district court found that "Defendant does not cite in detail any new evidence discovered after the plea."[54] That finding is clearly erroneous. The record identifies several categories of evidence produced only after the November 2020 plea:

 (1) IRS-CI chain-of-custody and inventory records revealing lost or unaccounted-for seized assets (*Dkts. 420–21*, Exs. A–C);

 (2) Government admissions in *Dkts. 417–18* that those records had been withheld as "work product"; and

 (3) IRS and SEC correspondence confirming the absence of any contemporaneous classification of BCN memberships as "shares" (*Dkt. 402 § III*; Sept. 5, 2024 Letter).

These disclosures go to the heart of the Government's theory of the offense and the plea's factual basis. Failure to recognize them as newly discovered evidence constitutes clear error and warrants reconsideration.

Each of these items undermines the factual basis for the plea—specifically, the Government's claim that Defendant possessed proceeds of a fraud and knowingly sold unregistered securities. Under *Rule 11(b)(3)* and *United States v. Bui*, 795 F.3d 363 (3d Cir. 2015), the proper inquiry is whether there exists a reasonable probability that disclosure of this evidence would have affected the decision to plead. Because the withheld records were later produced

---

[52] *Fed. R. Crim. P.* 16(a)(2); *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998).

[53] *United States v. Rigas*, 779 F. Supp. 2d 408, 414 (M.D. Pa. 2011); *United States v. Hubbell*, 530 U.S. 27 (2000); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010).

[54] *Opinion and Order* at 18, *United States v. Goettsche* et al., No. 19-cr-877 (D.N.J. Oct. 8, 2025) (ECF 497).

and directly contradict the Government's factual narrative, the finding of "no new evidence" is unsupported and warrants remand for an evidentiary hearing.[55]

For example, my pending Letter Motion (*Dkt. 494*) seeking production of the May 23, 2025 laboratory report and chain-of-custody records for an alleged cocaine test remains unresolved before Magistrate Judge Hammer. The Government continues to cite this unverified allegation in opposition to bail modification without providing any underlying laboratory evidence. The absence of disclosure prevents me from obtaining confirmatory or split-sample testing and exemplifies the ongoing prejudice caused by incomplete and unaddressed filings.

## E. Rule 41(g) Equitable Jurisdiction

Rule 41(g) invokes the Court's equitable jurisdiction, which survives conviction and sentencing because it derives from the Court's supervisory power rather than the pendency of a criminal proceeding. Once criminal jurisdiction ends, a Rule 41(g) motion proceeds as a civil equitable action against the United States, and the Court may fashion appropriate relief—including the return of property, an accounting, or an evidentiary hearing—whenever the Government's continued retention would be unreasonable or inconsistent with due process.[56]

Because equitable jurisdiction depends on the Court's supervisory power rather than the pendency of criminal proceedings, its discretion is guided by equitable factors such as the movant's clean hands, the Government's need to retain the property, and the availability of adequate remedies at law.[57]

---

[55] *Fed. R. Crim. P.* 11(b)(3); Def.'s Renewed Mot. to Unseal & Supp. Exs., Dkts 420–421 (Exs. A–C) (Apr. 25 2025); Def.'s Mots., Dkts 417, 418 (Apr. 2025); Def.'s Tax & Reg. Mot., *Dkt. 402 § III* (Mar. 2025); Letter to U.S. Att'y's Office (Sept. 5 2024); *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015); *United States v. Jasin*, 280 F.3d 355, 362 (3d Cir. 2002).
[56] *United States v. Chambers*, 192 F.3d 374, 376–77 (3d Cir. 1999) (holding that post-conviction Rule 41(g) motions invoke equitable jurisdiction); *Rufu v. United States,* 20 F.3d 63, 65 (2d Cir. 1994); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010) (en banc) (discussing supervisory equitable authority).
[57] Chambers, 192 F.3d at 377 (listing equitable considerations); *Mora v. United States,* 955 F.2d 156, 158 (2d Cir. 1992).

The October 8 Order further misstates the record by suggesting that property seized in Florida and Colorado must be addressed "in the districts of seizure." In fact, the record reflects that all such items were transferred into the custody of IRS–Criminal Investigation (Denver Field Office) and remain there under the direction and supervision of the District of New Jersey prosecution team, as confirmed by Government correspondence dated February 2021, December 2024, and April 2, 2025 (referenced in *Dkts. 477 and 484*). Because those agents act under this Court's authority, the seized assets are within the Court's constructive custody, and Rule 41(g) jurisdiction properly lies here.[58]

At minimum, the Court should have ordered the Government to respond to the pending Rule 41(g) and discovery motions or, if it believed any property lay outside its jurisdiction, to transfer that portion with specific findings supporting the decision.

As the Supreme Court has observed, *"Equity eschews mechanical rules; it depends on flexibility."*[59]

### F. Property and Digital-Asset Return

Clarification remains necessary regarding approximately 3.67 BTC referenced in Dkts 446 and 480 and acknowledged by former AUSA Anthony Torntore as eligible for return. No forfeiture order covers these holdings, and the Government has filed no opposition. Consistent with the equitable analysis in *Section V(E)* under Rule 41(g), the matter should be referred to Magistrate Judge Hammer for verification and disposition. The absence of a ruling leaves ownership and accounting unresolved, perpetuating the procedural prejudice described above.

Because this item is uncontested, reconsideration and limited referral would promote judicial economy and ensure proper restoration of property retained outside lawful forfeiture.

## VI. EXTRA-RECORD RELIANCE & JUDICIAL SUPPLEMENTATION

---

[58] *See* Chambers, 192 F.3d at 376–77 (constructive custody exists when property is held by agents acting under the prosecuting district's direction).

[59] *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).

A court's legitimacy rests on the record before it; findings must rest solely on materials subjected to adversarial testing.

In three related instances—each appearing between pages 16 and 17 of the *Opinion and Order*—the Court relied on or filled gaps using documents never placed in the record: (1) the August 12, 2020 Letter, (2) the DOJ Digital-Asset Memorandum, and (3) the undated "SAR / IRS-CI Report." In each case, the Government either failed to produce or failed to brief the document, yet the Court adopted conclusions drawn from it. This constitutes extra-record reliance prohibited by *United States v. Santarelli*, 929 F.3d 95 (3d Cir. 2019), and violates *Rule 11(b)(3)*'s requirement that factual findings derive solely from the record.

The following subsections (A–D) detail these errors — the Court's citation to inaccessible materials, reliance on the undisclosed August 12 Letter, substitution of reasoning for the Government's absent argument on the DOJ Memo, and treatment of an undocketed SAR / IRS-CI Report as record evidence. Together they illustrate a recurring due-process defect: judicial supplementation of the record rather than adjudication upon it.

## A.    Reliance on Non-Record Materials

Throughout the *Opinion and Order* (e.g., *Op.* 6, 8, 13 n.4), the Court cites materials such as "*Dkt. 1 at 12*" and other docket entries that were neither referenced in the Government's opposition (*Dkt. 417*) nor available to Defendant. Defendant never received these documents through discovery and could not contest or contextualize them. By relying on materials outside the adversarial record, the Court effectively supplemented the Government's case and deprived Defendant of notice and opportunity to respond.

The Third Circuit has held that such reliance violates due process and undermines the integrity of appellate review.[60] Because those materials were never introduced or authenticated in the *Rule 11* record, they cannot support the Court's voluntariness findings or its denial of plea withdrawal.[61]

---

[60] *Opinion and Order* at 6, 8, 13 n.4 (D.N.J. Oct. 8, 2025); Gov't Ltr., *Dkt. 417* (Apr. 22, 2025); *United States v. Santarelli*, 929 F.3d 95, 106 (3d Cir. 2019); *United States v. Hensley, 469 F.3d 529, 539 (3d Cir. 2006).*

[61] *Fed. R. Crim. P.* 11(b)(3), 49.1.

## B.    Undisclosed August 12, 2020 Letter

The *Opinion and Order* states that the Government "points to an August 12 2020 letter" in which Defendant purportedly admitted knowledge of fraudulent activities, while Defendant asserts he never received or possessed such a letter.[62] The Government did not reference or attach this letter in its April 22 2025 submission (*Dkt. 417*) or any other filing; nor has it ever appeared on the public docket. The district court therefore relied on an extra-record document never subject to adversarial review.[63]

Rather than order its production under *Rule 16* or conduct in-camera review, the Court used the absence of the letter to fault Defendant for "failing to elaborate." That circular reasoning—denying access and then penalizing the lack of detail—violates due-process principles and misapplies *Rule 11(d)(2)(B)*. The Court's statement that "without more, it cannot determine" whether lack of access is a fair reason simply underscores that the record is incomplete by the Court's own design. Because the purported letter bears directly on the plea's factual basis and voluntariness, the proper course was to compel disclosure or hold a limited evidentiary hearing, not to dismiss the claim.[64]

## C.    Judicial Substitution on DOJ Memo

In addressing "Reason 9," the Court stated that internal DOJ memoranda "do not create enforceable rights" and therefore cannot support plea withdrawal.[1] Yet the Government's April 22 2025 submission (*Dkt. 417*) never raised that argument and did not respond at all to Defendant's DOJ-Memo motion (Dkts 402 § III; 403 § III(B)–(C); 471 § I). By supplying and resolving a legal defense that the prosecution chose not to assert, the Court exceeded its neutral role and deprived Defendant of notice and opportunity to rebut.

