**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

**United States of America**

   v.

**Jobadiah Sinclair Weeks**

   Defendant.

Crim. No. 19-877 (CCC)

**DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION**

**OF THE OCTOBER 8, 2025 OPINION AND ORDER (ECF 497)**

**I. INTRODUCTION**

Defendant Jobadiah Sinclair Weeks, appearing *pro se* and assisted by standby counsel, submits this motion for limited reconsideration pursuant to Local Civil Rule 7.1(i) (as adopted in criminal proceedings through Local Criminal Rule 1.1) and, in the alternative, for record correction under Fed. R. Crim. P. 36 to ensure docket accuracy and prevent manifest injustice. Prompt correction will avoid duplicative briefing and enable efficient appellate review.

This filing complies with the fifteen-page limit established by the Court's October 22, 2025 Text Order, which directed Defendant to file a substitute brief in conformity with Local Rule 7.2(b). It supersedes ECF No. 500 in its entirety.

Reconsideration is warranted because the October 8, 2025 *Opinion and Order* (ECF 497) rests on an incomplete and, in part, inaccurate record. Several motions were not substantively addressed in the *Opinion and Order*, suggesting they were overlooked. The Government's April 21, 2025 opposition (ECF 417) cited an exhibit never filed—its referenced "Exhibit A" plea

transcript—and critical transcripts, including the plea colloquy and the Faretta waiver, remain absent from the docket; and several live motions were denied as "moot", despite continuing justiciability under Rules 16 and 41(g).[1] These procedural lapses deprived both the Court and Defendant of the complete adversarial record required by due process and Third Circuit precedent. This motion seeks limited corrective relief: (1) to compel certification or filing of the missing transcripts and docket corrections; (2) to vacate or clarify rulings issued on an incomplete record; and (3) to ensure that all future determinations rest on materials properly before the Court. The issues are narrow and administrative, aimed at restoring record integrity for sentencing and appellate review.

Addressing these omissions will ensure later proceedings rest on a complete, accurate record. No new evidence is offered; this motion relies solely on existing docket materials.

**II. PROCEDURAL BACKGROUND**

Since early 2025, Defendant has presented himself pro se with standby counsel following the dismissal of prior counsel. Beginning in February 2025, Defendant filed a series of motions for discovery, selective-prosecution materials, and partial return of digital assets under *Brady* and Rule 41(g) (ECF Nos. 402–407, 420, 446, 467, 469).

On March 11, 2025, the Court entered a Text Order (ECF 408) directing the Government to respond to those motions by April 8, 2025 and setting a May 8 hearing. The Government sought and obtained an extension to April 22, 2025 (ECF 415) but filed only a single opposition (ECF 417) citing, without filing, a plea-hearing transcript labeled "Exhibit A." No other substantive responses were submitted.

On May 6, 2025, the Court vacated the May 8 hearing (ECF 427) and later issued the *Opinion and Order* denying or mooting more than twenty pending motions. The *Opinion and Order*

---

[1] See Exhibit A (Record-Based Errors Table, filed herewith) listing unaddressed motions including ECF 402–407 (discovery/Brady), 446 (partial asset return), 467–486 (related discovery and accounting submissions).

relied on the incomplete Government filing, treated several unopposed motions as denied, and declared Rule 41(g) and discovery requests "moot."

The May 8 hearing was designated to clarify pending discovery and record-completeness issues under ECF 408. Its cancellation removed the only scheduled opportunity for Defendant to address the Government's incomplete filing and the missing plea transcript in an adversarial setting. That cancellation contributed to the record omissions now before the Court.

At that time, the docket still lacked (1) the referenced plea transcript, (2) a certified *Faretta* waiver record for the February 5, 2025 hearing before Magistrate Judge Hammer (ECF 393), and (3) entry of Defendant's January 22, 2025 Notice of Dismissal of Counsel, which bears a "Received" stamp but was never docketed.

Defendant filed a Notice of Errata and proposed corrective order (ECF 481/481-1) identifying the missing Exhibit A and requesting record correction. No action followed before the Court ruled. Defendant then submitted the instant Motion for Reconsideration, initially docketed as ECF 500. On October 22, 2025, the Court entered a Text Order noting that ECF 500 exceeded the page limits of Local Civil Rule 7.2(b) and directing Defendant to file a compliant fifteen-page substitute brief by November 5, 2025.

