**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**UNITED STATES OF AMERICA**,
      v.
**JOBADIAH SINCLAIR WEEKS**,
     Defendant.
Criminal No. 19-cr-877 (CCC)

Defendant submits this reply to address the Government's November 25, 2025 submission (Dkt. 524) and its renewed allegations concerning (1) purported internet access and (2) an unverified toxicology result. Each allegation lacks evidentiary support and cannot sustain restrictive conditions. This reply also clarifies the procedural accuracy of Exhibit F and the status of Dkt. 435.

# I. Internet allegation

## A. Allegation Unsupported by the Record

The Government asserts that Weeks "again accessed the internet" on August 26, 2025 by appearing on Decentralize.TV in violation of the May 20, 2025 order. The Government makes this assertion in its August 25, 2025 supplemental letter (Dkt. 476), but it has never filed any response to Defendant's point-by-point rebuttal at Dkt. 479, nor has Pretrial Services submitted any violation notice supporting the allegation. The Court's May 20 ruling restricted **unsupervised computer and smartphone-connected access** used to circumvent monitoring, but it did not prohibit all forms of video communication conducted through approved systems within his residence. Pretrial Services has never reported a violation in connection with the August 26 interview, nor has it alleged that prohibited hardware, software, or devices were used. Pretrial's silence is dispositive on whether a violation occurred.

The Government's filing identifies no Pretrial Services notice, no contemporaneous report, and no factual basis establishing that Weeks accessed the internet in a manner inconsistent with the Court's conditions.

Additionally, the August 26 interview concerned legal issues Weeks was expressly permitted to discuss publicly. There is no allegation—let alone evidence—that the interview involved victim contact, financial transactions, or any electronic activity restricted by the Court's order. Bail conditions do not bar a defendant from discussing his case, and the May 20 ruling did not prohibit passive video appearances conducted through permitted channels.

Because the Government presents **no record evidence** of improper device use, prohibited access, or any Pretrial-reported violation, the August 26 interview cannot serve as a basis to maintain or expand restrictive conditions.

## B. No Evidence of Prohibited Device Access

The Government cites a timestamp on a public Decentralize.TV webpage but offers no evidence of how Weeks appeared on the stream, through what device, or what method of connection was used. A publicly posted timestamp is not evidence of unpermitted internet access—it merely reflects when the platform uploaded the video.

What matters for bail compliance is **how** a defendant connected, not whether a final video later appeared online.
The Government provides:

- no device logs,
- no IP data,
- no Pretrial Services report,
- no testimony,
- and no evidence of smartphone, computer, or VPN use.

Absent evidence of device-based access, the Government's allegation is speculative and cannot establish a violation of the May 20 order. Courts do not impose or maintain liberty restrictions based on inference where Pretrial Services issued **no violation report** and **identified no prohibited conduct**.

## C. Section 3148(b) Standard Not Met

The Government's request to revoke pretrial release implicitly invokes 18 U.S.C. § 3148(b), but the statutory prerequisites are not met. Revocation requires either:

1. a judicial finding of a **"clear and convincing" violation** of a release condition, or
2. probable cause of a new criminal offense.

Neither exists here.

Pretrial Services—the entity responsible for supervising and reporting compliance—has issued **no violation notice**, entered no adverse report, and identified no misuse of restricted devices or software in connection with the August 26 interview. The Government points only to a publicly available video without any evidence of how Weeks appeared on it. In the absence of a Pretrial-reported violation or objective evidence demonstrating prohibited device usage, § 3148(b) is not triggered.

Courts consistently decline to revoke release based on conjecture or inference where Pretrial Services has identified no violation and no factual basis exists to meet the statutory

standard. The Government's assertion therefore cannot support revocation or continued imposition of heightened restrictions.

