UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

United States of America
v.
Jobadiah Sinclair Weeks
Crim. No. 2:19-cr-877-CCC-5

DEFENDANT'S SUPPLEMENTAL SUBMISSION REGARDING PLEA COLLOQUY
AND RECORD-BASED DEFICIENCIES

I, Jobadiah Sinclair Weeks, respectfully submits this supplemental memorandum following
the filing of the plea hearing transcript dated November 5, 2020 (ECF No. 551), which was
not previously available to me. This submission identifies record-based deficiencies apparent
from the plea colloquy itself, which directly relate to issues previously raised in my
submissions (ECF Nos. 403–407; see also ECF Nos. 513, 568), addressed in the
Government's response (ECF No. 417), and resolved on the papers (ECF No. 427).

These deficiencies bear directly on whether the plea satisfies Rule 11(b)(3) and the
constitutional requirement that a guilty plea be knowing, voluntary, and supported by an
adequate factual basis.

This submission is not intended to revisit or relitigate prior rulings, but to assist the Court in
evaluating the appropriate sentence under 18 U.S.C. § 3553(a) in light of record-based
limitations that bear directly on the reliability of the factual and financial framework
underlying the advisory guideline calculation.

## I. The Plea Colloquy Reflects a Conclusory, Government-Constructed Factual Basis

Factual Basis of the Plea

The transcript reflects that the factual basis for the plea was established almost entirely
through leading, binary questions posed by the Government, eliciting affirmative responses
without independent factual development.

The allocution consists of a sequence of questions such as whether I agreed to certain
conduct, promoted the BitClub Network, or engaged in specific acts, each answered "Yes."
At no point does the record reflect:

1. an independent narrative of events by me,
2. identification of specific underlying evidence, or

1

3. any substantive factual explanation beyond agreement with the Government's characterization.

While this format may satisfy Rule 11 requirements, it results in a record where the factual basis is conclusory and entirely dependent on the Government's framing, rather than grounded in independently articulated or verifiable facts.

Rule 11(b)(3) requires that the Court determine that a factual basis exists in the record. A conclusory allocution that does not identify underlying facts or supporting evidence limits the extent to which that determination can be grounded in verifiable record material.

Where the factual basis consists solely of conclusory affirmations without reference to underlying facts or evidence, meaningful appellate review of the Rule 11(b)(3) determination is materially constrained.

## II. The Tax Evasion Count Lacks Any Disclosed Financial Foundation

Financial Foundation of the Tax Count

With respect to the tax evasion count, the plea colloquy establishes only that:

1. I did not file tax returns for 2015–2018,
2. I earned "in excess of $10 million," and
3. I did not report that income.

However, the record contains no discussion whatsoever of:

1. any quantified tax deficiency,
2. any calculation of tax due and owing, or
3. any disclosed methodology or supporting financial analysis.

The only financial reference—*"in excess of $10 million"*—is undefined, untested, and not tied to any disclosed tax computation or methodology. Accordingly, the plea establishes, at most, non-filing and generalized conduct, but does not establish a substantiated factual basis for the financial magnitude of the offense.

Without a quantified tax deficiency or identifiable methodology, the record does not establish the essential elements of tax evasion in a manner that can be reviewed or verified.

This absence is reflected in the presentence process itself. As noted in the Presentence Investigation Report (PSR 37 (Dkt. 384)), the Probation Office stated that additional information regarding loss calculations was requested from the Government but not received. As a result, the financial figures underlying the tax count remain dependent on reconstruction and assumption rather than disclosed, verifiable calculations.

2

The conduct described in the plea colloquy—non-filing and non-reporting—does not, without more, identify the specific affirmative acts typically associated with tax evasion, and the absence of any developed financial or transactional detail further limits the extent to which the record reflects a complete and substantiated factual basis for that tax evasion charge.

This absence is particularly significant in light of my subsequent submissions identifying unresolved discovery and record-completeness issues. See, e.g., ECF No. 513.

As reflected in that submission, materials bearing directly on the Government's financial theory—including proffer memoranda, investigative reports, and underlying asset and valuation records—remain either unproduced or not identifiable in the record. The plea colloquy contains no reference to any such materials, nor any indication that their contents were explained or tested at the time of the plea.

### III. The "Filter Process" Waiver Was Entered Without Record-Level Disclosure

Record Integrity and Evidentiary Disclosure

During the plea colloquy (ECF No. 551), I was asked to confirm that I had discussed and would not challenge the Government's "filter process," and I responded affirmatively.

However, the record reflects that:

1. the nature and scope of the filter process were not described on the record;
2. no information was provided regarding the categories or volume of materials subject to filter review;
3. no privilege log, inventory, or summary of the segregated materials was disclosed; and
4. no results or conclusions of that process were presented.

