**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

United States of America,
v.
Jobadiah Sinclair Weeks,
Defendant.

Criminal No. 2:19-cr-00877-CCC
Hon. Claire C. Cecchi

DEFENDANT'S SUPPLEMENTAL MOTION REGARDING COERCIVE CONDITIONS
AFFECTING VOLUNTARINESS OF PLEA

I, Jobadiah Sinclair Weeks, appearing pro se, respectfully submits this supplemental motion
to address the impact of coercive conditions on the voluntariness of my plea under Rule
11(b)(2), the Due Process Clause, and, in the alternative, as a factor relevant to sentencing
under 18 U.S.C. § 3553(a).

I. OVERVIEW

This submission presents the question whether the plea entered in this matter was voluntary
within the meaning of Rule 11(b)(2), in light of cumulative conditions that materially affected
my ability to make a free and informed decision.

Those conditions included prolonged detention, instability in confinement, lack of
meaningful access to family, and unresolved evidentiary uncertainty, which together shaped
the context in which the plea was entered.

II. RECORD-BASED CONTEXT OF THE PLEA

The coercive environment in which the plea was entered is reflected in the procedural record:

1. Unresolved discovery and evidentiary uncertainty
   I documented repeated failures by the Government to provide or identify materials
   central to the defense, including charging decisions and evidentiary records. See
   Motion filed March 4, 2025 (ECF No. 404). These deficiencies contributed to the
   conditions described below affecting the voluntariness of the plea.

1

2. Pattern of delay and unresolved issues
   The Government's continued failure to respond to formal requests and motions created ongoing uncertainty and procedural pressure. See Notice of Objection filed April 2, 2025 (ECF No. 413). Although certain delays continued after the plea was entered, they reflect a broader pattern of unresolved issues that existed at the time of the plea and informed my understanding of the case.
3. Prolonged pretrial detention and disparity
   The record reflects extended detention exceeding five years at the time of the referenced filings, and now exceeding six years since December 2019, including disparities relative to similarly situated individuals. See ECF No. 413, Exhibit B (pp. 10–11).
4. Extended timeline of unresolved issues
   The procedural history reflects a prolonged period of uncertainty and pressure extending over multiple months, including filings such as ECF No. 511 (Oct. 30), demonstrating escalation rather than resolution of key issues.

These record-based deficiencies are not presented as standalone discovery claims, but as circumstances directly bearing on voluntariness and sentencing.

III. COERCIVE CONDITIONS

The conditions under which the plea was entered include:

**A. Prolonged and Uncertain Detention**

I remained in custody for an extended period without resolution of core issues, including unresolved discovery requests and the absence of a disclosed evidentiary and financial framework underlying the charges (see ECF Nos. 404, 413), creating sustained pressure to resolve the case irrespective of the strength or verifiability of the evidentiary record.

**B. Instability in Confinement**

Repeated transfers and uncertainty regarding placement—occurring during the COVID-19 period—created instability and materially impaired my ability to maintain consistent communication, consult with counsel, and prepare an informed defense. Access to computers in the facility law library was significantly limited during this period, further restricting my ability to communicate with counsel and review discovery materials. See, e.g., ECF Nos. 404, 413.

**C. Lack of Meaningful Family Contact**

During my detention, meaningful in-person contact with my spouse and daughter was significantly limited. At times, they were unable to locate where I was being held following

transfers, and communication was restricted to limited or indirect contact. I did not have in-person contact with my spouse during my detention and did not see her again in person until after my release following the plea.

At the time of the November 5, 2020 plea proceeding, any contact was limited and did not provide the stabilizing family presence ordinarily available when making a decision of this magnitude. This contributed to isolation and impaired my ability to make fully informed decisions.

### D. Informational and Procedural Asymmetry

### 1. Lack of Access to Evidence

I documented repeated failures by the Government to provide or identify materials central to the defense, including charging decisions and evidentiary records. See Motion filed March 4, 2025 (ECF No. 404).

In addition, the Government took the position in its filings that, as a pro se defendant, I was not entitled to direct access to discovery materials. This further limited my ability to independently review the evidence and assess the Government's case, at the time of the plea.

This lack of disclosure created evidentiary uncertainty at the time of the plea. That uncertainty did not resolve after the plea, confirming that the evidentiary framework was not complete, identifiable, or capable of meaningful evaluation when the plea was entered.

### 2. Inability to Evaluate Sentencing Exposure

The Government's tax-evasion theory—central to the perceived sentencing exposure—was not disclosed in a form capable of meaningful evaluation at the time of the plea.

