**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA

|  |  |
|---|---|
| v. | Hon. Claire C. Cecchi |
| MATTHEW BRENT GOETTSCHE, | CRIMINAL NO. 2:19-cr-877-CCC |
| RUSS MEDLIN, | |
| JOBADIAH SINCLAIR WEEKS, | **Oral Argument Requested** |
| JOSEPH FRANK ABEL, and | |
| SILVIU CATALIN BALACI | |

**DEFENDANT MATTHEW BRENT GOETTSCHE'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS FOR VIOLATION
OF THE SPEEDY TRIAL ACT AND THE SIXTH AMENDMENT**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

PROCEDURAL HISTORY................................................................................................4

LEGAL STANDARD .......................................................................................................8

ARGUMENT ...................................................................................................................10

    I.    The February 5th Letter is Not a "Pretrial Motion" under
        Subparagraph (h)(1)(D) ...............................................................................10

        A.  An Ends-Of-Justice Continuance Request Does Not Result In An Automatic
            Exclusion Of Time................................................................................11

        B.  The Government Cannot Unilaterally Make An "Incursion" Into Timeliness  Without
            A Judicial Finding That An Ends-Of-Justice Continuance Is Warranted ...................12

        C.  A "Motion" To Enter A Scheduling Order Is Not A "Pretrial Motion" Under
            Subparagraph (H)(1)(D) .......................................................................15

        D.  The STA Cannot Be Used To Remedy The Government's Lack Of Trial  Preparation
            After Six Years .....................................................................................16

    II.   Mr. Goettsche's Sixth Amendment Rights Have Been Violated ...............................17

   III.   The Court Should Dismiss the Indictment Under Rule 48(b) ...................................17

   IV.   The Speedy Trial Act Dismissal Should Be with Prejudice ...........................................18

        A.  The Seriousness Of The Charged Offenses.................................................................18

        B.  The Government's Failure To Bring This Case To Trial .........................................19

        C.  Mr. Goettsche Suffers Severe Prejudice From The Government's Neglect................20

        D.  Witnesses Are No Longer Available .........................................................................21

        E.  Six And Half Years Later, The Government Has Not Completed Discovery ............22

        F.  The Government Refuses To Obtain Exculpatory Evidence ....................................22

        G.  Mr. Goettsche Continues To Live Under Restrictive Bail Conditions.......................23

i

H.   The Six And A Half Year Delay Is Presumptively Prejudicial ....................................23

I.   The Government's Pattern Of Neglect Is Firmly Established....................................24

J.   Mr. Goettsche Timely Asserted His Speedy Trial Rights  ..........................................24

K.   Mr. Goettsche Suffers Severe Prejudice From The Loss Of Evidence  ......................24

**CONCLUSION** ...............................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barker v. Wingo*,
  407 U.S. 514 (1972).................................................................................................17, 21, 24

*Bloate v. United States*,
  559 U.S. 196 (2010)..................................................................................................8, 11, 12, 13

*Burkett v. Fulcomer*,
  951 F.2d 1431 (3d Cir. 1991).............................................................................................23

*Doggett v. United States*,
  505 U.S. 647 (1992)..........................................................................................................17, 23

*Missouri v. Frye*,
  566 U.S. 134 (2012)...........................................................................................................2, 6

*Strunk v. United States*,
  412 U.S. 434 (1973)............................................................................................................25

*United States v. Adams*,
  36 F.4th 137 (3d Cir. 2022) ...............................................................................................9, 13

*United States v. Arbelaez*,
  7 F.3d 344 (3d Cir. 1993).....................................................................................................10

*United States v. Battis*,
  589 F.3d 673 (3d Cir. 2009)............................................................................................21, 23, 25

*United States v. Black*,
  918 F.3d 243 (2d Cir. 2019)............................................................................................19, 23

*United States v. Lattany*,
  982 F.2d 866 (3d Cir. 1993).................................................................................................9

*United States v. Martinez*,
  75 F. Supp. 2d 360 (D.N.J. 1999) .......................................................................................24

*United States v. Ravelo-Santos*,
  No. 24-0490 (ES), 2025 WL 1260855 (D.N.J. Apr. 30, 2025)...........................................17, 18

*United States v. Reese*,
  917 F.3d 177 (3d Cir. 2019)...........................................................................................8, 9, 11, 13

iii

*United States v. Risha,*
  445 F.3d 298 (3d Cir. 2006)........................................................................................22

*United States v. Stevenson*,
  832 F.3d 412 (3d Cir. 2016).............................................................................18, 19, 20

*United States v. Taylor,*
  487 U.S. 326 (1988)..........................................................................................18, 19, 20

*United States v. Velazquez,*
  749 F.3d 161 (3d Cir. 2014)..............................................................................17, 21, 23

*United States v. Watkins,*
  339 F.3d 167 (3d Cir. 2003)...........................................................................................1

*Vermont v. Brillon,*
  556 U.S. 81 (2009)........................................................................................................24

*Zedner v. United States,*
  547 U.S. 489 (2006)..............................................................................................8, 9, 11

**Statutes**

18 U.S.C. § 371 ........................................................................................................................4

18 U.S.C. § 1349 ......................................................................................................................4

18 U.S.C. § 3161 ..................................................................................................................1, 3

18 U.S.C. § 3161(c)..................................................................................................................8

18 U.S.C. § 3161(c)(1) .....................................................................................................1, 4, 8

18 U.S.C. § 3161(h)............................................................................................................8, 11

18 U.S.C. § 3161(h)(1) .........................................................................................................8, 9

18 U.S.C. § 3161(h)(1)(D)....................................................................................................2, 8

18 U.S.C. § 3161(h)(7) .............................................................................................................4

18 U.S.C. § 3161(h)(7)(A)...............................................................................................passim

18 U.S.C. § 3161(h)(7)(B)(ii) ...................................................................................................5

18 U.S.C. § 3161(h)(7)(C)......................................................................................................16

18 U.S.C. § 3162 ......................................................................................................................9

18 U.S.C. § 3162(a)(2) ...................................................................................................passim

U.S. Const. amend VI...................................................................................................1, 3

**Rules**

Fed. R. Crim. P. 12(b)(3)(A)(iii) ...................................................................................3

Fed. R. Crim. P. 12(b)(3)(iii)........................................................................................9

Fed. R. Crim. P. 16(c)..................................................................................................22

Federal Rule of Criminal Procedure 48(a) ..................................................................14

Federal Rule of Criminal Procedure 48(b) .........................................................10, 17, 26

**INTRODUCTION**

The Sixth Amendment guarantees every criminal defendant the right to a speedy and public trial. U.S. Const. amend VI.  That constitutional requirement is given life by virtue of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*  Pursuant to that well-established law, "the trial of a defendant charged in an information or indictment with the commission of an offense **shall commence within seventy days** from the filing date (and making public) of the information or indictment." 18 U.S.C. § 3161(c)(1) (emphasis added).  The remedy for a violation is mandatory: the indictment must be dismissed.  *See* 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit . . . the information or indictment shall be dismissed on motion of the defendant."); *see also United States v. Watkins*, 339 F.3d 167, 173 (3d Cir. 2003) ("[T]he Government's violation of Defendants' Speedy Trial Act rights mandates that this charge be dismissed.").

