**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

|  |  |
|---|---|
| v. | Hon. Claire C. Cecchi |
| MATTHEW BRENT GOETTSCHE, RUSS MEDLIN, | CRIMINAL NO. 2:19-cr-877-CCC |
| JOBADIAH SINCLAIR WEEKS, JOSEPH FRANK ABEL, and SILVIU CATALIN BALACI | Oral Argument Requested |

**DEFENDANT MATTHEW BRENT GOETTSCHE'S MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT BASED UPON THE**
**GOVERNMENT'S LACK OF AUTHORITY**

**TABLE OF CONTENTS**

**INTRODUCTION** ..............................................................................................................1

**BACKGROUND**................................................................................................................2

   I.   The Authority Issue in the U.S. Attorney's Office .............................................2

   II.   The U.S. Attorney's Office Seeks to Continue the Case Without Authority........................4

   III.   The Court Rules on the February 5, 2026 Motion at the *Frye* Hearing...............................5

   IV.   Judge Brann Rules on the Validity of Mr. Frazer's Appointment .......................................7

**LEGAL STANDARD**........................................................................................................9

**ARGUMENT** ...................................................................................................................10

   I.   Ratification Must Operate *Before* the Judicial Act that Relies Upon it ..............................11

   II.   U.S. Attorney Frazer's After-the-Fact Ratification Is Untimely for Two Reasons ............13

   III.   *Naviwala* Provides No Support for the Government's Position .........................................15

   IV.   *Nunc Pro Tunc* "Ends of Justice" Continuances Are Prohibited .......................................17

   V.   The Indictment Should Be Dismissed with Prejudice .......................................................19

**CONCLUSION** ................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Disposal Servs. E., Inc. v. N.L.R.B.*,
  820 F.3d 592 (3d Cir. 2016)...................................................................................12, 14

*Bloate v. United States*,
  559 U.S. 196 (2010)...................................................................................................10

*Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*,
  948 F.3d 148 (3d Cir. 2020)......................................................................................12

*Cook v. Tullis*,
  85 U.S. (18 Wall.) 332 (1874) ..................................................................................11

*Fed. Election Comm'n ("FEC") v. NRA Pol. Vi*ctory Fund,
  513 U.S. 88 (1994).................................................................................11, 12, 13, 15

*First Telebanc Corp. v. First Union Corp.*,
  No. 02-80715-CIV, 2007 WL 9702557 (S.D. Fla. Aug. 6, 2007) .............................13

*Giraud*,
  2025 WL 2196794 ......................................................................................................16

*In re W.R. Grace & Co.*,
  366 B.R. 302 (Bankr. D. Del. 2007) ..........................................................................12

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
  796 F.3d 111 (D.C. Cir. 2015)..............................................................................11, 12

*Kajmowicz v. Whitaker*,
  42 F.4th 138 (3d Cir. 2022) .......................................................................................11

*Lucia v. SEC*,
  585 U.S. 237 (2018)....................................................................................................12

*Missouri v. Frye*,
  566 U.S. 134 (2012)......................................................................................................5

*Nasewaupee v. Sturgeon Bay,*
  77 Wis.2d 110, 251 N.W.2d 845 (1977).....................................................................15

*Reese*,
  917 F.2d ......................................................................................................................14

ii

*Ryder v. United States*,
  515 U.S. 177 (1995) .......................................................................................................12

*Telecom Italia S.p.A. v. L-3 Comms. Corp.*,
  335 F. App'x 770 (10th Cir. 2009) .................................................................................13

*United States v. Adams*,
  36 F.4th 137 (3d Cir. 2022) .......................................................................................10, 14

*United States v. Brooks*,
  697 F.2d 517 (3d Cir. 1982).............................................................................................14

*United States v. Carrasquillo*,
  667 F.2d 382 (3d Cir. 1981).......................................................................................17, 18

*United States v. Giraud*,
  795 F. Supp. 3d 560 (D.N.J. 2025) .................................................................................2, 3

*United States v. Lattany*,
  982 F.2d 866 (3d Cir. 1993)...............................................................................10, 17, 18

*United States v. Naviwala*,
  No. 2:24-CR-00099, 2026 WL 658885 (D.N.J. Apr. 16, 2026) ............................................3, 10

*United States v. Naviwala*,
  No. 2:24-cr-00099, 2026 WL 1031149 (D.N.J. Apr. 16, 2026) ........................................passim

*United States v. Reese*,
  917 F.3d 177 (3d Cir. 2019).................................................................................10, 17, 18

*United States v. Taylor*,
  487 U.S. 326 (1988).........................................................................................................13, 19

*Zedner v. United States*,
  547 U.S. 489 (2006).............................................................................................10, 17, 18

**Statutes**

18 U.S.C. § 3161(c) ..............................................................................................................9

18 U.S.C. § 3161(c)(1) ........................................................................................................9

18 U.S.C. § 3161(h)..............................................................................................................9, 10

18 U.S.C. § 3161(h)(1)(7) ...................................................................................................4, 5

18 U.S.C. § 3161(h)(7)(A)................................................................................................passim

18 U.S.C. § 3161-62(a)(2) .......................................................................................................1, 9

18 U.S.C. § 3162(a)(2) ......................................................................................................9, 13, 19

28 U.S.C. § 546(a) ...................................................................................................................2

28 U.S.C. § 546(c)(2) ...............................................................................................................2

28 U.S.C. § 546(d)....................................................................................................................3

U.S. Const. amend. VI...............................................................................................................9

## Other Authorities

Restatement (Second) of Agency § 90 (1958)...............................................................................11

