UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Hon. Claire C. Cecchi, U.S.D.J.<br>Crim. No. 19-877 |
| v. | Motion Returnable: July 6, 2026 |
| MATTHEW BRENT GOETTSCHE, | |
| Defendant. | |

## NON-PARTY BOUNTIFUL FLIGHT, LLC'S BRIEF IN SUPPORT OF MOTION TO MODIFY RESTRAINING ORDER

**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
*Attorneys for non-party Bountiful Flight, LLC*

On the Brief:
    Jason S. Gould, Esq.
    C. Patrick Thomas, Esq.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................3

    I.      Background on Bountiful Flight and Bitwealth's Investment. .............3

    II.     After Goettsche Was Indicted, the Court Restrained Bitwealth's Shares in Bountiful Flight. ................................................................4

    III.    The Restraining Order Has Dramatically Harmed Bountiful Flight's Business and Continues to Do So............................................5

    IV.    Bountiful Flight Recently Obtained a Default Judgment Expelling Bitwealth as a Minority Shareholder. ...................................6

LEGAL ARGUMENT ..............................................................................................8

    I.      Standard................................................................................................8

    II.     The Court Should Modify the Restraining Order and Require Bountiful Flight to Pay to the U.S. Marshal the Value of the Bitwealth Shares as the Substitute *Res*.................................................10

CONCLUSION .......................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. 2003 BMW X5 SUV,*
Civ. No. WDQ-14-0912, 2015 WL 845661 (D. Maryland Feb. 24, 2015) ..................................................................................................9, 10, 12

*United States v. Approximately 81,454 Cans of Baby Formula,*
560 F.3d 638 (7th Cir. 2009) ...................................................................10

*United States v. Datwani,*
Crim. No. 00-851 (JAF), 2009 WL 961123 (D. Puerto Rico April 8, 2009) ...................................................................................................8

*United States v. Dezfooli,*
Case No. 2:22-cr-00142, 2025 WL 1942817 (D. Nev. July 14, 2025) ...........................................................................................................9

*United States v. Hall,*
877 F.3d 676 (6th Cir. 2017) ...................................................................10

*United States v. Johnston,*
No. 5:13-MJ-5181-REW, 2013 WL 5775250 (E.D. Ky. Sep. 26, 2013) ............................................................................................................9

*United States v. King,*
No. 10-122, 2010 WL 4739791 (S.D.N.Y. Nov. 12, 2010) ..................9

*United States v. One 2014 Rolls Royce Phantom Auto.,*
461 F. Supp. 3d 1 (D.D.C. 2018).............................................................9

*United States v. Real Prop. Located at 272 Old Montauk Highway,*
*Montauk, N.Y.,11954,* 298 F.R.D. 43 (E.D.N.Y. 2014) ..................9, 10

*United States v. Real Property in Waterboro,*
64 F.3d 752 (1st Cir. 1995)......................................................................8

*United States v. Riley,*
78 F.3d 367 (8th Cir. 1996) .....................................................................8

*United States v. Siegal,*
    974 F.Supp. 55 (D. Mass. 1997) ..................................................................8

*United States v. Swartz,*
    391 F. Supp. 3d 199 (N.D.N.Y. 2019) ..........................................................9

*United States v. Youssef,*
    734 F.Supp.3d 638 (E.D. Mich. 2024) .......................................................10

**Statutes**

21 U.S.C. § 853(e) ...........................................................................................8

21 U.S.C. § 853(o) .........................................................................................11

Utah Code § 48-3a-602 .....................................................................................6

**Rules**

Fed. R. Civ. P. Supp. R. (G)(7)(a) ...................................................................9

Fed. R. Civ. P. Supp. R. (G)(7)(b)(i)(A) ..........................................................9

Fed. R. Civ. P. Supp. R. (G)(7)(b)(iv) ...........................................................10

**Other Authorities**

Nev. Sec'y of State, *Business Entity Search: Business Information,*
    https://esos.nv.gov/EntitySearch/BusinessInformation (last visited
    May 19, 2026) ..............................................................................................3

## PRELIMINARY STATEMENT

This Court entered a Restraining Order in July 2021 preventing certain assets subject to criminal forfeiture from being sold until the case was over. One such restrained asset was a group of shares of non-party Bountiful Flight LLC, a commercial flight-training school in Utah that supplies pilots to regional airlines.

