UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Hon. Claire C. Cecchi, U.S.D.J. Crim. No. 19-877 |
| v. | |
| MATTHEW BRENT GOETTSCHE, | **DECLARATION OF JASON S. GOULD** |
| Defendant. | |

I, Jason S. Gould, of full age, do depose and state as follows:

1.      I am a Partner at the law firm of Lowenstein Sandler LLP, counsel for Bountiful Flight, LLC ("Bountiful").

2.      On March 10, 2026, Bountiful filed the action styled *Bountiful Flight, LLC v. Bitwealth Holdings, LLC*, Civil No. 260700274, in the Second Judicial District Court for Davis County, State of Utah, before the Honorable Blaine Rawson (the "Utah Action").

3.      Attached as **Exhibit 2** is a true and correct copy of Bountiful's Verified Complaint in the Utah Action, which attached as Exhibit A this Court's Ex Parte Post-Indictment Restraining Order Pursuant to 21 U.S.C. § 853(e)(1)(A).

4.      Attached as **Exhibit 3** is a true and correct copy of the Proof of Service filed in the Utah Action.

5.      Attached as **Exhibit 4** is a true and correct copy of the Default Certificate entered by the Court in the Utah Action on April 21, 2026.

6.     Attached as **Exhibit 5** is a true and correct copy of Bountiful's Motion for Entry of Default Judgment filed on April 22, 2026 in the Utah Action.

7.     Attached as **Exhibit 6** is a true and correct copy of the Declaration of Jason Clark in Support of Bountiful's Motion for Entry of Default Judgment with Exhibits filed on April 22, 2026 in the Utah Action.

8.     Attached as **Exhibit 7** is a true and correct copy of the Default Judgment entered by the Court in the Utah Action on May 4, 2026.

9.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above statements are true and correct.

Dated: June 4, 2026                          s/Jason S. Gould
                                             Jason S. Gould

Gregory H. Gunn, USB 15610
Anna M. Paseman, USB 19039
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: GGunn@parsonsbehle.com
          APaseman@parsonsbehle.com

*Attorneys for Plaintiff Bountiful Flight, LLC*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**
> **Utah R. Civ. P. 8(a).**

## IN THE SECOND JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF DAVIS, STATE OF UTAH

| | |
|---|---|
| Bountiful Flight, LLC, a Utah limited liability company, | **VERIFIED COMPLAINT** |
| Plaintiff, | Civil No. _____ |
| vs. | Judge _____ |
| Bitwealth Holdings, LLC, a Nevada limited liability company, | Tier 2 |
| Defendant. | |

Plaintiff Bountiful Flight, LLC ("Bountiful Flight" or the "Company"), by and through counsel, hereby complains against Defendant Bitwealth Holdings, LLC ("Bitwealth") as follows.

### PARTIES, JURISDICTION, AND VENUE

1.     Bountiful Flight is a Utah limited liability company with its principal place of business in Davis County, Utah.

2.     Bitwealth is a revoked Nevada limited liability company with a registered agent office previously maintained in Clark County, Nevada.

4898-5798-0560

3.    This Court has subject matter jurisdiction over this action pursuant to Utah Code § 78A-5-102.

4.    This Court has personal jurisdiction over Bitwealth pursuant to Utah Code § 78B-3-205 because Bitwealth is a member of Bountiful Flight, a Utah LLC, and otherwise transacts business in the state of Utah.

5.    Venue is proper in this Court under Utah Code §§ 78B-3a-201 and 78B-3a-205.

6.    In accordance with Rule 8(a) of the Utah Rules of Civil Procedure, this action qualifies for discovery under Tier 2 in Rule 26(c)(3) because it is one for non-monetary relief.

## FACTUAL ALLEGATIONS

### *Bountiful Flight and Bitwealth's Investment into the Company*

7.    Jason Clark ("Clark") and his partner Michael Bennion founded Bountiful Flight in 2013.

8.    From 2013 to late 2016, Clark and Bennion alone owned and operated Bountiful Flight.

9.    In late 2016, Clark purchased Bennion's interest in Bountiful Flight.

10.    In late 2016, Clark also began exploring the possibility of recruiting new capital investors to help grow Bountiful Flight.

11.    Clark identified Homespin, L.C. ("Homespin") as a potential investor and agreed to give Homespin a membership interest in the Company in exchange for a capital contribution to Bountiful Flight.

12.    Around August 2017, Clark, through business acquaintances, met Gavin Dickson ("Dickson").

2

13.    Upon information and belief, Dickson and Matthew Goettsche ("Goettsche") are Bitwealth's two members.

14.    Dickson, on behalf of Bitwealth, expressed interest in becoming an investor in Bountiful Flight.

15.    As with Homespin, Bountiful Flight agreed to give Bitwealth a membership interest in the Company equal in exchange for its capital contribution to Bountiful Flight.

16.    In 2017, Bitwealth invested approximately $1.8 million in Bountiful Flight, which was then equal to a 25% membership interest in Bountiful Flight. Bitwealth's initial investment left Clark with a 51% membership interest in the Company, and Homespin with a 24% membership interest.

17.    Since late 2016, Clark has acted as Bountiful Flight's sole manager, with Homespin and Bitwealth's roles limited to that of member-investors only.

18.    Clark has operated Bountiful Flight under the name FLT Academy, a successful Utah-based commercial flight school.

19.    Bountiful Flight operates one of Utah's largest fixed wing commercial flight training programs and plays a significant role in supplying pilots to regional airlines.

20.    Clark and Bountiful Flight have worked hard to develop good business practices and establish credibility among Bountiful Flight's employees, students, and partners. These partners include regional airlines such as SkyWest Airlines ("SkyWest").

21.    SkyWest plays a critical role in Bountiful Flight's business model. Bountiful Flight has a line of credit from SkyWest to support business growth, leases approximately 60% of the airplane fleet it uses to conduct student training from SkyWest, reliably finds graduating students

3

employment as SkyWest pilots, and leverages its partnership SkyWest in student recruiting and marketing campaigns.

*Federal Indictment Against Matthew Goettsche*

22.    In December 2019, the United States Attorney's Office for the District of New Jersey criminally indicted Goettsche and several other defendants for conspiracy to commit wire fraud in connection with an alleged cryptocurrency-based Ponzi scheme worth hundreds of millions of dollars (the "Federal Indictment").

23.    Upon information and belief, federal prosecutors believe Goettsche delivered money involved in the alleged Ponzi scheme to Bitwealth.

24.    Bountiful Flight immediately worried about the impact the Federal Indictment might have on its ability to solicit new capital or financing arrangements and, in turn, its ability to grow.

25.    Bountiful Flight's concerns were realized on July 20, 2021, when, in connection with the Federal Indictment, the United States District Court for the District of New Jersey entered an Ex Parte Post-Indictment Restraining Order Pursuant to 21 U.S.C. § 853(e)(1)(A) (the "Restraining Order") directly implicating Bitwealth. A true and correct copy of the Restraining Order is attached hereto as Exhibit A.

26.    In relevant part, the Restraining Order directed Goettsche and anyone with actual notice of the Restraining Order "not [to] directly or indirectly, transfer, sell, assign, pledge, distribute, hypothecate, encumber, attach, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, distributed, hypothecated, encumbered, attached, or disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating,

4

4898-5798-0560

damaging, or in any way diminishing the value" of an extensive list of assets, including membership interests in business entities, real property, and bank accounts.

27.    The list of assets included Bitwealth's minority interest in Bountiful Flight.

28.    Upon information and belief, the purpose of the Restraining Order was to preserve potential restitution held in entities such as Bitwealth for victims of the alleged Ponzi scheme.

**Ongoing Harm to Bountiful Flight**

29.    Since the Federal Indictment began more than seven years ago, the Indictment has caused Bountiful Flight substantial, ongoing harm.

30.    For example, Bountiful Flight has been unable to obtain additional financing essential to its ability to plan for continued operations and chart long-term growth.

31.    Bountiful Flight has applied for Small Business Association financing and has been denied due to its connection to Bitwealth and Bitwealth's involvement in the Federal Indictment.[1]

32.    Homespin fully divested its membership interest in Bountiful Flight, citing Bitwealth's involvement in the Federal Indictment as a significant reason for its decision.

33.    No less than 3 investors have specifically declined to invest in Bountiful Flight due to Bitwealth's membership in Bountiful Flight and the risk associated with the Federal Indictment, thus causing Bountiful Flight to lose approximately $3 million in investments into the Company.[2]

34.    As a second example, Bountiful Flight has struggled to maintain its Company

---

[1] In August 2020, Bitwealth agreed to sell 5% of its membership interest back to Bountiful Flight in order to improve Bountiful Flight's loan eligibility. To date, Bountiful Flight still has not successfully obtained the SBA financing it sought.

[2] To date, the Federal Indictment remains pending as to Goettsche, and the Restraining Order remains in effect.

4898-5798-0560

culture and reputation.

35.    Against the backdrop of the Federal Indictment, Bountiful Flight has struggled to preserve trust and morale among its employees, students, and partners, including SkyWest airlines.

36.    Simultaneously, Bountiful Flight has faced severe financial headwinds and its value has steadily fallen.

37.    As of December 31, 2019, Bountiful Flight's value was approximately $3.25 million; today it is approximately $1 million, with Bitwealth's ownership interest in Bountiful Flight valued at approximately $200,000.

38.    Bitwealth's status as a member of Bountiful Flight prevents the Company from restructuring debt, securing refinancing, raising equity, or executing strategic transactions necessary for continued growth and stability. The Company cannot meaningfully transact business while a revoked, federally-restrained entity remains a member.

**Bitwealth's Refusal to Voluntarily Disassociate**

39.    At present, Clark holds an 81% membership interest in Bountiful Flight, while Bitwealth holds a 19% membership interest.

40.    To end its harmful association with Bitwealth, Bountiful Flight has repeatedly attempted to purchase all of Bitwealth's membership interest in the Company.

41.    Bountiful Flight's efforts have proven unsuccessful for several reasons.

42.    First, for unknown reasons, Bitwealth has entirely refused to negotiate in good faith with Bountiful Flight. Bitwealth has long ignored the bulk of Bountiful Flight's communication attempts and refused to identify an acceptable buyout amount.

43.    Second, Bountiful flight cannot determine who controls Bitwealth—whether

6

Goettsche or Dickson or someone else—nor can Bountiful Flight determine who is the correct individual to initiate negotiations. In communications with Goettsche's attorney and Dickinson, both members have asserted that they control Bitwealth and denied that the other individual controls Bitwealth.

44.     Third, Bountiful Flight cannot determine whether Bitwealth is an operating business entity of any sort. Beyond the organizational disfunction described above, Nevada revoked Bitwealth's entity registration due to its failure to file its annual report.

45.     Fourth, Bountiful Flight is concerned that Bitwealth will deliver any buyout amount directly to Goettsche and/or Dickson in violation of the Restraining Order and its purpose to preserve restitution for victims of Goettsche's alleged crimes.

46.     As a result, judicial relief is necessary to release Bountiful Flight from the harmful effects of its association with Bitwealth, while protecting the value of Bitwealth's interest in Bountiful Flight for potential restitution.

## FIRST CAUSE OF ACTION
### Member Dissociation Under Utah Code § 48-3a-602

47.     Bountiful Flight incorporates and re-alleges all allegations in the above Paragraphs as if fully set forth herein.