The Third Circuit has condemned such judicial supplementation as inconsistent with adversarial fairness.[2] The Government's silence should have weighed in favor of Defendant's position or, at minimum, prompted the Court to order a response—not to fill in arguments *post hoc* on the Government's behalf.[3]

---

[62] *Opinion and Order* at 17 (D.N.J. Oct. 8, 2025).
[63] Gov't Ltr., *Dkt. 417*; *United States v. Santarelli,* 929 F.3d 95, 106 (3d Cir. 2019); *United States v. Hensley*, 469 F.3d 529, 539 (3d Cir. 2006).
[64] *Fed. R. Crim. P.* 11(b)(3), 11(d)(2)(B), 16(a)(1)(E).

### D.    Undated SAR or IRS-CI Report

The "September 21 2020" SAR / IRS-CI report referenced at *Op.* 17 was never docketed or authenticated. It was mailed only to former counsel on September 9 2024 following Defendant's September 5 2024 discovery request and was never reviewed by current defense or filed on the record. Nevertheless, the Court relied on it as if it were verified grand-jury material. Because the report remains undated, disputed, and unauthenticated (*see Dkt. 403 § III(D)*), its use violates *Rule 11(b)(3)* and the prohibition against extra-record reliance established in *United States v. Santarelli*, 929 F.3d 95 (3d Cir. 2019).[65]

The *Opinion and Order*'s treatment of this document is erroneous for four independent reasons:

1. **Not part of the adversarial record.** Mailing a document to prior counsel after discovery deadlines, without docketing or certification, does not make it evidence before the Court. Reliance on such material violates *Rule 11(b)(3)*'s requirement that a plea's factual basis appear "on the record."

2. **Inconsistent internal chronology.** The *Opinion and Order* lists several dated exhibits (*Op.* 17 top) but includes this SAR report—undated on its face—as though its timing were established. That selective treatment creates an evidentiary inconsistency and undermines the Court's own chronology.

3. **Conflict with pending authenticity challenge.** Defendant questioned this same report's authenticity and chain of custody in *Dkt. 403 § III(D)*, noting missing control fields and nonstandard formatting. The Court never resolved that motion but later used the disputed report to support the Government's theory—circular reasoning that denies meaningful review.

4. **Due-process implications.** By relying on a privately transmitted, unauthenticated document outside the record, the Court deprived

---

[65] *Opinion and Order* at 17 (D.N.J. Oct. 8, 2025); Def.'s Selective-Prosecution Mot., *Dkt. 403 § III(D* (Apr. 2025); Letter to U.S. Att'y's Office (Sept. 5 2024); Gov't Mailing to Prior Counsel (Sept. 9 2024); *Fed. R. Crim. P.* 11(b)(3); *United States v. Santarelli*, 929 F.3d 95 (3d Cir. 2019).

Defendant of notice and opportunity to contest it, contrary to *Santarelli* and *Fed. R. Evid.* 901.[66]

## VII. PROCEDURAL ERRORS AND ANALYTICAL CIRCULARITIES

Justice requires procedural regularity; rulings entered without jurisdiction or adequate findings produce manifest error and erode confidence in the judicial process.

### A.    Denial of Continuance (Abuse of Discretion)

The *Opinion and Order* denied Defendant's motion for continuance for "lack of good cause,"[67] yet faulted him elsewhere for not producing the very evidence that the requested continuance was intended to obtain. Each request—identified in *Dkts. 420–21, 441-1, 453, and 471*—was narrowly tailored to secure missing discovery, transcripts, and Government responses essential to *Rule 11(b)(2)* voluntariness and *Rule 11(b)(3)* factual-basis review.

By refusing additional time and then relying on the resulting evidentiary gap, the Court created a self-fulfilling deficiency. This denial constitutes an abuse of discretion and warrants limited vacatur for evidentiary development.

The denial is arbitrary, internally inconsistent, and constitutes an abuse of discretion.[68] The proper remedy is vacatur of the denial and remand for limited evidentiary development.[69]

### B.    Improper "Mootness" Findings

The *Opinion and Order* stated that "because Defendant's motion to withdraw his guilty plea is denied, most of his remaining motions are consequently rendered moot."[70] That reasoning is legally and procedurally

---

[66] *Fed. R. Evid.* 901; *United States v. Hensley*, 469 F.3d 529, 539 (3d Cir. 2006).

[67] *Opinion and Order* at 18 (D.N.J. Oct. 8, 2025).

[68] Def.'s Renewed Mot. to Unseal & Supp. Exs., Dkts 420–421 (Apr. 25 2025); Def.'s Post-Hearing Bail Memo, *Dkt. 441-1* (May 26, 2025); Def.'s Reply Br., *Dkt. 453* (June 24 2025); Def.'s Supp. Submission on Plea Withdrawal, *Dkt. 471* (Aug. 11, 2025); *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991); *United States v. Santarelli*, 929 F.3d 95, 106 (3d Cir. 2019).

[69] *Fed. R. Crim. P.* 45(b)(1)(A).

[70] *Opinion and Order* at 8 (D.N.J. Oct. 8, 2025).

incorrect. The motions cited—including those addressing selective prosecution (*Dkt. 403*), discovery suppression (*Dkts. 420–21*), and property return under *Fed. R. Crim. P.* 41(g)—raise independent constitutional and statutory claims that remain justiciable regardless of the plea's status.

Denying plea withdrawal does not extinguish antecedent due-process or discovery violations. Those issues form part of the factual and legal basis for withdrawal itself. Labeling live constitutional claims "moot" is reversible error under *Blackledge v. Perry*, 417 U.S. 21 (1974), and *Menna v. New York*, 423 U.S. 61 (1975).

The Court's approach reverses the correct analytical sequence: rather than evaluating whether those motions establish a "fair and just reason" to permit withdrawal under Rule 11(d)(2)(B), the Court used its own denial to declare them moot. That circular reasoning is contrary to *Blackledge v. Perry*, 417 U.S. 21 (1974); *Menna v. New York*, 423 U.S. 61 (1975); and *United States v. Jones*, 979 F.2d 317 (3d Cir. 1992).[71]

The *Opinion and Order* denied more than twenty separate motions as "moot," including *Dkts. 420, 432, 443, 488, 489, and 494*, without individualized findings or reference to any intervening event that actually rendered those matters moot. None of these filings were opposed by the Government, and each raised an ongoing, justiciable issue under Federal Rule of Criminal Procedure 16(d)(2), 41(g), or 47(b)—ranging from discovery enforcement to property return and record unsealing.

The Third Circuit has long held that a district court commits clear error when it summarily disposes of live motions without addressing the relief requested or the governing standards. *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration warranted to correct clear error or prevent manifest injustice); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). The blanket "mootness" designations here effectively extinguished unopposed motions without judicial review of their merits or factual basis. Such treatment undermines both the adversarial process

---

[71] *See Fed. R. Crim. P.* 11(d)(2)(B); *Blackledge v. Perry*, 417 U.S. 21, 30–31 (1974); *Menna v. New York*, 423 U.S. 61, 62 (1975) (per curiam); *United States v. Ruiz,* 536 U.S. 622, 630 (2002); *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992); *United States v. Wright*, 776 F.3d 134, 144 (3d Cir. 2015).

and the Court's duty to make findings on the record sufficient for appellate review.

As detailed in *Exhibit A*, the affected filings span discovery, property-return, unsealing, and supplemental-authority submissions that remain legally operative. The cumulative effect of these procedural omissions demonstrates a systemic error requiring partial vacatur and renewed briefing to ensure that each pending matter is decided on a complete and accurate record.

Transparency in the handling and disclosure of seized materials is not a matter of discretion; it is a constitutional duty that safeguards the integrity of the judicial process and the public's confidence in fair adjudication.

The Opinion and Order also denied as "moot" several motions that were either no longer active or raised independent procedural issues, including the unsealing request and the Rule 12(b)(3)(B) motions addressing Counts 1 and 2 (Dkts. 451, and 453). Those rulings were unnecessary and risk fragmenting the record. While any unsealing matter may appropriately be referred to Magistrate Judge Hammer under Local Rule 72.1(a), the Court should clarify that such administrative matters are distinct from the equitable property claim under Rule 41(g). The denial of those motions as "moot" does not—and cannot—limit this Court's jurisdiction over the pending 3.67 BTC issue.

## C.    Numerical Acknowledgment Without Findings

The *Opinion and Order* notes that "since February 5, Defendant has filed twenty-one motions before this Court" and asserts that the Court "has reviewed all of his submissions."[72] While this statement emphasizes the number of filings, it does not engage with their substance. The procedural and constitutional errors identified in those motions—including the missing plea transcript, selective-prosecution discovery, and work-product deprivation—are nowhere substantively addressed in the *Opinion and Order*.