### III. GROUND ONE — RECORD DEFECTS AND STRUCTURAL ERROR

This ground addresses structural record defects under Rule 11(b)(3), where the *Opinion and Order* relied on materials not in the record and omitted those necessary for review.

**A. Court Relied on a Non-Existent August 12 "Proffer" to Infer Guilt**

**1. Missing "August 12 Proffer" Reference and Reliance on Non-Record Material**

The *Opinion and Order* relied on the Government's April 21, 2025 opposition (ECF 417) and a plea-hearing transcript labeled "Exhibit A" that was never filed, despite Defendant's Notice of

3

Errata and proposed corrective order identifying the omission (ECF 481, 481-1). No ruling issued on that Errata before decision, and the transcript remains missing, depriving Defendant of timely record correction under L. Civ. R. 7.1(i). Although the omission may have originated as clerical, it persisted despite formal notice, rendering continued reliance on the missing Exhibit A procedurally improper. The Order also referenced an "August 12, 2020 letter or proffer," but no such document or session exists in the record, and the Government never represented otherwise. The only contemporaneous evidence—the Treasury/IRS-CI Memorandum of Interview dated August 17, 2020—contains no admission of guilt and confirms no separate August 12 proffer. Defendant requests certification and production of any such materials so the record may be complete and subject to adversarial testing. Because the Government never referenced or filed any August 12 proffer materials and Defendant never received or had access to them, reliance on that supposed proffer was factually unsupported and procedurally improper under Rule 11(b)(3) and *United States v. Dupree*, 617 F.3d 724 (3d Cir. 2010).

In addition to the missing plea transcript, the Court relied on materials never available to Defendant at the time of ruling—specifically, the IRS-CI SAR summary and related internal investigative exhibits cited as "Dkt. 1 at 12," which were only provided to prior counsel in December 2024 and not re-produced thereafter. Defendant, proceeding pro se after February 2025, never received or had access to those discovery materials and thus could not review or challenge them before the Court's ruling. Reliance on a non-existent confession or on undisclosed or non-record material violates the adversarial-record rule and constitutes a facial Rule 11(b)(3) error. See *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010) (findings must rest on materials properly before the Court). These errors satisfy L. Civ. R. 7.1(i) because they bear directly on voluntariness and factual-basis findings. Exhibit A lists the relevant docket entries for clerical correction. Addressing this issue now will ensure that any appellate review proceeds on a complete record, minimizing duplication.

**2. Pro Se Discovery Access**

After Faretta, Defendant lacked personal access to prior-counsel files and *Rule 16* and *Brady* materials necessary to verify the plea's factual basis. Denial of such access rendered self-representation meaningless and the plea unknowing under Faretta/Peppers; voluntariness finding cannot rest on a record the pro se defendant could not review.

These record-correction steps are administrative; they seek only to ensure that every factual finding in the *Opinion and Order* rests on certified and adversarially tested materials.

**3. Requested corrective relief**

The Court should (1) direct the Government to file the certified plea transcript (or certify, with explanation, its unavailability) and (2) reconsider the plea-withdrawal and related rulings without reliance on an absent exhibit. If the transcript cannot be filed forthwith, the affected findings should be reconsidered or held in abeyance pending record completion (see Requested Relief ¶¶ 1 and 3).

**B. Missing Plea Transcript and Faretta Waiver — Structural, Not Clerical**

Under *Faretta v. California*, 422 U.S. 806 (1975), and *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), a court may permit self-representation only after a knowing and intelligent waiver appears on the record. Because neither a transcript nor a signed waiver form appears on the docket, the Court cannot presume that the required colloquy occurred. Yet the *Opinion and Order* relied on Defendant's pro se status to characterize filings as knowing and voluntary. Absent a documented *Faretta* waiver, those findings rest on an incomplete record and constitute structural error.

These integrity steps do not pre-judge outcomes; they simply ensure that dispositive rulings (including those premised on Defendant's pro se status) rest on the actual record required by *Faretta* and Rule 44 (see Requested Relief ¶¶ 1–2).