# II. Toxicology

## A. No Laboratory Documentation

The Government continues to rely on an alleged "positive" toxicology result from May 2025 but has produced **no underlying documentation**—no lab report, no chain-of-custody materials, no instrument readout, and no certification from Pretrial Services. The only "evidence" offered is a prosecutor's assertion in correspondence, unsupported by any record. Weeks requested the underlying documentation in Dkt. 494 and again in his October 2, 2025 correspondence (Exhibit D). The Government filed **no opposition** and still has not produced a single page of the alleged test.

Because the Government affirmatively invokes this allegation to justify maintaining restrictive bail conditions, the Due Process Clause requires disclosure of the evidence underlying it. Liberty restrictions cannot rest on undisclosed or unverified claims.

Defendant also followed up directly with the Government on November 14, 2025 to request confirmation of the May 23 toxicology records and the associated chain-of-custody documentation, but no response or production was provided (Email dated Nov. 14, 2025, attached as Exhibit __).

## B. Labcorp Hair Test Evidence

The Government's argument fails on both scientific and evidentiary grounds.

The Government argues that Weeks' certified Labcorp hair test "should not be credited" because Labcorp's public website states that hair testing generally detects drug use "up to 90 days." That argument fails for several reasons.

**First**, Labcorp's certified forensic report is evidence; a marketing webpage is not. The submitted report is a signed, certified laboratory record showing no controlled substances. The Government has produced no competing laboratory report, no chain-of-custody documentation, and no confirmation of any positive result.

**Second**, even accepting the Government's own assumption of a 90-day detection window, the Labcorp report returned negative results on all panels. A certified negative forensic test is actual evidence directly contradicting the Government's allegation—particularly where the Government has produced no laboratory report, no chain-of-custody documentation, and no verification from Pretrial Services. Until such documentation is produced, the only evidence before the Court is exculpatory.

**Third**, the Government's theory is based entirely on speculation drawn from a website rather than on any forensic toxicology evidence. Speculation cannot outweigh a certified forensic report.

Without a lab record from Pretrial Services, the Government cannot discredit the only actual toxicology evidence before the Court.

The Government's reliance on a generic "up to 90 days" reference from Labcorp's marketing page is incomplete. Labcorp's publicly available guidance explains that this 90-day figure reflects a standard 1.5-inch hair segment and that the detection window varies with the length of hair collected and analyzed. Longer segments provide a proportionally longer detection period. The certified Labcorp report therefore reflects the actual sample collected from Weeks—not a generic marketing window—and is the only reliable evidence before the Court.

Further, the hair sample collected from Weeks was substantially longer than the standard 1.5-inch segment on which the Government's "90-day" assertion is based. Weeks' hair at the time of collection measured approximately 16 centimeters (about 6.3 inches), which extends the potential detection window several months beyond the generic period referenced on Labcorp's website. Because the Labcorp test analyzed the actual length of hair collected—not a theoretical 1.5-inch sample—the negative result reflects a significantly longer retrospective period than the Government suggests, further undermining the credibility of the alleged May 23 toxicology claim.

To the extent the Government suggests that Weeks "never said he did not use cocaine," that assertion is both inaccurate and legally improper. Weeks has repeatedly denied the allegation, including in Dkt. 479, in his October 2 correspondence (Exhibit D), and now through a certified negative forensic toxicology report. Moreover, a defendant has no burden to disprove an unverified allegation; the burden rests entirely on the Government to produce the laboratory documentation supporting the claim. Without such documentation, Weeks' certified negative test is the only evidence before the Court.

Moreover, if the Government genuinely believed that Weeks had tested positive on May 23, 2025, it could have— and should have—taken immediate steps to verify the result. The Government did not notify the Court, did not notify stand-by counsel, did not notify Defendant, and did not request or arrange a confirmatory test of any kind. A timely hair test conducted in late May or early June would have provided definitive confirmation or exclusion. Instead, the Government remained silent for months and raised the allegation only in August, long after any contemporaneous verification could be obtained. This failure further undermines the credibility of the allegation and reinforces the need for disclosure of the underlying laboratory and chain-of-custody records.