In a communication dated February 10, 2026—the first communication from the Government's filter team—Assistant United States Attorney Francesca Liquori confirmed that the filter process involved thousands of documents identified through privilege search terms.

The same communication further reflects that there was no written waiver of privilege, and that uncertainty remained as to whether any waiver had been executed.

Accordingly, the purported waiver referenced during the plea colloquy—to the extent it constitutes a waiver—was entered:

1. without disclosure of the materials subject to the waiver;
2. without access to or review of those materials; and
3. without any record-level explanation of the process being waived.

To the extent that those materials include financial records, business documentation, or communications bearing on the Government's theory of income, intent, or asset tracing, the absence of disclosure further underscores that the evidentiary record underlying the plea was incomplete.

A waiver entered without disclosure of the materials at issue, or an understanding of their scope, raises substantial questions as to whether that waiver was known and informed.

## IV. The Colloquy Does Not Address Willfulness in Light of Prior Statements

Willfulness and Knowledge of Legal Duty

Although I provided affirmative responses to willfulness-related questions, the plea colloquy does not reflect any inquiry into my contemporaneous understanding of my tax obligations.

In particular, the plea colloquy does not address statements made by me during the April 19, 2019 IRS–Criminal Investigation interview (Ritz interview), as reflected in the contemporaneous interview record (see, e.g., ECF No. 402-1), in which I described my understanding that I did not believe tax was owed under the circumstances.

Willfulness, however, requires the intentional violation of a known legal duty. The plea colloquy contains no inquiry into, or reconciliation with, these contemporaneous statements, leaving the record undeveloped as to whether I possessed the requisite knowledge at the time of the alleged conduct.

The absence of any exploration of my understanding leaves the record undeveloped on a central element of the offense and undermines confidence that later characterizations of knowledge and intent are not grounded in the contemporaneous record.

This gap is further underscored by the existence of proffer-related materials referenced elsewhere in the record but not clearly incorporated into the plea colloquy itself. See ECF No. 513 (identifying issues concerning August 2020 proffer materials and related memoranda).

The absence of any discussion of such materials during the colloquy reinforces that the record does not reflect a developed inquiry into my contemporaneous understanding or intent.

## V. The Conditions of the Plea Colloquy Limited Real-Time Consultation and Contextual Understanding

As reflected in the plea transcript (ECF No. 551), the November 5, 2020 proceeding was conducted by video during the COVID-19 period rather than in a traditional in-court setting.

I participated in the proceeding from within the correctional facility, where I was brought from my housing unit to a separate room for purposes of the video hearing. The proceeding was conducted via Zoom, with a correctional officer physically present in the room. Defense counsel was not physically present with me.

4

As a result, any communication with counsel during the proceeding was necessarily subject to the constraints of the remote format and the custodial setting.

This limitation is further reflected in the record. As set forth in my subsequent submission (ECF No. 513), I was unable to obtain confirmation from prior counsel regarding what materials had been received prior to the plea, and no response was provided, indicating that meaningful access to information through counsel was not available.

The transcript itself reflects a sequence of brief, directed exchanges without extended factual development. It does not reflect:

1. any opportunity for private, uninterrupted consultation with counsel during the proceeding;
2. any inquiry into the conditions under which the plea was conducted; or
3. any discussion of whether those conditions affected my ability to understand or respond fully to the Court's questions.

These conditions are relevant to understanding the nature of the record that was created. The colloquy consists primarily of short, affirmative responses to directed questions, without independent narrative or elaboration.

While I do not challenge the Court's use of remote procedures under the circumstances, these conditions provide important context for evaluating:

1. the absence of detailed factual development;
2. the lack of exploration of complex financial and tax-related issues; and
3. the limited opportunity to clarify or supplement responses in real time.

Accordingly, the conditions under which the plea was conducted further underscore that the resulting record is limited in scope and should be interpreted with appropriate caution when used as the basis for subsequent factual or financial determinations.

These limitations are particularly significant where the record reflects reliance on summary affirmations rather than independently articulated facts, and where underlying evidentiary and financial foundations were not developed on the record.

**VI. The Plea Was Accepted on an Undisclosed and Incomplete Record**

Cumulative Structural Defect — Record-Anchored Version

Taken together, the record shows that the plea was accepted on an evidentiary and financial framework that was not substantively developed, disclosed, or verifiable at the time of the plea.

The plea transcript (ECF No. 551) reflects that:

5

1. the factual basis was established through a sequence of directed, affirmative responses rather than an independently articulated narrative;
2. the financial foundation of the tax-related conduct was not explained, quantified, or supported by any disclosed methodology; and
3. waivers and acknowledgments—including with respect to evidentiary processes—were obtained without corresponding record-level explanation of the underlying materials or their scope.