The plea agreement included a charge under 26 U.S.C. § 7201 and corresponding tax-based exposure, yet no transaction-level schedules, calculation methodology, or supporting financial analysis were provided.

Subsequent materials reflect that the Government's financial analysis and tax-loss framework were developed and formalized after the plea, and were not disclosed in a complete and testable form at the time the plea was entered.[1] As a result, the magnitude and basis of the alleged tax liability were presented as part of the plea calculus without a disclosed evidentiary or analytical foundation, and the consequences of proceeding to trial could not be reliably assessed or meaningfully weighed at that time.

---

[1]See, e.g., IRS Office of Chief Counsel memorandum dated October 8, 2020 (CT-122627-20), prepared following execution of the plea agreement on September 21, 2020, reflecting evaluation of the tax-evasion theory in the context of a "Grand Jury Plea case" and assessing whether the available evidence supported the plea under Rule 11, rather than presenting a fully disclosed and testable analytical framework at the time of the plea.

The pressure affecting the plea decision was further shaped by the manner in which the Government's tax theory was presented. The conduct reflected in the investigative record consisted primarily of non-filing and unreported income, yet the plea framework incorporated a charge under 26 U.S.C. § 7201, carrying substantially greater perceived exposure.

Because felony tax evasion requires proof of an affirmative act beyond non-filing, that characterization materially affected the perceived consequences of proceeding to trial. At the time of the plea, however, no disclosed factual or financial framework identified how those elements were satisfied or supported by verifiable evidence. In the absence of such a disclosed and testable foundation, the risks of trial appeared significantly greater than could be independently evaluated.

Subsequent materials further reflect that the Government's later articulation of the tax theory incorporated the plea itself as part of its analytical framework, rather than reflecting a fully disclosed and testable basis at the time the plea was entered.

### E. Third-Party Pressure Affecting the Defendant

Following the plea, additional compliance-related pressures continued through third-party custodial arrangements, as further described below.

In that context, my spouse—who served as a third-party custodian—was placed in a position where she was expected to monitor and report compliance with release conditions. This included requests to install monitoring mechanisms within the home environment to address alleged communication concerns.

These measures, implemented as part of pretrial supervision, introduced conditions in which personal and family interactions were intertwined with compliance monitoring, contributing to an ongoing environment of pressure affecting both me and my immediate family.

This dynamic further limited my ability to rely on normal family support in evaluating legal decisions.

### F. Financial Constraint Resulting from Government-Controlled Asset Deprivation

At the time of the plea, my financial resources were materially constrained as a result of the Government's seizure of assets at the outset of the investigation, which have not been returned to date. Following that seizure, I was required to rely on funds provided by third parties in order to retain legal counsel. This lack of independent access to my own financial resources limited my ability to retain alternative or specialized counsel and contributed to the constrained circumstances under which decisions regarding the plea were made.

The Government previously confirmed in writing that certain digital assets would be returned, as reflected in my filing at ECF No. 510 (Oct. 28, 2025), yet that return has not been effectuated. The issue of asset return and accounting has been formally raised before the

Court, including through a motion for return of seized assets (ECF No. 446) and a motion to compel accounting (ECF No. 486), and remains unresolved.

As a result, I was not in a position to independently evaluate the evidentiary record or meaningfully assess alternatives to the plea.

These constraints arose not from ordinary financial circumstances, but from Government-controlled conditions affecting access to resources necessary for my defense. They reinforced one another and formed part of the context in which the plea decision was made, materially impairing my ability to make a voluntary and informed choice within the meaning of Rule 11(b)(2).

## IV. CONTINUATION OF COERCIVE CONDITIONS AFTER THE PLEA

### A. Pattern of Continued Custodial Pressure

Following the November 5, 2020 plea, the conditions contributing to pressure did not resolve but instead continued. As part of the third-party custodial arrangement, my spouse was expected to monitor and report compliance with release conditions. This included documenting and providing information to Pretrial Services regarding my conduct.

This dynamic created additional pressure within the custodial relationship and reinforced conditions in which personal and family interactions were intertwined with compliance monitoring. Although these events occurred after the plea, they reflect the broader structure in which decisions were made and confirm that the pressures affecting the plea were not isolated or temporary, but part of a continuing supervisory framework that undermined a stable and independent decision-making environment.

### B. Pattern of Ongoing Evidentiary Uncertainty

This continuation of pressure occurred alongside unresolved evidentiary issues reflected in the docket (see, e.g., ECF Nos. 404, 413), confirming that the coercive conditions and underlying uncertainty affecting the plea remained unresolved after entry of the plea.