Matthew Goettsche was arrested in this case on December 10, 2019.  After more than *six years* of failed attempts to reach a pretrial resolution with the government, and dozens of occasions in which Mr. Goettsche consented to the government's request to exclude time from the speedy trial clock, by February 5, 2026, enough was enough.  That was the day the government asked the Court to set the case for trial in November 2026—*nine months* later.  Not only was this motion made over Mr. Goettsche's objection, but in making its request "in the interests of justice," the government also made a number of flatly incorrect or misleading claims regarding the complexity of the case and the status of discovery.  As a result, Mr. Goettsche responded on February 9, 2026, noting that "[w]hatever arguments the government once had, they have evaporated with the passage of time.  From the vantage of 2026—more than six years after this case was first charged—it is clear the time has come for Mr. Goettsche to have his day in court."[1]

---

[1]     *See* Dkt. 559, which is incorporated by reference in its entirety.

By the time the government filed its February 5, 2026, motion to exclude time, 55 days of the mandatory 70-day speedy trial clock already had run.  The government made its contested ends-of-justice motion pursuant to 18 U.S.C. § 3161(h)(7)(A).  That provision of the speedy trial act describes a discretionary request that requires the Court to make certain on-the-record findings prior to excluding time, as distinct from other provisions which result in the automatic exclusion of time, such as 18 U.S.C. § 3161(h)(1)(D).  Thus, because the Court did not make those findings until April 16, 2026, with 55 of the 70 days already lost, the 70-day speedy trial clock expired on February 20, 2026, and the required remedy of dismissal had been triggered.

By March 13, 2026, the government—presumably aware of this existential threat to its case—took a creative tack: the government asked the Court to conduct a hearing pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012), and to allocute Mr. Goettsche on his prior plea offer.  *See* Dkt. 563.  In ordinary circumstances, there would be nothing unusual about such a request.  But here, Mr. Goettsche already had been subject to a *Frye* hearing almost *six years* earlier, in September 2020.  *See* Dkt. 132.  In a footnote, the government made its goal in filing this unnecessary motion patently clear: it was seeking to retroactively recast its February 5th letter as a "pretrial motion" under 18 U.S.C. § 3161(h)(1)(D) (that is, a motion that would have *automatically* stopped the speedy trial clock), so it could argue that time had been excluded as of the day it filed the continuance motion, on February 5, 2026.

That is a non-starter:  As shown below, a request for a continuance and entry of a scheduling order—a motion made expressly under 18 U.S.C. § 3161(h)(7)(A), a distinctly enumerated ground for an exclusion of time from the speedy trial clock—is not a "pretrial motion" within the meaning of 18 U.S.C. § 3161(h)(1)(D).  Any argument to the contrary would require the Court to ignore the plain language of the statute and invites legal error.  The Court should see

2

through the government's blatant attempt to avoid the consequence of its delay in this long-pending case and refuse to cede its inherent authority to the government.

Simply put, there was no "pretrial motion" under advisement at the time the second *Frye* hearing was held, on April 16, 2026. During the hearing, over Mr. Goettsche's objection, the Court agreed with the government that the case was complex, and it granted the motion for a continuance, making clear that it was "going to sign" the written order of continuance. *See* Dkt. 579 at 36:7-37:4. The government likewise recognized that the Court had "disposed of" that motion. *Id.* at 38:25. The Court then set the case for trial on October 6, 2026. *Id.* at 44:11. But by that time, the speedy trial clock had long since expired. Indeed, by February 20, 2026, the guarantees of the Sixth Amendment and the 70-day window set forth in the Speedy Trial Act had been violated. *See* U.S. Const. amend. VI; 18 U.S.C. §§ 3161-62 (the Speedy Trial Act, or "STA"); Fed. R. Crim. P. 12(b)(3)(A)(iii).

Accordingly, Mr. Goettsche moves to dismiss Indictment 19-CR-877—a motion that must be granted, as a matter of law. *See* 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit . . . the information or indictment shall be dismissed on motion of the defendant."). Below, Mr. Goettsche addresses three independent bases for dismissal—the sheer number of which underscore the pervasive nature of the constitutional violation. Accordingly, this Court should dismiss the case promptly and with prejudice.[2]

---

[2]    Nor is it the first time the government has violated the STA in cases relating to this investigation; in *United States v. Scanlon*, defendant Christopher Scanlon also sought to dismiss his indictment for violations of the STA before this very Court. *See* Mot. to Dismiss, Dkt. 61, 24-CR-682 (D.N.J.) (CCC). The Court did not reach that issue, however, as the U.S. Attorney's Office elected instead to dismiss the case before the Court could rule. *See id.* at Dkt. 73.

## **PROCEDURAL HISTORY**

On December 5, 2019, a federal grand jury returned Indictment 19-CR-877 against Mr. Goettsche and various co-defendants for (1) conspiracy to commit wire fraud, 18 U.S.C. § 1349, and (2) conspiracy to offer and sell unregistered securities, 18 U.S.C. § 371. On January 15, 2020, Mr. Goettsche pleaded not guilty, *see* Dkt. 25, and spent nearly a year in pretrial detention during the worst of the COVID-19 pandemic before the Court released him on December 11, 2020, under restrictive bail conditions. *See* Dkt. 171

Under 18 U.S.C. § 3161(c)(1), the government must bring a defendant to trial within 70 days of the later of (a) the filing and public disclosure of the indictment, or (b) the defendant's first appearance before a judicial officer. For over six years, between January 15, 2020, and February 5, 2026, the parties jointly entered into 38 ends-of-justice continuances, pursuant to motions filed under 18 U.S.C. § 3161(h)(7)(A). The parties then entered a prolonged period of plea negotiations, and although Mr. Goettsche at times objected to certain ends-of-justice continuance requests,[3] by and large, these requests were made on consent. Mr. Goettsche does not contest that for the period from January 15, 2020, to January 30, 2025, time was excluded and does not count against the 70-day Speedy Trial Act requirement. However, as the chart below makes clear, from January 31, 2025, to February 4, 2026, there are four distinct time periods in which speedy trial time was *not* excluded pursuant to 18 U.S.C. § 3161(h)(7), totaling 55 days. Thus, the 70-day speedy trial clock expired 15 days later, on February 20, 2026.