**INTRODUCTION**

Defendant Matthew Goettsche respectfully moves to dismiss the Indictment with prejudice pursuant to 18 U.S.C. § 3161-62(a)(2) because the U.S. Attorney's Office lacked any authority to move to toll the speedy trial clock and the subsequent ratification came well after the violation of the Speedy Trial Act. Relevant here,[1] the government filed two motions seeking to continue the case and to exclude time from the 70-day Speedy Trial Act clock under 18 U.S.C. § 3161(h)(7)(A) ("ends of justice"). Both of those motions were made over Mr. Goettsche's objection, during a period in which the U.S. Attorney's Office for the District of New Jersey ("the U.S. Attorney's Office") was led by a "triumvirate" of illegally appointed individuals who lacked authority to act on behalf of the United States. The Court granted those continuance motions in January and April 2026—well before the current U.S. Attorney, Robert Frazer, attempted to "ratify" the motions in a May 2026 letter to this Court. *See* Dkt. 584. Mr. Frazier's ratification is a nullity for the following reasons: (1) Because the Speedy Trial Act requires that the grounds for an "ends of justice" continuance actually exist and are articulated by the court at the time it grants the motion;

---

[1]    Together with this motion, Mr. Goettsche simultaneously filed a motion to dismiss the Indictment based on the expiration of the Speedy Trial Act's 70-day clock, addressing the mathematical calculation of non-excludable time. Dkt. 594 (the "Companion Motion," incorporated by reference in its entirety). Respectfully, the Court can and should resolve the Companion Motion first, as it is both dispositive and a necessary prerequisite to reaching the issues raised herein. This motion presents an independent and alternative basis for dismissal: even if the Court concludes that the 70-day clock has not expired under the standard calculation, because certain motions in support of the Court's continuance orders were filed without lawful authority, any resulting periods of delay are not excludable.

The defendant submits this as a separate motion because, while no referral currently exists, the Chief Judge of the Third Circuit previously referred challenges to the authority of the U.S. Attorney's Office to the Honorable Matthew W. Brann. *See, e.g.*, *United States v. Giraud*, No. 1:24-cr-00768, (D.N.J. July 28, 2025) (Dkt. 103); *United States v. Naviwala*, No. 2:24-cr-00099 (D.N.J. Dec. 18, 2025) (Dkt. 270); *United States v. Torres*, No. 2:24-cr-00378, (D.N.J. Mar. 9, 2026) (Dkt. 92). Mr. Goettsche respectfully submits that a referral may be appropriate if the issues raised in this motion remain outstanding once the Court resolves his Companion Motion.

(2) the 70-day speedy trial clock had expired as of February 20, 2026; and (3) both continuance motions were granted well before May 2026.  His letter cannot later supply what was fatefully lacking at the time the Court acted.  The proper remedy, as noted by Judge Brann in addressing these very same Appointments Clause issues, "is to purge the tainted proceedings."  *See United States v. Naviwala*, No. 2:24-cr-00099, 2026 WL 1031149, at \*6 (D.N.J. Apr. 16, 2026).  That "purge" necessarily results in a setting aside of the two tainted continuance motions, which underscores that a fatal violation of the Speedy Trial Act has occurred.  For this reason, as well as those set forth in the Companion Motion, Mr. Goettsche's Indictment should be dismissed with prejudice.

### BACKGROUND

I.      **The Authority Issue in the U.S. Attorney's Office**

Philip R. Sellinger, the last Senate-confirmed United States Attorney for the District of New Jersey, resigned effective 11:59 p.m. on January 8, 2025.  *United States v. Giraud*, 795 F. Supp. 3d 560, 568 n.5 (D.N.J. 2025).  On March 3, 2025, then-Attorney General Pamela Bondi[2] appointed John Giordano as Interim United States Attorney under 28 U.S.C. § 546(a); Alina Habba was designated to replace Giordano under that same statute on March 28, 2025.  *Id.* at 569.  Thus, the 120-day period during which an Interim U.S. Attorney had authority to act began to run on March 3, 2025, and expired 120 days later, on July 1, 2025.  *Id.* at 579; 28 U.S.C. § 546(c)(2).  From that date forward, Ms. Habba lacked the ability to serve in her appointed role.  *See Giraud*, 795 F. Supp. 3d at 568, *aff'd*, *United States v. Giraud*, 160 F.4th 390, 406-07 (3d Cir. 2025).

---

[2]      Bondi was removed from her position on April 2, 2026; Todd Blanche currently occupies the Acting Attorney General role.

On December 8, 2025, Ms. Habba resigned. Ms. Bondi then "appointed and delegated authority" to three new people—Philip Lamparello, Jordan Fox, and Ari Fontecchio—each of whom was given a specific area of responsibility within the U.S. Attorney's Office: a structure referred to as the "triumvirate." *United States v. Naviwala*, No. 2:24-CR-00099, 2026 WL 658885, at *3 (D.N.J. Apr. 16, 2026). On March 9, 2026, the Honorable Chief Judge Matthew W. Brann, sitting by designation,[3] concluded that just as with Ms. Habba, the triumvirate was acting without lawful authority. *Naviwala*, 2026 WL 658885, at *2 (D.N.J. Mar. 9, 2026). He also noted that by adopting this structure, the executive branch was "chaf[ing] at the limits on their power set forth by law and the Constitution" and attempting "an enormous assertion of Presidential power." *Id* at *2. Foreseeing issues just like the one presented here, Judge Brann lamented that "the fate of thousands of criminal prosecutions in this District potentially rest[ed] on the legitimacy of an unprecedented and byzantine leadership structure[]," and he foresaw the "chaos" that would pervade criminal prosecutions in this district. *Id.* at *4.