Bountiful Flight has nothing to do with the criminal allegations in this case. Yet some of Bountiful Flight's shares were part of the restraint because a company partially owned by Defendant Matt Goettsche, Bitwealth Holdings LLC, had invested in Bountiful Flight around 2017. The Government has alleged that Bitwealth's investment was funded by money connected to Goettsche's allegedly illegal activity. Thus, through no fault of its own, a significant percentage of Bountiful Flight's assets have been frozen since the Restraining Order went into effect almost five years ago.

That restraint has caused enormous harm to Bountiful Flight's business. One of Bountiful Flight's primary investors sold its interest in the company when it learned of Goettsche's Indictment. Worse, potential investors and lenders have refused to provide Bountiful Flight any new funding due to the stain of the Indictment and effect of the Restraining Order. For example, Bountiful Flight had three separate investors withhold approximately $3 million expressly because they

were wary of Goettsche's Indictment and the criminal restraint on some of Bountiful Flight's shares.

As a result, Bountiful Flight's value has plummeted and its very existence is at risk. Should Bountiful Flight have to close its doors, its nearly 100 employees will lose their jobs, dozens of student-pilots will have to cut short their training, and a key source of commercial pilots for regional airlines will dry up. To try to save the company, Bountiful Flight attempted to negotiate in good faith with Goettsche through his counsel to agree to an arm's-length sale of Bitwealth's shares. But Goettsche refused to negotiate without explanation.

Left with no other choice, Bountiful Flight in March 2026 filed suit in Utah to expel Bitwealth as a minority shareholder. The Utah court recently entered a default judgment against Bitwealth, expelling it from Bountiful Flight and ordering Bountiful Flight to pay the audited book value of Bitwealth's shares to this Court as substitute *res* pending the outcome of the criminal case.

Bountiful Flight now asks this Court to modify the restraining order to allow it to deliver the substitute *res* to the U.S. Marshal, who will maintain the funds until the end of the case. The Government does not object to Bountiful Flight's motion to modify the restraining order in this way.

## STATEMENT OF FACTS

### I.    Background on Bountiful Flight and Bitwealth's Investment.

Bountiful Flight is a Utah limited liability company founded in 2013 by Jason Clark and his then-partner, Michael Bennion. (*See* June 3, 2026 Declaration of Jason Clark ("Clark Decl.") ¶ 2.) Bountiful Flight does business as "FLT Academy" and provides comprehensive flight training. (*See* June 4, 2026 Declaration of Jason S. Gould ("Gould Decl.") Ex. 2 at 3–4.). In late 2016, Clark purchased Bennion's interest in Bountiful Flight (Clark Decl. ¶ 4), and Clark has acted as Bountiful Flight's sole manager since. (*Id.* ¶ 8.)

Around August 2017, Clark met Gavin Dickson. (*Id.* ¶ 5.) On information and belief, Dickson and Goettsche are Bitwealth's two members.[1] (*Id.*) Dickson, on behalf of Bitwealth, expressed an interest in becoming an investor in Bountiful Flight, and, in 2017, Bitwealth invested approximately $1.8 million in Bountiful Flight. (*Id.* ¶ 7.) At that time, Bitwealth held a 25% membership interest in Bountiful Flight, Clark held a 51% membership interest, and another investor, Homespin L.C., held a 24% membership interest. (*Id.*) Since then, Homespin (because of the Indictment) divested its interests in Bountiful Flight, and a subsequent sale reduced

---

[1] According to publicly available records, Bitwealth's Nevada business registration has been revoked. (Nev. Sec'y of State, *Business Entity Search: Business Information,* https://esos.nv.gov/EntitySearch/BusinessInformation (last visited May 19, 2026).)

Bitwealth's stake to 19%. (*Id.* ¶ 13.) Until recently, Clark owned an 81% stake in Bountiful Flight, and Bitwealth held the remaining 19%, which amounted to 1,995,000 shares ("Bitwealth's Shares"). (*Id.* ¶ 7.)

## II.     After Goettsche Was Indicted, the Court Restrained Bitwealth's Shares in Bountiful Flight.

On December 5, 2019, a federal grand jury in this District returned an Indictment charging Goettsche and others with conspiracy to commit wire fraud and conspiracy to offer and sell unregistered securities. (Doc. 281-1 at 1.) The Indictment contained a forfeiture allegation in which the Government gave notice of its intent to forfeit, upon conviction, all Goettsche's right, title, and interest in property constituting or derived from proceeds traceable to the offenses. (*Id.*)

On July 20, 2021, this Court entered an Ex Parte Post-Indictment Restraining Order. (*Id.* at 1–2.) The Restraining Order prevented Goettsche and entities associated with him, including Bitwealth, from transferring or encumbering certain properties and assets, and from taking any action that would diminish the value of the restrained property. (*Id.*) Two days later, on July 22, 2021, the Government filed a Third Forfeiture Bill of Particulars identifying Bitwealth's Shares as subject to forfeiture in this action. (*Id.*) That meant that Goettsche and Bitwealth were not permitted to, among other things, directly or indirectly sell "the assets of" Bountiful Flight. (Restraining Order at 5–6.)