48.     Under Utah Code § 48-3a-602(6), a limited liability company may petition for a judicial order expelling a member in three circumstances:

    a.   Where the member has engaged or is engaging in wrongful conduct that has affected adversely or materially the limited liability company's activities and affairs;

    b.   Where the member has committed willfully or persistently a material breach of the operating agreement or a duty or obligation under Utah Code § 48-3a-409;

7

4898-5798-0560

c.  Where the member has engaged or is engaging in conduct relating to the limited liability company's activities which makes it not reasonably practicable to carry on the activities and affairs with the person as a member.

49.  Bitwealth has engaged in wrongful conduct including, but not limited to, the unlawful conduct underlying the Federal Indictment, refusing to engage with Bountiful Flight's good faith efforts to buy out Bitwealth's membership interest, failing to identify who controls the entity, and allowing its entity registration to lapse.

50.  This wrongful conduct—specifically, Bitwealth's status as a revoked, federally-restrained entity whose control is in dispute—has materially and adversely affected Bountiful Flight's ability to operate.

51.  The uncertainty and risk associated with Bitwealth's involvement in Bountiful Flight have impaired Bountiful Flight's ability to solicit new investments, diminished Bountiful Flight's culture and reputation with its employees, students, and critical partners, and devalued Bountiful Flight.

52.  This wrongful conduct—specifically, Bitwealth's status as a revoked, federally-restrained entity whose control is in dispute—has also made it not reasonably practicable for Bountiful Flight to carry on its activities and affairs with Bitwealth as a member of Bountiful Flight.

53.  The uncertainty and risk associated with Bitwealth's involvement in the Company have by impaired Bountiful Flight's ability to solicit new investments, diminished Bountiful Flight's culture and reputation with its employees, students, and critical partners, and devalued Bountiful Flight.

8

4898-5798-0560

54.    This wrongful conduct—specifically, Bitwealth's status as a revoked, federally-restrained entity whose control is in dispute—further threatens the public interest.

55.    As the Federal Indictment has persisted, Bitwealth's minority interest in Bountiful Flight's value has threatened Bountiful Flight's role in the broader Utah aviation economy, including its ability to continue employing Utah residents, educating Utah students, and repaying loans to other Utah businesses.

56.    Additionally, as the Federal Indictment has persisted, Bitwealth's minority interest in Bountiful Flight's value has eroded, diminishing the value of potential restitution if Goettsche is convicted.

57.    Bountiful Flight is thus entitled to a court order dissociating Bitwealth as a member of Bountiful Flight and directing Bountiful Flight to pay the current fair market value of Bitwealth's ownership interest to the Court Registry for the United States District Court for the District of New Jersey or as otherwise directed by the United States Attorney General for the District of New Jersey, to be held and distributed in a manner consistent with the final outcome of the Federal Indictment.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Bountiful Flight, LLC requests a judgment against Defendant Bitwealth Holdings, LLC as follows:

A.    On its First Cause of Action for Member Dissociation under Utah Code § 48-3a-602, an order dissociating Bitwealth as a member of Bountiful Flight and directing Bountiful Flight to pay the current fair market value of Bitwealth's ownership interest to Court Registry for the United States District Court for the District of New Jersey or as otherwise directed by the United

9

States Attorney General for the District of New Jersey, to be held and distributed in a manner consistent with the final outcome of the Federal Indictment; and

B.    For such other and further relief as the Court deems just and equitable.

DATED March 10, 2026.

PARSONS BEHLE & LATIMER

/s/ Gregory H. Gunn
Gregory H. Gunn
Anna M. Paseman

Attorneys for Plaintiff Bountiful Flight, LLC

10

4898-5798-0560

## VERIFICATION

I declare that the matters stated in the above Verified Complaint are within my personal knowledge or are based on my review of the records kept in the regular course of Plaintiff Bountiful Flight, LLC's business. Based upon the information so obtained and compiled, which I believe to be accurate, I believe the facts stated in the foregoing Verified Complaint are true and correct and are based on a reasonable inquiry, and I make this verification to the best of my knowledge and belief.

Pursuant to Utah Code § 78B-18a-106, I declare under criminal penalty under the law of Utah that the foregoing is true and correct.

Signed on the 1 day of March, 2026, at Salt Lake City, Salt Lake County, Utah.

Bountiful Flight, LLC

/s/ _____
By: Jason P. Clark
Its: Managing Member

11

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Claire C. Cecchi |
| | : | |
| - v. - | : | Crim. No. 19-877 |
| | : | |
| MATTHEW BRENT GOETTSCHE, | : | *EX PARTE* POST-INDICTMENT |
| RUSS ALBERT MEDLIN, | : | RESTRAINING ORDER |
| JOBADIAH SINCLAIR WEEKS, | : | PURSUANT TO 21 U.S.C. |
| JOSEPH FRANK ABEL, and | : | § 853(e)(1)(A) |
| SILVIU CATALIN BALACI, | : | |
| | : | |
| Defendants. | : | |

Upon the application of Rachael A. Honig, Acting United States Attorney

for the District of New Jersey, pursuant to 21 U.S.C. § 853(e)(1)(A), and the

affidavit of Special Agent Heather Campbell of the Federal Bureau of

Investigation, and all papers submitted in support thereof,

IT IS HEREBY ORDERED that:

Matthew Brent Goettsche, Russ Albert Medlin, and Jobadiah Sinclair

Weeks (collectively "Defendants"), and all their attorneys, agents, other family

members, and anyone acting on their behalf, and all persons or entities acting

for or in concert with or in participation with any of the above, and all persons

and entities having actual knowledge of the order, shall not take any action

prohibited by this Order; and

IT IS HEREBY FURTHER ORDERED that the Defendants, their

attorneys, agents, other family members, and anyone acting on their behalf,

and all persons or entities acting in concert or participation with any of the

above, and all persons and entities having actual knowledge of this order, shall

1

not directly or indirectly, transfer, sell, assign, pledge, distribute, hypothecate, encumber, attach, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, distributed, hypothecated, encumbered, attached, or disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the following properties:

1) All right, title, and interest of defendant Matthew Brent Goettsche, defendant Jobadiah Sinclair Weeks, Tracy Island Limited, Hachet Caye Limited, Dalmoni Belize Ltd., Caye Villa Development Limited, Marbington Limited, Getch Brothers LLC, Reel Men Stuart LLC, Reel Men Deerfield LLC, Reel Men Destin LLC, RAM Land LLC, MV Holdings LLC, El Pequeno Universo SA, MDBA Land Partnership Trust, Getch Stone LLC, AZ Life LLC, and LV Life LLC, in the following real property:

   a)   real property referred to as Hatchet Caye located twenty miles off the Placencia peninsula in the Stann Creek District of Belize (currently referred to as Ray Caye), which is owned by Tracy Island Limited through its ownership of Hatchet Caye Limited;

   b)   an office building in the town of Placencia, Belize, with legal parcel ID number 36-61-1761, which is owned by Tracy Island Limited through its ownership of Hatchet Caye Limited;

   c)   a private island described as 8.35 acres of land known as Southern Mojo Water Cay or Quashie Trapp's Caye 14 miles east of Placencia Village, Stann Creek District, Belize which is owned by Tracy Island Limited through its ownership of Hatchet Caye Limited, which wholly owns Dalmoni Belize Ltd., which wholly owns Caye Villa Development Limited;

   d)   a real estate development on the Belize mainland called Wild Orchid, located along Placencia Road, Placencia, in the Stann Creek District of Belize, specifically, (1) parcels 119, 120, 121, 122, 123 and 3041, Block 36, Placentia North Registration Section, which is owned by Tracy Island Limited through its ownership of Hatchet Caye Limited, which wholly owns Dalmoni Belize Ltd. and (2) parcels 1600, 1602,

2

1605, 3495, 3496, 3497, 3498, 3499, 3501, 3502, 3503 and 3505, Block 36, Placentia North Registration Section, which is owned by Tracy Island Limited through its ownership of Hatchet Caye Limited, which wholly owns Dalmoni Belize Ltd., which wholly owns Marbington Limited. Parcel 1605 was to be subdivided into 14 new lots, 1604-1 to 1604-14;

e)      the fractional ownership (Period B and Period C) of St. Kitts Timeshare Condominium Unit Number 117B, Windswept Residence Club, Christophe Harbor, St. Kitts;

f)      real property referred to as Casa Colonia House located in Tamarindo Beach, Santa Cruz, Guanacaste, Costa Rica;

g)      real property located at 2435 W. Bridle Meadow Circle, Bluffdale, Utah, 84065, assessor's parcel number 33-04-477-016-0000, which is owned by Getch Brothers LLC;

h)      real property located at 218 SW Federal Highway, Stuart, Florida, 34994, assessor's parcel number 053841011005000606, which is owned by Reel Men Stuart LLC (previously referenced in the Second Forfeiture Bill of Particulars filed on March 25, 2021);

i)      real property located at 2054 NE 2nd Street, Deerfield Beach, Florida, 33441, assessor's parcel number 48-43-05-04-0210, which is owned by Reel Men Deerfield LLC;

j)      proceeds of sale of real property located at 111 Harbor Boulevard, Destin, Florida which had been owned by Reel Men Destin LLC;

k)      real property located at 4381 W. Flamingo Road, 5901, Unit 59301, Las Vegas, Nevada, 89103, assessor's parcel number 162-19-511-599, which is owned by RAM Land LLC (previously referenced in the First Forfeiture Bill of Particulars filed on December 9, 2020);

l)      real property located at Country Club Drive, Mountainview, Colorado more specifically described as Lot 126R, Lot 152R, Tract OSP-118 and Tract OSP-126, Telluride Mountain Village, as shown on a replat of lots 118, 126, 130, 152A, 152B, 152C and Tract OS-1, Town of Mountain Village in San Miguel County, Colorado, assessor's parcel numbers 456534301029 and 456534301032, which is owned by MV Holdings LLC;

3

m)    real property located in the Jaco District of Costa Rica, at eleven Garabito Canton, province of Puntarenas, registration number 194724, Cadaster map number 159250-2012, which is owned by El Pequeno Universo SA;

n)    real property located in the Jaco District of Costa Rica, Garbarito Canton, province of Puntarenas, property number 56440-F-000, which is owned by El Pequeno Universo SA;

o)    real property located at 3791 63rd Street, Boulder, Colorado, assessor's parcel number 1463-23-0-00-034, which is owned by MDBA Land Partnership Trust (previously referenced in the First Forfeiture Bill of Particulars filed on December 9, 2020);

p)    real property located at 2209 Stonehenge Circle, Lafayette, Colorado, assessor's parcel number R0036849, which is owned by Getch Stone LLC;

q)    real property located at 9222 East Rimrock Drive, Scottsdale, Arizona, 85255, assessor's parcel number 217-12-111, which is owned by AZ Life LLC (previously referenced in the First Forfeiture Bill of Particulars filed on December 9, 2020); and

r)    real property located at 4381 W. Flamingo Road, 5508, Unit #55308, Las Vegas, Nevada, 89103, assessor's parcel number 16219511583, which is owned by LV Life LLC.