Thus, while the Court acknowledges the filings numerically, it treats them collectively as an inconvenience rather than as distinct motions raising discrete due-process violations. Such blanket treatment falls short of the obligation to make specific findings on each basis for relief.[73]

---

[72] *Opinion and Order* at 4 (D.N.J. Oct. 8, 2025).
[73] *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992).

The *Opinion and Order* acknowledged the number of motions filed, but did not address their substance; numerical reference is not a substitute for findings on the issues presented. *See United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992).

### D.    Procedural Irregularities and Record Defects

In addition to the plea-record and discovery issues discussed above, the *Opinion and Order* contains several procedural irregularities that warrant correction. For completeness, the following subsections identify additional rulings entered without jurisdiction or on motions that were no longer pending. Each reflects clear error on the face of the record and supports reconsideration under *Max's Seafood Café v. Quinteros*, 176 F.3d 669 (3d Cir. 1999).[74]

### 1. Counts 1–2 Denied Without Jurisdiction

The *Opinion and Order* denied post-plea motions attacking the indictment—including the *Second Motion to Dismiss Count One of the Indictment* (*Dkt. 451*) and the *Second Motion to Dismiss Count Two of the Indictment* (*Dkt. 453*)—even though those motions were not procedurally ripe while the guilty plea remained in effect. A district court lacks authority to adjudicate the merits of a Rule 12(b)(3)(B) motion once a guilty plea has been entered and accepted.[75] At most, such motions could have been dismissed as moot or deferred pending disposition of the plea-vacatur request. Their inclusion in the blanket denial of *Opinion and Order* was therefore *ultra vires* and constitutes clear error apparent on the record.

### 2. Withdrawal of *Dkt. 396* Ignored

Defendant filed a *Notice of Withdrawal and Clarification Regarding Docket No. 396* on May 26, 2025 (*Dkt. 442*), expressly requesting that the Court "deem Docket No. 396 withdrawn and rely on subsequent filings as the basis for ongoing proceedings." That notice superseded and withdrew the earlier

---

[74] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration warranted to correct clear error or prevent manifest injustice).

[75] *United States v. Miller,* 197 F.3d 644, 647 (3d Cir. 1999) (holding that a district court lacks authority to adjudicate pretrial motions challenging the indictment after a guilty plea is entered and accepted); *United States v. Oladimeji*, 463 F.3d 152, 155 (2d Cir. 2006) (same).

submission, leaving no live motion for adjudication. Despite this clear withdrawal, the Court's *Opinion and Order* nevertheless included Docket 396 among the motions denied.

A withdrawn motion is no longer a live controversy before the Court and may not be adjudicated.[76] Federal courts uniformly hold that once a motion is withdrawn, the issue is removed from judicial consideration and the Court lacks authority to rule on it.[77] Because Docket 396 had been withdrawn more than four months before the Court ruled, the October 8 denial constitutes a clear error of law and fact within the meaning of *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999), and a correctable "mistake" under Federal Rule of Civil Procedure 60(b)(1). Defendant does not seek to relitigate prior arguments but only to ensure that the Court's docket accurately reflects which motions were ripe, withdrawn, or unadjudicated at the time of its ruling.

### 3. Need for Correction and Relief

Together, these jurisdictional defects—denying two unripe indictment-related motions and one withdrawn filing—show that portions of *Opinion and Order* were entered without proper authority. Reconsideration is warranted to vacate those specific denials and to direct the Government, if those motions are resubmitted following vacatur of the plea, to file substantive responses in accordance with Federal Rule of Criminal Procedure 49(b) and D.N.J. L. Civ. R. 7.1.

### 4. Duplicative Docket 400 Denial

Subsequent review indicates that *Dkt. 400*, filed under seal on February 14, 2025, duplicates the materials contained in *Dkt. 396*—the motion expressly withdrawn on May 26, 2025 (*Dkt. 442*). Because *Dkt. 400* presented no new substance and was never authorized as a separate filing, it was not properly before the Court. Nevertheless, the *Opinion and Order* included *Dkt. 400* among the motions denied. In doing so, the Court effectively ruled on a withdrawn

---

[76] D.N.J. L. Civ. R. 7.1(d)(5) (permitting withdrawal of a motion before the return date); D.N.J. L. Crim. R. 1.1 (applying the Local Civil Rules to criminal proceedings).
[77] *United States v. Mallory*, 337 F. Supp. 3d 621, 624 (E.D. Va. 2018) ("Once a motion has been withdrawn, there is no longer a live issue for the court to decide."); *United States v. Miller*, 197 F.3d 644, 647 (3d Cir. 1999) ("A district court may not rule on a motion that is not before it.").

motion a second time. Such action exceeds the Court's jurisdiction and constitutes clear error.[78] To preserve the integrity of the record, *Dkts. 396 and 400* should both be deemed withdrawn and excluded from the scope of the October 8 Order.

**5. Faretta-Waiver Omission**

The record contains no certified transcript or written acknowledgment of Defendant's waiver of counsel following the *Faretta* hearing held on February 5, 2025, before Magistrate Judge Hammer. See *Dkt. 393* (minute entry; no transcript or waiver attached). Under *Faretta v. California*, 422 U.S. 806, 835 (1975), and Fed. R. Crim. P. 44(a), a court may permit self-representation only after ensuring on the record that the defendant understands "the dangers and disadvantages of self-representation." Because neither a transcript nor a signed waiver form appears on the docket, the Court cannot presume that the required colloquy occurred. Nevertheless, the Opinion and Order repeatedly rely on Defendant's *pro se* status to characterize filings as knowing and voluntary. Absent a documented *Faretta* waiver, those findings rest on an incomplete record and constitute structural error. Reconsideration is warranted to compel production of the certified transcript or, alternatively, to make specific findings confirming compliance with *Faretta* and Rule 44. See *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).

Although Defendant mailed and filed a motion to dismiss counsel, that correspondence was not formally filed on the docket. Even so, it was sufficient to place the Court on notice of Defendant's intent to proceed without counsel. Such a communication does not, by itself, satisfy the Court's affirmative duty under *Faretta* and *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), to conduct an on-record colloquy.[79] Without a documented colloquy or signed waiver, the record cannot support a finding that Defendant knowingly and intelligently waived his right to counsel.

A written and mailed request to dismiss counsel, standing alone, does not constitute a valid waiver of the right to counsel. Under *Faretta v. California*,

---

[78] *Miller*, 197 F.3d at 647 ("A district court may not rule on a motion that is not before it.").

[79] See United States v. Welty, 674 F.2d 185, 188–89 (3d Cir. 1982) (holding that a defendant's request to discharge counsel does not constitute a knowing and intelligent waiver absent an on-record inquiry).

422 U.S. 806 (1975), and *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), a trial court must conduct an on-record inquiry to confirm that any waiver is knowing, voluntary, and intelligent. When no such colloquy appears in the record, the presumption is against waiver, and all subsequent *pro se* proceedings are infected by structural error. See also *United States v. Welty*, 674 F.2d 185, 188–89 (3d Cir. 1982). Because structural error is never deemed harmless, any rulings or factual findings predicated on Defendant's *pro se* status must be vacated or remanded for a proper *Faretta* determination.

The purpose of raising this issue is not to substitute counsel but to ensure that the record accurately reflects compliance with *Faretta* and Rule 44. Until the Court confirms that compliance, its reliance on Defendant's *pro se* status to deny substantive motions cannot stand.

Even if a transcript is later located, reconsideration remains warranted unless the record affirmatively demonstrates that the colloquy satisfied *Faretta* and *Peppers* in full. Absent such a showing, reliance on Defendant's *pro se* status continues to constitute structural error.

The Government bears the initial duty to ensure that all materials from the *Faretta* proceeding are properly filed and complete. Under *Berger v. United States*, 295 U.S. 78, 88 (1935), and *Napue v. Illinois*, 360 U.S. 264, 269–70 (1959), prosecutors have a continuing obligation to safeguard the accuracy and completeness of the record before the Court. Having participated in the *Faretta* hearing, the United States was obligated to alert the Court that no certified waiver or transcript had been filed. Once that omission became apparent, the Court and Clerk's Office were required under *Fed. R. Crim. P.* 36 to correct the record to reflect the missing filing and to ensure that any waiver of counsel was properly documented.

### 6. Omitted Filing: Notice of Dismissal of Counsel Not Entered on Docket

Defendant personally hand-delivered and mailed a *Notice of Dismissal of Counsel* to the Clerk's Office on or about February 10, 2025, after serving standby counsel and the United States Attorney's Office. The filing bore a Clerk's "Received" stamp dated January 22, 2025, confirming physical receipt prior to the *Faretta* hearing. Although receipt was acknowledged by Clerk's Office staff, the filing was never entered on the docket.

The Government bore the initial duty to ensure that filings affecting representation status were properly docketed and complete. Having been served with the Notice, the United States was obligated to alert the Court that the filing had not appeared on CM/ECF. Once that omission became apparent, the Court and Clerk's Office were required under *Fed. R. Crim. P.* 36 and D.N.J. L. Civ. R. 79.1 to correct the record to reflect the Notice's timely receipt.[80]

This omission is material: it affects subsequent entries identifying counsel of record and underlies confusion about whether Defendant proceeded *pro se* under *Faretta*. The record should therefore be corrected to reflect that the Notice of Dismissal of Counsel was mailed, received, and stamped as filed, notwithstanding its absence from the CM/ECF docket.