**C. Improper 'Mootness' of Pending Motions (Jurisdictional Defects)**

**1. Blanket Mootness of Rule 41(g) and Discovery Motions**

The *Opinion and Order* declared numerous live motions "moot" based solely on denial of plea withdrawal, sweeping in *Rule 41(g)* property-return and *Brady* and *Rule 16* discovery requests that remain justiciable irrespective of a plea or conviction. See *United States v. Chambers*, 192 F.3d 374 (3d Cir. 1999); *United States v. Noel*, 708 F.3d 376 (3d Cir. 2013). The blanket mootness ruling constitutes clear error warranting limited vacatur and reinstatement of affected motions (e.g., ECF 446 [partial return ≈ 3.67 BTC]; ECF 402–407, 443, 467/469, 477–482).

The Government's only opposition (ECF 417) remained defective after formal notice (ECF 481/-1), and no leave to supplement was sought or granted. Because a party may not retroactively supply missing materials to justify a decision already rendered, the Court should either deem the affected issues unopposed or direct a short, dated record-completing filing before merits reconsideration. Numerous defense filings—including the unopposed *Rule 41(g)* and discovery motions—were not analyzed in the *Opinion and Order*, indicating they were overlooked rather than adjudicated on the merits, likely due to overlapping counsel withdrawals and missing docket exhibits.

Addressing these record issues now will ensure that any appellate review proceeds on a complete record, minimizing duplication.

**2. Government's Defective Opposition (ECF 417) and Unopposed Motions**

The Government's only opposition (ECF 417) remained defective after formal notice (ECF 481/-1). No leave to supplement was sought or granted. A party may not retroactively supply missing materials to justify a decision already rendered. The Court should either (i) deem the issues unopposed or (ii) order a dated, record-completing filing before merits reconsideration.

Numerous defense filings—including the unopposed Rule 41(g) and discovery motions (ECF 402–407, 446, 467–486)—were not analyzed or referenced in the *Opinion and Order*, indicating that they were overlooked rather than adjudicated on the merits, likely due to record-access limitations and excusable procedural confusion arising from overlapping counsel withdrawals and missing docket exhibits.

**3. Continuing Discovery-Access and Due-Process Concerns**

Defendant twice sought clarification of discovery completeness—first by filings dated March 3 and 5, 2025 (ECF 402, 403, 406) requesting full production of Brady and Rule 16 materials, and later by a filing dated April 25, 2025 (ECF 422) responding to the Government's April 22 submission (ECF 417). Such prolonged retention of seized property without prompt judicial review also implicates due-process concerns. The right to disclosure under *Rule 16* and *Brady*, 373 U.S. 83, attaches to the defendant, not to counsel, and survives any change in representation or pro se status. See *United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991).

For the Court's reliance on undisclosed or non-record materials (including the non-existent "Aug. 12" proffer), see Section IV(A)(1).

Addressing these record issues now will ensure that any appellate review proceeds on a complete record, minimizing duplication.

**IV. GROUND TWO — PLEA VOLUNTARINESS AND RULE 11 ERRORS**

This ground challenges the voluntariness and factual basis of the plea under Rules 11(b)(2) and (3), focusing on coercive confinement conditions, denial of discovery access, and reliance on post-conduct legal standards. Defendant identifies specific legal errors in the Court's application of those standards, its misinterpretation of § 5 liability, and its treatment of investor harm as irrelevant. The Order also heightened the "fair and just reason" standard and omitted the *Jones* prejudice prong; clarification is warranted to ensure proper application of the full Rule

11(d)(2)(B) framework. Addressing these issues now will ensure that any subsequent appellate review proceeds on a complete record, minimizing duplication.

**A. Coercive Conditions and Restricted Counsel Access**

The validity of a guilty plea turns on whether it represents a voluntary and intelligent choice among alternatives. *Brady v. United States*, 397 U.S. 742, 748 (1970). A record that omits the contemporaneous conditions of confinement and communication restrictions cannot sustain that finding. Here, Defendant's detention history—multiple transfers, limited counsel access, and isolation from family—conditions the Supreme Court in *Machibroda v. United States*, 368 U.S. 487 (1962), deemed coercive. Those pressures were compounded by the Government's continued asset restraint and refusal to release digital funds needed for counsel or bail, conditions that linked plea entry to restoration of liberty and financial access—precisely the kind of leverage condemned in *Brady v. United States*, 397 U.S. 742 (1970).