## C. Disclosure Required Once Relied Upon

The Government argues that Rule 16 does not compel production of Pretrial Services materials. While Pretrial Services is part of the Judicial Branch, the Government's statement

is incomplete. Once prosecutors adopt, repeat, and rely on a Pretrial allegation to justify liberty restrictions (Dkt. 472; Dkt. 524), the underlying evidence becomes functionally within the Government's possession for disclosure purposes. A party cannot simultaneously:

- rely on an allegation as fact,
   **and**
- claim it has "no access" to the supporting record.

Courts have repeatedly held that defendants are entitled to the evidence underlying adverse bail decisions. *United States v. Abuhamra*, 389 F.3d 309, 314–15 (2d Cir. 2004).

Here, Weeks faces restrictive conditions based solely on an allegation for which **no evidence has ever been produced**. Due process requires disclosure.

Defendant has previously requested the associated communications and correspondence relating to the alleged May 23 test—including emails between the Government and Pretrial Services—and no response or production has been provided. The absence of these materials further underscores that the Government cannot rely on the allegation without producing the underlying record.

Defendant does not seek broad discovery but only the specific materials the Government has chosen to rely upon in its bail filings.

## D. No Conditions Based on Unverified Claims

Because the Government has not produced any Pretrial Services toxicology documentation:

- the Court lacks an evidentiary basis to maintain the drug-testing condition, and
- the allegation cannot lawfully support any restrictive condition, let alone form a basis for revocation.

Weeks has produced a certified independent forensic report showing no controlled substances. The Government has produced nothing.

Accordingly, production of the underlying Pretrial Services toxicology documentation is necessary to resolve the issue and to avoid basing liberty restrictions on an unsupported assertion.

# III. Exhibit F

## A. Exhibit F Is Proper and Not Barred by ECF 508

Finally, the Government's characterization of Exhibit F is misplaced. The Text Order in ECF No. 508 applied solely to the Motion for Reconsideration then before the Court and prohibited expanding that motion's page limit by inserting additional argument into attachments. Exhibit F is not such an attempt. It is a factual memorandum submitted in direct response to the Government's continued reliance on its 2020 detention proffer—including Dkt. 24—which the Government again invokes in its current submission (ECF 524). When the Government renews or reasserts historical allegations to justify restrictive conditions in 2025, the defense is entitled—and obligated—to correct the factual record. Exhibit F does exactly that by identifying inaccuracies and clarifying the underlying evidence. Nothing in ECF 508 bars the submission of factual materials necessary to evaluate claims the Government itself has revived, and the Government's reliance on a narrow text order is therefore misplaced.

Given that the Government continues to rely on the historical assertions contained in Dkt. 24 and related filings, Defendant respectfully requests that the Court direct the Government to state whether it contests any of the factual clarifications set forth in Exhibit F. A formal response is necessary to ensure that bail determinations are based on an accurate record and not on disputed or outdated factual representations.

Defendant has also asked the Government to identify the specific Facebook source materials underlying the quotations in ECF 24, now that the verified corpus has been filed, but the Government has provided no response to that inquiry (Email dated Nov. 14, 2025). This further underscores the necessity of Exhibit F to correct the record where the Government declines to clarify its own sourcing.

## B. "Insufficient to Reopen" Argument

The Government's assertion that Weeks cannot "reopen" the question of conditions because he has "repeatedly violated" past conditions rests on inaccurate premises. The only alleged violation presently invoked is the claimed positive toxicology result from May 2025—yet the Government has produced **no laboratory report**, **no chain-of-custody documentation**, and **no certification from Pretrial Services** to substantiate that claim. Weeks, by contrast, has submitted a certified independent toxicology report showing no controlled substances, and the Government did not oppose his request for the underlying Pretrial Services records.