These limitations are confirmed by the presentence process itself.
 As reflected in the Presentence Investigation Report (PSR    37 (Dkt. 384), the Probation Office expressly noted:

> *"Additional information regarding loss and/or credits to the investors was requested but not received from the Government."*

Accordingly, the financial figures underlying the advisory guideline range are not derived from disclosed, verifiable calculations, but rest on reconstruction and assumption without an identifiable methodology.

This is not a minor omission. The tax-loss figure is the primary driver of the advisory guideline range, and where that figure is not supported by disclosed calculations, supporting schedules, or transaction-level analysis, the resulting guideline framework lacks a verifiable evidentiary foundation.

**A. Investigative Financial Materials Reflect Additional Record Inconsistencies**

The incompleteness of the financial record is further underscored by inconsistencies within the Government's own investigative materials and the temporal structure of those materials.

The October 8, 2020 Grand Jury presentation references a "Streamlined SAR," yet that document was neither attached to nor incorporated into the Grand Jury materials. The subsequently identified "Streamlined SAR" post-dates that presentation and, critically, references events—including the plea proceedings—that occurred after November 5, 2020.

In addition, the document does not reflect a clear preparation date on its face, further limiting the ability to determine when the underlying financial analysis was actually developed.

This temporal disconnect reflects that the financial characterization relied upon in this case is not traceable to a contemporaneous, fixed investigative record, but instead reflects a framework that was developed or finalized after the plea.

This lack of a stable, pre-plea analytical foundation is further reflected in the IRS Criminal Investigation report (ECF No. 402-1), which expressly incorporates the executed plea agreement as support for elements of the tax-evasion charge, including willfulness. Rather than presenting a fully independent, pre-plea evidentiary analysis, the report relies in part on the existence of the plea itself as part of its evidentiary framework.

Taken together, these materials reflect a circular evidentiary structure in which the plea is used to substantiate elements that the plea itself was required to establish through an independent factual basis.

Accordingly:

1. the definition and scope of the alleged tax evasion were not anchored in a disclosed and stable analytical framework at the time of the plea;
2. the record does not reflect any contemporaneous financial methodology tying alleged income to a quantified tax deficiency; and
3. the evidentiary framework appears to incorporate post-plea materials rather than reflecting a fixed pre-plea record.

Consistent with this, the February 10, 2026 communication from the Government's filter AUSA confirms that substantial volumes of potentially relevant materials—including financial and business records—remain segregated and were not reviewed or made available in connection with the plea or sentencing process.

In addition, requests for access to seized business records directly relevant to the financial issues described in the PSR—including Bitfury transaction documentation and brokerage-related materials—remain unresolved, further limiting the ability to evaluate the underlying financial assumptions.

Taken together, these deficiencies result in a record that does not permit a reliable determination that the plea was supported by a sufficient factual basis or entered with a full understanding of the underlying evidentiary and financial framework. Nor does the record permit meaningful appellate review of the sufficiency of the factual basis.

## B. Resulting Structural Defect

These deficiencies are not isolated. As reflected in prior submissions (ECF Nos. 403–407, 513) and the Government's response (ECF No. 417), material components of the evidentiary record—including:

1. financial analysis,
2. investigative summaries,
3. proffer-related materials, and
4. underlying transactional datasets

have not been fully identified, produced, or reconciled within the record.

Moreover, the plea colloquy contains:

1. no reference to these materials,
2. no explanation of their contents, and
3. no indication that they were presented, tested, or understood at the time of the plea.

7

## C. Record-Based Synthesis

Accordingly, the record demonstrates that the plea was accepted on a materially insufficient evidentiary and financial foundation.

Where:

1. the core financial driver of the guideline range is not supported by disclosed methodology,
2. key investigative materials are not incorporated into the record, and
3. the factual basis consists of conclusory affirmations rather than verifiable facts,

the resulting framework is structurally unreliable for purposes of Rule 11 and appellate review.

This cumulative deficiency directly bears on the reliability of the plea and supports the conclusion that any sentencing determination—particularly one driven by tax-loss assumptions—cannot be reliably evaluated to the extent it relies on matters not established in the record.

Because the advisory guideline range in this case is driven primarily by a tax-loss figure that cannot be independently verified and rests on unresolved and undisclosed assumptions reflected in the PSR and underlying record, reliance on that figure risks overstating both the certainty of the record and the actual seriousness of the offense conduct.

CONCLUSION

This submission is provided to assist the Court in evaluating the appropriate sentence under § 3553(a), including the weight to be given to guideline calculations derived from an incomplete or non-verifiable record.

I respectfully request that the Court consider these record-based limitations in assessing any findings or determinations that depend on the factual or financial scope of the offense.

Respectfully submitted,
Jobadiah Sinclair Weeks
Defendant, Pro Se
[Address on file with Pretrial Services]
Dated: March 31, 2026

Signed by:

*Joby Weeks*

87866A420DB4490...

8