### C. Pattern of Escalating Supervisory Measures Based on Unverified Allegations

These measures were implemented in response to concerns raised during supervision, including an allegation of cocaine use that was not accompanied by contemporaneous disclosure of supporting evidence.

As reflected in the Government's August 12, 2025 submission (ECF No. 472), that allegation was relied upon to justify increased monitoring, custodial scrutiny, and potential revocation of release conditions.

This escalation contributed to sustained pressure affecting both the custodial arrangement and my ability to make independent legal decisions.

### D. Pattern of Unsupported, Belief-Based Allegations

This pattern was not limited to a single allegation. In prior filings, Government agents relied on statements attributed to third-party sources asserting that I was "believed" to have attended certain events, including an alleged appearance at a cryptocurrency-related gathering.

No GPS data, travel records, or other objective evidence were produced to substantiate those claims, despite the availability of such data. See, e.g., my Response (ECF No. 473).

The use of unverified, belief-based allegations—without disclosure of underlying evidence—contributed to conditions in which assertions of non-compliance or misconduct could be advanced without meaningful opportunity for contemporaneous challenge.

### E. Structural Effect on Decision-Making

Taken together, these conditions reflect a pattern in which custodial pressure, unresolved evidentiary uncertainty, and reliance on unverified allegations combined to shape the environment surrounding the plea. This pattern demonstrates that decisions were made under sustained pressure rather than under conditions of stable and independent judgment.

V. LEGAL STANDARD

Under Rule 11(b)(2), a plea must be voluntary and not the product of force, threats, or coercion. The voluntariness inquiry requires consideration of the totality of the circumstances.

The Third Circuit has repeatedly emphasized that coercion may arise from the cumulative effect of circumstances surrounding the plea, not solely from explicit threats:

- In *United States v. Jones*, 336 F.3d 245 (3d Cir. 2003), the court held that voluntariness must be evaluated based on the full context in which the plea was entered, including external pressures affecting the defendant's decision-making, including in this case.

6

- In *United States v. Brown*, 250 F.3d 811 (3d Cir. 2001), the court emphasized that a plea is invalid if the defendant's will was overborne, including as alleged here. by the circumstances, even absent direct coercion.
- In *United States v. Stewart*, 977 F.2d 81 (3d Cir. 1992), the court recognized that psychological and situational pressures may undermine the voluntariness of a plea where they materially affect my ability to make a free and rational choice.

Where external pressures—whether physical, psychological, financial, or procedural—materially affect my decision-making capacity, the resulting plea cannot be considered voluntary within the meaning of Rule 11(b)(2) under the Due Process Clause.

The relevant inquiry is whether my will was overborne by the cumulative effect of these conditions.

## VI. APPLICATION

The conditions described above created an environment in which the decision to plead was not made under stable and independent circumstances. Prolonged detention, instability in confinement, lack of meaningful access to family, unresolved evidentiary uncertainty, and financial constraints operated together to shape the context in which the plea was entered.

Because I could not evaluate either the Government's evidence or the magnitude and basis of the alleged sentencing exposure at the time of the plea, my decision was made under conditions that did not permit a fully informed and independent assessment of whether to proceed to trial.

This limitation is further reflected in the structure of the plea colloquy itself, as addressed in Defendant's Supplemental Submission (ECF No. 569), which did not identify underlying evidence or disclose the financial and analytical framework supporting the charged conduct.

This argument does not depend on the existence of explicit threats, promises, or improper conduct, but on whether the totality of the circumstances permitted a meaningful and independent evaluation of the evidence and consequences at the time of the plea.

Under these circumstances, the plea cannot be considered voluntary within the meaning of Rule 11(b)(2).

## VII. RELIEF REQUESTED

I respectfully requests that the Court:

1. Take the foregoing circumstances into account in evaluating the appropriate sentence under 18 U.S.C. § 3553(a), including the conditions under which the plea was entered; and

7

2.  Include this submission as part of the record for purposes of appellate review, including any evaluation of the voluntariness of the plea, so that the appellate record reflects the full context in which the plea was entered.

Respectfully submitted,

/s/ Jobadiah Sinclair Weeks
Jobadiah Sinclair Weeks
Defendant, Pro Se
[Address on file with Pretrial Services]
Email: silenceweeks1@gmail.com

Dated: April 9, 2026

Signed by:

Joby Weeks
87866A420DB4490...

8