---

[3]    Mr. Goettsche filed two separate objections to two ends-of-justice continuances. On February 21, 2020, he initially objected to a proposed ends-of-justice continuance to October 31, 2020. (Dkt. 53). On March 13, 2020, he later consented to a continuance to May 11, 2020. (Dkt. 59). On May 5, 2020, Mr. Goettsche objected to DNJ Standing Order 2020-09. (Dkt. 89).

The chart below sets forth both the excluded and non-excluded time periods from the speedy trial clock for the dates November 29, 2024 to February 4, 2026, as well as the additional 15 days from February 5, 2026 to February 20, 2026, when the speedy trial clock expired.

| Excludable Dates | Non-Excluded Dates | Dkt. Entry | STA Days Lost |
|---|---|---|---|
| Nov. 29, 2024 - Jan. 30, 2025 | | 376 | 0 |
| | Jan. 31, 2025 - Feb. 4, 2025 | | 5 |
| Feb. 5, 2025 - Mar. 31, 2025 | | 410 | 0 |
| | Apr. 1, 2025 - Apr. 16, 2025 | | 16 |
| Apr. 17, 2025 - Jun. 30, 2025 | | 423 | 0 |
| Jun. 27, 2025 - Aug. 29, 2025 | | 455 | 0 |
| Aug. 29, 2025 - Oct. 30, 2025 | | 478 | 0 |
| | Oct. 31, 2025 - Nov. 24, 2025 | | 25 |
| Nov. 25, 2025 - Dec. 26, 2025 | | 523/525 | 0 |
| | Dec. 27, 2025 - Jan. 4, 2026 | | 9 |
| Jan. 5, 2026 - Feb. 4, 2026 | | 544/545 | 0 |
| | | | **Total Days Lost Prior to Feb. 5, 2026: 55** |
| | Feb. 5, 2026 – Feb. 20, 2026 | | 15 |
| | | | **Total Days Lost: 70** |

On February 5, 2026, the government filed a letter "respectfully request[ing] that the Court enter (1) the enclosed proposed scheduling order … and (2) the enclosed proposed continuance excluding [ ] Speedy Trial Act time through November 18, 2026 (two weeks after jury trial begins) in the interests of justice." (Dkt. 556) (the "February 5th Letter"). The government's rationale for an ends-of-justice continuance—that is, seeking to exclude time from the speedy trial clock specifically under 18 U.S.C. § 3161(h)(7)(A) and § 3161(h)(7)(B)(ii)—included case complexity, forthcoming discovery, and the anticipation of pretrial motions. *Id.* at 2-3. The government also

noted that "[a] trial of this nature will require significant preparation by both parties." *Id.* at 3. On February 9, 2026, Mr. Goettsche filed his opposition to the February 5th Letter, objecting to the government's continuance request and asking for a hearing for the limited purpose of allowing the parties to "present for the Court's consideration a reasonable pretrial schedule that would allow the case to be tried in June of 2026." (Dkt. 559).

On March 13, 2026, the government moved for a status conference to conduct a hearing pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012) to assess whether defense counsel properly advised Mr. Goettsche regarding his rejection of a plea agreement dated December 12, 2025. (Dkt. 563) (the "March 13th Motion").[4] On September 15, 2020, almost six years earlier, the Court had conducted a *Frye* hearing at the government's request and found no ineffective assistance of counsel. (Dkt. 132). On April 16, 2026, the Court conducted this second *Frye* hearing and found that Mr. Goettsche knowingly rejected the government's plea agreement. (Dkt. 575).

Also on April 16, 2026, over Mr. Goettsche's objection, the Court granted the government's request for a continuance contained in its February 5th Letter under 18 U.S.C. § 3161(h)(7)(A). As the below excerpts make clear, the Court decisively ruled, granting the government's request over Mr. Goettsche's objection:

> THE COURT: Any other issues with respect to discovery and so on? I know there's the issue of the continuance as well from the government. The government is seeking the Court to provide for a continuance in this matter, correct? Defendant has decided they are no longer executing continuances; is that where we're at?
>
> MR. VILLAZOR: Yes, Your Honor.

---

[4]    As noted above, the government also stated that the *Frye* request "constitutes a motion distinct from the Government's pending motion for entry of a scheduling order and Speedy Trial Act …" (Dkt. 563 n.1).

*See* Apr. 16, 2026 Tr., Dkt. 579 at 33:12-19. The Court returned to the issue later in the proceedings, stating:

| | |
|---|---|
| THE COURT: | So with respect to this order for the continuance, it's the government seeking it based on the premise that it is an unusual or complex case, correct? |
| AUSA: | That's correct, Your Honor. Yes. |
| THE COURT: | I certainly understand that. Anything on that from the defense? |
| MR. VILLAZOR: | Your Honor, we'll submit on the papers. |
| THE COURT: | All right. Very well. To me it is certainly a complex issue. There are many, many issues here and subissues. *I am going to sign this order for a continuance.* I think it's entirely appropriate in this circumstance. And I recognize up to this point there have been continuances that have been executed by the defense, so we are just dealing with this period right before trial. But just addressing the matters that I heard about today leads me to conclude that this is not a traditional case. We are dealing with various devices. We are dealing with issues on the filter process, and we are dealing obviously with the underlying issues in this case, and it is a voluminous matter. *So I am going to sign this continuance, and that shall preserve the record at this point.* |
| | With respect to the order on discovery, I am holding on that, the scheduling order. You're going to work that out. I will give you a date to get that back to me. When would you like to get back to me on that? |

*Id.* at 36:7-37:8 (emphasis added).[5] Following the April 16, 2026 *Frye* hearing, the Court held telephonic status conferences on April 21, 2026, April 28, 2026, May 5, 2026 and May 12, 2026. (Dkt. 580, 581, 585). On May 13, 2026, the Court signed the proposed scheduling order and excluded time from May 13, 2026 to October 20, 2026 pursuant to 18 U.S.C. § 3161(h)(7)(A). (Dkt. 586, 587).

---

[5]    In a subsequent telephonic hearing on May 12, 2026, the Court disagreed with Mr. Goettsche's position that the Court had made the required ends-of-justice findings at the *Frye* hearing on April 16, 2026. Mr. Goettsche reiterated his objection to the Court's exclusion of time. Dkt. 585.

**LEGAL STANDARD**

The Speedy Trial Act ("STA") mandates that a trial must begin within 70 days of when a charging instrument is made public or the defendant has had an initial appearance, whichever is later. *See* 18 U.S.C. § 3161(c)(1). A dismissal is required if 70 days lapse under the speedy trial clock. *See* 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.").