The chaos abated for many on March 23, 2026, when Robert Frazer was appointed to the U.S. Attorney position by the U.S. District Court. *In re* Appointment of U.S. Attorney, Standing Order 2026-03 (D.N.J. Mar. 23, 2026). The only court to address his appointment—Judge Brann, again by designation—held that Mr. Frazer's appointment complied with the requirements of 28 U.S.C. § 546(d). *See United States v. Naviwala*, 2026 WL 1031149, at *11. But in Mr. Goettsche's case, Mr. Frazer's eventual appointment came too late to stave off the Speedy Trial Act violation that had already occurred.

---

[3]     Chief Judge Chagares of the Third Circuit has referred a handful of these issues to Judge Brann, as reflected in Dkt. 103, *United States v. Giraud*, 24-CR-768, and Dkt. 270, *United States v. Naviwala*, 24-CR-99. Once the "authority" issue is resolved, the case is then referred back to the originating district judge, *see* Dkt. 159, *United States v. Giraud*, 24-CR-768; Dkt. 326, *United States v. Naviwala*, 24-CR-99; Dkt. 130, *United States v. Torres*, 24-CR-378. The undersigned is not aware of a district or circuit-wide standing referral order.

## II.     The U.S. Attorney's Office Seeks to Continue the Case Without Authority

Against that tumultuous backdrop, the parties in this case were engaging in plea negotiations. The undersigned will not repeat the facts set out in the Companion Motion, *see* Dkt. 594; but briefly, during these negotiations, Mr. Goettsche consented to the government's requests to exclude time from the 70-day speedy trial clock under 18 U.S.C. § 3161(h)(1)(7) ("ends of justice"), including during the period in which Ms. Habba or the triumvirate illegally oversaw the U.S. Attorney's Office. *See id.*

By December of 2025, with the U.S. Attorney's Office still illegally helmed by the triumvirate, it became clear that further plea negotiations were fruitless. Mr. Goettsche therefore demanded that the case be set for trial expeditiously. When the government sought another continuance, Mr. Goettsche refused. On December 30, 2025, the government filed its motion over his objection, professing confusion at Mr. Goettsche's position and framing the request as one from which Mr. Goettsche would benefit. *See* Dkt. 544. To that motion, the government appended a proposed continuance order—the same well-worn language the government had been using for years to justify its requested exclusion of time. *Id.* at Att. A. Although Mr. Goettsche continued to press for an early trial date, he ultimately consented to a final continuance on January 5, 2026.[4] The Court promptly entered an order that day, excluding time to February 4, 2026. *See* Dkt. 545.

As that date approached, the government again sought to continue the case. Mr. Goettsche stood fast, making clear that he meant what he said: he would not consent to any further exclusions of time going forward, and he was demanding his right to a speedy trial. On February 5, 2026, the

---

[4]     Mr. Goettsche consented to the continuance by email to the Court on January 5, 2026, which is not reflected on the docket but is attached hereto as Exhibit A. As explained below, he does not challenge the Court's January 5, 2026 order as of the date he consented; instead, he challenges the period from December 30, 2025, through January 4, 2026, during which the motion was pending under 18 U.S.C. § 3161(h)(1)(7) and opposed.

government filed another opposed letter motion under 18 U.S.C. § 3161(h)(1)(7).  Dkt. 556.  In seeking that continuance, the government made a number of incorrect or misleading claims regarding the complexity of the case and the status of discovery, and it requested a trial date in November of 2026—some *eleven months* later.

As a result, Mr. Goettsche promptly filed a response on February 9, 2026, taking on each alleged basis for the government's request that the case be treated as "complex," and demonstrating that not a single one still existed.  *See* Dkt. 559 ("Whatever arguments the government once had, they have evaporated with the passage of time").  On March 13, 2026, the government filed a letter requesting a hearing under *Missouri v. Frye*, 566 U.S. 134 (2012), in which it urged the Court to rule on its still-pending request for a continuance.  Dkt. 563.  The Court scheduled the *Frye* hearing to take place on April 16, 2026.  Dkt. 572.

### III.    The Court Rules on the February 5, 2026 Motion at the *Frye* Hearing

At the April 16, 2026 hearing, the Court heard from the parties on various discovery-related issues, and engaged Mr. Goettsche in the government's requested *Frye* allocution.  *See* Apr. 16, 2026 Tr., Dkt. 579.  Relevant here, the Court also addressed the government's request for a continuance, which had been pending since February 5, 2025.  As the below excerpts make clear, the Court decisively ruled, granting the government's request over Mr. Goettsche's objection:

| | |
|---|---|
| THE COURT: | Any other issues with respect to discovery and so on?  I know there's the issue of the continuance as well from the government.  The government is seeking the Court to provide for a continuance in this matter, correct?  Defendant has decided they are no longer executing continuances; is that where we're at? |
| MR. VILLAZOR: | Yes, Your Honor. |

*Id.* at 33:12-19.  The Court returned to the issue later in the proceedings, stating:

THE COURT:    So with respect to this order for the continuance, it's the government seeking it based on the premise that it is an unusual or complex case, correct?

AUSA:    That's correct, Your Honor.  Yes.

THE COURT:    I certainly understand that.  Anything on that from the defense?

MR. VILLAZOR:    Your Honor, we'll submit on the papers.