-4-

**III.    The Restraining Order Has Dramatically Harmed Bountiful Flight's Business and Continues to Do So.**

The Restraining Order has caused Bountiful Flight substantial and ongoing harm. (Clark Decl. ¶ 12.)  Soon after the Indictment, Bountiful Flight's audited book value was approximately $3.25 million. (*Id.* ¶ 14.) That value has plummeted since, largely because Bountiful Flight has been unable to obtain needed additional investment due to the ongoing restraint of its shares. Based on Bountiful Flight's most recent independent audited financial statements from fiscal year 2024, its book value is now $1,090,945.[2] (*Id.* ¶ 18, Ex. 1 at 6.)

The Restraining Order has impeded Bountiful Flight from obtaining financing essential to its ability to conduct operations and grow. For example, the Small Business Administration rejected Bountiful Flight's application for financing because of the Indictment and Restraining Order.  (Clark Decl. ¶ 13; Gould Decl. Ex. 2, ¶ 31.)  On top of that, at least three potential investors, who were prepared to invest up to $3 million, declined to invest in Bountiful Flight explicitly because of risks posed by the Indictment and Restraining Order.  (Clark Decl. ¶ 13; Gould Decl. Ex. 2, ¶ 33.)

---

[2] Bountiful Flight's value in the two years prior to 2024 also showed a substantial drop in its value.  In 2022, the company was worth approximately $1.7 million, and, in 2023, it was worth approximately $1.1 million. (Clark Decl. Ex. 1 at 42, 24.)

Bountiful Flight cannot exist much longer without additional investment. If it goes out of business, it will have to lay off its nearly 100 employees, truncate the training of its student-pilots, and cut off its supply of pilots to regional airlines like SkyWest, its primary airline partner. (Clark Decl. ¶ 15.) Currently, SkyWest plays a critical role in Bountiful Flight's business model because Bountiful Flight leases approximately 60% of its airplane fleet for training from SkyWest, places graduating students as SkyWest pilots, and uses its partnership with SkyWest to recruit students. (Clark Decl. ¶ 10; Gould Decl. Ex. 2, ¶ 21.)

## IV. Bountiful Flight Recently Obtained a Default Judgment Expelling Bitwealth as a Minority Shareholder.

Fearful that the company would not survive without additional investment, Bountiful Flight sued Bitwealth in the Second Judicial District Court for Davis County, Utah seeking to expel Bitwealth as a minority owner. *Bountiful Flight, LLC v. Bitwealth Holdings*, LLC, Civil No. 260700274. Bountiful Flight alleged that the Restraining Order, Bitwealth's association with the conduct alleged in the Indictment, and Bitwealth's lapsed business registration in Nevada, among other things, justified an order expelling it from Bountiful Flight under Utah Code § 48-3a-602. (*See generally* Gould Decl. Ex. 2.) Bountiful Flight attached this Court's Restraining Order to its complaint in the Utah action. (*Id.* at 13–21.)

Bountiful Flight served Bitwealth's registered agent in Nevada with the Summons and Verified Complaint on March 11, 2026. (Gould Decl. Ex. 3.)

Bitwealth did not appear, answer, plead, or otherwise defend in the Utah action within the time allowed. (Gould Decl. Ex. 4.) On April 21, 2026, the Utah court entered a Default Certificate under Rule 55(a) of the Utah Rules of Civil Procedure. (*Id.*) On April 22, 2026, Bountiful Flight moved for default judgment (Gould Decl. Exs. 5–6), and, on May 4, 2026, the Court granted that motion. The Utah order stated that:

- Bitwealth is expelled and otherwise dissociated as a member of Bountiful Flight.

- Bountiful Flight must pay $207,279.55[3] for the Bitwealth Shares, representing their most recent independently audited book value.

- Bountiful Flight shall deposit the $207,279.55 "with the Court Registry for the United States District Court for the District of New Jersey, or as otherwise directed by the United States Attorney for the District of New Jersey."

(Gould Decl. Ex. 7 at 2.)

Bountiful Flight now moves to modify the Restraining Order so it can provide the U.S. Marshal the book value of the substitute *res* ($207,279.55) for Bitwealth's Shares now that Bitwealth has been expelled as a minority owner of Bountiful Flight.