2) All right, title, and interest of defendant Matthew Brent Goettsche in the following legal entities:

a)    Tracy Island Limited;

b)    Hatchet Caye Limited;

c)    Dalmoni Belize Ltd.;

d)    Caye Villa Development Limited;

e)    Marbington Limited;

f)    Getch Brothers LLC;

4

g)    Reel Men Stuart LLC;

h)    Reel Men Deerfield LLC;

i)    Reel Men Destin LLC;

j)    RAM Land LLC;

k)    MV Holdings LLC;

l)    El Pequeno Universo SA;

m)    MDBA Land Partnership Trust;

n)    Getch Stone LLC;

o)    AZ Life LLC; and

p)    LV Life LLC.

3)  All right, title, and interest of defendant Matthew Brent Goettsche's and Hatchet Caye Limited in the following property:

a)    2007 Sea Ray 58 foot yacht model DB with a Hull identification number of SERY1409F607;

b)    The contents of RBC account number ███8766, held in the name of Victoria Landerman TTEE MDBA Land Partnership Trust 04/24/2015; and

c)    53.4 bitcoins and 9389.36 ethereum transferred from nine digital wallets held at Blockchain.com.

4)  Any and all ownership interest held in the name, on behalf or for the benefit of Matthew Brent Goettsche, GoBit LLC, Bitwealth Holdings LLC, Bitwealth Investments, Inc., Bitwealth Oil & Gas LLC, Reel Men LLC, Getch Holdings LLC and Hard Fork Holdings LLC in the assets of the following corporations, partnerships or other entities, and/or their subsidiaries, affiliates and joint ventures:

a)    Turnkey Pads LLC;

5

b)    Societi LLC;

c)    Pelagic Group (including Pelagic Inc., Pelagic Ventures LLC, Pelagic Retail LLC, Pelagic Adventures LLC, and Ocean Lifestyles LLC);

d)    Grid Entertainment;

e)    Evermore Park LLC;

f)    ConveyIQ, Inc;

g)    Seeker Resources LLC;

h)    Daffinity Technologies, Inc;

i)    Opiniion, LLC;

j)    Bountiful Flight, LLC;

k)    Educational Insurance Company/7Nine Inc.;

l)    ApiO Inc.;

m)    SoCal Building Ventures LLC;

n)     Kiln LLC; and

o)    Cryptowatt Mining, LLC and Cryptowatt Investment Partners, LLC.

5) The proceeds due on the loans, promissory notes, receivables, security, or financing arrangement, or other contribution, by or from, directly or indirectly, defendant Matthew Brent Goettsche, Hard Fork Holdings LLC, GoBit LLC, and Bitwealth Holdings LLC, listed below:

a)    the principal sum of $8.75 million transferred to or for the benefit of Burrell Diversified Investments, LLC from Hard Fork Holdings LLC, with interest accruing from December 7, 2018;

b)    the principal sum of $500,000 transferred to or for the benefit of BPA LLC from GoBit LLC, with interest accruing from December 31, 2018;

c)    the principal sum of $500,000 transferred to or for the benefit of Stephen Mathew Morrow from Matthew Brent Goettsche with interest accruing from July 2, 2019; and

6

d)    the combined principal sum of $5 million transferred to or for the benefit of Bluemountain VII LLC from Bitwealth Holdings LLC with interest accruing from the following dates and for respective transfer amounts, (1) $1 million on April 26, 2018; (2) $2 million on May 18, 2018; (3) $1 million on September 10, 2018; and (4) $1 million on November 1, 2018.

6) All right, title, and interest of defendant Matthew Brent Goettsche and defendant Russ Albert Medlin in the following accounts and all property traceable thereto, directly and indirectly, including but not limited to, cash and monetary instruments, the contents of any financial institution accounts to which such funds and other property have been transferred, and property and interests in property purchased in whole or in part, directly and indirectly, with such funds:

a)    the balance of currency held by AU Card LLC in the name of Russ Albert Medlin;

b)    the balance of currency held by AU Card LLC in the name of defendant Matthew Brent Goettsche; and

c)    the balance of collateral held by AU Card LLC, plus accrued interest, in connection with loans to GoBit LLC.

IT IS HEREBY FURTHER ORDERED that this Restraining Order shall be binding upon the Defendants, their attorneys, agents, other family members, and anyone acting on their behalf, and all persons or entities acting in concert or participation with any of the above, and all persons and entities having actual knowledge of this order; and

7

IT IS HEREBY FURTHER ORDERED that service of a copy of this Order shall be made on the Defendants' attorneys by mail and electronic mail within two business days following the filing of this Restraining Order.

Dated:     Newark, New Jersey

July _20_ , 2021

SO ORDERED:

_____

HON. CLAIRE C. CECCHI
UNITED STATES DISTRICT JUDGE

8

Gregory H. Gunn, USB 15610
Anna M. Paseman, USB 19039
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: GGunn@parsonsbehle.com
        APaseman@parsonsbehle.com

*Attorneys for Plaintiff Bountiful Flight, LLC*

## IN THE SECOND JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF DAVIS, STATE OF UTAH

| | |
|---|---|
| BOUNTIFUL FLIGHT, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>BITWEALTH HOLDINGS, LLC, a Nevada limited liability company,<br><br>    Defendant. | **PROOF OF SERVICE**<br><br>Civil No. 260700274<br><br>Judge Blaine Rawson<br><br>Tier 2 |

Pursuant to Utah Rule of Civil Procedure 4(e), attached as **Exhibit A** is the Proof of Service.

DATED March 11, 2026.

PARSONS BEHLE & LATIMER

/s/ Gregory H. Gunn

Gregory H. Gunn
Anna M. Paseman
Attorneys for Bountiful Flight, LLC

4931-1915-0743

# Exhibit A

4931-1915-0743

AOS

| | |
|---|---|
| **BOUNTIFUL FLIGHT, LLC** | **Plaintiff** |
| | CASE NO: 260700274 |
| **VS** | HEARING DATE/TIME: |
| **BITWEALTH, LLC** | **Defendant** | DEPT NO: |

## AFFIDAVIT OF SERVICE

GREGORY BROWN being duly sworn says: That at all times herein affiant was and is a citizen of the United States, over 18 years of age, not a party to or interested in the proceedings in which this affidavit is made. That affiant received 1 copy(ies) of the SUMMONS, COMPLAINT, on the 10th day of March, 2026 and served the same on the 11th day of March, 2026, at 08:49 by:

serving the servee BITWEALTH HOLDINGS, LLC C/O REGISTERED AGENTS, INC., REGISTERED AGENT by personally delivering and leaving a copy at (address) 732 S. 6TH ST., STE. R, LAS VEGAS NEVADA 89101 with KYLE MARTINEZ- CSR, pursuant to NRS 14,020 as a person of suitable age and discretion at the above address, which address is the address of the resident agent as shown on the current certificate of designation filed with the Secretary of State.

Pursuant to NRS 53.045

declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

EXECUTED this __11__ day of __Mar__, __2026,__

**GREGORY BROWN**
**R-2020-14947**

Junes Legal Service, Inc. - 630 South 10th Street - Suite B - Las Vegas NV 89101 - 702.579.6300 - fax 702.259.6249 - Process License #1068

Gregory H. Gunn, USB 15610
Anna M. Paseman, USB 19039
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: GGunn@parsonsbehle.com
       APaseman@parsonsbehle.com

*Attorneys for Plaintiff Bountiful Flight, LLC*

> **If you do not respond to this document within applicable time limits, judgment could be interested against you as requested. Utah R. Civ. P. 8(a).**

## IN THE SECOND JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF DAVIS, STATE OF UTAH

| | |
|---|---|
| Bountiful Flight, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> Bitwealth Holdings, LLC, a Nevada limited liability company, <br><br> Defendant. | **SUMMONS** <br><br> Civil No. 260700274 <br><br> Judge Blaine Rawson <br><br> Tier 2 |

### THE STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT:

**Bitwealth Holdings, LLC**
**c/o Registered Agents Inc., Registered Agent**
**732 S. 6th St., Ste. R**
**Las Vegas, Nevada 89101**

You are hereby summoned and required to file an answer in writing to the attached Verified Complaint with the Clerk of the Second District Court, at 805 South Main, Bountiful, Utah, 84010 within thirty (30) days after service of this Summons upon you. You are further directed to also

4926-4523-5606

serve upon or mail the answer in writing to Plaintiffs' attorneys, Gregory H. Gunn and Anna M. Paseman of Parsons Behle & Latimer, 201 S. Main Street, Ste. 1800, Salt Lake City, Utah 84111.

If you fail so to do, judgment by default may be taken against you for the relief demanded in said Verified Complaint, which has been filed with the Clerk of said Court and a copy of which is hereto annexed and herewith served upon you.

A copy of the Court's bilingual notice is also attached.

DATED March 10, 2026.

PARSONS BEHLE & LATIMER

/s/ Gregory H. Gunn

Gregory H. Gunn
Anna M. Paseman

Attorneys for Plaintiff Bountiful Flight, LLC

2

4926-4523-5606

Bilingual Notice to Responding Party for Out-of-State Summons
(for compliance with URCP 4)

A lawsuit has been filed against you. You must respond in writing by the deadline for the court to consider your side. The written response is called an Answer.

**Deadline!**
Your Answer must be filed with the court and served on the other party **within 30 days** of the date you were served with this Summons.

If you do not file and serve your Answer by the deadline, the other party can ask the court for a default judgment. A default judgment means the other party can get what they asked for, and you do not get the chance to tell your side of the story.

**Read the complaint/petition**
The Complaint or Petition has been filed with the court and explains what the other party is asking for in their lawsuit. Read it carefully.

**Answer the complaint/petition**
You must file your Answer in writing with the court **within 30 days** of the date you were served with this Summons. You can find an Answer form on the court's website: utcourts.gov/ans

Scan QR code to visit page

Se ha presentado una demanda en su contra. Si desea que el juez considere su lado, deberá presentar una respuesta por escrito dentro del periodo de tiempo establecido. La respuesta por escrito es conocida como la Respuesta.

**¡Fecha límite para contestar!**
Su Respuesta debe ser presentada en el tribunal y también con la debida entrega formal a la otra parte **dentro de 30 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio.

Si usted no presenta una respuesta ni hace la entrega formal dentro del plazo establecido, la otra parte podrá pedirle al juez que asiente un fallo por incumplimiento. Un fallo por incumplimiento significa que la otra parte recibe lo que pidió, y usted no tendrá la oportunidad de decir su versión de los hechos.

**Lea la demanda o petición**
La demanda o petición fue presentada en el tribunal y ésta explica lo que la otra parte pide. Léala cuidadosamente.

**Cómo responder a la demanda o petición**
Usted debe presentar su Respuesta por escrito en el tribunal **dentro de 30 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio. Puede encontrar el formulario para la presentación de la Respuesta en la página del tribunal: utcourts.gov/ans-span

Para accesar esta página escanee el código QR

Bilingual Notice to Responding Party for Out-of-State Summons
(for compliance with URCP 4)

### Serve the Answer on the other party

You must email, mail or hand deliver a copy of your Answer to the other party (or their attorney or licensed paralegal practitioner, if they have one) at the address shown at the top left corner of the first page of this Summons.

### Finding help

The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.



Scan QR code to visit page

### Entrega formal de la respuesta a la otra parte

Usted deberá enviar por correo electrónico, correo o entregar personalmente una copia de su Respuesta a la otra parte (o a su abogado o asistente legal, si tiene) a la dirección localizada en la esquina izquierda superior de la primera hoja del citatorio.