## E.    Judicial Economy and Record Integrity

Granting limited reconsideration would promote judicial economy and protect the integrity of the record. Correcting procedural irregularities now—before any appeal—spares both the Court and the parties from piecemeal review and ensures that subsequent proceedings rest on a complete and undisputed record. Federal courts consistently emphasize that a district court has continuing authority to correct its own clerical or procedural errors in the interest of accuracy and fairness.[81]

Such clarifications fall squarely within this Court's inherent power to revise non-final orders and to ensure that all docket entries accurately reflect the posture of the case. As the Third Circuit has explained, a district court "possesses inherent authority to manage its own docket and to prevent undue delay in the disposition of pending motions."[82] Exercising that authority here would avoid unnecessary duplication of effort and allow the parties to focus

---

[80] See *Fed. R. Crim. P. 36* ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record…."); *D.N.J. L. Civ. R.* 79.1 (requiring the Clerk to maintain and record all filings received by the Court).

[81] See *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (court may correct record errors to ensure accuracy and fairness); *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration warranted to correct clear error or prevent manifest injustice).

[82] See *In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 817 (3d Cir. 1982) (recognizing district court's inherent authority to control its docket and manage pending motions).

future briefing on the merits of the outstanding issues rather than threshold procedural defects.

Because the *Opinion and Order* denied or mischaracterized numerous motions that were withdrawn, unopposed, or beyond the Court's jurisdiction, limited reconsideration is necessary to restore a reliable procedural record. Doing so will ensure that any eventual appellate review proceeds on accurate facts and will reaffirm the judiciary's commitment to transparency and fairness.

### F.    Misapplied "Fair and Just Reason" Standard

The *Opinion and Order* states that "a defendant bears a substantial burden of showing a fair and just reason for withdrawal."[83] That formulation misstates both the text and the intent of *Rule 11(d)(2)(B)*. The Rule requires only a "fair and just reason," and the Third Circuit has long held that pre-sentence withdrawals should be liberally allowed.[84] By converting the standard into a "substantial burden," the Court inverted that presumption and erected a barrier inconsistent with *Huff* and *Brown.*[85]

The *Opinion and Order* also omitted analysis of the third prong—prejudice to the Government—entirely, concluding that "because Defendant failed the first two prongs, there is no need to consider the third." *See* Op. 18. That omission contravenes controlling Third Circuit precedent, which requires district courts to evaluate all three factors when ruling on a motion to withdraw a plea under Rule 11(d)(2)(B). Because the record remains ambiguous as to timing, discovery access, and voluntariness, failure to analyze potential prejudice constitutes clear error warranting reconsideration.[86]

---

[83] *Opinion and Order* at 5 (D.N.J. Oct. 8, 2025).

[84] *Fed. R. Crim. P.* 11(d)(2)(B); *United States v. Huff,* 873 F.2d 709, 712 (3d Cir. 1989).

[85] *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001).

[86] *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (holding that courts must consider "(1) whether the defendant asserts innocence; (2) the strength of the defendant's reasons for withdrawal; and (3) whether the government would be prejudiced"); *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (same).

The Court also treated the three *Jones* factors—(1) assertion of innocence, (2) prejudice to the Government, and (3) strength of the reasons—as exclusive. Third Circuit precedent requires a broader inquiry into all circumstances bearing on voluntariness, including coercion, ineffective assistance, discovery suppression, and government conduct.[87]

The record demonstrates that Defendant presented numerous such grounds across multiple filings:

- ***Dkt. 399* (Feb. 18 2025):** Government correspondence confirming that the plea and release were negotiated together.

- ***Dkt. 402 §§ II–III* (Mar. 2025):** Absence of IRS/SEC rulemaking or guidance on mining-pool "shares."

- ***Dkt. 403 § III(B)* (Apr. 2025):** Selective-prosecution and unequal-enforcement evidence.

- ***Dkts. 420–421 (Exs. A–C)* (Apr. 25 2025):** Work-product deprivation and withheld seizure logs.

- ***Dkt. 441-1 § V* (May 26 2025):** Bail-coercion and economic-pressure arguments.

- ***Dkt. 453 § II* (June 24 2025):** Clarification of factual inaccuracies regarding "$18 million income."

- ***Dkt. 471 § I* (Aug. 11 2025):** Retroactive-enforcement and fair-notice claims under *Bouie* and *Lanier*.

Collectively, these filings supplied multiple "fair and just reasons" for withdrawal, supported by exhibits and legal authority. The Court's *Opinion and Order* did not analyze any of them individually, instead declaring the motion "denied" and the remainder "moot." That approach waived pre-plea

---

[87] *United States v. Dixon*, 308 F.3d 229, 234 (3d Cir. 2002).

constitutional issues—such as coercion, selective prosecution, and discovery deprivation—that *Rule 11* required the Court to consider.[88]

By collapsing distinct pre- and post-plea motions into a single undifferentiated denial, the Court effectively treated quantity as redundancy and substituted a procedural shortcut for substantive review. The result is an *Opinion and Order* that acknowledges "twenty-one motions" yet provides no findings on their merits—contrary to *Rule 11(d)(2)(B), Jones,* and the due-process requirement of reasoned decision-making.

The *Opinion and Order* also failed to address the third prong of the *Jones* test—prejudice to the Government—an omission that renders the Rule 11(d)(2)(B) analysis incomplete. *See United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). By skipping the prejudice prong, the Court applied an incomplete test. *Reconsideration is required under Jones (3d Cir. 2003).*

## G. Government Waiver and Post-Deadline Repair

Defendant formally notified the Government of its defective April 21, 2025 submission (*Dkt. 417*) through the *Notice of Errata* (*Dkt. 481*) more than four weeks before the Court's October 8 ruling. The prosecution never corrected or supplemented its opposition and made no motion for leave to supplement the record. Having failed to cure after notice, it waived reliance on materials not properly filed or served.[89]

The Court's March 11, 2025 *Text Order* (*Dkt. 408*) required Government responses to all pending motions by April 8, 2025. The partial filing on April 21 (*Dkt. 417*) omitted the referenced exhibit and left several motions unaddressed, failing to satisfy that directive. Any post-judgment attempt to cure the omission would require a showing of *excusable neglect* under *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380

---

[88] *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992); *Bouie, 378 U.S. at 352–54*; *United States v. Lanier,* 520 U.S. 259 (1997).

[89] In re *Capital Cities/ABC, Inc.,* 913 F.2d 89, 96 (3d Cir. 1990) ("A party may not retroactively supplement the record to justify a decision already rendered."); *United States v. Bostic,* 206 F. Supp. 3d 895, 903 (E.D. Pa. 2016).

(1993)—a standard the Government has neither invoked nor met.[90] *See also United States v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000).[91]

Because the Government disregarded a clear court order without explanation, reconsideration is warranted to compel immediate compliance or deem the affected motions unopposed. This failure constitutes an abuse of discretion under *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).[92]

Consequently, the October 8 *Opinion and Order* cannot stand insofar as it rests on an incomplete or defective opposition. The Court may not retroactively permit the Government to repair the record post-judgment without vacating the prior order and providing Defendant notice and an opportunity to respond.[93]

## 1. Prior Order Already Required Government Response

The *Text Order* of March 11, 2025 (*Dkt. 408*) expressly directed the Government to respond to Defendant's pending motions (*Dkts. 396, 400, 401, 402, 403, 404, 406, 407*) by April 8, 2025, and scheduled a hearing for May 8, 2025. The Government's partial submission on April 21 (*Dkt. 417*) omitted the very exhibit it invoked and failed to address several pending motions in full. That filing did not satisfy the Court's directive. The Government has therefore already had its opportunity to respond and failed to comply. Any attempt to supplement or "cure" its non-compliance now would require a showing of *excusable neglect* under *Pioneer* and would unfairly prejudice Defendant. Accordingly, the Court should compel immediate substantive responses without further extensions or deem the affected motions unopposed.

## 2. Consequences of Non-Compliance With *Dkt. 408*

Because the Government failed to comply with the Court's March 11, 2025 *Text Order* (*Dkt. 408*) and has not shown excusable neglect, the discovery motions at *Dkt. 402–407* must now be treated as unopposed under D.N.J. L. Civ. R. 7.1(d)(7). The Court should therefore grant the relief sought in those motions

---

[90] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (defining excusable-neglect standard).

[91] *United States v. Eleven Vehicles,* 200 F.3d 203, 215 (3d Cir. 2000) (applying Pioneer standard to late government filings).

[92] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration warranted to correct clear error or prevent manifest injustice).

[93] Id. (district court may not uphold an order resting on an incomplete record).

outright or, in the alternative, order immediate production of the discovery materials identified therein within seven (7) days. Any further opportunity for the Government to supplement would first require a formal finding of excusable neglect under *Pioneer*.