Billing and visitation records show that in-person attorney contact ceased months before the plea; only short, monitored calls followed. These circumstances were raised in ECF 401 and 446 but not addressed in the *Opinion and Order*. Without a certified transcript reflecting a searching inquiry into those facts, the Court cannot presume that the plea was the product of free will or that Defendant understood the consequences of abandoning his constitutional defenses.

Rule 11(b)(2) requires an on-record determination that a plea is voluntary and not the product of coercion, promises, or threats. Because the transcript of that colloquy is missing, the Court's voluntariness finding rests on inference rather than evidence—precisely the defect that *United States v. Lessner*, 498 F.3d 185, 193 (3d Cir. 2007), and *McCarthy v. United States*, 394 U.S. 459 (1969), held to be reversible. Reconsideration is warranted so the record is complete and voluntariness determined from the actual transcript rather than assumption.

Finally, the *Opinion and Order*'s reasoning that the plea was voluntary because "no promises were made" and that "no inducement existed because no written provision required asset return" is circular. *Op. at 15.* The absence of written terms does not negate the psychological or practical inducement created by prolonged detention and asset restraint. The Court's conclusion that Defendant "pleaded guilty because he was guilty, not because his assets would be returned" assumes the very voluntariness it purports to prove—an analytical loop inconsistent with *368 U.S. at 493–94,* see *McCarthy v. United States*, 394 U.S. 459, 472 (1969) (holding that failure to comply with Rule 11 requires automatic vacatur of the plea). This contradiction warrants reconsideration and factual clarification.

**B. Post-Conduct Law, Peripheral Role, and Strict-Liability Misapplication**

The *Opinion and Order*'s plea analysis relied on post-conduct interpretations and civil strict-liability concepts to infer criminal intent, although the record shows only peripheral promotional activity and no investor harm and, notably, the Government never alleged that Defendant drafted offering materials, determined pricing, or controlled investor funds. At the time of Defendant's conduct, neither the statutory language nor contemporaneous enforcement practice defined such peripheral actions as "sales" under § 5. Applying those later developments to retroactively assess guilt conflicts with the fair-notice principles of *Bouie v. City of Columbia*, 378 U.S. 347 (1964), and *United States v. Lanier*, 520 U.S. 259 (1997). Treating later-developed case law as retroactive authority and disregarding materiality and harm imported a civil standard into a criminal proceeding. The result is a factual-basis finding inconsistent with Rule 11(b)(3), which requires an admission to conduct satisfying each criminal element as then defined. See *McCarthy v. United States*, 394 U.S. 459, 467 (1969); *United States v. Lessner*, 498 F.3d 185, 197 (3d Cir. 2007). Limited clarification is warranted to ensure that any plea finding rests on contemporaneous legal standards and a certified record of actual conduct. Addressing this issue

now will ensure that any subsequent appellate review proceeds on a complete record, minimizing duplication.

**V. GROUND THREE — FAIR-NOTICE AND RETROACTIVITY**

This ground addresses continuing prejudice from unresolved discovery and property-return issues and preserves for appellate review the fair-notice and retroactivity objections arising from post-conduct reinterpretations of digital-asset law.

Although this motion focuses on record-based and voluntariness defects, Defendant preserves the related fair-notice and retroactivity objections to the charging and plea framework applied in this case. Those constitutional issues—first raised in ECF 403, 404, 405, 467, 469, and 471 (motions addressing selective-enforcement, fair-notice, and plea-retroactivity defects)—concern the retroactive application of post-conduct digital-asset interpretations and are reserved for subsequent briefing so as to keep the present motion limited to procedural and integrity grounds.

Between 2014 and 2019—the conduct period—the United States lacked clear, publicly available guidance classifying participation in distributed-network mining or promotional activity as a securities or wire-fraud offense. Contemporaneous agency silence and later policy reversals confirm that Defendant could not reasonably foresee that such conduct would be prosecuted as a criminal "sale" of unregistered securities or as mail or wire fraud. See *Bouie v. City of Columbia*, 378 U.S. 347 (1964); *United States v. Lanier*, 520 U.S. 259 (1997) (fair-warning doctrine).