A bail condition grounded on an unverified assertion is itself a "changed circumstance" because due process prohibits imposing or maintaining liberty restrictions based on undisclosed evidence. See *United States v. Abuhamra*, 389 F.3d 309, 314–15 (2d Cir. 2004). The absence of the underlying record is the new and material fact the Government's authorities do not address.

The cases the Government cites—*Johnson*, *Merola*, and *Caldwell*—concern defendants attempting to re-argue unchanged facts. Here, the material change is the Government's continued reliance on an allegation for which no evidentiary basis has been produced despite repeated requests and a certified contrary toxicology result. That is precisely the type of "significant event" that warrants judicial review.

### C. Section 3143(a)(1)

The Government's reliance on 18 U.S.C. § 3143(a)(1) is both premature and legally incorrect. Judge Cecchi's October 8, 2025 Opinion (ECF 497) did not terminate Weeks' release or convert his status to post-conviction detention. Weeks remains on pre-sentence release under existing conditions. As Dkt. 497 reflects, Judge Cecchi denied the plea-withdrawal motion but did not terminate pre-sentence release or convert Weeks' status to post-conviction detention. The conditions of release remained unchanged pending sentencing.

Section 3143(a)(1) applies only when the Government seeks detention following conviction and bears the burden of showing that no condition will reasonably assure appearance or safety. The Government has filed no such motion supported by evidence. The issue currently before this Court is sharply narrower: whether specific conditions—imposed on the basis of a toxicology allegation never substantiated with an actual laboratory record—should remain in force.

Correction of unsupported or erroneous conditions is well within the Court's authority and does not implicate § 3143.

### D. Status of Dkt. 435

The Government suggests in its November 12 filing (Dkt. 472) that Defendant's motion at Dkt. 435 "should be considered terminated." That statement is inconsistent with the Court's own treatment of the motion. As reflected in the May 20, 2025 hearing and the associated Text Order (Dkt. 460), the Court expressly included Dkt. 435 among the motions scheduled for adjudication and did not terminate, deny, or otherwise resolve it. Nothing in the docket reflects a disposition of Dkt. 435.

Accordingly, the Government's assertion that Dkt. 435 has already been resolved is unsupported by the record and misstates the procedural history. This is precisely the type of inaccuracy Exhibit F was designed to correct, and it underscores why factual clarification is necessary when the Government relies on outdated or mischaracterized filings.

## Conclusion

Because the Government has not provided evidence supporting either the alleged internet violation or the alleged toxicology result, and because the record corrections in Exhibit F remain uncontested, Defendant respectfully asks the Court to (1) decline to impose or maintain restrictive conditions based on these unsupported allegations, and (2) direct the

Government to produce the underlying toxicology documentation or confirm that no such documentation exists.

Respectfully submitted,

**/s/ Jobadiah Sinclair Weeks**
**Jobadiah Sinclair Weeks**
Defendant, *pro se*
Home address on file with Pretrial Services
Dated: November 26, 2025



# Exhibit List

**Exhibit A** – Certified Labcorp Hair-Follicle Toxicology Report (Nov. 7, 2025), including chain-of-custody documentation.

**Exhibit B** – Attachment A: Proposed Bail-Condition Modifications and Government Position Table.

**Exhibit C** – Email dated October 13, 2025 ("Proposed Joint Submission – Supplemental Motion to Modify Pretrial Release Conditions").

**Exhibit D** – Email dated October 2, 2025 ("Request for May 23, 2025 Lab Report & Chain of Custody").

**Exhibit E** – Email dated November 5, 2025 ("Invitation to Correct Docket Reference to May 23 Toxicology Claim").

**Exhibit F** – Memorandum on Record Misstatements and Clarifications Relating to the Government's January 15, 2020 Detention Filing (ECF 24).

**Exhibit G** – Declaration of Jobadiah Sinclair Weeks Regarding Hair Length at Time of Toxicology Collection (16 cm).

**Exhibit H** – Email from Jobadiah Sinclair Weeks to AUSAs (Nov. 14, 2025) re Facebook Verification and Toxicology Documentation