The STA provides for exclusions of time from the 70-day time limit to provide district courts the "necessary flexibility" for criminal cases. 18 U.S.C. § 3161(h); *Zedner v. United States,* 547 U.S. 489, 497 (2006) (noting the "long and detailed list of [excludable] periods of delay" under 18 U.S.C. § 3161(h)). In relevant part, 18 U.S.C. § 3161(h)(1) (hereinafter "subsection (h)(1)") sets forth eight grounds for the automatic exclusion of time from the STA. *See Bloate v. United States*, 559 U.S. 196, 203-15 (2010); *United States v. Reese*, 917 F.3d 177, 181 (3d Cir. 2019). "For delays resulting from proceedings under subsection (h)(1),"—that is, for certain specific and "Congress already has determined that the benefit of such delay outweighs its cost to a speedy trial, regardless of the specifics of the case. The word 'automatic' serves as a useful shorthand." *Bloate*, 559 U.S. at 199 n.1. Thus, as relevant here, time is *automatically* excluded for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" as set forth in 18 U.S.C. § 3161(h)(1)(D) (hereinafter "subparagraph (h)(1)(D)").

Critically, a so-called ends-of-justice continuance, as set forth in 18 U.S.C. § **3161(h)(7)(A),** (hereinafter "subparagraph (h)(7)(A)"), is *not* automatic, but instead a discretionary exclusion of time. Such an exclusion requires the judge to articulate specific findings on the record in support of the court's exercise of discretion. *See Bloate*, 559 U.S. at 199 (noting

8

exclusion of time "may be excluded if the district court makes the findings"); *Reese*, 917 F.3d at 181.

> *No such period of delay* resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A) (emphasis added).  A continuance under subparagraph (h)(7)(A) may be "granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government . . ." *Id.*  And while a district court has considerable leeway in granting an ends-of-justice continuance, it cannot "exclude the time in hindsight." *Reese*, 917 F.3d at 182 (noting such continuances cannot be granted *nunc pro tunc*) (citation omitted); *United States v. Lattany*, 982 F.2d 866, 877 (3d Cir. 1993) ("a district court cannot provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance *nunc pro tunc*"); *see also United States v. Adams*, 36 F.4th 137, 146 (3d Cir. 2022) (requiring a showing that interests of public and defendants were balanced).

The STA "assigns the role of spotting violations of the Act to defendants – for the obvious reason that they have the greatest incentive to perform this task." *Zedner*, 547 U.S. at 502-03 (noting 18 U.S.C. § 3162 requires a defendant to move for dismissal prior to trial); *see* Fed. R. Crim. P. 12(b)(3)(iii).  As it is the defendant's motion, the defendant bears the burden of proof in establishing the basis for dismissal.  18 U.S.C. § 3162(a)(2).  While a dismissal with prejudice provides the strongest incentive to defendants, a defendant still derives some benefit even with a dismissal without prejudice.  *Zedner*, 547 U.S. at 503 n.5.

## **ARGUMENT**

The 70-day speedy trial clock has long expired, and the Indictment should be dismissed with prejudice. Despite its recent creative efforts, the government's February 5th Letter is not a "pretrial motion" under subparagraph (h)(1)(D) that could automatically toll the speedy trial clock. Both as a matter of logic and of law, the February 5th Letter (which was expressly made under subparagraph (h)(7)(A)) required the Court to substantively engage with the request and to make discretionary findings in support of its eventual ruling. The Court unquestionably had not done so by the time the speedy trial clock expired on February 20, 2026.[6] Independent of the STA violation, the government also violated Mr. Goettsche's Sixth Amendment right to a speedy trial. Lastly, the Court should employ its inherent discretion under Federal Rule of Criminal Procedure 48(b) to dismiss the charges for "want of prosecution."

## I. The February 5th Letter is Not a "Pretrial Motion" under Subparagraph (h)(1)(D)

As set forth above, as of February 4, 2026, 55 days had lapsed on the speedy trial clock, leaving just 15 days for the case to proceed to trial. Thus, the speedy trial clock resumed on February 5, 2026, and expired on February 20, 2026. The government's February 5th Letter did not toll the speedy trial clock because it is not a "pretrial motion" under subparagraph (h)(1)(D)

---

[6]    Co-defendant Joby Weeks, appearing *pro se*, filed various motions during the relevant time period. *See, e.g.,* Dkt. 513 (Nov. 5, 2025) (*pro se* motion for discovery), Dkt. 517 (Nov. 10, 2025) (*pro se* motion to modify conditions of release); Dkt. 520 (Nov. 19, 2025) (*pro se* motion to return property). However, each of these *pro se* motions were filed well after Weeks pleaded guilty on November 5, 2020, and after the Court denied his *pro se* motion to withdraw his guilty plea on October 8, 2025. (Dkt. 497). With no possibility of a trial for Weeks, none of his *pro se* motions are considered "pretrial motions" under subparagraph (h)(1)(D). *Compare United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (noting even an extension of time by one co-defendant joined for trial can be a pretrial motion as to the other defendant).

resulting in *an automatic* exclusion of time.[7]  Rather, the February 5th Letter relied on the "ends of justice," and expressly requested a discretionary exclusion under subparagraph (h)(7)(A). That required judicial fact finding on the record – which did not occur until April 16, 2026.

> A.    An Ends-of-Justice Continuance Request Does Not Result in an Automatic Exclusion of Time

A straightforward statutory reading of subparagraph (h)(1)(D) and subparagraph (h)(7)(A) forecloses the ability of the government to bootstrap the automatic exclusion of time from a "pretrial motion" onto an ends-of-justice continuance request that seeks a discretionary exclusion of time.  As usual, the central tenet of statutory interpretation begins with the text.  *Bloate*, 559 U.S. at 206 ("Congress knew how to define the boundaries of [the] enumerated exclusion[s]" of the Speedy Trial Act).  Plain statutory language must be enforced, and the statute must be construed to promote compliance with the statutory scheme.  *Zedner*, 547 U.S. at 499.  The structure and grammar of the Speedy Trial Act is subject to the same statutory analysis and cannot render any subparagraphs indeterminate or superfluous.  *Bloate*, 559 U.S. at 209.

Under 18 U.S.C. § 3161(h), there are clear lines between automatic and discretionary exclusions of time as set forth by Congress.  "Some of the provisions exclude time automatically, while others [including 18 U.S.C. § 3161(h)(7)(A)] must be invoked by a district court to effect an exclusion of time." *Reese*, 917 F.3d at 181.  A "pretrial motion" under subparagraph (h)(1)(D) automatically excludes time.  *Id.*  On the other hand, "an exclusion of time for 'the ends of justice' is not automatic." *Id.*  If the Court would find the government's February 5th Letter to be a "pretrial motion" it would effectively render the STA moot.  The government would be empowered to file continuance requests under subparagraph (h)(1)(D) *ad infinitum* to toll the speedy trial clock.