THE COURT:    All right.  Very well.  To me it is certainly a complex issue.  There are many, many issues here and subissues.  *I am going to sign this order for a continuance.*  I think it's entirely appropriate in this circumstance.  And I recognize up to this point there have been continuances that have been executed by the defense, so we are just dealing with this period right before trial.  But just addressing the matters that I heard about today leads me to conclude that this is not a traditional case.  We are dealing with various devices.  We are dealing with issues on the filter process, and we are dealing obviously with the underlying issues in this case, and it is a voluminous matter.  *So I am going to sign this continuance, and that shall preserve the record at this point.*

With respect to the order on discovery, I am holding on that, the scheduling order.  You're going to work that out. I will give you a date to get that back to me.  When would you like to get back to me?

*See id.* at 36:7-37:8 (emphases added).  The defense again lodged its objection "to the entrance of the Speedy Trial Act continuance," *id.* at 37:21-23, and the government, for its part, noted that it was "prepared to rest on the record *just made by the Court*," and "[n]othing further" needed to be addressed.  *Id*. at 38:4-9 (emphasis added).  The Court then asked, as a final confirmation:

THE COURT:    Are there any pending pretrial motions that you've submitted that have not been tended to by the Court?  Is there anything outstanding? I don't believe so.

AUSA:    No, Your Honor.  The government had two motions, one was the February motion for the entry of the continuance and scheduling order, *that has been disposed of*.

6

*Id.* at 38:19-25 (emphasis added). Only the Court's entry of a written order remained, presumably so it could amend the continuance order to reference the trial date it had tentatively set during the hearing. *Id.* at 44:6-7.

### IV.    Judge Brann Rules on the Validity of Mr. Frazer's Appointment

The *Frye* hearing took place on April 16, 2026. That very day, it so happened that Judge Brann issued a ruling on a defendant's challenge to the appointment of Mr. Frazer as the U.S. Attorney. *United States v. Naviwala*, No. 2:24-cr-00099, 2026 WL 1031149 (D.N.J. Apr. 16, 2026). Judge Brann found that Mr. Frazer was lawfully appointed, that any previously tainted proceedings had caused the defendant no prejudice, and that therefore the defendant was not entitled to any relief. *Id.* In so doing, Judge Brann held that "[t]he proper remedy for an Appointments Clause violation is to purge the tainted proceedings—and no more." *Id.* at *6. Judge Brann also noted that in certain situations, "subsequent ratification" could resolve an Appointments Clause deficiency. *Id.*

In *this* case, meanwhile, the Court set weekly check-ins, making clear that the October 6, 2026 trial date remained subject to the parties' concerted narrowing of the pretrial issues to be brought before the Court. *See* Apr. 16, 2026 Tr., at 44:11, Dkt. 579. When the Court inquired about pretrial motions, counsel for Mr. Goettsche confirmed that he would move to dismiss under the Speedy Trial Act on two grounds, one of which relied upon the lack of authority in the U.S. Attorney's Office. *Id.* at 5:5-22. The Court raised the question of ratification, and inquired whether such an act by Mr. Frazer would suffice to cure any defect, and whether Mr. Frazer intended to provide such a ratification. *Id.* at 4:24 – 5:4.

The U.S. Attorney's Office took that ball and ran down the field with it. On May 9, 2026, in a carefully crafted letter, the U.S. Attorney's Office re-wrote history, claiming to be

"supplement[ing] its February 5, 2026 motion requesting the entry . . . of an ends-of-justice continuance." *See* Dkt. 584. The government went on: "In the Government's view, the Motion has remained pending since its filing, including following the April 16, 2026 in-person hearing before Your Honor, D.E. 575, 579 . . . . The Government writes to . . . respectfully request that the Court now grant the Motion by entering the proposed Speedy Trial Act continuance." *Id*. The three prior motions that Mr. Frazer purported to ratify "in an abundance of caution" were:

1. "The Government's November 25, 2025 motion, made jointly with the defense, for a Speedy Trial Act continuance through December 26, 2025 (D.E. 523), which the Court entered on the same date (D.E. 525);[5]

2. The Government's December 30, 2025 one-party motion for a Speedy Trial Act continuance through January 31, 2026 (D.E. 544), which the Court granted on January 5, 2026 with the defendant's consent (D.E. 545); and

3. The Motion itself, which, as noted above, remains pending."

*Id.* at 2. The government also attempted to bolster its record as to the case's complexity, arguing that "further conferences . . . have only made this basis even more clear." *Id.*

The defense did not have the opportunity to respond prior to May 12, 2026, when the Court held its previously scheduled telephonic conference. *See* May 12, 2026 Tr., Dkt. 589 at 8:2-12 ("We just received the ratification on Saturday. . . . As to the validity of that ratification as it applies to the Speedy Trial Act continuance motion, we reserve our rights to object to that but we are not prepared to make a fulsome statement on that at this time."). The Court questioned the parties regarding the implications of Judge Brann's April 16, 2026 decision in *Naviwala*, and while neither party was prepared to address it in depth during the conference, Mr. Goettsche's counsel specifically noted:

---

[5]    Mr. Goettsche is not challenging jointly made requests for continuance during this period; although the U.S. Attorney's Office lacked authority to make such motions, Mr. Goettsche consented, the Court could have granted the exclusion of time based on Mr. Goettsche's motion alone.

> [T]here is a fundamental difference in our view here with respect to a motion to exclude time and when the decision on that would have to have been entered and whether that can lead us backwards looking, the ratification can effectively look backwards and say, yes, if Mr. Frazer had been the U.S. Attorney at that date he would have so moved to exclude time and had had proper authority to do that so, therefore, he can do that now effectively.

*Id.* at 16:19-17:1. During the conference, the Court adopted the government's framing, stating that it had "been holding off ruling" on the government's February 5, 2026 continuance request. *See* Dkt. 589 at 3:22-4:10; 6:18-19; 17:24-18:4. The defense repeated its objection. *Id.* at 7:2-7. Nonetheless, the next day, the Court issued an order excluding time from May 13, 2026 to October 20, 2026. Dkt. 587. As shown above, that order could have no effect: the Court had already granted the government's February 5, 2026 request for a continuance on April 16, 2026.