---

[3] The $207,279.55 value of Bitwealth's Shares was based on Bountiful's most recent independently audited financial statements for fiscal year 2024. (*See* Clark Decl. Ex. 1.) Those statements reflect that Bountiful's "Member's Equity"—i.e., the book value of the equity interests in the company—equaled $1,090,945. This equates to a $207,279.55 book value for Bitwealth's 19% share. (*Id.* at 6.)

As noted above, the Government does not object to Bountiful Flight's motion to modify the Restraining Order.

## LEGAL ARGUMENT

### I.    Standard

Modifying a post-indictment pre-trial restraining order at the request of a third party is within the Court's wide discretion and plenary authority under the criminal forfeiture rules. *See* 21 U.S.C. § 853(e) (providing for pre-trial restraints of criminal proceeds); *United States v. Real Prop. in Waterboro,* 64 F.3d 752, 755–56 (1st Cir. 1995) (holding that third parties may "participate" in criminal forfeiture restraining order proceedings); *United States v. Datwani,* Crim. No. 00-851 (JAF), 2009 WL 961123, *2 (D. P.R. Apr. 8, 2009) (holding that third parties may not "challenge the ultimate forfeitability" of assets seized by restraining order but can ask the Court to "modify the restraint of their assets"). This is particularly so where the restraining order is actively causing an injustice. *See United States v. Siegal,* 974 F. Supp. 55, 57 (D. Mass. 1997) (noting that "a court may elect to hold a hearing after the initial entry of the order, and to modify the restraining order or vacate an order which has been shown to be clearly improper") (quotation omitted); *see also United States v. Riley,* 78 F.3d 367, 370 (8th Cir. 1996) (vacating a pretrial restraining order where an indictment did not properly identify property as forfeitable).

-8-

The Court's plenary authority to modify a restraining order should be exercised when necessary to "preserve the property," or to ensure that it does not deteriorate or decay. Fed. R. Civ. P. Supp. R. (G)(7)(a); *see also* Fed. R. Civ. P. Supp. R. (G)(7)(b)(i)(A) (authorizing interlocutory sale where the relevant property "is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action"). This is because it is in the interest of the Government and the Defendant to maintain the value of the asset while the prosecution is pending. *United States v. 2003 BMW X5 SUV, Civ. No. WDQ-14-0912*, 2015 WL 845661, *1 (D. Md. Feb. 24, 2015) (finding that an interlocutory sale preserves property value "for the benefit of both the Defendant and the Government") (internal citations omitted). Indeed, courts frequently approve interlocutory sales of depreciating assets.[4] This is so even if the Defendant does not consent.[5]

---

[4] *United States v. Swartz*, 391 F. Supp. 3d 199, 214 (N.D.N.Y. 2019) (depreciating business); *United States v. One 2014 Rolls Royce Phantom Auto.*, 461 F. Supp. 3d 1, 2 (D.D.C. 2018) (depreciating vehicle); *United States v. Real Prop. Located at 272 Old Montauk Highway, Montauk, N.Y., 11954*, 298 F.R.D. 43, 51 (E.D.N.Y. 2014) (depreciating real estate); *United States v. Johnston*, No. 5:13-MJ-5181-REW, 2013 WL 5775250, at *8 (E.D. Ky. Sep. 26, 2013) (depreciating horse).

[5] *United States v. King*, No. 10-122, 2010 WL 4739791 (S.D.N.Y. Nov. 12, 2010) (granting government's motion for interlocutory sale of horses over the defendant's objection because the assets were declining in value); *United States v. Dezfooli*, Case No. 2:22-cr-00142, 2025 WL 1942817 (D. Nev. July 14, 2025) (granting government's motion for interlocutory sale of real property over defendant's objection because costs were decreasing the property's value); *Swartz*, 391 F. Supp. 3d at 215 (granting the government's motion and finding "good cause" for interlocutory sale because the asset was "at serious risk of deterioration" and

Here, an interlocutory sale is unnecessary because the court in Utah has already expelled Bitwealth as a member of Bountiful Flight and ordered the audited book value of Bitwealth's shares to be provided to this Court. The proceeds therefore should be treated as "a substitute *res* subject to forfeiture" to be "held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action." Fed. R. Civ. P. Supp. R. (G)(7)(b)(iv); *2003 BMW X5 SUV*, 2015 WL 845661 at *2.