### Cómo encontrar ayuda legal

Para información sobre maneras de obtener ayuda legal, vea nuestra página de Internet Cómo Encontrar Ayuda Legal. (utcourts.gov/help-span) Algunas maneras de obtener ayuda legal son por medio de una visita a un taller jurídico gratuito, o mediante el Centro de Ayuda. También hay ayuda legal a precios de descuento y consejo legal breve.

Para accesar esta página escanee el código QR



An Arabic version of this document is available on the court's website:

نسخة عربية من هذه الوثيقة على موقع المحكمة على الإنترنت:ت وجد

utcourts.gov/arabic-out

بر الـمـسح قـم
لـ لرمز الـ ضوئـ ي
الـ صـ فحة لـزيـارة

A Simplified Chinese version of this document is available on the court's website:

本文件的简体中文版可在法院网站上找到：
utcourts.gov/chinese-out



请扫描QR码访问网页

A Vietnamese version of this document is available on the court's website:

Một bản tiếng Việt của tài liệu này có sẵn trên trang web của tòa:

utcourts.gov/viet-out



Xin vui lòng quét mã QR (Trả lời nhanh)để viếng trang

7016GEJ Approved January 22, 2018 / Revised January 21, 2021

**Bilingual Notice to Responding Party for Out-of-State Summons (for compliance with URCP 4)**

Page 2 of 2

The Order of the Court is stated below:
Dated: April 21, 2026          /s/ BLAINE RAWSON
05:27:04 PM                    District Court Judge

_Proposed Default Certificate Submitted By:_

Gregory H. Gunn, USB 15610
Anna M. Paseman, USB 19039
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: GGunn@parsonsbehle.com
          APaseman@parsonsbehle.com

_Attorneys for Plaintiff Bountiful Flight, LLC_

## IN THE SECOND JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF DAVIS, STATE OF UTAH

| | |
|---|---|
| Bountiful Flight, LLC, a Utah limited liability company,<br><br>　　　Plaintiff,<br><br>vs.<br><br>Bitwealth Holdings, LLC, a Nevada limited liability company,<br><br>　　　Defendant. | **DEFAULT CERTIFICATE**<br><br>Civil No. 260700274<br><br>Judge Blaine Rawson<br><br>Tier 2 |

Defendant Bitwealth Holdings, LLC was served with a copy of the Summons and Complaint on March 11, 2026, in the manner required under Rule 4(d)(1)(A) of the Utah Rules of Civil Procedure. Defendant Bitwealth Holdings, LLC has failed to answer or otherwise file a responsive pleading in this matter and the deadline for doing so has passed. Accordingly, the default of Defendant Bitwealth Holdings, LLC is hereby entered pursuant to Utah Rule of Civil Procedure 55(a).

4933-7065-3596

**IT IS SO ORDERED.**

*In accordance with Utah Rules of Civil Procedure 10(e) and Utah State District Court e-Filing Standard No. 4, this Order does not bear the handwritten signature of the Judge but instead displays an electronic signature at the upper right-hand corner of the first page of this document.*

2

4933-7065-3596

Gregory H. Gunn, USB 15610
Anna M. Paseman, USB 19039
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: GGunn@parsonsbehle.com
       APaseman@parsonsbehle.com

*Attorneys for Plaintiff Bountiful Flight, LLC*

## IN THE SECOND JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF DAVIS, STATE OF UTAH

| | |
|---|---|
| Bountiful Flight, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>Bitwealth Holdings, LLC, a Nevada limited liability company,<br><br>    Defendant. | **MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Civil No. 260700274<br><br>Judge Blaine Rawson<br><br>Tier 2 |

### REQUESTED RELIEF AND GROUNDS THEREFOR

Pursuant to Rule 55(b)(2) of the Utah Rules of Civil Procedure, Plaintiff Bountiful Flight, LLC ("Bountiful Flight"), by and through counsel, respectfully moves for the entry of Default Judgment against Defendant Bitwealth Holdings, LLC ("Bitwealth").

Bountiful Flight requests that the Court enter judgment against Bitwealth for Member Dissociation under Utah Code § 48-3a-602. Under the well-pleaded allegations of Bountiful Flight's Verified Complaint, which are now deemed admitted as a result of Bitwealth's failure to

4936-0275-4717

appear, Bountiful Flight is entitled to judgment as a matter of law on the claim for relief stated in the Verified Complaint and an order dissociating Bitwealth as a member of Bountiful Flight and directing Bountiful Flight to pay the current audited book value of Bitwealth's ownership interest, based on Bountiful Flight's most recently available audited financial statements, to Court Registry for the United States District Court for the District of New Jersey or as otherwise directed by the United States Attorney for the District of New Jersey.

## PROCEDURAL HISTORY AND STATEMENT OF RELEVANT FACTS

### I. Procedural History

1. Bountiful Flight filed its Verified Complaint on March 10, 2026. (Dkt. 1.)

2. Bitwealth was served with a copy of the Summons and Verified Complaint on March 11, 2026. *See* Proof of Service, filed March 11, 2026 (Dkt. 3).

3. The time in which to file an answer or other responsive pleading has passed because more than thirty (30) days elapsed since service of the Summons and Verified Complaint (the "Complaint"), and Bitwealth did not file any responsive pleadings, contact counsel for Bountiful Flight to seek an extension of time to respond to the Complaint, or otherwise attempt to respond to the Complaint.

4. Consequently, on April 21, 2026, the Court issued a default certificate against Bitwealth in favor of Bountiful Flight. (Dkt. 9.)

5. Under Utah Rule of Civil Procedure 55, Bountiful Flight now moves the Court to enter the default of Defendant Bitwealth Holdings, LLC and issue Default Judgment.

2

4936-0275-4717

## II. Factual Background[1]

6.      Bountiful Flight, LLC ("Bountiful Flight" or the "Company") is a Utah limited liability company with its principal place of business in Davis County, Utah. (*See* Dkt. 1, Compl. ¶ 1.)

7.      Bitwealth is a revoked Nevada limited liability company with a registered agent office maintained in Clark County, Nevada. (*See* Compl. ¶ 2; *see also* Dkt. 3, Proof of Service.)

8.      Jason Clark ("Clark") and his partner Michael Bennion founded Bountiful Flight in 2013. (*See* Compl. ¶ 7.)

9.      In late 2016, Clark purchased Bennion's interest in Bountiful Flight. (*See id.* ¶ 9.)

10.     In late 2016, Clark also began exploring the possibility of recruiting new capital investors to help grow Bountiful Flight. (*See id.* ¶ 10.)

11.     Around August 2017, Clark, through business acquaintances, met Gavin Dickson ("Dickson"). (*See id.* ¶ 12.)

12.     Dickson and Matthew Goettsche ("Goettsche") are Bitwealth's two members. (*See id.* ¶ 13.)

13.     Dickson, on behalf of Bitwealth, expressed interest in becoming an investor in Bountiful Flight. (*See id.* ¶ 14.)

14.     As Bountiful Flight had done with other investors, Bountiful Flight agreed to give Bitwealth membership interest in the Company equal in exchange for its capital contribution to Bountiful Flight. (*See id.* ¶ 15.)

---

[1] The facts set forth in this section are deemed admitted as a result of Bitwealth's failure to file a responsive pleading. *See* Utah R. Civ. P. 8(d) ("Statements in a pleading to which a responsive pleading is required, other than statements of the amount of damage, are admitted if not denied in the responsive pleading.").

3

4936-0275-4717

15.    In 2017, Bitwealth invested approximately $1.8 million in Bountiful Flight, which was then equal to a 25% membership interest in Bountiful Flight. Bitwealth's initial investment left Clark with a 51% membership interest in the Company, and one other investor—Homespin L.C. ("Homespin")—with a 24% membership interest. (*See id.* ¶ 16.)

16.    Since late 2016, Clark has acted as Bountiful Flight's sole manager, with Homespin and Bitwealth's roles limited to that of member-investors only. (*See id.* ¶ 17.)

17.    In December 2019, the United States Attorney's Office for the District of New Jersey criminally indicted Goettsche and several other defendants for conspiracy to commit wire fraud in connection with an alleged cryptocurrency-based Ponzi scheme worth hundreds of millions of dollars (the "Federal Indictment"). (*See id.* ¶ 22.)

18.    Bountiful Flight immediately worried about the impact the Federal Indictment might have on its ability to solicit new capital or financing arrangements and, in turn, its ability to grow. (*See id.* ¶ 24.)

19.    Bountiful Flight's concerns were realized on July 20, 2021, when, in connection with the Federal Indictment, the United States District Court for the District of New Jersey entered an Ex Parte Post-Indictment Restraining Order Pursuant to 21 U.S.C. § 853(e)(1)(A) (the "Restraining Order") directly implicating Bitwealth. (*See id.* ¶ 25; *see also id.* Ex. A.)

20.    In relevant part, the Restraining Order directed Goettsche and anyone with actual notice of the Restraining Order "not [to] directly or indirectly, transfer, sell, assign, pledge, distribute, hypothecate, encumber, attach, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, distributed, hypothecated, encumbered, attached, or disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating,

4

damaging, or in any way diminishing the value" of an extensive list of assets, including membership interests in business entities, real property, and bank accounts. (*See id.* ¶ 26.)

21.    The list of assets included Bitwealth's minority interest in Bountiful Flight. (*See id.* ¶ 27.)

22.    The purpose of the Restraining Order was to preserve potential restitution held in entities such as Bitwealth for victims of the alleged Ponzi scheme. (*See id.* ¶ 28.)

23.    Since the Federal Indictment began more than seven years ago, the Indictment has caused Bountiful Flight substantial, ongoing harm. (*See id.* ¶ 29.)

24.    Bountiful Flight has been unable to obtain additional financing essential to its ability to plan for continued operations and chart long-term growth. (*See id.* ¶ 30.)

25.    Bountiful Flight has applied for Small Business Association financing and has been denied due to its connection with Bitwealth and Bitwealth's involvement in the Federal Indictment. (*See id.* ¶ 31.)

26.    Homespin fully divested its membership interest in Bountiful Flight, citing Bitwealth's involvement in the Federal Indictment as a significant reason for its decision. (*See id.* ¶ 32.)

27.    No less than 3 investors have specifically declined to invest in Bountiful Flight due to Bitwealth's membership in Bountiful Flight and the risk associated with the Federal Indictment, thus causing Bountiful Flight to lose approximately $3 million in investments into the Company. (*See id.* ¶ 33.)

28.    Bountiful Flight has struggled to maintain its Company culture and reputation. Against the backdrop of the Federal Indictment, Bountiful Flight has struggled to preserve trust

5

4936-0275-4717

and morale among its employees, students, and partners, including Sky West Airlines. (*See id.* ¶¶ 18–21, 34–35.)

29. Bountiful Flight has faced severe financial headwinds and its value has steadily fallen. As of December 31, 2019, Bountiful Flight's value was approximately $3.25 million; today it is approximately $1 million, with Bitwealth's ownership interest in Bountiful Flight valued at approximately $200,000. (*See id.* ¶¶ 36–37; *see also* Declaration of Jason Clark, April 22, 2026, ¶¶ 10–14, filed concurrently herewith.)