## H. Request to Stay Joint-Letter Deadline

Because the October 8 2025 Opinion and Order directs the parties to submit a joint letter by October 31, 2025, and because the present motion seeks correction of the record and clarification of pending issues, Defendant respectfully requests that the joint-letter requirement be stayed pending resolution of this Motion for Reconsideration. Proceeding with a joint submission while the underlying record remains incomplete would defeat the purpose of reconsideration, risk inconsistent filings, and expend judicial resources unnecessarily. Staying the deadline will preserve procedural economy and ensure that any future joint submission rests on an accurate and complete record.

## VIII. FACTUAL MISSTATEMENTS AND CLERICAL INACCURACIES

Accurate records are the foundation of lawful judgment; correcting factual and clerical errors ensures that appellate review proceeds on truth, not assumption.

## A.    Mischaracterized Sealing Filings

The *Opinion and Order*'s procedural summary (at p. 22) refers to "the volume of submissions regarding sealing (*Dkts. 448, 451, 452, 466, 467, 468, 489*)." In reality, none of these docket entries—and not *Dkt. 484* either—involve a sealing request. They concern unrelated matters such as tax-related relief, evidentiary clarification, and renewed motions for unsealing or reconsideration. The Court thus grouped ordinary motions under an inaccurate label, creating the impression that the docket was congested with sealing disputes when, in fact, no such motions were pending.

While this clerical mischaracterization does not presently affect the merits, it illustrates the broader pattern of procedural inattention that pervades the *Opinion and Order*'s factual recitals. Any necessary clarification can be

43

raised in the forthcoming joint-submission phase of the Court scheduled for October 31 2025.[94]

## B.    $18 Million Income Misstatement

The *Opinion and Order* asserts that "Defendant claimed he earned approximately $18 million but failed to report this income to the IRS."[95] That description is inaccurate. The $18 million figure originated from the Government's own seizure spreadsheets and forfeiture analyses, not from any statement of Defendant. The relevant filings—Dkts 402 ¶¶ 4–7, 403 at 7–9, and 453 at 3–4—make clear that Defendant consistently disputed the Government's methodology and demanded supporting documentation. Defendant's September 5 2024 correspondence specifically requested IRS or FinCEN records establishing any income determination for those assets, which the Government never produced.

Far from admitting unreported income, Defendant challenged both the factual accuracy of the $18 million valuation and the legal premise that seized digital assets constituted "earned" taxable proceeds. The Court's phrasing thus misstates the record and attributes to Defendant a confession he never made.[96]

## C.    Plea-Instrument and Dismissal Scope

The *Opinion and Order* states that "on November 5, 2020, Defendant waived his rights as to Count Two of the Indictment and the One Information filed by the Government, and entered into a plea agreement in which the Government agreed to move for dismissal of Count One following sentencing."[97] This wording misstates the record. Defendant did not "waive his

---

[94] *Opinion and Order* at 22 (D.N.J. Oct. 8, 2025) (listing *Dkts. 448, 451, 452, 466, 467, 468, 489* as "submissions regarding sealing"). Each cited entry, together with *Dkt. 484* (Defendant's own unsealing motion), concerns procedural or evidentiary issues unrelated to sealing. Cf. *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992) (requiring district courts to make specific factual findings on the motions actually before them).

[95] *Opinion and Order* at 2 (D.N.J. Oct. 8, 2025).

[96] Def.'s Mot. Regarding Tax Issues, *Dkt. 402 ¶¶ 4–7* (D.N.J. Mar. 2025); Def.'s Mot. on Selective Prosecution, *Dkt. 403 at 7–9* (D.N.J. Apr. 2025); Def.'s Supplement, *Dkt. 413* (May 2025); Def.'s Reply Br., *Dkt. 453 at 3–4* (June 24 2025); Letter from Def. to U.S. Att'y's Office (Sept. 5, 2024) (requesting IRS/FinCEN classification of seized crypto).

[97] *Opinion and Order* at 3 (D.N.J. Oct. 8, 2025).

rights as to Count Two"; he waived indictment and pleaded guilty to the one-count *Information* filed the same day, which restated the securities-conspiracy theory originally described in Count Two. Under the plea agreement, the Government agreed to move for dismissal of all remaining counts of the indictment—including Count One—following sentencing.[98]

This distinction matters because the *Information* was a new charging instrument, not a continuation of the indictment. Any defect, omission, or mischaracterization within that *Information*—whether as to factual basis, statutory citation, or element of intent—cannot be retroactively validated by reference to the earlier indictment counts. Once the plea was entered to the *Information,* the Court was required to ensure that the *Information* itself independently satisfied the requirements of *Rule 7(c)* and *Rule 11(b)(3).* By conflating the two, the *Opinion and Order* obscures which instrument formed the legal basis of conviction and whether that document contained a complete and accurate statement of the offense charged.[99]

## D.    "Shares" vs. Membership Interests

The *Opinion and Order* repeatedly describes BitClub Network ("BCN") as having "sold shares" and "failed to file a registration statement with the SEC," adopting that phrasing as an uncontested fact.[100] Yet the record contains no evidence that BCN ever issued or registered "shares" in the corporate sense. BCN functioned as a private membership association (PMA) whose participants were referred to as members rather than shareholders. Defendant's correspondence of September 5 2024 specifically requested IRS and FinCEN documentation of BCN's organizational classification to determine whether any security or share registration existed; the Government produced none.

By presuming the existence of "shares" without evidentiary support, the Court accepted as fact a contested and unproven legal characterization that is central to the *Howey* analysis and the validity of the plea. This unsupported assumption renders the Court's factual findings incomplete under *Rule 11(b)(3)*

---

[98] Plea Hr'g Tr. (Nov. 5, 2020), Gov't Submission, *Dkt. 417 at 4:14–5:6*; Superseding Information, Dkt. No. [Nov. 5, 2020].

[99] *Fed. R. Crim. P.* 7(c); *Fed. R. Crim. P.* 11(b)(3); see also *Russell v. United States,* 369 U.S. 749, 770 (1962) (indictment must itself contain elements of offense; defects cannot be cured by inference or external reference).

[100] *Opinion and Order* at 3–4 (D.N.J. Oct. 8, 2025).

and further undermines the voluntariness of the plea, which rested on the mistaken belief that BCN memberships were legally recognized securities.[101]

## E.    BCN Interest Inconsistencies

The *Opinion and Order*'s Background section describes BitClub Network ("BCN") as having offered "memberships and shares" to participants, treating the two terms as interchangeable.[102] These instruments are legally distinct: a membership interest confers participation rights in an association or cooperative, while a share represents transferable equity ownership in a corporation. The record demonstrates only memberships—BCN operated as a private membership association (PMA), referring to participants exclusively as members and never issuing stock certificates, par-value shares, or SEC registration filings. Defendant's correspondence of September 5 2024 requested from the Government any IRS or SEC classification documents establishing that BCN issued or registered "shares"; none were produced.

This issue was reiterated in Dkts 420 and 421 (Apr. 25 2025), which referenced the PMA structure and asked the Court to verify whether the Government possessed any SEC or IRS documentation supporting the "share" characterization. By conflating "memberships" and "shares," the Court failed to identify the actual instrument at issue—a necessary step in any *Howey* analysis and in determining a factual basis under *Rule 11(b)(3).*

The Supreme Court has made clear that the mere use of corporate terminology does not convert a cooperative or membership interest into a security. In *United Housing Foundation v. Forman,* 421 U.S. 837, 852–53 (1975), the Court held that instruments labeled "stock" were not securities because they functioned as memberships in a housing cooperative, lacking the traditional attributes of transferable equity or profit expectation. Likewise, BCN's "memberships," even if colloquially described as "shares," do not meet the statutory or economic definition of securities absent proof of ownership transferability, dividends, or marketability. The Court's reliance on this

---

[101] *Fed. R. Crim. P.* 11(b)(3); *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946); Letter from Def. to U.S. Att'y's Office (Sept. 5 2024) (requesting IRS/FinCEN classification documents for BitClub Network); *United States v. Vonn*, 535 U.S. 55, 62 (2002) (court must ensure factual basis for each element of plea).

[102] *Opinion and Order* at 3–4 (D.N.J. Oct. 8, 2025).

unproven factual premise thus undermines the validity of its *Howey* analysis and of the plea's factual foundation.[103]

## IX. META-LEVEL JUDICIAL PATTERNS

This case exemplifies how uncertainty in emerging-technology prosecutions can distort enforcement and interpretation, highlighting the judiciary's duty to preserve predictability and fairness.

### A.    Cumulative and Circular Reasoning

The October 8 2025 *Opinion and Order* displays a recurring pattern of reasoning that, taken cumulatively, undermines confidence in the integrity of the proceedings. Rather than resolving factual disputes through the adversarial process, the Court repeatedly relied on absences it had itself created, converted procedural shortcuts into substantive findings, and supplied arguments the Government declined to make. These structural errors, individually and collectively, amount to manifest injustice warranting reconsideration or, at minimum, remand for evidentiary development.

First, the Court's analysis is self-referential: it denied discovery, transcripts, and continuances needed to complete the record, then relied on those very omissions to hold that Defendant offered "no evidence" or "insufficient elaboration." See *Op.* 12–17. Such circularity defeats the "fair and just reason" inquiry of *Rule 11(d)(2)(B)*.