The *Opinion and Order* cited post-conduct enforcement precedents and interpretive memoranda—none of which were in effect during the operative years. Applying those later interpretations retroactively conflicts with the principle that "criminal statutes are to be strictly construed, and uncertainty resolved in favor of lenity." *United States v. Santos*, 553 U.S. 507, 514 (2008).

Congress's subsequent enactment of the GENIUS Act of 2025 and the Department of Justice's updated Digital-Asset Policy Guidance (Sept. 2025) underscore that prior standards were unsettled. Because those measures now require individualized harm analysis and disclosure clarity for digital-asset cases, the earlier plea framework no longer reflects the governing standard. The absence of pre-2020 regulatory definitions deprived Defendant of constitutionally adequate notice and rendered any Rule 11 factual-basis finding incomplete.

Defendant preserves this issue for appellate consideration and requests that, should the Court decline reconsideration on other grounds, it clarifies that its October 8 ruling does not preclude later review of these fair-notice and retroactivity questions under *Bouie*, *Lanier*, and *Peugh v. United States*, 569 U.S. 530 (2013).

Clarifying the fair-notice and retroactivity framework at this stage will ensure efficient appellate review on a full and stable record.

**VI. PREJUDICE AND REQUESTED RELIEF**

This section identifies the limited corrective orders—(A) administrative record corrections and (B) substantive reconsideration requests—necessary to cure record omissions and restore procedural accuracy without reopening the merits.

**A. Continuing Prejudice**

The record deficiencies identified above continue to inflict tangible prejudice. Without the missing transcripts, discovery certifications, and docket corrections, Defendant cannot:

- verify the accuracy of the factual basis underlying his plea;
- challenge or respond to discovery representations made outside the record;
- confirm the custody and disposition of seized digital assets necessary for sentencing, Rule 41(g) review, or post-conviction proceedings; or
- ensure that any waiver of counsel or plea was constitutionally valid.

Each day that these gaps remain unresolved compounds procedural harm and obstructs effective appellate review. See *Fiorelli*, 337 F.3d at 288 ("motion for reconsideration appropriate to prevent manifest injustice").

**B. Requested Relief**

Defendant requests that the Court grant limited reconsideration pursuant to Local Civil Rule 7.1(i) or, in the alternative, record correction under the Court's inherent authority and Fed. R. Crim. P. 36, and issue the following administrative directives to complete and clarify the record. In addition, Defendant seeks clarification of the Court's interpretation of the securities-law elements applied to his plea, to ensure that the Rule 11(b)(3) factual-basis finding rests on the correct criminal standard and not on a civil strict-liability framework:

1. **Certification or filing of plea transcript.** Request that the Government be directed to file the November 5, 2020 plea-hearing transcript, or certify its unavailability within seven (7) days.

2. **Certification or filing of Faretta transcript/waiver.** Order filing or certification of the February 5, 2025 Faretta-hearing transcript (ECF 393). If no transcript can be located, refer the matter to Magistrate Judge Hammer for certification or, if appropriate, a brief supplemental colloquy confirming a knowing, voluntary, and intelligent waiver under *Faretta* and *Peppers*.

   If the Court declines to grant full reconsideration at this time, Defendant alternatively requests that the record-completion issue concerning the February 5, 2025 Faretta hearing (ECF 393) be referred to Magistrate Judge Hammer for certification or a supplemental colloquy under 28 U.S.C. § 636(b)(1)(B).

3. **Clerical correction (Notice of Dismissal).** Request that the Clerk be authorized to enter nunc pro tunc the Notice of Dismissal of Counsel bearing the Clerk's "Received" stamp dated January 22, 2025, pursuant to Fed. R. Crim. P. 36 and L. Civ. R. 79.1. For clarity, Defendant incorporates by reference the factual-correction table contained in Exhibit A (Record-Based Errors Table, filed herewith), which identifies additional clerical and factual misstatements (income amounts, terminology, and procedural dates) for correction under Fed. R. Crim. P. 36.

4. **Certification of August 12 proffer documents.** Request that the Government be required to certify whether any proffer documents dated 12, 2020 exist and, if so, to provide them.