---

[7]    For these same reasons, the ends-of-justice continuance motion, filed on December 30, 2025 (Dkt. 544), is not a "pretrial motion" that automatically tolled the speedy trial clock between December 30, 2025, and January 5, 2026.

Clearly, that would run afoul of the STA and a defendant's Sixth Amendment right to a speedy trial. *See Bloate,* 559 U.S. at 210, 213.

> B.      The Government Cannot Unilaterally Make an "Incursion" into Timeliness Without a Judicial Finding that an Ends-of-Justice Continuance is Warranted

Any plausible interpretation of the Speedy Trial Act proscribes an overly expansive application of subparagraph (h)(1)(D) to the government's February 5th Letter. Courts have carefully interpreted these subparagraphs to enforce the overall scheme to promote compliance of speedy trial timeliness, but, at the same time, recognize that courts must have flexibility under subparagraph (h)(7)(A) provided the court makes the required justifications.

*Bloate* best illustrates the critical distinction between subparagraphs (h)(1)(D) and (h)(7)(A). In *Bloate*, the Supreme Court rejected the government's argument that a "motion for time to prepare pretrial motions" was a "pretrial motion" under subparagraph (h)(1)(D) that automatically tolled the speedy trial clock. *Bloate,* 559 U.S. at 224. "Even if he files such a motion [for time to file a pretrial motion], that filing may not be used to bootstrap into the period of automatically excludable delay pre-filing preparation time that subparagraph (D) does not render automatically excludable." *Id.* at 207 n.11. The district court instead should have excluded time under subparagraph (h)(7)(A) and made the required findings justifying the delay. *Id.* at 211 ("Our determination that the delay at issue here is not automatically excludable gives full effect to subsection (h)(7), and respects its provisions for excluding certain types of delay only where a district court makes findings justifying the exclusion"). The Supreme Court in *Bloate* also rejected an expansive reading of subsection (h)(1) reasoning that "a court could extend by weeks or months, without any finding that the incursion on the Act's timeliness guarantee is justified, the entire portion of a criminal proceeding for which the Act sets a default limit of 70 days." *Id.* at 225. The argument that a motion to allow time to prepare pretrial motions qualifies as a "pretrial motion"

under subparagraph (h)(1)(D) would impermissibly "redesign" the STA statutory framework. *Id.* at 213.

The Third Circuit, in *United States v. Adams,* 36 F. 4th 137 (3d Cir. 2022), also notes the fundamental differences between pretrial motions under subparagraph (h)(1)(D) with automatic tolling, and an ends-of-justice motion with discretionary tolling after the requisite findings on the record. "*First*, a district court *may grant* a continuance and toll the speedy trial clock" in accordance with the requirements under (h)(7). *Id.* at 144 (emphasis added). "*Second*, if a party files a 'pretrial motion,' the speedy trial clock *is tolled*" as set forth in subparagraph (h)(1)(D). *Id.* at 144-45 (emphasis added).

Here, if the Court were to recognize the government's February 5th Letter as a "pretrial motion," that would mean the government could *automatically* toll the clock on its own accord by simply filing the continuance request. This would be inconsistent with the Supreme Court's *Bloate* decision and Third Circuit authority. *Bloate* warns that such limitless extensions by the government done without a judicial finding runs afoul of the STA. *Bloate,* 559 U.S. at 210. In fact, the government knew its February 5th Letter was not a pretrial motion because they sought *discretionary* tolling under subparagraph (h)(7)(A) which can only be granted – if and only if – this Court makes the requisite factual finding. Again, empowering the government to file continuance motions that would automatically toll the speedy trial clock would impermissibly circumvent the Speedy Trial Act to the detriment of criminal defendants. *See Reese*, 917 F.3d at 181. The Court should follow *Bloate* and reject any argument that the clock was automatically and unilaterally tolled between the filing of the February 5th Letter and the March 13th Motion.

In *United States v. Christopher Scanlon,* 24-CR-682 (CCC), a related case to this,[8] the impropriety of the government bootstrapping the automatic exclusion of subparagraph (h)(1)(D) to its ends-of-justice continuance motion is laid bare. In *Scanlon,* the government argued that their ends-of-justice continuance request tolled the clock despite almost six months passing without the requisite judicial findings of fact. As the Court is aware, after three years of failed plea negotiations, Mr. Scanlon was indicted on October 11, 2024. On October 25, 2024, two days after Mr. Scanlon refused to sign another continuance, the government filed an ends-of-justice continuance request.[9] On March 24, 2025, the government, in opposing the defendant's Speedy Trial Act motion to dismiss, argued that their October 25, 2024 ends-of-justice request – *pending for over 149 days at the time* – automatically tolled the clock. *Scanlon*, No. 24-CR-682 at Dkt. 70 at 6. Although their ends-of-justice continuance request was never ruled upon, the premise of the government's argument was that its continuance motion automatically tolled the speedy trial clock up to and until the dismissal order on April 30, 2025. *Id.* at Dkt. 73. That would mean that the clock was automatically tolled *for over 180 days* with no judicial finding that such a continuance was justified. On April 30, 2025, the Court granted the government's motion to dismiss the criminal indictment against Mr. Scanlon pursuant to Federal Rule of Criminal Procedure 48(a). There appears to be no publicly stated rationale or justification of the Rule 48(a) motion to dismiss by the government.

---

[8]    "The prosecution of Scanlon grew out of a related case pending before your Honor, *U.S. v. Goettsche, et al*, D.N.J. Crim. No. 18-977 [sic.], in which Your Honor has entered several complex case orders." *Scanlon*, No. 24-cr-00682 (Dkt. 70 at n.2).

[9]    In his objection to the proposed continuance, Scanlon made strikingly similar arguments to the ones Mr. Goettsche makes here: that criminal charges remained unchanged, the government ignored its discovery obligations, and the government was unprepared for trial. *Scanlon*, No. 24-CR-682 at Dkt. 50 at 7 ("it is clear they sought, strategically, additional excessive delays in advancing the matter").

14

C.    A "Motion" to Enter a Scheduling Order is Not a "Pretrial Motion" Under Subparagraph (h)(1)(D)

In its March 13th Motion, the government conveniently attempts to recast its February 5th Letter as not only one seeking an ends-of-justice continuance, but also as a "motion" to enter a scheduling order. (Dkt. 563 at n1) ("To be clear, however, this submission constitutes a motion distinct from the Government's pending motion for entry of a scheduling order and a Speedy Trial Act continuance"). The Court should reject the government's revisionist effort to turn the February 5th Letter into a separate "pretrial motion" in a transparent effort to have a backup "pretrial motion" to automatically toll the speedy trial clock.