## **LEGAL STANDARD**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Congress put teeth behind this right by enacting the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174, which requires in relevant part that a defendant's trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). A dismissal is *required* if 70 days lapse under the speedy trial clock. *See* 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.").

The Act provides a detailed list of periods that may be excluded from the 70-day calculation. Relevant here, 18 U.S.C. § 3161(h)(7)(A) excludes delay resulting from a continuance granted by the court if the court finds that "the ends of justice served by taking such

9

action outweigh the best interest of the public and the defendant in a speedy trial."  The court must set forth its reasons for this finding "in the record of the case, either orally or in writing."  *Id.*  "[I]s clear that the findings must be made, if only in the judge's mind, before granting the continuance," and cannot be supplied retroactively.  *See Zedner v. United States*, 547 U.S. 489, 506-07 (2006); *see also Bloate v. United States*, 559 U.S. 196, 199 (2010) (noting exclusion of time "may be excluded if the district court makes the findings"); *United States v. Reese*, 917 F.3d 177, 181 (3d Cir. 2019) (denying exclusion of time as a result of delay caused by continuance).  In other words, while a district court has considerable leeway in exercising its discretion and granting an "ends of justice" continuance, it cannot "exclude time in hindsight."  *Reese*, 917 F.3d at 182 (noting such continuances cannot be granted *nunc pro tunc*) (citation omitted); *United States v. Lattany*, 982 F.2d 866, 877 (3d Cir. 1993) ("a district court cannot provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance *nunc pro tunc*"); *see also United States v. Adams*, 36 F.4th 137, 146 (3d Cir. 2022) (requiring a showing that interests of public and defendants were balanced).

## ARGUMENT

On May 7, 2026, U.S. Attorney Frazer purported to ratify three continuance motions, two of which Mr. Goettsche opposed.  The government filed these motions while the U.S. Attorney's Office was led by the illegally appointed triumvirate—in other words, during a time in which that office had no authority to act on behalf of the United States.  *See Naviwala*, 2026 WL 658885, at *45.  The text of 18 U.S.C. § 3161(h)(7)(A) is precise:  The statute excludes delay resulting from "a continuance granted by any judge on his own motion," "the request of the defendant or his counsel," "*or at the request of the attorney for the Government*."  (emphasis added).  As Judge Brann decisively held, the triumvirate members were not authorized, and their lack of authority infected the U.S. Attorney's Office as a whole.  As explained below, while certain actions

10

undertaken by that office in this tumultuous period may be subject to ratification, a motion for a continuance that was not ratified until after the Speedy Trial Act deadline had passed is not one of them.

## I.    Ratification Must Operate *Before* the Judicial Act that Relies Upon it

Mr. Goettsche does not dispute that in appropriate circumstances, ratification is an established remedy for Appointments Clause violations. *See Kajmowicz v. Whitaker*, 42 F.4th 138, 147 (3d Cir. 2022); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117 (D.C. Cir. 2015). This is because the doctrine of ratification is "presumptively governed by principles of agency law." *Fed. Election Comm'n ("FEC") v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994). Under those principles, ratification relates back to the time of the unauthorized act, rendering the act valid, as if it had been authorized from the outset. But this general rule is subject to a critical limitation:

> If an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time.

*FEC*, 513 U.S. at 98 (citing Restatement (Second) of Agency § 90 (1958)); *see also* Restatement (Second), cmt. a ("The bringing of an action, or of an appeal, by a purported agent cannot be ratified after the cause of action or right to appeal *has been terminated by lapse of time*." (emphasis added)). This makes logical sense. If a party could ratify a tainted or improper act at any time, regardless of when the ratification took place, statutory deadlines set by Congress would be completely irrelevant.

In *FEC*, the Supreme Court distilled this principle as follows: "[I]t is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*." *FEC,* 513 U.S. at 98 (quoting *Cook v. Tullis*, 85 U.S. (18

11

Wall.) 332, 338 (1874)) (emphasis added).  In that case, the Federal Election Commission impermissibly filed a petition for *certiorari* two days prior to the deadline to appeal, even though the U.S. Solicitor General held the exclusive authority to file such appeals to the U.S. Supreme Court.  *Id.* at 91-92.  The Solicitor General later ratified the FEC's petition for *certiorari*, but that ratification came four months after the deadline to appeal.  *Id.* at 90.  The Supreme Court rejected that approach, concluding that it did not "relate back to the date of the FEC's unauthorized filing so as to make it timely."  *Id.* at 99.  The Solicitor General's "authorization simply came too late in the day to be effective."  *Id.*; *Advanced Disposal Servs. E., Inc. v. N.L.R.B.*, 820 F.3d 592, 603 (3d Cir. 2016) ("This 'timing problem' [described in *FEC*] has since been read to require that the ratifier have the 'power' to reconsider the earlier decision at the time of ratification.").

Put another way, ratification is only possible where the relevant proceedings are either (i) still pending, or (ii) can be conducted anew.  *E.g.*, *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117 (D.C. Cir. 2015) (holding that ratification is possible where appointed officials have authority to conduct a de novo review); *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 159 (3d Cir. 2020) (granting remedy of a rehearing before a properly appointed official); *Lucia v. SEC*, 585 U.S. 237, 251 (2018) (ordering a new hearing); *Ryder v. United States*, 515 U.S. 177, 188 (1995) (remanding for a hearing before a properly appointed panel).