## II.    The Court Should Modify the Restraining Order and Require Bountiful Flight to Pay to the U.S. Marshal the Value of the Bitwealth Shares as the Substitute *Res.*

Since this Court entered the Restraining Order, Bountiful Flight has lost several opportunities to raise capital vital to its business. (Clark Decl. ¶¶ 13–15.) The SBA denied the company a loan, and Bountiful Flight lost out on approximately $3 million in investment because of the existence of the Indictment and Restraining Order. (*Id.* ¶ 13.) Moreover, Homespin, an early investor in the company, divested

---

ordering one over third-party objections); *272 Old Montauk Highway,* 298 F.R.D. at 53 (granting government's motion for interlocutory sale over defendant's objection in civil forfeiture proceeding under Supplemental Rule G(7) as "necessary and appropriate" because of the property's diminishing value); *United States v. Youssef,* 734 F. Supp. 3d 638 (E.D. Mich. 2024) (granting interlocutory sale and explaining the court's plenary authority to order an interlocutory sale); *United States v. Hall,* 877 F.3d 676, 685 (6th Cir. 2017) (affirming denial of interlocutory sale but noting that the court has "considerable discretion" in ordering an interlocutory sale and can "range widely" in the factors it considers); *United States v. Approximately 81,454 Cans of Baby Formula,* 560 F.3d 638, 641 (7th Cir. 2009) (same).

because it did not want to be associated with a company that had an indicted individual (Goettsche) as another investor.  Put simply, no one has been willing to invest in or lend money to the company while a significant portion of its equity is restrained due to a federal criminal prosecution.  (*See* Gould Decl. Ex. 2 ¶¶ 29–37.)

As a direct result of the lack of capital infusion, Bountiful Flight's value—and thus the value of the Bitwealth Shares—has dropped dramatically.  Around the time of the Indictment, the company was worth around $3.25 million.  (Clark Decl. ¶ 14.)  In 2022, its audited book value had fallen to approximately $1.7 million before dropping to approximately $1.1 million in 2023. (Clark Decl. Ex. 1 at 42, 24.)  As of year end 2024, Bountiful Flight's audited book value was approximately $1.09 million.  (*Id.* at 6.)

Without a modification of the Restraining Order, Bountiful Flight will continue to struggle to raise money and fund ongoing operations. There is therefore the very real possibility of Bountiful Flight going out of business.  (Clark Decl. ¶ 15.) That would result in Bountiful having to lay off its nearly 100 employees, cancel the training of dozens of student-pilots before they earn accreditation, and cut off a source of future pilots for regional airlines like SkyWest.  (*Id.*)

Worse, the Bitwealth Shares would be worthless.  That would undermine the very purpose of criminal forfeiture, which is to recoup ill-gotten gains from crimes and to restore losses to victims. *See* 21 U.S.C. § 853(o) (provisions of criminal

forfeiture should be "construed liberally to effectuate its remedial purposes"). Maintaining the current value of the asset by modifying the Restraining Order before it deteriorates further is therefore paramount to both Bountiful Flight's survival and to make whole victims of Goettsche's alleged crimes. *See 2003 BMW X5 SUV*, Civ. No. WDQ-14-0912, 2015 WL 845661, *1.

The Utah court found that the audited book value of the substitute *res* for the Bitwealth Shares was $207,279.55. (Gould Decl. Ex. 7 (adopting auditor's book value as sale price for Bitwealth's Shares).) That amount is supported by Consolidated Financial Statements and an Independent Auditor's Report from the year ended December 31, 2024. (*See* Clark Decl. Ex. 1 at 6.) Those statements reflect that Bountiful Flight's "Member's Equity"—i.e., the book value of the equity interests in the company—equaled $1,090,945. That equates to a $207,279.55 book value for Bitwealth's 19% share. That is the amount this Court should order delivered from Bountiful Flight to the U.S. Marshal after entry of a modified Restraining Order.

*   *   *

In sum, the Bitwealth Shares are deteriorating in federal custody and will continue to do so without Court intervention. The law is clear that such circumstances justify modification of the Restraining Order so Bountiful Flight can provide substitute *res* to the U.S. Marshal. The Government does not object to the

-12-

Court ordering such a modification. That will allow Bountiful Flight to survive because it will be free to raise money without the stain of the criminal restraint and will ensure that the restrained asset's value is maintained so victim losses can be restored.

## CONCLUSION

For all the above reasons, Bountiful Flight respectfully asks the Court to grant

its Motion to Modify the Restraining Order.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

*Attorneys for non-party Bountiful Flight, LLC*

Dated:  June 4, 2026                    By:   s/ Jason S. Gould

-14-