30. Bitwealth's status as a member of Bountiful Flight prevents the Company from restructuring debt, securing refinancing, raising equity, or executing strategic transactions necessary for the continued growth and stability. The Company cannot meaningfully transact business while a revoked, federally-restrained entity remains a member. (*See id.* ¶ 38.)

31. At present, Clarks holds an 81% membership interest in Bountiful Flight, while Bitwealth holds a 19% membership interest. (*See id.* ¶ 39.)

32. To end its harmful association with Bitwealth, Bountiful Flight has repeatedly attempted to purchase all of Bitwealth's membership interest in the Company. (*See id.* ¶ 40.)

33. Bountiful Flight's efforts have proven unsuccessful for several reasons. First, for reasons unknown to Bountiful Flight and Clark, Bitwealth has entirely refused to negotiate in good faith with Bountiful Flight. Bitwealth has long ignored the bulk of Bountiful Flight's communication attempts and refused to identify an acceptable buyout amount. Second, Bountiful Flight cannot determine who controls Bitwealth—whether Goettsche or Dickson or someone else—nor can Bountiful Flight determine who is the correct individual to initiate negotiations. In communications with Goettsche's attorney and Dickson, both members have asserted that they

6

control Bitwealth and denied that the other individual controls Bitwealth. Third, Bountiful Flight cannot determine whether Bitwealth is an operating business of any sort. Beyond organizational dysfunction described herein concerning Bitwealth, Nevada revoked Bitwealth's entity registration due to its failure to file its annual report. Fourth, Bountiful Flight is concerned that Bitwealth will deliver any buyout amount directly to Goettsche and/or Dickson in violation of the Restraining Order and its purpose to preserve restitution for victims of Goettsche's alleged crimes. (*See id.* ¶¶ 41–45.)

34.    As a result, Bountiful Flight sought judicial relief to release Bountiful Flight from the harmful effects of its association with Bitwealth, while protecting the value of Bitwealth's interest in Bountiful Flight for potential restitution. (*See id.* ¶ 46.)

## ARGUMENT

I.    **THE COURT, PURSUANT TO UTAH CODE SECTION 48-3a-602, SHOULD ENTER DEFAULT JUDGMENT IN FAVOR OF BOUNTIFUL FLIGHT ON ITS CLAIM FOR RELIEF OF DISSOCIATION OF BITWEALTH AS A MEMBER OF BOUNTIFUL FLIGHT.**

Based on the well-pleaded allegations in its Verified Complaint and Bitwealth's failure to respond, Bountiful Flight is entitled to default judgment granting its claims for relief. Specifically, the judgment should reflect Bountiful Flight's request in its Verified Complaint for dissociation of Bitwealth as a member of Bountiful Flight and payment by Bountiful Flight of the current audited book value of Bitwealth's ownership interest to Court Registry for the United States District Court for the District of New Jersey or as otherwise directed by the United States Attorney for the District of New Jersey. (*See* Compl. ¶¶ 47–57; *see also id.* Request for Relief ¶¶ A–B.)

7

4936-0275-4717

Default judgment is warranted where the "well-pled facts show that the plaintiff is entitled to judgment as a matter of law." *Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 940 (Utah 1998) (citation and internal quotation marks omitted). The Utah Supreme Court has explained the default judgment process as follows:

> Rule 55 of the Utah Rules of Civil Procedure governs the process for obtaining a default judgment against a party that fails to appear or answer a complaint. "When a party against whom a judgment ... is sought has failed to plead or otherwise defend ... the clerk shall enter the default of that party." Although "a defendant's failure to appear warrants an entry of default," it "does not automatically entitle a plaintiff to a default judgment." After the clerk enters default, the nondefaulting party must then petition either the clerk or the court—depending on the circumstances—to enter judgment against the defaulting party. The clerk or the court may then enter default judgment, but "only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law."

*Wisan v. City of Hildale*, 2014 UT 20, ¶ 17, 330 P.3d 76 (citations, emphases, and footnote omitted). Additionally, the judgment granted by the court "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Utah R. Civ. P. 54(c).

The well-pleaded facts in Bountiful Flight's Verified Complaint show that Bountiful Flight is entitled to judgment as a matter of law. Bountiful Flight's cause of action for member dissociation of Bitwealth from Bountiful Flight is addressed below.

The allegations in Bountiful Flight's Verified Complaint—deemed admitted by the failure of Bitwealth to appear or appoint counsel—satisfy an "event[] causing dissociation" as provided in Section 48-3a-602(6) of the Utah Code:

> A person is dissociated a member when: ...
>
> (6) on application by the limited liability company..., the person is expelled as a member by judicial order because the person:

8

(a) has engaged or is engaging in wrongful conduct that has affected adversely and materially, or will affect adversely and materially, the limited liability company's activities and affairs;

(b) has committed willfully or persistently, or is committing willfully or persistently, a material breach of the operating agreement or a duty or obligation under Section 48-3a-409; or

(c) has engaged or is engaging in conduct relating to the limited liability company's activities and affairs which makes it not reasonably practicable to carry on the activities and affairs with the person as a member.

Utah Code § 48-3a-602(6).

Bitwealth has engaged in wrongful conduct including, but not limited to, the unlawful conduct underlying the Federal Indictment, refusing to engage with Bountiful Flight's good faith efforts to buy out Bitwealth's membership interest, failing to identify who controls the entity, and allowing its entity registration to lapse. This wrongful conduct—specifically, Bitwealth's status as a revoked, federally-restrained entity whose control is in dispute—has materially and adversely affected Bountiful Flight's ability to operate.

Bitwealth has engaged or is engaged in conduct relating to Bountiful Flight's activities and affairs which make it not reasonably practicable for Bountiful Flight to carry on its activities and affairs with Bitwealth as a member. The uncertainty and risk associated with Bitwealth's involvement with Bountiful Flight have impaired Bountiful Flight's ability to solicit new investments, diminished Bountiful Flight's culture and reputation with its employees, students, and critical partners, and devalued Bountiful Flight. This conduct by Bitwealth has made it not reasonably practicable for Bountiful Flight to carry on its activities and affairs with Bitwealth as a member of Bountiful Flight.

9

4936-0275-4717

Bitwealth's wrongful conduct further threatens the public interest. As the Federal Indictment has persisted, Bitwealth's minority interest in Bountiful Flight's value has threatened Bountiful Flight's role in the broader Utah aviation economy, including its ability to continue employing Utah residents, educating Utah students, and repaying loans to other Utah businesses. Additionally, as the Federal Indictment as persisted, Bitwealth's minority interest in Bountiful Flight's value has eroded, diminishing the value of potential restitution if Goettsche is convicted.

Bountiful Flight is thus entitled to a court order dissociating Bitwealth as a member of Bountiful Flight and directing Bountiful Flight to pay the current audited book value of Bitwealth's ownership interest, based on Bountiful Flight's most recently available audited financial statements, to the Court Registry for the United States District Court for the District of New Jersey or as otherwise directed by the United States Attorney for the District of New Jersey, to be held and distributed in a manner consistent with the final outcome of the Federal Indictment.

## CONCLUSION

Based on the foregoing, and together with the Verified Complaint and the exhibit attached thereto, the Court should exercise is power and discretion under Rule 55(b)(2) of the Utah Rules of Civil Procedure and enter Default Judgment against Defendant Bitwealth Holdings, LLC as follows:

A.    An order dissociating Bitwealth Holdings, LLC as a member of Bountiful Flight, LLC and directing Bountiful Flight, LLC to pay the current audited book value of Bitwealth Holdings, LLC's ownership interest, based on Bountiful Flight, LLC's most recently available audited financial statements, to the Court Registry for the United States District Court for the

10

4936-0275-4717

District of New Jersey or as otherwise directed by the United States Attorney for the District of New Jersey, to be held and distributed in a manner consistent with the final outcome of the Federal Indictment.

A proposed form of Default Judgment has been filed concurrently with the motion for the Court's consideration.

DATED April 22, 2026.

PARSONS BEHLE & LATIMER

/s/ Gregory H. Gunn
Gregory H. Gunn
Anna M. Paseman

Attorneys for Plaintiff Bountiful Flight, LLC

11

4936-0275-4717

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2026, I caused the foregoing **MOTION FOR ENTRY OF DEFAULT JUDGMENT** to be filed using the Court's electronic filing system.


/s/ Gregory H. Gunn
_____

4936-0275-4717

Gregory H. Gunn, USB 15610
Anna M. Paseman, USB 19039
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: GGunn@parsonsbehle.com
          APaseman@parsonsbehle.com

*Attorneys for Plaintiff Bountiful Flight, LLC*

## IN THE SECOND JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF DAVIS, STATE OF UTAH

| | |
|---|---|
| Bountiful Flight, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Bitwealth Holdings, LLC, a Nevada limited liability company,<br><br>Defendant. | **DECLARATION OF JASON CLARK IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Civil No. 260700274<br><br>Judge Blaine Rawson<br><br>Tier 2 |

I, Jason Clark, declare and state as follows:

1.    I am over the age of majority and have personal knowledge of the matters set forth herein. I am competent in all respects to make the statements set forth in this Declaration.

2.    In 2013, together with my partner Michael Bennion, Bountiful Flight, LLC was founded. Bountiful Flight, LLC ("Bountiful Flight" or the "Company") is a Utah limited liability company.

3.    In late 2016, I purchased Michael Bennion's interest in Bountiful Flight.

4929-2698-1790

4.    In late 2016, I began exploring the possibility of recruiting new capital investors to help grow Bountiful Flight.

5.    Around August 2017, through business acquaintances, I met Gavin Dickson ("Dickson").

6.    Dickson and Matthew Goettsche ("Goettsche") are Bitwealth Holdings, LLC's ("Bitwealth") two members. Dickson, on behalf of Bitwealth, expressed interest in becoming an investor in Bountiful Flight.

7.    As Bountiful Flight had done with other investors, Bountiful Flight agreed to give Bitwealth membership interest in the Company equal in exchange for its capital contribution to Bountiful Flight.

8.    In 2017, Bitwealth invested approximately $1.8 million in Bountiful Flight, which was then equal to a 25% membership interest in Bountiful Flight. Bitwealth's initial investment left me with a 51% membership interest in the Company, and one other investor named Homespin L.C with a 24% membership interest.

9.    Since late 2016, I have acted as Bountiful Flight's sole manager, with Homespin L.C. and Bithwealth's roles limited to that of member-investors only.

10.    In December 2019, at the time the United States Attorney's Office for the District of New Jersey criminally indicted Goettsche and several other defendants for conspiracy to commit wire fraud in connection with an alleged cryptocurrency-based Ponzi scheme worth hundreds of millions of dollars (the "Federal Indictment"), Bountiful Flight's value was approximately $3.25 million as of December 31, 2019.

2

11.     Following the Federal Indictment, Homespin L.C. fully divested its membership interest in Bountiful Flight, citing Bitwealth's involvement in the Federal Indictment as a significant reason for its decision.

12.     At present, I hold an 81% membership interest in Bountiful Flight, while Bitwealth holds a 19% membership interest.

13.     As discussed in the Verified Complaint that Bountiful Flight filed in this lawsuit, the Federal Indictment involving Bitwealth, together with the Restraining Order, has caused Bountiful Flight substantial, ongoing harm.