Second, the *Opinion and Order* substitutes form for substance by equating the mere existence of rights with proof that those rights were voluntarily waived—"Defendant had the right to go to trial"—and by treating a routine plea colloquy as conclusive evidence of voluntariness, contrary to *Brady v. United States*, 397 U.S. 742 (1970) and *United States v. Jones*, 336 F.3d 245 (3d Cir. 2003).

Third, the Court engaged in judicial supplementation, filling the gaps in the Government's briefing—most notably on the DOJ-memo issue and the unproduced August 12 2020 letter—thereby abandoning neutrality and denying

---

[103] *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946); *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852–53 (1975); *Fed. R. Crim. P.* 11(b)(3); Letter from Def. to U.S. Att'y's Office (Sept. 5 2024); Def.'s Mots., Dkts 420 & 421 (Apr. 25 2025) (raising PMA structure and requesting SEC/IRS proof of "share" classification).

Defendant notice or opportunity to respond. *See Santarelli*, 929 F.3d 95 (3d Cir. 2019).

Finally, the *Opinion and Order*'s tone recasts due-process diligence as excess: the number of filings is cited as reason to curtail further review. That inversion—treating procedural effort as abuse—reflects a focus on finality over accuracy.

Viewed as a whole, these circular and non-adversarial reasoning patterns erode the presumption of fairness required by *Rule 11(b)(2)–(3)* and the Due Process Clause. They justify reconsideration or, alternatively, vacatur and remand for a complete, adversarial evaluation of the plea's validity and the evidentiary record.

The record also includes the White Paper on Crypto Enforcement Process Failures: BCN Case Study & Institutional Audit, authored by Bradford L. Geyer and Frederic Teboul (*Dkt. 483.1*), which documents systemic procedural inconsistencies and selective-enforcement risks in digital-asset prosecutions. That submission underscores the institutional importance of ensuring that this Court's rulings rest on a complete evidentiary record, free from asymmetry or procedural omission.

As Professor Alan Dershowitz has observed, "The rule of law cannot depend on who the defendant is—it must depend on what the law requires." The law here required that the Government comply with discovery rules, court orders, and deadlines just as a defendant must. The Constitution guarantees equal justice before the law, not asymmetric procedure. Granting this motion will not advantage either party; it will reaffirm that the judicial process must remain even-handed, transparent, and based solely on the record. Accordingly, Defendant respectfully request that the Court vacate in part its *Opinion and Order*, compel timely Government responses to the motions identified in Exhibit A, or grant the requested relief as unopposed, thereby ensuring that all further proceedings rest on a complete and lawful record.

For the foregoing reasons, Defendant respectfully requests that the Court vacate or amend its October 8, 2025 Opinion and Order (*Dkt. 497*) insofar as it denied *Dkts. 396, 400, 403, 451, 453, and 481*; direct the Government to file the certified plea transcript and all referenced exhibits relied upon in that Opinion;

permit Defendant access to the full discovery record; and grant such further relief as justice requires.

Respectfully submitted,

Jobadiah Sinclair Weeks (pro se)
Signed via DocuSign
/s/ Jobadiah Sinclair Weeks
18101 Collins Avenue, #4209
Sunny Isles Beach, FL 33160

Dated: October 17, 2025

Signed by:

Joby Weeks

87866A420DB4490...

**APPENDICES AND CROSS-REFERENCE TABLES (for Exhibit A only)**

Table A – Key Docket References

| ECF No. | Date Filed | Issue / Description | Referenced in Oct. 8 Order (ECF 497) |
|---|---|---|---|
| 393 | Feb. 5, 2025 | Minute entry – Faretta hearing (no transcript or waiver filed) | Omitted – record deficiency not addressed |
| 396 | jan 2025 | Withdrawn motion (duplicated at ECF 400; later superseded) | pp. 2–3 – denied as moot despite withdrawal |
| 400 | jan 2025 | Sealed/duplicate version of ECF 396 | pp. 2–3 – treated as active motion in error |
| 401 | Feb. 21, 2025 | Motion to Vacate Guilty Plea under Rule 11(d)(2)(B) | pp. 6–9 – denied without transcript |
| 402 – 407 | Feb–Mar 2025 | Discovery & Selective-Prosecution Motions (Brady, Armstrong) | pp. 7–10 – declared moot |
| 408 | Mar. 11, 2025 | Text Order requiring Gov't response by Apr 8 2025 | Ignored – non-compliance unaddressed |
| 415 | Apr. 3, 2025 | Order granting extension to Apr 22 2025 for Gov't response | Referenced implicitly |
| 417 | Apr. 21, 2025 | Gov't Opposition (refers to missing Exhibit A – plea transcript) | pp. 4, 8 – relied upon without record support |
| 420 – | Apr. 2025 | Work-product and | Denied as moot |

| 421 | | custody-record motions | |
|---|---|---|---|
| 441-1 | May 26, 2025 | Post-Hearing Bail Memorandum and Supplemental Declaration | Not addressed |
| 442 | May 26, 2025 | Notice of Withdrawal of ECF 396 | Ignored – court still ruled on withdrawn motion |
| 443 | May 30, 2025 | Supplemental Discovery and Unsealing Motion | Denied as moot without analysis |
| 446 | June 6, 2025 | Rule 41(g) Motion for Partial Return of Property (≈ 3.67 BTC) | pp. 13–14 – denied as moot |
| 451 | June 2025 | Second Motion to Dismiss Count 1 | Denied as moot |
| 453 | June 2025 | Second Motion to Dismiss Count 2 | Denied as moot |
| 467 / 469 | July 2025 | Renewed Discovery and Clarification Requests | pp. 11–12 – denied as moot |
| 471 | Aug. 11, 2025 | Supplemental Submission on Plea Withdrawal | Not acknowledged |
| 477 – 482 | Aug–Sep 2025 | Unopposed Discovery / Unsealing Motions and Errata Notice | pp. 12–13 – denied without findings |
| 481-1 | Sep. 3, 2025 | Proposed Order to Errata Notice (correct Gov't filing defect) | No ruling entered |
| 483 / 483.1 | Sep. 11, 2025 | White Paper on Crypto Enforcement Process Failures | Not referenced |

| | | | |
|---|---|---|---|
| 488 | Sep. 16, 2025 | Detention Summary / Timeline for Coercion Context | Not acknowledged |
| 489 | Sep. 17, 2025 | Miscellaneous Motion (mis-categorized as sealing) | Denied as moot |
| 494 | Oct. 2, 2025 | Forensic-Evidence Request (Missing Wallet Chain) | Omitted – no analysis |
| 497 | Oct. 8, 2025 | Opinion & Order (denying or mooting all pending motions) | Subject of this Motion for Reconsideration |

This table summarizes the docket chronology relevant to procedural and record-integrity issues identified in Sections III–VII of Exhibit A. It highlights filings materially affected by or omitted from the October 8, 2025 Opinion & Order (*Dkt. 497*) and provides the foundation for the reconsideration and record-correction requests that follow.

Table C – Record Exhibits Referenced in Defendant's Filings

| Filing / Exhibit ID | Date / Source | Description of Record Material | Referenced in Exhibit A Section | Relevance / Purpose |
|---|---|---|---|---|
| 446-1 / 446-2 | Jun. 6, 2025 | Schedules A–C – Digital-asset custody list and BTC itemization | § V(F) | Evidence for Rule 41(g) property-return (≈ 3.67 BTC). |
| 417 – Ex. A (missing) | Apr. 21, 2025 | Government-referenced plea-hearing transcript (never filed). | § IV(H) | Core record omission; relied upon by Court in denial. |
| 481 / 481-1 | Sep. 3, 2025 | Notice of Errata + Proposed Order correcting Gov't exhibit defect. | § IV(H) | Proof of timely notice of record defect. |
| 443-1 | May 30, 2025 | Unsealing index of withheld discovery files. | § V(A),(C) | Shows incomplete Rule 16 / Brady production. |
| 441-1 / Decl. | May 26, 2025 | Supplemental declaration on bail and confinement conditions. | § IV(E) | Corroborates coercive environment and counsel access limits. |
| 494-1 | Oct. 2, 2025 | Forensic request packet – wallet inventory forms and screenshots. | § V(D) | Demonstrates incomplete digital-asset discovery. |
| 483.1 | Sep. 11, 2025 | White Paper on Crypto Enforcement Process Failures (Geyer & Leboul). | § IX | Institutional-context reference supporting selective-enforcement analysis. |

| | | | | |
|---|---|---|---|---|
| Exhibit B | Sep. 23, 2025 | Discovery Clarification Letter to AUSAs Moore & Chenoweth. | § V(A) | Documents Government non-response to discovery inquiries. |
| Billing Records (on file at *Dkt. 441-1)* | May 26, 2025 | Counsel billing and access records. | § IV(H) | Proves restricted counsel contact pre-plea. |
| Dkt 393 (Faretta) | Feb. 5, 2025 | Faretta hearing minute entry (no transcript or waiver filed). | § VII(D)(5) | Shows absence of certified waiver of counsel. |

All information contained in this Exhibit A is incorporated by reference into the accompanying Motion for Reconsideration and Clarification of October 17, 2025 and is certified as true and correct to the best of my knowledge and belief.