5. **Vacature of Affected Rulings.** Reconsider or clarify the portions of the *Opinion and Order* that (a) referenced the unfiled Exhibit A transcript, (b) resolved withdrawn or non-ripe motions (ECF 396 and 400), and (c) deemed live Rule 41(g) and discovery motions "moot," so the docket accurately reflects all pending matters.

6. **Record Completion and Government Response.** Order the Government to file substantive responses or certifications addressing each pending and unopposed motion (ECF 402–407, 446, 467–486, 494) within seven (7) days, or show cause why any extension should be granted. Absent timely, certified responses, deem Dkts. 402–407 unopposed under L. Civ. R. 7.1(d)(7).

7. **Unsealing for Adversarial Record.** Direct unsealing or public-redacted filing of any Government or other materials relied upon in the October 8 Order (beyond Defendant's own sealed filings), so the Rule 11(b)(3) basis rests on an accessible adversarial record.

8. **Stay of Joint-Letter Deadline.** Stay the October 31 joint-letter requirement under ECF 497 until this motion is resolved, to avoid inconsistent filings while the record is being completed.

Granting these administrative corrections will complete the certified record and allow the Court to address the remaining issues efficiently.

9. **Reconsideration of Order Denying Return of Property.** Reconsider or refer to the portion of the *Opinion and Order* that denied relief under Rule 41(g) without factual findings. The continued retention of seized digital assets without prompt judicial review implicates the due-process concerns recognized in Culley v. Marshall, 144 S. Ct. 790 (2024) (Gorsuch, J., concurring). If the Court does not grant immediate return, it should refer the issue to Magistrate Judge Hammer for factual development under 28 U.S.C. § 636(b)(1)(B).

10. **Property-Return and Record-Completion Coordination.** In Defendant's October 28, 2025 joint filing (ECF 510) pursuant to ECF 497, the Government did not oppose unsealing of the asset-related materials and previously acknowledged that the digital assets "would be returned." Because those same custody records remain under seal, any ruling adverse to Defendant on property-return issues would conflict with the Court's record-completion directive and prevent meaningful review under Rule 11(b)(3) and *Culley v. Marshall*, 144 S. Ct. 790 (2024). To permit verification of the factual basis and tax calculations, Defendant requests that the Government certify or provide, under protective order, the wallet and seizure records underlying the IRS valuation, showing how each address and transaction corresponds to a seized digital-asset item or explaining any unavailability. Defendant further requests that the limited issue of the return of approximately 3.67 BTC (ECF 446 and 480) be referred to Magistrate Judge Hammer for factual findings and a recommendation under 28 U.S.C. § 636(b)(1)(B), following completion of the ECF 497 record-clarification process.

11. **Reservation and Clarification of Standards.** Clarify that reconsideration or limited denial here does not waive Defendant's right to pursue later review of fair-notice,

retroactivity, or factual-basis standards under *Bouie v. City of Columbia*, 378 U.S. 347 (1964), *United States v. Lanier*, 520 U.S. 259 (1997), and Rule 11(b)(3). Addressing these substantive issues after the record corrections ensures any appellate review rests on a complete record.

**C. Equitable Grounds**

Each requested step restores procedural balance without burdening the Court or the Government. These measures neither reopen the merits nor relitigate settled factual questions—they simply ensure any judgment rests on a complete record. Completion of the record is essential to permit meaningful appellate review under *United States v. Fountain*, 792 F.2d 120 (3d Cir. 1986).

Each of these limited corrections promotes judicial economy by preventing redundant review and ensuring the Court's orders rest on a complete record.

**VII. CONCLUSION**

This motion supersedes ECF No. 500 under the Court's October 22, 2025 Text Order and complies with the fifteen-page limit of Local Civil Rule 7.2(b). Reconsideration here seeks only to ensure that rulings rest on a complete record and Defendant requests that the Court grant the limited corrective relief set forth above and enter an appropriate order.

Respectfully submitted,
/s/ Jobadiah Sinclair Weeks
Jobadiah Sinclair Weeks (pro se)
18101 Collins Avenue, #4209
Sunny Isles Beach, FL 33160
Dated: October 30, 2025



15