There is no statutory basis or criminal rule for such a "motion" to enter a scheduling order. Rather, DNJ Standing Order 15-2 *expressly requires* the parties to confer and for a district court to enter a scheduling order. No "motion" to enter a scheduling order was necessary. The government cannot escape its own representations to the Court either. In its February 5th Letter, the entirety of the "Discussion" centers on the government's argument that an ends-of-justice continuance is justified. The attached proposed scheduling order was purely a vehicle to justify the extraordinary length of the STA continuance proposed to the Court. It was not until the expiration of the 30 days under subparagraph (h)(1)(H) – *i.e.*, the date when its alleged "pretrial motion" would cease to toll the clock – when the government filed the March 13th Motion as another "pretrial motion" and used that as an attempt to recharacterize the February 5th Letter as a separate "pretrial motion." In fact, the very scheduling order the government attempts to cast as a "pretrial motion" itself contains a date for the filing of pretrial motions. The government's proposed scheduling order is akin to the motion at issue in *Bloate* and should be subject to discretionary tolling analysis. *See* subparagraph (h)(7)(B) (recognizing factors such as

reasonableness for adequate preparation for pretrial proceedings or for trial or for effective preparation).

> D.    The STA Cannot Be Used to Remedy the Government's Lack of Trial Preparation After Six Years

The February 5th Letter was conveniently tailored to remedy the lack of the government's diligence in trial preparedness. Through no fault of Mr. Goettsche, numerous prosecutors cycled through this criminal matter for the past six years. The government's current trial team joined the matter only months prior to the February 5th Letter. (*See* Dkts. 487, 492, 555, 576). As conceded in its March 13th Motion, the government had known since at least December 2025 that a trial was all but inevitable upon Mr. Goettsche's immediate rejection of the plea agreement. (Dkt. 579 at 40:25; 43:9-11 (April 16, 2026)). The government could also plainly infer the need for trial after the ends-of-justice continuance expired on October 30, 2025, resulting in a 25-day loss to the speedy trial clock. The government was nevertheless still caught unprepared for trial. In its representations to this Court on April 21, 2025, the government, through a now-departed AUSA, admitted that "[w]itnesses' memories have certainly faded and certain witnesses are no longer available" and that "preparing for a trial in this matter—which involved thousands of victims located around the world, among other complexities —would be particularly arduous." (Dkt. 417 at 11). Again, all of these facts are beyond Mr. Goettsche's control. The government bears the burden of prosecuting a defendant. In its February 5th Letter, the government conceded its continued lack of diligence: "[t]he November 2026 trial date proposed by the Court sets a realistic trial date while allowing for adequate case preparation *by both parties*." (Dkt. 556 at 3) (emphasis added). The Speedy Trial Act, however, explicitly proscribes the "lack of diligent preparation … on the part of the attorney for the Government" as permissible grounds for a continuance under subparagraph (h)(7)(A). 18 U.S.C. § 3161(h)(7)(C); *see also Scanlon*, 24-CR-682 at Dkt. 50 at 4-

16

5 ("The Government is stalling in preparing and prosecuting Mr. Scanlon in this case and is seeking the Court's approval for this delay by using the *Goettsche* case as a pretext.")

## II.    Mr. Goettsche's Sixth Amendment Rights Have Been Violated

Mr. Goettsche respectfully submits that the Indictment should also be dismissed pursuant to the Sixth Amendment of the Constitution. Whether the right to a speedy trial has been violated is assessed under the four-factor balancing test set out in *Barker v. Wingo*, 407 U.S. 514 at 530 (1972): (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 650 (1992). First, Mr. Goettsche was arrested on December 10, 2019, and his trial is scheduled for October 6, 2026. The nearly seven years between arrest and trial is presumptively unreasonable. *See, e.g., United States v. Velazquez*, 749 F.3d 161, 186 (3d Cir. 2014) (finding a delay of 6 and a half years "extraordinary by any measure"). Second, while Mr. Goettsche consented to many ends-of-justice continuances, the government – not Mr. Goettsche – bears the principal responsibility to bring a criminal defendant to a speedy and public trial. Third, following his rejection of the proposed December 12, 2025 plea agreement, Mr. Goettsche asserted his speedy trial rights, reiterated his demand in his February 9th letter, and again asserts his right through this Motion to Dismiss. We discuss the prejudice to Mr. Goettsche below in Section IV.

## III.    The Court Should Dismiss the Indictment Under Rule 48(b)

Finally, for the same reasons, the Court may alternatively dismiss the charges against Mr. Goettsche under Federal Rule of Criminal Procedure 48(b) for "want of prosecution." *See United States v. Ravelo-Santos*, No. 24-0490 (ES), 2025 WL 1260855, at *13 (D.N.J. Apr. 30, 2025) (Salas, J.) (citations omitted) (Rule 48(b) is a recognition of the Court's inherent power for "want of prosecution."); *see also* Rule 48(b) Advisory Note ("This rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution"). Importantly, Rule 48(b) operates

17

independently of the STA, and "may apply in situations where the STA has not been violated." *Ravelo-Santos,* 2025 WL 1260855, at \*5. The Court can and should exercise its inherent discretion to dismiss with prejudice this criminal action that will be pending for almost seven years by the October 6, 2026 trial date.

## IV.    The Speedy Trial Act Dismissal Should Be with Prejudice

The Speedy Trial Act mandates a dismissal when a defendant shows a violation of the speedy trial clock. 18 U.S.C. § 3162(a)(2) (noting "information or indictment shall be dismissed"); *United States v. Taylor,* 487 U.S. 326, 332 (1988) ("the statute admits no ambiguity in its requirement that when such a violation has been demonstrated" the indictment is dismissed); *United States v. Stevenson*, 832 F.3d 412, 419-20 (3d Cir. 2016). The district court must weigh statutorily enumerated factors in assessing whether the dismissal shall be with or without prejudice: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a re-prosecution on the administration of this chapter and on the administration of justice. 18 U.S.C. § 3162(a)(2). A fourth factor to weigh, as set forth by the U.S. Supreme Court, is prejudice to the defendant. *Taylor*, 487 U.S. at 334 ("there is little doubt that Congress intended [prejudice to the defendant] to be relevant"); *Stevenson*, 832 F.3d at 421-22. Although the government confidently assumes that a dismissal without prejudice is all but a certainty,[10] the enumerated factors strongly weigh in favor of a dismissal with prejudice.