Thus, ratification (or its functional equivalent) must operate before the judicial act that relies upon it; when that is not possible, the judicial act must be repeated.  Courts have addressed how to apply these concepts in circumstances where ratifications may allow a party to  circumvent a critical deadline.  The conclusion, time and time again, is that such attempted ratifications do not pass muster.  *See, e.g.*, *In re W.R. Grace & Co.*, 366 B.R. 302, 306-07 (Bankr. D. Del. 2007)

("However, ratification is not effective when it takes place after a deadline. . . . [a]llowing ratification after the bar date would give the claimants the unilateral power to extend the deadline"); *First Telebanc Corp. v. First Union Corp.*, No. 02-80715-CIV, 2007 WL 9702557, at *10 (S.D. Fla. Aug. 6, 2007) ("To permit ratification after a statute of limitations has expired would be to render the limitations periods meaningless. . . were a party to have the unilateral power to retroactively ratify its agent's actions years after their occurrence, a defendant could be exposed to liability for an indefinite period of time."); *see also Telecom Italia S.p.A. v. L-3 Comms. Corp.*, 335 F. App'x 770, 774 n.2 (10th Cir. 2009) (the "attempted authorization came too late to ratify").

The Speedy Trial Act's 70-day clock is precisely such a scenario: The Act expressly provides that when 70 days lapse, "the information or indictment *shall be* dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added). There is no ambiguity. *See, e.g.*, *United States v. Taylor,* 487 U.S. 326, 332 (1988) ("the statute admits no ambiguity in its requirement that when such a violation has been demonstrated" the indictment is dismissed). Accordingly, the rationale animating *FEC v. NRA Political Victory Fund*'s holding applies with even greater force in the Speedy Trial Act context. In *FEC*, the Court emphasized:

> If the Solicitor General were allowed to retroactively authorize otherwise unauthorized agency petitions after the deadline had expired, he would have the unilateral power to extend the 90-day statutory period for filing certiorari petitions by days, weeks, or, as in this case, even months. Such a practice would result in the blurring of the jurisdictional deadline.

513 U.S. at 99. So too here. The Speedy Trial Act was designed to prevent precisely this type of prolonged pre-trial limbo and gamesmanship.

**II.     U.S. Attorney Frazer's After-the-Fact Ratification Is Untimely for Two Reasons**

Applied here, the principles set forth in *FEC v. NRA Political Victory Fund* demonstrate the futility of ratification. The chronology is clear:

13

- The government's opposed December 30, 2025 motion for a continuance, Dkt. 544, was granted by written order on January 5, 2026.

- The 70-day speedy trial clock ran out on February 20, 2026. *See* Companion Motion, Dkt. 594, at 10.

- The government's opposed February 5, 2026 motion for a continuance, Dkt. 556, was granted at the April 16, 2026 hearing.

- Mr. Frazer sought to "ratify" the December 2025 and February 2026 motions on May 9, 2026.

Thus, for both continuances, ratification came after the speedy trial clock had run. As the Third Circuit succinctly stated in *Advanced Disposal Servs. E.*, 820 F.3d at 603, "the ratifier [must] have the 'power' to reconsider the earlier decision at the time of ratification." As of February 20, 2026, no one—including the Attorney General of the United States—retained the "power" to move to exclude time under 18 U.S.C. § 3161(h)(7)(A). The date to do so had come and gone. Nothing Mr. Frazer did from that point thereafter could change that outcome.

And for both continuances, ratification also came after the judicial act was complete. Respectfully, as shown above, the Court was mistaken in its belief that the February 5, 2026 continuance motion remained pending after the *Frye* hearing. *See United States v. Adams*, 36 F.4th 137, 146 (3d Cir. 2022) (finding a district court need not use "magic words" so long as statements on the record make clear that a valid factual basis is made); *Reese*, 917 F.2d at 181 (same); *see also United States v. Brooks*, 697 F.2d 517, 522 (3d Cir. 1982) (permitting a court to supplement its initial findings for an ends-of-justice at later stage). While the government has since urged the Court to re-write history, there is no question that the Court granted that continuance motion on April 16, 2026. The transcript makes this plain; indeed, the government's own counsel confirmed this understanding on the record. "The government had two motions, one was the February motion for the entry of the continuance and scheduling order, *that has been disposed of*." Dkt. 579 at

14

38:23-25, (emphasis added).  Because there was no open motion upon which Mr. Frazer could act, he could not provide a valid ratification to the prior "ends of justice" continuance motions on May 7, 2026.  His ratification "simply came too late in the day to be effective."  *FEC*, 513 U.S. at 98-99 (citing *Nasewaupee v. Sturgeon Bay,* 77 Wis.2d 110, 116–119, 251 N.W.2d 845, 848–849 (1977) (refusing to uphold town board's ratification of private attorney's unauthorized commencement of lawsuit where ratification came after the statute of limitations had run)).  This after-the-fact ratification is an attempt to exercise the "unilateral power to extend" a statutory deadline forbidden by the Supreme Court in *FEC v. NRA Political Victory Fund*.  No act of ratification can restore time that has expired.  Indictment 19-CR-877 must be dismissed.