14.     Based on its most recently available audited financial statements, Bountiful Flight's stated book value was $1,090,945, with Bitwealth's 19% ownership interest valued at $207,279.55. *See* Bountiful Flight, LLC Consolidated Financial Statements and Independent Auditor's Report (Year End December 31, 2024) at p.16, attached hereto as Exhibit A.

Pursuant to Utah Code § 78B-18a-106, I declare under criminal penalty under the law of Utah that the foregoing is true and correct.

Executed April 22, 2026, at Bountiful, Davis County, Utah.

3

4929-2698-1790

# Exhibit A

4929-2698-1790

# Bountiful Flight, LLC (dba FLT Academy)

Consolidated Financial Statements and
Independent Auditor's Report

For the year ended December 31, 2024

Prepared by Bangerter, Lund Associates
Certified Public Accountants

# Bountiful Flight, LLC (dba FLT Academy)
## Table of Contents

Independent Auditor's Report                                                     1

Consolidated Balance Sheet                                                       3

Consolidated Statement of Income and Changes in Member's Equity                  4

Consolidated Statement of Cash Flows                                             5

Notes to the Consolidated Financial Statements                                   6

Supplemental Information:

    Schedule I - Consolidating Balance Sheet                   15

    Schedule I - Consolidating Income Statement and Changes in Member's Equity    16



Certified Public Accountants

## INDEPENDENT AUDITOR'S REPORT

To the Member of
**Bountiful Flight, LLC**
Woods Cross, Utah

### Opinion

We have audited the accompanying consolidated financial statements of Bountiful Flight, LLC, dba FLT Academy (a Utah limited liability company) and its subsidiary Cruiser Aircraft USA, LLC (a Utah limited liability company), collectively referred to as the "Company", which comprise the consolidated balance sheet as of December 31, 2024, and the related consolidated statements of income and changes in member's equity and cash flows for the year then ended, and the related notes to the consolidated financial statements.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2024, and the results of its operations and its cash flows for the then ended in accordance with accounting principles generally accepted in the United States of America.

### Basis for Opinion

We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of the Company and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audits. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Responsibilities of Management for the Financial Statements

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Company's ability to continue as a going concern within one year after the date that the financial statements are available to be issued.

### Auditor's Responsibilities for the Audit of the Financial Statements

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with generally accepted auditing standards will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements, including omissions, are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements.

In performing an audit in accordance with generally accepted auditing standards, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.

- Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control. Accordingly, no such opinion is expressed.

- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements.

- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Company's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control related matters that we identified during the audit.

### Supplemental Information

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements as a whole. The supplemental information contained in Schedules I and II is presented for purposes of additional analysis and is not a required part of the consolidated financial statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the consolidated financial statements. The information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated in all material respects in relation to the consolidated financial statements as a whole.

*Barqporter, Ward & Associate.*

Bountiful, Utah
October 21, 2025

# Bountiful Flight, LLC (dba FLT Academy)
## Consolidated Balance Sheet
### December 31, 2024

### Assets

| | | |
|---|---|---:|
| **Current assets:** | | |
| Cash | $ | 2,468,444 |
| Related party receivables | | 2,158 |
| Inventory | | 941,775 |
| Prepaid expenses | | 62,009 |
| Student promissory notes, current portion | | 310,198 |
| Deposits | | 491,324 |
| **Total current assets** | | 4,275,908 |
| **Property and equipment, net** | | 1,388,110 |
| **Restricted cash** | | 876,241 |
| **Student promissory notes** | | 2,706,223 |
| **Less: allowance for credit losses** | | (138,346) |
| **Student promissory notes, net** | | 2,567,877 |
| **Related party note receivable** | | 603,457 |
| **Right of use assets** | | 2,037,937 |
| **Total assets** | $ | 11,749,530 |

### Liabilities and Member's Equity

| | | |
|---|---|---:|
| **Current liabilities:** | | |
| Accounts payable | $ | 68,326 |
| Accrued liabilities | | 130,470 |
| Payroll liabilities | | 197,980 |
| Deferred revenue | | 5,150,239 |
| Note payable, current portion | | 11,786 |
| Lease liability, current portion | | 751,274 |
| **Total current liabilities** | | 6,310,075 |
| **Lease liability, net of current portion** | | 1,297,456 |
| **Notes payable, net of current portion** | | 3,051,054 |
| **Total liabilities** | | 10,658,585 |
| **Member's equity** | | 1,090,945 |
| **Total liabilities and member's equity** | $ | 11,749,530 |

See independent auditor's report and accompanying notes to the consolidated financial statements

3

# Bountiful Flight, LLC (dba FLT Academy)
## Consolidated Statement of Income and Changes in Member's Equity
### For the year ended December 31, 2024

| | | |
|---|---|---:|
| Total revenues | $ | 10,891,733 |
| Total costs of sales | | 9,582,363 |
| Gross profit | | 1,309,370 |
| Operating expenses: | | |
| Wages and benefits | | 720,703 |
| Bad debt expense | | 276,938 |
| Lease expense | | 188,136 |
| Advertising | | 168,847 |
| Professional fees | | 155,777 |
| Technology costs | | 124,465 |
| Office expenses | | 113,335 |
| Dues and subscriptions | | 68,580 |
| Travel and meals | | 46,598 |
| Insurance | | 46,005 |
| Depreciation expense | | 40,231 |
| Telephone and internet | | 34,976 |
| Utilities | | 27,508 |
| Client development | | 25,276 |
| Building maintenance | | 16,130 |
| Bank charges | | 13,830 |
| Vehicle expenses | | 7,620 |
| Total operating expenses | | 2,074,955 |
| Operating loss | | (765,585) |
| Other income & (expense) | | |
| Interest income | | 453,577 |
| Interest expense | | (28,852) |
| Other expense | | (4,608) |
| Other income | | 200,999 |
| Gain on sale of property and equipment | | 118,101 |
| Total other income & (expense) | | 739,217 |
| Net loss | | (26,368) |
| Member's equity, beginning of year | | 1,117,313 |
| Members' equity, end of year | $ | 1,090,945 |

See independent auditor's report and accompanying notes to the consolidated financial statements

4

# Bountiful Flight, LLC (dba FLT Academy)
## Consolidated Statement of Cash Flows
### For the year ended December 31, 2024

| | | |
|---|---|---:|
| **Cash flows from operating activities:** | | |
| Net loss | $ | (26,368) |
| **Adjustments to reconcile net loss to net cash** | | |
| **from operating activities:** | | |
| Depreciation | | 95,157 |
| Gain on sale of property and equipment | | (118,101) |
| Interest income from related party notes receivable | | (20,543) |
| Amortization of right of use lease asset | | 674,669 |
| **(Increase) decrease in operating assets:** | | |
| Related party receivables | | (2,158) |
| Inventory | | (185,219) |
| Prepaid expenses | | 49,767 |
| Student promissory notes, net | | 309,316 |
| Deposits | | 679,124 |
| Other assets | | 77,194 |
| **Increase (decrease) in operating liabilities:** | | |
| Accounts payable | | 882 |
| Accrued liabilities | | (9,619) |
| Payroll liabilities | | 21,896 |
| Deferred revenue | | (706,991) |
| Lease liability | | (694,037) |
| **Net cash from operating activities** | | 144,969 |
| **Cash flows from investing activities:** | | |
| Acquisition of property and equipment | | (552,952) |
| Proceeds from sale of property and equipment | | 156,053 |
| Issuance of related party notes receivable | | (481,519) |
| Payments received on related party note receivable | | 2,274 |
| **Net cash from investing activities** | | (876,144) |
| **Cash flows from financing activities:** | | |
| Payment on notes payable | | (3,252) |
| **Net cash from financing activities** | | (3,252) |
| **Net change in cash and restricted cash** | | (734,427) |
| **Cash and restricted cash, beginning of year** | | 4,079,112 |
| **Cash and restricted cash, end of year** | $ | 3,344,685 |
| **Supplemental disclosures of cash flow information:** | | |
| Interest paid | $ | 28,852 |
| **Supplemental disclosures of noncash investing and financing activities:** | | |
| Student promissory note payments applied directly to reduce note payable | $ | 40,000 |

See independent auditor's report and accompanying notes to the consolidated financial statements

5

# Bountiful Flight, LLC (dba FLT Academy)
## Notes to the Consolidated Financial Statements
### December 31, 2024

**Note 1 - Organization**

**Bountiful Flight, LLC, dba FLT Academy** ("FLT") is a limited liability company under the laws of the State of Utah on March 6, 2013 located in Woods Cross, Utah. FLT provides comprehensive flight training services for individuals pursuing careers as professional pilots, as well as for hobbyists and private aviators. FLT's primary operations include ground school instruction, simulator training, and in-air flight training. The flight training programs are structured to meet the requirements set forth by the Federal Aviation Administration (FAA) for various pilot certifications, including Private Pilot, Commercial Pilot, Instrument Rating, and Certified Flight Instructor.

**Cruiser Aircraft USA, LLC** ("Cruiser") is a limited liability company under the laws of the State of Utah on October 21, 2022. Cruiser is a wholly owned subsidiary of FLT and was formed to sell plane and repair parts in the USA.

**Note 2 - Significant accounting policies**

**Principles of consolidation** - The consolidated financial statements include the accounts and operations of Bountiful Flight, LLC, dba FLT Academy and Cruiser Aircraft USA, LLC (collectively referred to as the "Company"). All significant intercompany balances and transactions have been eliminated in preparation of the consolidated financial statements.

**Basis of accounting** - The consolidated financial statements of the Company have been prepared on the accrual basis of accounting and accordingly reflect all significant receivable, payables and other liabilities.

**Management Estimates** - The preparation of consolidated financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingent assets and liabilities at the date of the financial statements, and the reported amounts of revenue and expenses during the reporting period. Actual results could differ from those estimates.

**Cash and cash equivalents** - The Company considers all highly liquid investments with an original maturity of three months or less to be cash and cash equivalents. Cash and cash equivalents are deposited with a financial institution and at times are in excess of Federal Deposit Insurance Corporation ("FDIC") insurance limits. At of December 31, 2024, the Company had $2,210,188 of uninsured cash balances at financial institutions.

**Inventory** - Inventory consists of airplane parts and student accessory kits which stated at cost using the FIFO (first in, first out) method.

**Property and equipment** - Property and equipment is stated at cost, less accumulated depreciation and is being depreciated over estimated useful lives of 3 to 39 years using straight-line method. Expenditures for additional and betterments are capitalized. At the time property and equipment are retired or otherwise disposed of, the related cost and accumulated depreciation are removed from the accounts and any resulting gain or loss is included in operations. Depreciation expense was $95,157 for the year ended December 31, 2024.

6

# Bountiful Flight, LLC (dba FLT Academy)
## Notes to the Consolidated Financial Statements (continued)
### December 31, 2024

**Note 2 - Significant accounting policies (continued)**

**Property and equipment (continued)** - The breakout of depreciation expense between cost of sales and general operating is detailed below.

|  | | 2024 |
|---|---|---|
| Cost of sales | $ | 54,926 |
| Operating expense | | 40,231 |
| Total operating lease expense | $ | 95,157 |

**Student promissory notes and allowance for credit losses** - The Company issues promissory notes to students for tuition and related training expenses. These notes typically have extended repayment terms and are subject to credit risk based on the financial stability of the students or guarantors. Management assesses the collectability of these notes using historical default rates, current economic conditions, and the financial profile of the note holders. The allowance for credit losses on student promissory notes is established to reflect the estimated uncollectible amounts. Changes in the allowance are recognized as an adjustment to bad debt expense. As of December 31, 2024, the gross balance of student promissory notes was $3,016,421, with an allowance for credit losses of $138,346, resulting in a net balance of $2,878,075. The Company expects to collect $310,198 on these notes in the short-term and are classified as current on the consolidated balance sheet. The opening gross balance as of January 1, 2024, was $3,375,194.