TABLE B – SUMMARY OF RECORD-BASED ERRORS AND CONTROLLING AUTHORITY

| No. | Issue / Description | Opinion & Order Page (*Dkt. 497*) | Controlling Authority | Corrective Action / Relief Requested |
|---|---|---|---|---|
| 1. | Retroactive Application of Post-Conduct Case Law (§ I-A–C) — Reliance on Teshuater (2024) and Shavers (2014) to criminalize 2014–2019 conduct lacking fair notice. | 6–8 | *Bouie v. City of Columbia*, 378 U.S. 347 (1964); *FCC v. Fox Television Stations*, 567 U.S. 239 (2012) | Vacate or modify finding; hold evidentiary hearing on fair-notice and voluntariness. |
| 2. | Peripheral Promoter vs. Primary Seller (§ II-A) — Record shows promotion, not sale; no "necessary participant" proof. | 6–7 | *SEC v. MuniYield Fund*, 148 F.3d 116 (2d Cir. 1998); *Pinter v. Dahl*, 486 U.S. 622 (1988) | Reopen plea record; require factual-basis hearing under Rule 11(b)(3). |
| 3. | Strict-Liability Misapplied (§ II-C) — Criminal § 371 charge treated as civil § 5 strict liability. | 8–9 | *Bryan v. United States*, 524 U.S. 184 (1998); *United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004) | Correct standard; reassess willfulness and intent. |
| 4. | Selective Prosecution / Taylor Error (§ III-B–C) — Dismissal without addressing Armstrong showing or comparator evidence. | 15–16 | *United States v. Taylor*, 686 F.3d 182 (3d Cir. 2012); *Wayte v. United States*, 470 U.S. 598 (1985) | Remand for limited discovery or evidentiary hearing. |
| 5. | Coercion and Conditional Bail (§ IV-B–C) — Plea linked to next-day release; financial duress from asset seizures. | 11–15 | *Brady v. United States*, 397 U.S. 742 (1970); *Machibroda v. United States,* 368 U.S. 487 (1962) | Vacate plea or hold voluntariness hearing. |

| | | | |
|---|---|---|---|
| 6. | Missing Plea Transcript and Errata Ignored (§ IV-H) — Court relied on non-filed "Exhibit A" in *Dkt. 417.* | 17 | *McCarthy v. United States,* 394 U.S. 459 (1969); *Max's Seafood Café v. Quinteros,* 176 F.3d 669 (3d Cir. 1999) | Vacate reliance; compel Government to file certified transcript. |
| 7. | Discovery and Work-Product Deprivation (§ V-A–D) — Defendant denied access to case file, seizure logs, SARs, Crypto Memo. | 12–17 | *Brady v. Maryland,* 373 U.S. 83 (1963); *United States v. Bui,* 795 F.3d 363 (3d Cir. 2015) | Order production or evidentiary hearing; treat motions as unopposed. |
| 8. | Rule 41(g) Jurisdiction Error (§ V-E–F) — Court held property must be sought in other districts. | 19–20 | *United States v. Chambers*, 192 F.3d 374 (3d Cir. 1999); *Rufu v. United States*, 20 F.3d 63 (2d Cir. 1994) | Recognize constructive custody; refer to Magistrate Hammer re 3.67 BTC. |
| 9. | Extra-Record Reliance (§ VI-A–D) — Opinion cites non-record exhibits (*Dkt. 1 ¶12,* SAR, Aug 12 Letter). | 6, 8, 13 n.4, 17 | *United States v. Santarelli,* 929 F.3d 95 (3d Cir. 2019); *Fed. R. Crim. P.* 11(b)(3) | Vacate or modify findings based on non-record material. |
| 10. | Improper "Mootness" and Denial Without Findings (§ VII-B–C) — Dozens of motions declared moot post-plea. | 8, 21–23 | *Blackledge v. Perry,* 417 U.S. 21 (1974); *Menna v. New York*, 423 U.S. 61 (1975) | Reinstate affected motions; decide on merits. |
| 11. | Withdrawn / Duplicated Filings Ruled Upon (§ VII-D.2–4) — The Court denied *Dkt. 396* even though withdrawn by *Dkt. 442* (May 26, 2025) and also denied *Dkt. 400* (sealed duplicate). Ultra vires. | 22–23 | *United States v. Miller,* 197 F.3d 644 (3d Cir. 1999); *D.N.J. L. Civ. R.* 7.1(d)(5); *Fed. R. Civ. P.* 60(b)(1) | Vacate those portions of the Oct 8 Order; mark *Dkt. 396/400* "withdrawn / no ruling necessary"; correct docket. |

| | | | |
|---|---|---|---|
| 12. | Count 1 & 2 Motions Denied Without Jurisdiction (§ VII-D.1) — Court ruled on Rule 12(b)(3)(B) motions (*Dkt. 451, 453*) after plea accepted. | 22 | *United States v. Miller,* 197 F.3d 644 (3d Cir. 1999); *United States v. Oladimeji,* 463 F.3d 152 (2d Cir. 2006) | Vacate denials; note lack of jurisdiction to adjudicate withdrawn or moot indictment motions. |
| 13. | Faretta-Waiver Omission (§ VII-D.5) — No transcript or written waiver of counsel appears. See *Dkt. 393* (minute entry; no waiver attached). | N/A (affects all findings relying on pro se status) | *Faretta v. California*, 422 U.S. 806 (1975); *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002); *McKaskle v. Wiggins,* 465 U.S. 168, 177 n.8 (1984); *Fed. R. Crim. P.* 44(a) | Require Gov't to file certified transcript or make findings confirming Faretta compliance. |
| 14. | Misapplication of "Fair and Just Reason" Standard (§ VII-F) — Court imposed "substantial-burden" test. | 5 | *United States v. Huff,* 873 F.2d 709 (3d Cir. 1989); *United States v. Brown,* 250 F.3d 811 (3d Cir. 2001) | Apply liberal pre-sentence withdrawal standard; vacate denial. |
| 15. | Clerical / Factual Misstatements (§ VIII-A–E) — Mischaracterized filings, income figures, and "shares." | 2–4, 22 | *Russell v. United States,* 369 U.S. 749 (1962); *United States v. Forman,* 421 U.S. 837 (1975) | Correct factual findings; conform docket descriptions. |
| 16. | Omission of Third-Prong / Government-Prejudice Analysis (§ VII-F n.1) — Court declined to analyze prejudice to the Government, contrary to Jones's three-factor requirement. | 18 | *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003); *United States v. Brown,* 250 F.3d 811 (3d Cir. 2001) | Reconsider; apply all three Rule 11(d)(2)(B) factors, including prejudice assessment. |
| 17. | Cumulative and Circular Reasoning Pattern (§ IX-A) — Court denied materials, then used their absence as proof of | Throughout Op. 6–23 | *Max's Seafood Café v. Quinteros,* 176 F.3d 669 (3d Cir. 1999); *Brady v. United States,* 397 U.S. 742 (1970) see also | Vacate in part; conduct de novo review on a complete record. |

| | | | |
|---|---|---|---|
| | insufficiency. | *United States v. Cronic,* 466 U.S. 648 (1984) | |
| 18. | Undocketed Notice of Dismissal of Counsel (§ VII-D.6) — A Notice of Dismissal of Counsel, bearing a Clerk's "Received" stamp dated January 22, 2025, was hand-delivered and later mailed to the Clerk's Office but never entered on CM/ECF, despite acknowledgment by staff. The omission created an incomplete record of representation status before the Faretta hearing. | *Fed. R. Crim. P.* 36; *United States v. Bennett,* 423 F.3d 271 (3d Cir. 2005); D.N.J. L. Civ. R. 79.1 | Direct the Clerk to enter the Notice *nunc pro tunc* as of Jan. 22 2025 and correct the docket to reflect timely receipt and counsel-status change. |

All information contained in this Exhibit A, including Tables A–C and the summary of controlling authority above, is incorporated by reference into the accompanying Motion for Reconsideration and Clarification and is certified as true and correct to the best of my knowledge and belief.

Respectfully submitted,
/s/ Jobadiah Sinclair Weeks
Jobadiah Sinclair Weeks (pro se)
Dated: October 17, 2025

Signed by:

Joby Weeks

87866A420DB4490...

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

United States of America,

    Plaintiff,

v.                  Crim. No. 19-877 (CCC)

Jobadiah Sinclair Weeks,

    Defendant.

EXHIBIT B – DISCOVERY CLARIFICATION LETTER (Sept 23, 2025)

(Attached to Motion for Reconsideration and Clarification,

filed October 17, 2025)

Exhibit B – Page 1 of 3    /s/ Jobadiah Sinclair Weeks    True and Correct Copy    Dated: Oct. 17, 2025

**By Email**
Trevor.Chenoweth@usdoj.gov
Robert.Moore3@usdoj.gov

Re: **U.S. v. Jobadiah Sinclair Weeks (2:19-cr-877) – Request for Discovery Production Information**

Dear Mr. Chenoweth and Mr. Moore:

I write as the pro se defendant in the above matter. As you are both newly assigned to this case, I want to ensure we are all working from the same record regarding any discovery productions that occurred before my plea agreement was signed.