### A.    The Seriousness of the Charged Offenses

The first factor, the seriousness of the offense, "centers primarily on society's interest in bringing the particular accused to trial." *Stevenson*, 832 F.3d at 419 (citations omitted). Mr. Goettsche concedes this first factor does not weigh in favor of dismissal with prejudice. Count

---

[10]    "In the government's view, [a Speedy Trial Act dismissal] would almost certainly be without prejudice." Dkt. 579, Tr. 7:6-7.

One, conspiracy to commit wire fraud, is a serious offense and provides for a 20-year statutory maximum term of imprisonment. In contrast, Count Two, conspiracy to sell unregistered securities, is an alleged failure for the defendants to file a securities registration application with the U.S. Securities and Exchange Commission and provides for only a five-year maximum term of imprisonment. This paperwork violation is hardly a serious crime, and one in which the Department of Justice has dramatically curtailed vis-à-vis cryptocurrency enforcement. *See* Deputy Attorney General Memo, "Ending Regulation by Prosecution" (April 7, 2025) (stating that DOJ is not a "digital assets regulator," and that "prosecutors should not charge regulatory violations involving digital assets" including "unregistered securities offering violations.").

B.       The Government's Failure to Bring this Case to Trial

The crux of the second factor is for the district court to consider the reasons for the delay such as "intentional dilatory conduct," a "pattern of neglect on the part of the Government," or just a "relatively benign hitch in the prosecutorial process." *Stevenson*, 832 F.3d at 420 (citations omitted). "We do not dispute that a truly neglectful attitude on the part of the Government reasonably could be factored against it." *Taylor*, 487 U.S. at 338.

Here, the pattern of neglect by the prosecution is evident. Mr. Goettsche concedes that he consented to numerous ends-of-justice continuances. However, it is the government's burden—not Mr. Goettsche's—to bring this case to trial. Over the span of almost six and a half years, almost a dozen line prosecutors, a combination of seven U.S. Attorneys (duly appointed, interim, Acting, or unlawful), and the so-called "triumvirate," have cycled through the criminal case. *None* have advanced this case to trial. Moreover, when Mr. Goettsche pushed for a speedy trial, the government requested additional continuances presumably because they were ill-prepared to bring this case to trial. *Compare Taylor*, 487 U.S. at 339 (noting defendant, not the government, who prevented trial going forward in a timely fashion); *see, e.g., United States v. Black*, 918 F.3d 243,

19

263 (2d Cir. 2019) (finding government responsible for "significant delay" due to bungled document production, poor management, and inaction). *As discussed supra*, the government filed the February 5th Letter with a specious claim of complexity, like in *Scanlon*, despite the fact that the criminal charges remain unchanged since the grand jury returned the indictment in December 2019 – six years prior. (Dkt. 556). In that same letter, the government sought to toll the speedy trial clock for *nine months*, until November 18, 2026, because in the government's view a November trial date was "a realistic trial date while allowing adequate case preparation by both parties." (Dkt. 556 at 3). No case—no matter how complex—should require nine additional months of trial preparation for an indictment filed six years prior.

      C.      Mr. Goettsche Suffers Severe Prejudice from the Government's Neglect

The third factor – the impact of the reprosecution on the administration of the Speedy Trial Act and on the administration of justice—and the fourth factor, set forth in *Taylor*, center on "whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Stevenson*, 832 F.3d at 422. In *Taylor*, the Supreme Court noted, in relevant part, that the length of delay is a "measure of the seriousness of the speedy trial violation" and that "[t]he longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Taylor*, 487 U.S. at 340.

Here, the length of delay of six and a half years is extraordinary and has resulted in extreme prejudice to Mr. Goettsche. As discussed below, witnesses have died, memories have undoubtedly faded, and the government, to date, still has not produced relevant chunks of discovery. Further, Mr. Goettsche has lived every day since December 19, 2019 under the cloud of these charges causing anxiety and distress to both him and his family. To make matters worse, Mr. Goettsche was detained for over 12 months – during the height of a pandemic – due to the government's

spurious claims of missing cryptocurrency, none of which the government has ever shown to be in his custody.  Upon his release, he was placed under the most restrictive bail conditions.  As discussed in detail below, all of these factors have resulted in severe prejudice to Mr. Goettsche.

D.      Witnesses Are No Longer Available

There is no doubt that Mr. Goettsche's most acute prejudice is the undeniable loss of witnesses.  This prejudice is clear and substantial.  The government expressly acknowledges: "certain witnesses are no longer available."  (Dkt. 417 at 11).  No form of prejudice is more concrete than the loss of a witness whose testimony was material to the defense.  *See Barker*, 407 U.S. at 532 (prejudice includes "the possibility that the defense will be impaired").  While the government has not disclosed which witnesses are "no longer available," one such key witness known to the defense is Steven Ciaburri.  Mr. Ciaburri died on November 11, 2020, nearly a year after Mr. Goettsche was arrested.  Mr. Ciaburri was the owner of Rack911, a server administrator for the BitClub Network who may have been called by the defense (or subject to cross-examination[11]) as a witness with first-hand knowledge of the BitClub Network's servers and the unique ability to authenticate certain related evidence.  *See Barker*, 407 U.S. at 532 ("If witnesses die or disappear during a delay, the prejudice is obvious"); *see also Velazquez*, 749 F.3d at 183-84 (affirming that loss of witnesses due to delay weighs heavily in prejudice analysis).  Further, it is undeniable that relevant witnesses' memories have faded with time.  *See United States v. Battis*, 589 F.3d 673, 683 (3d Cir. 2009) ("We now hold that prejudice will be presumed when there is a forty-five-month delay . . . .  After such a long delay, witnesses become harder to locate and their memories inevitably fade.").  Indeed, the government concedes this: "the offense conduct in this case happened [between 2014 and 2019].  Witnesses' memories have certainly faded and

---

[11]      The government interviewed Mr. Ciaburri on at least six different occasions.

21

certain witnesses are no longer available." (Dkt. 417 at 11).

E.      Six and Half Years Later, the Government Has Not Completed Discovery

To date, the government still has not completed its Rule 16 discovery. After six and a half years and nearly four months out from trial, the government is still in possession of extremely relevant phones and devices, including three of Mr. Goettsche's phones and numerous devices belonging his alleged co-conspirators. It is black letter law that the granting of continuances (for any reason, to include plea negotiations) do not relieve the government of its discovery obligations under Rule 16. The government has the continuing duty to produce discoverable material in a timely manner. *See* Fed. R. Crim. P. 16(c) ("A party who discovers additional evidence or material before or during trial must promptly disclose its existence"). The government's failure to meet its discovery obligations also counsels in favor of a dismissal with prejudice.