### III.    *Naviwala* Provides No Support for the Government's Position

The May 7th ratification in this case bears little resemblance to that discussed by Judge Brann in *United States v. Naviwala*, No. 2:24-CR-00099, 2026 WL 1031149 (D.N.J. Apr. 16, 2026).  Briefly, in *Naviwala*, Judge Brann addressed a defendant's argument that the case should be dismissed because "the unlawful appointment of the triumvirate (and Ms. Habba) *must be presumed prejudicial* such that dismissal is the only acceptable remedy."  *Id*. at *3 (emphasis added).  Judge Brann flatly rejected that argument:

> Even accepting Naviwala's premise that he was inherently prejudiced by the Appointments Clause violations, it does not follow that such prejudice is automatically so severe that it cannot be remedied by anything other than dismissal.  Instead, precedent teaches the exact opposite: "a court's holding that there has been an Appointments Clause violation does not mean that the violation cannot be remedied by a new, proper appointment.  And once there has been such an appointment, the subsequent proceeding is constitutionally suspect only if there is sufficient continuing taint arising from the first."  Thus, when evaluating an Appointments Clause violation, courts should tailor the remedy to purge only the proceedings that are affected by the violation.

*Id.* at *5 (citations omitted).  As Judge Brann made clear, "[i]f a lawfully appointed official ratifies

15

his predecessor's action *and does so in accordance with the law*, that ratification may 'remedy a defect arising from the decision of an improperly appointed' predecessor." *Id.* at *6 (emphasis added).

Thus, in *Naviwala* and in *Giraud*—two cases in which no actual prejudice was identified— Judge Brann held that dismissal was not warranted. *See Naviwala*, 2026 WL 1031149, at *4 (holding that "dismissal is not necessary for any constitutional [or statutory] violation that may flow from [either] appointment because . . . prejudice to the [Defendant] has not occurred") (alterations in original) (citing *Giraud*, 2025 WL 2196794, at *6)). And of course, even where there might be prejudice, it makes sense that many government filings *are* amenable to ratification. *Naviwala* provides a prime example: there, the government's sentencing recommendation was filed on September 11, 2025, in a period where the U.S. Attorney's Office lacked authority to act, nonetheless, at any point prior to sentence being passed, Mr. Frazer could ratify or adopt those arguments as his own. The court would then pass sentence on a properly ratified record, and dismissal of the indictment would be inappropriate.

But some acts are simply different in kind. Judge Brann recognized this in *Naviwala*, paying particular attention to certain critical stages in the defendant's case to determine whether any risk of prejudice occurred. These included: "(1) the indictment; (2) pretrial motions; (3) the trial; (4) the conviction; and (5) post-trial filings." *Id.* at *6. Because the authority issue had not affected those stages of the case, dismissal would be improper. Had these proceedings been tainted by the government's lack of authority, however, Judge Brann made clear that "[t]he proper remedy for an Appointments Clause violation is to purge the tainted proceedings." *Id.*

That logic applies with equal force here: A motion for a continuance under § 3161(h)(7)(A) is different in kind. To rule on such a motion, this Court was required to make a contemporaneous

16

judicial finding that the ends of justice outweigh Mr. Goettsche's right to a speedy trial. That finding had to be supported by the record as it existed *at the time the Court ruled. See Zedner*, 547 U.S. at 506. In other words, the decision could be memorialized later, but the facts and circumstances supporting the exclusion of time had to exist, and the Court had to rely upon those facts and circumstances, at the time it exercised its discretion. This is why ratification of a resolved continuance motion is impossible, whereas ratification of a sentencing recommendation is not.

Mr. Goettsche now seeks what Judge Brann recognized was the appropriate outcome for such a case: a purge of the tainted proceedings. *Naviwala*, 2026 WL 1031149, at *8. When the tainted continuance orders are purged as having been made without lawful authority, the underlying periods are clearly non-excludable, and the violation of the Speedy Trial Act requires that Mr. Goettsche's indictment be dismissed.

## IV.    *Nunc Pro Tunc* "Ends of Justice" Continuances Are Prohibited

The prohibition on retroactive exclusions of time is a bedrock principle of speedy trial jurisprudence. The Speedy Trial Act *demands* contemporaneous judicial action, and therefore in case after case, the Third Circuit has held that a district court cannot grant an after-the-fact "ends of justice" continuance. *Reese*, 917 F.3d at 182 ("a court cannot exclude time in hindsight"); *Lattany*, 982 F.2d at 877 ("a district court cannot provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance *nunc pro tunc*"). The very same logic applies here : If a district judge cannot provide a post-hoc justification, the government should not be able to achieve the same prohibited outcome by ratifying a continuance motion *nunc pro tunc* after the clock already expired.

*United States v. Carrasquillo*, 667 F.2d 382 (3d Cir. 1981) reinforces this conclusion. In *Carrasquillo*, the deputy clerk and the defense attorney discussed trial scheduling prior to the

17

expiration of the speedy trial clock; only after the clock expired did the district court enter a continuance, referring back to the earlier conversation between the deputy clerk and defense counsel. *Id.* at 383. The Third Circuit reversed and clarified that only the judge—that is, the party specifically authorized to act to grant the continuance under the Speedy Trial Act—*not* the deputy clerk, could grant an "ends of justice" continuance. *Id.* at 385.

The Third Circuit reaffirmed and extended this principle in *United States v. Lattany*, 982 F.2d 866 (3d Cir. 1992), holding that "a district court cannot provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance *nunc pro tunc*." *Id.* at 877 (citing *Carrasquillo*, 667 F.2d at 386). Most recently, in *United States v. Reese*, 917 F.3d 177 (3d Cir. 2019), the Third Circuit synthesized its prior decisions and held that when a district court enters a continuance order without stating the factual basis for excluding time or invoking the Act, "the delay caused by the continuance is not excluded and the court cannot exclude the time in hindsight." *Id.* at 182. The flaw is so fundamental that even a defendant's acquiescence to a continuance "does not change this analysis." *Id.* at 184

The Supreme Court reached the same conclusion in *Zedner v. United States*, 547 U.S. 489 (2006). There, the government argued that ends-of-justice findings did not need to be entered contemporaneously, going so far as to argue that the reasons "could be supplied on remand." *Id.* at 506. The Court rejected that position outright, holding that "the Act is clear": "the findings must be made, if only in the judge's mind, *before* granting the continuance." *Id.* (emphasis added).