When an account is deemed uncollectible, it is written off as a bad debt expense. For the year ended December 31, 2024, the Company had direct write-offs of $320,978 is shown in bad debt expense on the consolidated statement of income and changes in member's equity. If a previously written-off balance is subsequently collected, the recovery is recorded as other income. For the year ended December 31, 2024, the Company had bad debt recoveries of $128,018 which is included in other income on the consolidated statement of income and changes in member's equity.

The rollforward of the allowance for credit losses for student promissory notes was as follows:

| | | |
|---|---|---|
| Beginning balance, January 1, 2024 | $ | 187,803 |
| Provision for credit losses | | (49,457) |
| Ending balance, December 31, 2024 | $ | 138,346 |

**Advertising** - Advertising costs are expensed as incurred. For the year ended December 31, 2024, the Company had advertising costs of $168,847.

**Revenue recognition** - The Company recognizes revenues from various revenue streams related to student flight training under ASC Topic 606. Below outlines the various revenue streams, the performance obligations, and the timing of fulfilling the performance obligations related to the flight training program under Topic 606.

7

**Bountiful Flight, LLC (dba FLT Academy)**
**Notes to the Consolidated Financial Statements (continued)**
December 31, 2024

| | |
|---|---|
| Note 2 - Significant accounting policies (continued) | *Aircraft and simulator revenue* - Revenues from student airplane and simulator rentals are recognized at point-in-time after the completion of the rental session. |

*Instructor revenue* - Revenues for flight instructor hours are recognized over-time as the instructor renders the service to the student.

*Student classroom revenue* - Revenues from classroom fees are recognized over-time as classroom sessions occur. If the program spans multiple reporting periods, revenue is recognized proportionately to the services delivered.

*Exam and Designated Pilot Examiner ("DPE") revenue* - Revenue from exam and DPE fees is recognized at a point-in-time upon completion of exams or practical test.

*Student accessory kit revenue* - Revenue from student accessory kits are recognized at a point-in-time as control of the kit transfers from the Company to the student, typically upon delivery.

*Other revenue* - Other includes fees for course cancellations, charges for supplemental course materials, and other course-related items and are recognized at a point-in-time when the related service is provided or the obligation is met.

The Company requires payment upfront for their flight training program. These payments represent a contract liability and are recognized proportionally as the performance obligations are satisfied. The beginning and ending balance of the contract liability for the year ended December 31, 2024 was $5,857,230 and $4,798,713, respectively.

Revenues disaggregated based their source are outlined below:

Revenue by source:

| | |
|---|---:|
| Aircraft and simulation revenue | $ 4,392,372 |
| Instructor revenue | 2,301,287 |
| Aircraft and parts | 2,792,252 |
| Student classroom fee revenue | 542,856 |
| Exam and DPE fee revenue | 322,794 |
| Student accessory kit revenue | 41,121 |
| Fuel surcharge | 267,029 |
| Other revenue | 232,022 |
| Total revenues by source | $ 10,891,733 |

Revenues disaggregated based their timing are outlined below:

Revenue by timing:

| | |
|---|---:|
| Point-in-time | $ 10,348,877 |
| Over-time | 542,856 |
| Total revenues by timing | $ 10,891,733 |

8

## Bountiful Flight, LLC (dba FLT Academy)
### Notes to the Consolidated Financial Statements (continued)
#### December 31, 2024

| | |
|---|---|
| **Note 2 - Significant accounting policies (continued)** | **Financial Instruments and Concentration of Credit Risk** - The carrying amounts reported in the accompanying consolidated financial statements for cash, accounts receivable, other assets, accounts payable and accrued liabilities approximate fair value because of the immediate or short-term maturities of these financial instruments. |

**Income taxes** - The Company with the consent of its members, was formed as an LLC. The Company's earnings and losses are included and taxed in the personal income tax returns of its members. Accordingly, the Company does not incur income tax obligations. The Company follows the provisions of FASB ASC 740-10 relating to accounting for uncertainty in income taxes. These provisions clarify the accounting and reporting for uncertainties in the application of the income tax laws to the Company's operations. The provisions also prescribe a comprehensive model for the financial statement recognition, measurement, presentation, and disclosure of uncertain tax positions taken or expected to be taken in income tax returns. There was no impact to the results of operations and financial position as a result of adopting these provisions. Tax years that remain subject to examination are years 2022 and forward.

**Note 3 - Cash and restricted cash**

The following table provides a reconciliation of cash and restricted cash reported within the consolidated balance sheet that sum to the total of the same such amounts shown in the consolidated statement of cash flows:

| | |
|---|---:|
| Cash | $ 2,468,444 |
| Risk share | 198,611 |
| Maintenance reserves | 677,630 |
| Total cash and restricted cash as shown in the statement of cash flows | $ 3,344,685 |

The Company maintains restricted cash related to its student loan guarantee program under an agreement with FMS Bank. The restricted cash is held in a reserve account pledged as collateral to secure the Company's guaranty obligations on outstanding student loans. The Company does not have access to the reserve funds without lender approval, and the balance will be released as loan repayment conditions are met. The balance of the risk share at December 31, 2024 was $198,611.

The Company's maintenance reserve is a reserve established by the lessors of their airplanes in accordance with the Company's lease agreements and is funded monthly with the lease payments. Funds from the reserve are released upon approval from the lessor for engine and propellor repairs and replacements. The balance of the maintenance reserves at December 31, 2024 was $677,630.

9

**Bountiful Flight, LLC (dba FLT Academy)**
**Notes to the Consolidated Financial Statements (continued)**
**December 31, 2024**

**Note 4 -**
**Property and**
**equipment**

Property and equipment at December 31, 2024 is as follows:

| | |
|---|---:|
| Airplanes | $ 1,876,070 |
| Furniture and equipment | 148,188 |
| Shop equipment | 132,238 |
| Leasehold improvements | 148,381 |
| Total property and equipment | 2,304,877 |
| Less accumulated depreciation | (916,767) |
| Property and equipment, net | $ 1,388,110 |

**Note 5 -**
**Leases**

The Company assesses whether an arrangement qualifies as a lease (i.e., conveys the right to control the use of an identified asset for a period of time in exchange for consideration) at inception and only reassesses its determination if the terms and conditions of the arrangement are changed.

The Company leases office space in Woods Cross, Utah under a three-year non-cancelable operating lease agreement beginning August 1, 2021 with monthly rental payments of $6,250 escalating 2% each year through the expiration of the lease. The Company also leases a hanger in Springville, Utah under a two-year non-cancelable operating lease agreement beginning February 2023 and another hanger in Woods Cross, Utah under a three-year non-cancelable operating lease agreement beginning July 2023. Monthly rental payments for these leases are $5,126 and $2,800 with the Woods Cross lease escalating 9% in year two through the expiration of the lease.

The Company leases 43 airplanes under similar terms from one leasing company. The leases are for five years with monthly rental payments ranging from $792 to $2,587 and expirations ranging from January 2025 to July 2029.

As of December 31, 2024, the ROU lease asset associated with these leases had a balance of $2,037,937, as shown in noncurrent assets on the consolidated balance sheet; the lease liability is included in current liabilities of $751,274 and long-term liabilities of $1,297,456. The Company elected the policy to utilize the risk-free discount rate for calculating the lease asset and liability which takes into account the term of the leases and the U.S. Treasury rate at commencement of the leases. The Company elected not to apply the practical expedient under ASC 842 that permits combining lease and non-lease components. As a result, the Company separately identifies and accounts for lease components and non-lease components within its contracts for purposes of recognition and measurement.

10

# Bountiful Flight, LLC (dba FLT Academy)
## Notes to the Consolidated Financial Statements (continued)
### December 31, 2024

**Note 5 -**
**Leases**
**(continued)**

The Woods Cross office space lease has two options to renew for an additional two years which was taken into account when determining the lease asset and lease liability as management believed they were reasonably certain the lease would be renewed. The airplane leases did not have options to renew in the contract; however, as earlier leases came close to expiring, the Company executed new lease agreements with the lessor to lease the airplanes for an additional five years. The modifications were taken into account for leases that have been extended in determining the lease asset and lease liability.

The Company accounts for lease expense in both its cost of sales as well as operating expenses. The following summarized lease expense related to their non-cancelable operating leases by cost of sales and operating expenses for the year ended December 31:

|  | | 2024 |
|---|---|---|
| Cost of sales | $ | 573,438 |
| Operating expense | | 188,136 |
| Total operating lease expense | $ | 761,574 |

The following summarizes the line items in the consolidated balance sheet for operating leases as of December 31:

|  | | 2024 |
|---|---|---|
| Right of use lease asset | $ | 2,037,937 |
| Lease liability | $ | 2,048,730 |

Future minimum lease payments under non-cancelable lease are as follows:

For the years ended December 31

|  | | |
|---|---|---|
| 2025 | $ | 799,175 |
| 2026 | | 675,127 |
| 2027 | | 473,436 |
| 2028 | | 158,137 |
| 2029 | | 24,940 |
| Thereafter | | - |
| Total future minimum lease payments | $ | 2,130,815 |
| Less: amounts representing interest | | (82,085) |
| Present value of lease liability | $ | 2,048,730 |

|  | |
|---|---|
| Weighted-average remaining lease term (in years) | 2.97 |
| Weighted-average discount rate | 2.95% |

11

# Bountiful Flight, LLC (dba FLT Academy)
## Notes to the Consolidated Financial Statements (continued)
### December 31, 2024

**Note 6 -**
**Notes payable**

The Company obtained an Economic Injury Disaster Loan ("EIDL") from the Small Business Administration in June 2020 totaling $150,000 as a result of the COVID-19 pandemic. In April 2022, the loan was amended to increase the principal balance to $500,000. Interest on the loan accrues at 3.75% and monthly payments of $2,517 began December 2022. The loan payments were interest only until November 2024, at which time payments were applied to principal and interest.. The loan matures in June 2040. At December 31, 2024, the outstanding balance on the loan was $496,749.

The Company also has a note payable agreement with SkyWest Leasing, Inc., established on November 14, 2017, with a maximum borrowing capacity of $4,000,000. The note supports the Company's pilot training program, with advances made bi-monthly to fund individual pilots-in-training. Advances are capped at $16,000 per pilot, and the availability period for new advances ended on August 31, 2018. The note is secured by specific collateral, including aircraft, airframes, engines, and related property, excluding accounts receivable and certain cash assets. Interest accrues at rates based on the applicable short-term and long-term federal rates at the time of each advance. Repayment of the outstanding balance is governed by the terms of the agreement, including potential loan forgiveness provisions tied to pilot employment and training milestones achieved within the SkyWest program. As of December 31, 2024, the outstanding balance under the note was $2,566,091.