As reflected in my Supplemental Memorandum in Support of Motion to Vacate Plea for Lack of Discovery Access (Dkt. 488, filed September 16, 2025), I have formally raised these issues with the Court. These issues are also the subject of my pending Motion regarding continuances and discovery access (Dkt. 482, filed September 10, 2025). I understand that you are newly assigned to this case and may not yet have had the opportunity to review that filing in full. I therefore provide this letter to highlight the specific discovery issues raised in Dkt. 488 and to give you an opportunity to clarify what was produced to my former counsel before my plea and to resolve these issues without further motion practice.

**1. Why this request is necessary**

In criminal proceedings, the chain of custody of discovery materials is as important as the chain of custody of evidence. If the defense does not have the same materials the government provided to former counsel, it cannot meaningfully review the evidence or prepare filings. Because I personally have never received any discovery materials, I cannot verify what was produced, when, or in what format.

1

## 2. Information requested

To clarify the record, I respectfully request confirmation of the following:

- **Date(s) of production:** Whether any digital discovery was produced to my prior counsel and, if so, on what date(s), especially before September 21, 2020 when my plea agreement was signed.

- **Format:** Whether those productions consisted of raw forensic data, an indexed load file, a forensic report, Bates-numbered documents, or some combination thereof.

- **Indexing / cover materials:** Whether any cover letters, transmittals, or forensic extraction reports accompanied the production.

- **Internal working copy:** Whether the government itself is using a processed or indexed version of the evidence for its own case preparation.

## 3. Why this information matters

Rule 16(a)(1)(E) requires disclosure of evidence the government intends to use at trial, and Brady v. Maryland requires timely disclosure of exculpatory material. If prosecutors or agents worked from a processed, indexed copy but only a raw data dump was provided to defense, then discovery would not have been "reasonably usable" and the parties would not be on equal footing.

Billing records show my total communication with prior counsel was approximately 51.7 hours. In my view, that limited time, combined with my detention and the COVID-19 restrictions, made it impossible to access and understand any large discovery production that may have been made. It is therefore crucial to know exactly what my former counsel received. If their production was itself insufficient or incomplete, that would provide a second reason why my plea cannot stand.

Because my plea was entered without my personal access to any discovery, clarifying what was produced to my former counsel is essential to assessing whether my plea was knowing and voluntary. This information will help

2

determine whether I received constitutionally adequate disclosure before signing the plea agreement.

## 4. Factual Basis of the Plea

Additionally, because my plea was entered without my personal access to discovery, I respectfully request that you identify or provide the subset of materials, if any, that the government considered to form the factual basis for the plea at the time it was entered. This request is not for a future trial exhibit list but for clarification of what materials were provided or relied upon in connection with the plea.

## 5. Next steps

Please confirm or clarify the above so that I may receive the same discovery my prior counsel may have received, along with any accompanying indexes or reports, and identify the materials the government viewed as the factual basis for my plea. This will help avoid misunderstandings and allow the case to proceed efficiently.

If you decline to provide this clarification, please confirm that position so I can advise the Court accordingly.

I would welcome a response within 14 days, consistent with the ordinary 7–14 day response window under the local rules.

I also respectfully request a brief acknowledgement of receipt of this letter within two (2) days, so that I may be assured it has reached your attention.

Sincerely,

Jobadiah Sinclair Weeks
Pro Se Defendant


September 23, 2025



3

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY


United States of America,

     Plaintiff,


v.                  Crim. No. 19-877 (CCC)


Jobadiah Sinclair Weeks,

     Defendant.


EXHIBIT C – SUMMARY OF OUTSTANDING OR UNOPPOSED MOTIONS AND REQUESTED RELIEF

(Attached to Motion for Reconsideration and Clarification,

filed October 17, 2025)




This table consolidates all motions materially affected by the *Opinion and Order* and cross-references the issues for reconsideration identified in Sections III–VII of the Motion and Exhibit A.

Exhibit C – Page 1 of 4     /s/ Jobadiah Sinclair Weeks     True and Correct Copy     Dated: Oct. 17, 2025

## EXHIBIT C — SUMMARY OF OUTSTANDING OR UNOPPOSED MOTIONS AND REQUESTED RELIEF

| ECF No. | Title / Subject | Date Filed | Gov't Opposed? | Court Action (ECF 497) | Issue / Error for Reconsideration | Section Ref in Motion |
|---|---|---|---|---|---|---|
| 396 (Withdrawn) | Motion superseded by later filings (Withdrawn May 26, 2025 via Dkt. 442) | Feb. 11, 2025 | — | Still denied in 497 | Court ruled on withdrawn motion — *ultra vires* error | G |
| 402 | Motion to Compel Discovery on Selective Prosecution | Mar. 2, 2025 | No | Denied as moot | Unopposed Brady/Armstrong motion never addressed | C |
| 403 | Motion for Discovery on Selective Prosecution (24 pp.) | Mar. 3, 2025 | No | Denied as moot | Core constitutional discovery motion ignored | C |
| 404 | Request for Expedited Ruling on Selective Prosecution | Mar. 4, 2025 | No | Denied as moot | Court ignored request for timely decision | C / E |
| 406–407 | Supplemental Discovery Motions (IRS / SAR Records) | Mar. 2025 | Partial (417) | Denied as moot | Rule 16 requests never resolved on merits | C |
| 420 | Supplemental Constitutional Submission (Procedural Defects / Selective Prosecution) | Apr. 25, 2025 | No | Denied as moot | Constitutional arguments unaddressed | C / H |

| 430 | Supplemental Filing re Plea Withdrawal (Constitutional Defect) | May 12, 2025 | No | Denied without findings | Part of plea-vacatur record | F |
| 432 | Notice re Gov't Refusal to Engage in Settlement Discussions | May 14, 2025 | N/A | Denied as moot | Procedural notice treated as motion | E / H |
| 443 | Notice of Supplemental Authority (DOJ Bianca Memo / Selective Enforcement) | May 30, 2025 | No | Denied as moot | Court ignored controlling authority | C / H |
| 445 | Exhibit A (Attachment to Dkt. 443) | Jun 5 2025 | — | Denied as moot | Supporting exhibit ignored | C |
| 446 | Motion for Return of Seized Assets (Rule 41(g)) | Jun. 6, 2025 | No | Denied as moot | Post-plea Rule 41(g) claim still justiciable | B |
| 453 | Procedural Notice (Clarification on Asset Return) | Jun. 26, 2025 | No | Denied as moot | Administrative filing improperly included in blanket denial | C / H |
| 467 / 469 | Motions to Compel Ruling on Asset Return (Partial Return of Property) | Aug. 1, 2025 | No | Denied as moot | Gov't never responded; unopposed | B / C |
| 471 | Supplemental Submission – Plea Withdrawal (Retroactivity / Coercion) | Aug. 11, 2025 | No | Denied without findings | Part of vacatur record | F |

| | | | | | | |
|---|---|---|---|---|---|---|
| 477 | Motion to Unseal Search Warrant & Custody Docs | Aug. 29, 2025 | No | Denied as moot | Unopposed Rule 41(f),(g) / Brady motion ignored | C / E / H |
| 480 | Supplemental Declaration re 3.7 BTC and Digital Holdings | Sep. 3, 2025 | No | Denied as moot (attached to Rule 41(g) supplemental declaration). | Gov't agreement to return assets ignored | B / C |
| 482 | Motion to Declare Continuance Order Invalid as Applied to Defendant | Sep. 10, 2025 | No | Denied as moot | Speedy-Trial Act challenge unaddressed | C / E |
| 483 | Notice of Supplemental Evidence (White Paper & Dershowitz Letter) | Sep. 11, 2025 | N/A | Denied as moot | Factual record ignored re plea voluntariness | F |
| 484 | Motion to Unseal Defendant's Prior Sealed Filings | Sep. 12, 2025 | No | Deferred pending joint letter | Transparency issue still open | C / E / H |
| 485 | Supplemental Motion to Vacate Plea (Asset Mismanagement) | Sep. 12, 2025 | No | Denied as moot | Core plea-vacatur issue linked to asset inventory | F |
| 486 | Motion to Compel Accounting of Seized Assets (Rule 41(g)) | Sep. 12, 2025 | No | Denied as moot despite continuing Rule 41(g) jurisdiction under Chambers and Noel. | Unopposed Rule 41(g) claim ignored — remains justiciable | C / E |

| | | | | | |
|---|---|---|---|---|---|
| 488 | Supplemental Memo in Support of Vacating Plea (Lack of Discovery Access) | Sep. 16, 2025 | No | Improperly deemed moot without findings | Extends plea-vacatur basis — record incomplete and unaddressed | F / H |
| 489 | Motion to Unseal Defendant's Prior Filings (Counts 1 & 2) | Sep. 17, 2025 | No | Denied as moot | Public-access issue ignored | C / E / H |
| 494 | Letter Motion – Production of Lab Report & Chain of Custody (Pretrial Evidence) | Oct. 2, 2025 | No | Not ruled / Pending | Shows continuing Gov't withholding pattern | C / E / H |