F.      The Government Refuses to Obtain Exculpatory Evidence

The government also continues to ignore its obligation to obtain known exculpatory evidence which has resulted in a second, irreparable prejudice. Since the bail hearing, the government has seen substantial documented evidence from the defense that BCN spent hundreds of millions of dollars on mining equipment, and as a direct result, successfully mined substantial cryptocurrency. This evidence is exculpatory because it undermines the government's theory that cryptocurrency mining earnings were manipulated or faked. But yet, the government has done nothing when confronted with such critical exculpatory evidence. *Compare United States v. Risha,* 445 F.3d 298, 303 (3d Cir. 2006) (discussing standards for government's constructive knowledge of exculpatory evidence possessed by other state entities). Now, with an October trial date on the horizon, Mr. Goettsche has a Hobson's choice of trial without exculpatory evidence. The government's inaction during these six and a half years ensured Mr. Goettsche of that option.

22

G. Mr. Goettsche Continues to Live Under Restrictive Bail Conditions

The Third Circuit has long recognized that disruptions to a defendant's employment, financial resources, and the "general strain and anxiety put upon family and friends" constitute the kind of concrete prejudice that must be factored into the Sixth Amendment dismissal analysis. *Burkett v. Fulcomer*, 951 F.2d 1431, 1444 (3d Cir. 1991); *see also Battis*, 589 F.3d at 682. Here, the disruptions to Mr. Goettsche are not abstract. He was detained without bail for a full year until his release on December 11, 2020. The Release Order that followed contained the most restrictive conditions available short of incarceration. And while conditions have been modified, several restrictive conditions remain. More than six years since the Indictment, he continues to wear a GPS ankle monitoring, and his rental income remains held in escrow.

H. The Six and a Half Year Delay is Presumptively Prejudicial

For Sixth Amendment purposes, "delay is measured from the date of arrest or indictment, whichever is earlier, until the start of trial." *Battis*, 589 F.3d at 678. The Third Circuit recognizes a delay of "even fourteen months is sufficient to trigger review of the remaining Barker factors." Id.; *see also Doggett*, 505 U.S. at 652 n.1. (noting a post-accusation delay approaching one year is generally considered presumptively prejudicial and triggers the full Barker enquiry). "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." Doggett, 505 U.S. at 652; Black, 918 F.3d at 255 (government conceding that five years and eight-month delay was presumptively prejudicial).

Mr. Goettsche was arrested on December 10, 2019, and trial is scheduled for October 6, 2026. The nearly seven years between arrest and trial are well beyond the threshold that is presumptively prejudicial. *See, e.g., Velazquez*, 749 F.3d at 186 (finding a delay of six and a half years "extraordinary by any measure"). This factor fully weighs in Mr. Goettsche's favor and triggers full consideration of the remaining Barker factors.

I.      The Government's Pattern of Neglect is Firmly Established

The reason for the delay, the second *Barker* factor, sufficiently weighs in Mr. Goettsche's favor. Different reasons for delay are assigned different weights. *Barker*, 407 U.S. at 531. "Deliberate delay to hamper the defense weighs heavily against the prosecution," and "[m]ore neutral reason[s] such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (internal quotation marks omitted). Admittedly, the parties consented to 38 ends-of-justice continuances over the past six years. However, the government bears the principal responsibility for these delays as discussed in Part IV.B, *supra*. Ongoing plea negotiations do not absolve the government of its obligations to the public. This factor weighs in Mr. Goettsche's favor.

J.      Mr. Goettsche Timely Asserted His Speedy Trial Rights

The third *Barker* factor, Mr. Goettsche's assertion of his speedy trial right, likewise weighs in Mr. Goettsche's favor. *See Barker*, 407 U.S. at 531-32. Mr. Goettsche rejected the December 12, 2025 plea agreement and asserted his speedy trial rights, reiterated his demand in his February 9th opposition, and again asserts his right through this Motion to Dismiss.

K.      Mr. Goettsche Suffers Severe Prejudice from the Loss of Evidence

Finally, as fully described *supra*, Mr. Goettsche has suffered unmistakable prejudice which warrants a dismissal with prejudice. *United States v. Martinez*, 75 F. Supp. 2d 360, 365 (D.N.J. 1999) (In determining whether to dismiss with prejudice, courts in this Circuit consider "[t]he presence or absence of prejudice to a defendant"). The Supreme Court has recognized that prejudice can manifest in multiple, sometimes overlapping forms: oppressive pretrial conditions, the anxiety and concern of living under indictment, and—most gravely—impairment of the accused's ability to mount a defense. *Barker,* 407 U.S. at 532. That prejudice grows stronger as

24

the years go on "[g]iven that time's erosion of exculpatory evidence and testimony can hinder a defendant's ability to prove that his defense was impaired by a delay" and "presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Battis*, 589 F.3d at 682 (internal quotation marks omitted). Under these specific circumstances, a dismissal with prejudice is the proper remedy. Taken together, the prejudice is not speculative or generalized but rather concrete, documented, and irreversible. As referenced *supra*, the loss of witnesses, the fading of witnesses' memories, and the government's failure to timely produce discovery means that a fair trial is no longer possible on the same terms under which the government brought this case. *See e.g., Strunk v. United States*, 412 U.S. 434, 440 (1973) ("In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, 'the only possible remedy.'").

25

## **CONCLUSION**

Based on the foregoing reasons, Mr. Goettsche respectfully moves this Court to dismiss Indictment 19-CR-877 with prejudice for violations of the Speedy Trial Act, the Sixth Amendment and based on the Court's inherent power under Fed. R. Crim. P. 48(b).


Dated: June 4, 2026                                                Respectfully submitted,

                                                                        */s/ Matthew I. Menchel*
                                                                        Matthew I. Menchel
                                                                        Jessica Fender
                                                                        Michael Keilty
                                                                        KOBRE & KIM LLP
                                                                        800 3rd Ave
                                                                        New York, NY 10022
                                                                        (212) 488-1288
                                                                        matthew.menchel@kobrekim.com
                                                                        jessica.fender@kobrekim.com
                                                                        michael.keilty@kobrekim.com


                                                                        */s/ Rodney Villazor*
                                                                        Rodney Villazor
                                                                        Emma R. Rosen
                                                                        CLARK SMITH VILLAZOR LLP
                                                                        666 3rd Ave 21st Floor
                                                                        New York, NY 10017
                                                                        (212) 377-0850
                                                                        rodney.villazor@csvllp.com
                                                                        emma.rosen@csvllp.com

                                                                        *Attorneys for Defendant Matthew
                                                                        Brent Goettsche*

26