Thus, a clear governing principle emerges: the prerequisites for an ends-of-justice continuance must be satisfied at the time the court rules. That includes not only the requirement that the court's reasoning be contemporaneous and made of record, but by analogy, it must also include the identity and authority of the moving party. Where a court grants a continuance "at the

18

request of the attorney for the Government," the court necessarily must have determined that the request originates from a person authorized to speak for the United States.  Where that assumption is fundamentally flawed, and the person requesting the continuance had no authority, the resulting order lacks a statutory predicate.  Such a deficiency cannot be cured retroactively, any more than the court's findings can be supplied after the fact.

Mr. Frazer's May 7th Ratification to supply this missing predicate many weeks or months after the December 30, 2025 and February 5, 2026 motions were made, and after this Court already ruled on those motions on January 5, 2026, and April 16, 2026, respectively, is the functional equivalent to seeking the same type of *nunc pro tunc* continuances the Third Circuit has consistently rejected.  During the tainted proceedings, the AUSAs handling this case were working under the triumvirate's supervision, and therefore lacked the authority to move for "ends of justice" continuances—just as the deputy clerk in *Carrasquillo* lacked authority to act on behalf of the district court.  Mr. Frazer's attempt to ratify these ruled-upon prior continuance motions is the effective equivalent of the *Carrasquillo* district court attempting to relate its lawful authority back to a previous action done without authority.  Here, as there, an ends-of-justice continuance cannot be granted retroactively to exclude time that had already elapsed.

## V.   The Indictment Should Be Dismissed with Prejudice

Under 18 U.S.C. § 3162(a)(2), when the 70-day limit is violated, "the information or indictment shall be dismissed on motion of the defendant."  The court must then determine whether dismissal is with or without prejudice, taking into account "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of justice."  *See United States v. Taylor*, 487 U.S. 326, 333 (1988).

Dismissal with prejudice is fully warranted here.[6]  This is not a case of mere miscounting, or some innocuous calendaring error.  Instead, the government filed motions for continuance over Mr. Goettsche's objection while the U.S. Attorney's Office was overseen by individuals who lacked legal authority to act on behalf of the United States.  In doing so, the government took a calculated risk: by the time it filed these motions, Judge Brann already had issued lengthy opinions setting forth his considered and thoughtful analysis, articulating precisely why Ms. Habba's appointment was illegal.  Nonetheless, the Department of Justice elected to pursue an even more questionable solution to the office's leadership vacuum in appointing the "triumvirate."  There could be no serious doubt as to the outcome of that decision—Judge Brann predicted exactly such "chaos."  That alone warrants dismissal with prejudice.

The government's attempt to re-write history, and to (ultimately successfully) create the misimpression that the Court had not yet ruled on the February 5, 2026 continuance request during the April 16, 2026 hearing, likewise calls for a dismissal with prejudice.  The government knows better: indeed, its own counsel acknowledged on April 16, 2026 that its continuance request "ha[d] been disposed of" on that date.  *See* Dkt 579 at 38:25.  But when presented with the opportunity to reframe the narrative, the government convinced the Court in error it had "held open" the motion— a posture which magically transformed a closed issue into a still-open question, and conveniently provided Mr. Frazer with the opportunity to ratify his office's unauthorized continuance motion.  *See* May 12, 2026 Tr. at 6:18-19.  This attempt to paper over the government's lack of authority with an after-the-fact ratification should not be rewarded.

---

[6]    Mr. Goettsche focuses here only on the point relating specifically to the authority issue; the arguments for a dismissal with prejudice made in the Companion Motion are adopted by reference.

There is no cause for undue concern.  No floodgates are opening here.  In many (perhaps most) cases—whether nothing of substance took place during the period from July 1, 2025 through Mr. Frazer's eventual appointment, or whether under the specific circumstance of those cases, ratification is possible—the illegal triumvirate will have no bearing on the administration of justice.  Indeed, Judge Brann identified just such a case in his *Naviwala* decision.

But here, the government simply cannot be permitted to turn the Speedy Trial Act's 70-day clock into a suggestion rather than a mandate.  A dismissal without prejudice would permit the government to immediately reindict the case, starting the clock anew.  In the meantime, Mr. Goettsche has endured more than six years of pretrial restriction; memories have faded, witnesses have died, and his prospects of having a fair trial grow dimmer by the day.  The government has had ample time and opportunity to bring this case to trial.  The failure to do so within the statutory time limits, compounded by the attempt to exclude time through motions filed without legal authority, warrants dismissal with prejudice.

## CONCLUSION

For the reasons set forth above, this Court should grant the motion to dismiss in its entirety, and dismiss the underlying Indictment with prejudice.

21

Dated: June 4, 2026

Respectfully submitted,

*/s/ Matthew I. Menchel*

Matthew I. Menchel
Jessica Fender
Michael Keilty
KOBRE & KIM LLP
800 3rd Ave
New York, NY 10022
(212) 488-1288
matthew.menchel@kobrekim.com
jessica.fender@kobrekim.com
michael.keilty@kobrekim.com


*/s/ Rodney Villazor*

Rodney Villazor
Emma R. Rosen
CLARK SMITH VILLAZOR LLP
666 3rd Ave 21st Floor
New York, NY 10017
(212) 377-0850
rodney.villazor@csvllp.com
emma.rosen@csvllp.com

*Attorneys for Defendant Matthew Brent Goettsche*

22