In March 2025, SkyWest Leasing, Inc. executed a formal Satisfaction and Release Agreement, forgiving the outstanding balance in full and releasing the Company from any further obligations under the original agreement. As such, the liability was extinguished and removed from the Company's financial statements in 2025.

Future maturities of the EIDL note payable are as follows for the calendar year ended December 31,

| | | |
|---|---|---:|
| 2025 | $ | 11,786 |
| 2026 | | 12,235 |
| 2027 | | 12,702 |
| 2028 | | 13,187 |
| 2029 | | 13,690 |
| Thereafter | | 433,149 |
| Total notes payable | $ | 496,749 |

12

# Bountiful Flight, LLC (dba FLT Academy)
## Notes to the Consolidated Financial Statements (continued)
### December 31, 2024

**Note 7 - Related party transactions**

The Company has a note receivable with the owner that is non-interest bearing and has no set repayment terms. Management considers this note long-term in nature. The balance on the note receivable at December 31, 2024 was $21,275.

In 2023, the Company advanced $100,000 under a note receivable to an entity under common ownership. During the year ended December 31, 2024, the Company advanced and additional $481,519 in funds. The funds were provided to assist with the purchase of aircraft, which are expected to be leased to the Company in the future. The note accrues interest at an annual rate of 4%, and interest income of $20,543 was recognized for the year ended December 31, 2024 and is included in the note balance. Repayment of the note is expected to occur through reductions in lease payments otherwise due to the related party once the leases commence. During the year ended December 31, 2024, the Company received principal payments of $2,274 on the note receivable. As of December 31, 2024, the full outstanding balance of the note, including accrued interest, was $582,182.

The Company also has certain payroll advances with their employees. Management believes these balances to be short-term in nature. Balance on these advances as of December 31, 2024 was $2,158.

**Note 8 - Retirement plan**

The Company sponsors a defined contribution 401(k) retirement plan for eligible employees. Employees who are at least 18 years old and have completed three months of service may participate in the plan. The plan includes an automatic enrollment feature with a default contribution rate of 1%, which employees may change or opt out of at any time. Employees may contribute on a pre-tax or Roth after-tax basis, subject to annual IRS limits. The Company makes safe harbor matching contributions equal to 100% of employee contributions up to 3% of compensation and 50% of contributions from 3% to 5%. All employee contributions and safe harbor matching contributions are fully vested. For the year ended December 31, 2024, the Company made matching contributions totaling $83,337 which are included in wages and benefits on the consolidated statement of income and changes in member's equity.

**Note 9 - Subsequent events**

The Company evaluated all events or transactions that occurred after December 31, 2024 through October 21, 2025, the date the Company issued these consolidated financial statements. During that period, other than what is noted in Note 6, management has not identified any material recognizable subsequent events.

13

# SUPPLEMENTAL INFORMATION

**Bountiful Flight, LLC (dba FLT Academy)**

Schedule I - Consolidating Balance Sheet
December 31, 2024

| | Bountiful Flight, LLC | | Cruiser Aircraft USA, LLC | | Eliminations | | Consolidated Bountiful Flight, LLC |
|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | |
| **Current assets:** | | | | | | | |
| Cash and cash equivalents | $ | 2,436,940 | $ | 31,504 | $ | - | $ 2,468,444 |
| Related party receivables | | 2,158 | | - | | - | 2,158 |
| Inventory | | 871,215 | | 70,560 | | - | 941,775 |
| Prepaid expenses | | 62,009 | | - | | - | 62,009 |
| Student promissory notes, current portion | | 310,198 | | - | | - | 310,198 |
| Deposits | | 1,000 | | 490,324 | | - | 491,324 |
| Intercompany receivables | | 144,914 | | - | | (144,914) | - |
| **Total current assets** | | 3,828,434 | | 592,388 | | (144,914) | 4,275,908 |
| **Property and equipment, net** | | 1,388,110 | | - | | - | 1,388,110 |
| **Restricted cash** | | 876,241 | | - | | - | 876,241 |
| **Student promissory notes** | | 2,706,223 | | - | | - | 2,706,223 |
| Less: allowance for credit losses | | (138,346) | | - | | - | (138,346) |
| **Student promissory notes, net** | | 2,567,877 | | - | | - | 2,567,877 |
| **Related party note receivable** | | 603,457 | | - | | - | 603,457 |
| **Right of use (ROU) assets** | | 2,037,937 | | - | | - | 2,037,937 |
| **Total assets** | $ | 11,302,056 | $ | 592,388 | $ | (144,914) | $ 11,749,530 |
| **Liabilities and equity** | | | | | | | |
| **Current liabilities:** | | | | | | | |
| Accounts payable | $ | 68,326 | $ | - | $ | - | $ 68,326 |
| Accrued liabilities | | 130,086 | | 384 | | - | 130,470 |
| Payroll liabilities | | 197,980 | | - | | - | 197,980 |
| Deferred revenue | | 5,148,739 | | 1,500 | | - | 5,150,239 |
| Note payable, current portion | | 11,786 | | - | | - | 11,786 |
| Lease liability, current portion | | 751,274 | | - | | - | 751,274 |
| Intercompany payables | | - | | 144,914 | | (144,914) | - |
| **Total current liabilities** | | 6,308,191 | | 146,798 | | (144,914) | 6,310,075 |
| **Lease liability** | | 1,297,456 | | - | | - | 1,297,456 |
| **Notes payable** | | 3,051,054 | | - | | - | 3,051,054 |
| **Total liabilities** | | 10,656,701 | | 146,798 | | (144,914) | 10,658,585 |
| **Members' equity** | | 645,355 | | 445,590 | | - | 1,090,945 |
| **Total liabilities and member's equity** | $ | 11,302,056 | $ | 592,388 | $ | (144,914) | $ 11,749,530 |

See independent auditor's report and accompanying notes to the consolidated financial statements

15

**Bountiful Flight, LLC (dba FLT Academy)**

**Schedule I - Consolidating Income Statement and Changes in Member's Equity**
**For the year ended December 31, 2024**

| | Bountiful Flight, LLC | Cruiser Aircraft USA, LLC | Eliminations | Consolidated Bountiful Flight, LLC |
|---|---|---|---|---|
| Total revenues | $ 8,093,262 | $ 2,798,471 | $ - | $ 10,891,733 |
| Total cost of sales | 7,286,049 | 2,296,314 | - | 9,582,363 |
| Gross profit | 807,213 | 502,157 | - | 1,309,370 |
| **Operating expenses:** | | | | |
| Wages and benefits | 720,703 | - | - | 720,703 |
| Bad debt expense | 276,938 | - | - | 276,938 |
| Lease expense | 188,136 | - | - | 188,136 |
| Advertising | 132,393 | 36,454 | - | 168,847 |
| Professional fees | 155,777 | - | - | 155,777 |
| Technology costs | 124,465 | - | - | 124,465 |
| Office expenses | 93,821 | 19,514 | - | 113,335 |
| Dues and subscriptions | 68,580 | - | - | 68,580 |
| Travel and meals | 43,537 | 3,061 | - | 46,598 |
| Insurance | 46,005 | - | - | 46,005 |
| Depreciation expense | 40,231 | - | - | 40,231 |
| Telephone and internet | 34,976 | - | - | 34,976 |
| Utilities | 27,508 | - | - | 27,508 |
| Client development | 25,276 | - | - | 25,276 |
| Building maintenance | 16,130 | - | - | 16,130 |
| Bank charges | 11,422 | 2,408 | - | 13,830 |
| Vehicle expenses | 7,620 | - | - | 7,620 |
| Total operating expenses | 2,013,518 | 61,437 | - | 2,074,955 |
| Operating (loss) income | (1,206,305) | 440,720 | - | (765,585) |
| **Other income (expense):** | | | | |
| Interest income | 447,467 | 6,110 | - | 453,577 |
| Interest expense | (28,852) | - | - | (28,852) |
| Other expense | (313) | (4,295) | - | (4,608) |
| Other income | 199,413 | 1,586 | - | 200,999 |
| Gain on sale of property and equipment | 118,101 | - | - | 118,101 |
| Total other income (expense): | 735,816 | 3,401 | - | 739,217 |
| Net (loss) income | (470,489) | 444,121 | - | (26,368) |
| Member's equity, beginning of year | 1,115,844 | 1,469 | - | 1,117,313 |
| Member's equity, end of year | $ 645,355 | $ 445,590 | $ - | $ 1,090,945 |

See independent auditor's report and accompanying notes to the consolidated financial statements

16

The Order of the Court is stated below:
Dated:   May 04, 2026          /s/  BLAINE RAWSON
        11:02:59 AM                 District Court Judge

Gregory H. Gunn, USB 15610

Anna M. Paseman, USB 19039
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
Email: GGunn@parsonsbehle.com
       APaseman@parsonsbehle.com

*Attorneys for Plaintiff Bountiful Flight, LLC*

## IN THE SECOND JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF DAVIS, STATE OF UTAH

| | |
|---|---|
| Bountiful Flight, LLC, a Utah limited liability company,<br><br>          Plaintiff,<br><br>vs.<br><br>Bitwealth Holdings, LLC, a Nevada limited liability company,<br><br>          Defendant. | **DEFAULT JUDGMENT**<br><br>Civil No. 260700274<br><br>Judge Blaine Rawson<br><br>Tier 2 |

This matter is before the Court on Plaintiff Bountiful Flight, LLC's ("Bountiful Flight") Motion

for Entry of Default Judgment (the "Motion") against Defendant Bitwealth Holdings, LLC

("Bitwealth"). It appearing to the Court that Bitwealth was properly served with a copy of the

Summons and Verified Complaint; and it appearing that Bitwealth failed to appear and answer

the Verified Complaint on file herein, or otherwise plead; and it appearing that the time for

response as expired; and it appearing that entry of a Default Certificate by the Clerk of this Court

against Bitwealth has been entered; and it is further appearing that Bountiful Flight is entitled to

Default Judgment against Bitwealth, and for good cause shown, it is hereby ORDERED that judgment be entered in this action in favor of Bountiful Flight and against Bitwealth as follows:

1. Bountiful Flight, LLC's Motion for Entry of Default Judgment is GRANTED. Plaintiff Bountiful Flight, LLC is hereby awarded default judgment against Defendant Bitwealth Holdings, LLC on Bountiful Flight LLC's First Cause of Action for Member Dissociation under Utah Code § 48-3a-602.

2. For the reasons stated in Bountiful Flight, LLC's Verified Complaint, it is hereby ORDERED that Bitwealth Holdings, LLC is expelled and otherwise dissociated as a member of Bountiful Flight, LLC.

3. It is hereby ORDERED that Plaintiff Bountiful Flight, LLC shall pay the current audited book value of Bitwealth Holdings, LLC's ownership interest in Bountiful Flight, LLC, which amount, as established by declaration of Jason Clark, Bountiful Flight, LLC, Managing Member, and which declaration is on file with this Court, is $207,279.55. It is further ORDERED that Bountiful Flight, LLC shall deposit those funds totaling $207,279.55 with the Court Registry for the United States District Court for the District of New Jersey, or as otherwise directed by the United States Attorney for the District of New Jersey.

### IT IS SO ORDERED.

2

4922-4026-2045

*In accordance with Utah Rule of Civil Procedure 10(e) and Utah State District Court's e-Filing Standard No. 4, this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.*

3

4922-4026-2045